IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESHA RESEARCH, LLC, now known as TRUSTWELL, <br><br> Plaintiff, <br><br> v. <br><br><br> RLH ASSETS, LLC d/b/a FOODWIT; and DOES 1-20, <br><br> Defendants. | ) ) ) ) ) ) C.A. No. ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

1. Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell"), brings this complaint against Defendant RLH Assets, LLC, doing business as Foodwit ("Foodwit," and collectively with Trustwell, the "Parties"), for injunctive relief and monetary damages as well as such other relief as specified herein, as follows:

**INTRODUCTION**

2. This case is about the calculated theft of Trustwell's crown jewels—the gold-standard software system called Genesis Foods, which, among other things, automates processes for food and supplement formulation, labeling calculations, and regulatory compliance—that, on information and belief, Foodwit secretly accessed and used to help build and launch a competing product called Workbench. Foodwit recently announced the creation and launch of Workbench, which it touts as a "world-class compliance solution" that "features integrated compliance checks and workflows to validate compliance, formulation, claim and labeling data."

1

3.	Trustwell, a leading SaaS provider to the food and supplements industries, first introduced its Genesis Foods software system to customers in 1991, enabling companies to formulate foods virtually, create government-compliant nutrition panels and labels, and analyze the nutritional content of recipes, among a host of other functions.  Trustwell has continually updated and improved its Genesis Foods system over the years.  In 2024, Trustwell launched the next generation of the system, providing a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance, including U.S., Mexico, Canada, Australia, New Zealand, and European Union food labeling requirements and guidelines.  The new platform features a streamlined user interface offering fast and intuitive product formulation and data entry while assisting users with regulatory compliance through built-in, automated data checks and alerts.  It also automates the process of labeling calculations, making it easy for companies to create new product formulations within minutes and make real-time changes to existing recipes.

4.	Genesis Foods is backed by Trustwell's industry-leading food and ingredient database, which is embedded in the platform and includes, among other things, comprehensive nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,000 brand name and generic foods and ingredients.  The database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available.  This proprietary, confidential, and trade secret software system and related database (collectively, the "Trade Secrets"), developed through decades of investment in research and development, is widely recognized as the gold-standard for food and nutrition research and development and regulatory compliance.

5.      In 2017, Foodwit approached Trustwell to request a license to access and use the Genesis Foods system for its own internal business use. Trustwell entered into a limited-use license agreement with Foodwit (the "License Agreement"), which the Parties renewed annually. The License Agreement does not authorize Foodwit to commercialize Trustwell's Trade Secrets or otherwise leverage them to help build and launch a competing product. Nevertheless, on information and belief, Foodwit secretly accessed and used those materials to build and launch Workbench.

6.      Trustwell learned of Foodwit's scheme in mid-2024. Trustwell promptly sent Foodwit a cease-and-desist letter, demanding, among other things, that Foodwit immediately "[t]erminate all use by Foodwit of Trustwell's nutritional data and related information and software, including its database, to develop, launch, or support any products that compete, directly or indirectly, with Trustwell;" and to "[p]rovide a complete accounting of all marketing and sales conducted by Foodwit utilizing or relying on Trustwell's nutritional data and related information and software, including its database."

7.      Foodwit responded by dismissing the cease-and-desist letter as nothing more than a "bullying tactic" and baldly denying any misconduct. However, despite multiple attempts by Trustwell over several months to resolve this dispute informally, Foodwit repeatedly refused to provide any substantiation of its denials. To date, Foodwit has refused to comply with Trustwell's demands. This action follows.

**PARTIES**

8.      ESHA Research, LLC was founded in Oregon in 1981. After merging with another business in 2022, the company rebranded as Trustwell. Plaintiff Trustwell is a privately held limited liability company based in, and with its principal place of business located in, Beaverton, Oregon. Trustwell's parent company is based and registered in Delaware.

9.	On information and belief, Defendant Foodwit is a privately held limited liability company based in, and with its principal place of business located in, Salem, Oregon.

## JURISDICTION AND VENUE

10.	This Court has original jurisdiction over Trustwell's claims pursuant to 28 U.S.C. §§ 1331 and 1367(a).  Alternatively, this Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy and derive from a common nucleus of operative facts as Trustwell's federal claims.

11.	The Parties expressly consented to this Court's personal jurisdiction over them pursuant to section 23 of the License Agreement, which states as follows:

> The parties agree that any suit, action, or arbitration proceeding arising out of or relating to this [License] Agreement shall be brought in and the parties expressly consent to the exclusive jurisdiction of the courts of the state of Delaware.

Moreover, as set forth below, Foodwit possesses the requisite minimum contacts with Delaware.

12.	Venue is proper in this judicial district pursuant to the Parties' express agreement in section 23 of the License Agreement.  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) & (c).

## FACTS

13.	In 2017, Foodwit, a start-up company at the time, first approached Trustwell to request a license to access and use its Genesis Foods software system.  Based on Foodwit's representation that it would use Genesis Foods solely for its own internal business use, Trustwell entered into the limited-use License Agreement with Foodwit.  The Parties renewed the License Agreement annually for several years.  The Parties most recently renewed the License Agreement

4

as of August 30, 2023, and it expired on August 29, 2024. Foodwit has described itself as a "super user" of Genesis Foods, accessing and using it on a daily basis.

14. Section 3 (Limitations on License) of the License Agreement provides, in pertinent part, as follows:

> Licensee may use the Licensed Software solely for its internal business use …. The Licensee is not licensed to do any of the following: (a) copy, sublicense, rent, lease, lend or otherwise transfer, disclose or publish the Licensed Software (or any portions thereof), or in any manner transfer or assign Licensee's rights under this Agreement without the prior written consent of ESHA; (b) use the Licensed Software for any purpose other than the purposes specifically licensed herein; (c) use the Licensed Software for the benefit of third parties or as part of its own commercially licensed products or services; (d) remove or obscure the ESHA copyright or trademark notices, or those of applicable Third Party Vendors, appearing on or with the Licensed Software; (e) compile the Licensed Software from one form to another or attempt to interfere with, disable, modify, convert, reverse engineer, reverse compile, change or reverse assemble it; [and] (f) compile, extract, strip, mine, harvest or otherwise collect, directly or indirectly, the data from the nutritional database embedded within the Licensed Software.

15. Section 6 (Ownership, Copyrights) of the License Agreement provides, in pertinent part, as follows:

> ESHA is the sole owner of all rights, title, and interest in the ESHA Software, including the embedded nutritional and regulatory database(s) and all customized and derivative works based upon them, and including all copies thereof and all copyright, patent, trademark, trade secret rights and other intellectual property rights embodied therein.

16. Section 7 (Licensee's Obligations to Protect the Licensed Software) of the License Agreement provides as follows:

> As a continuing condition of the licenses granted herein, Licensee covenants to use the Licensed Software only for the purposes set forth in this Agreement and for no other purpose and shall use commercially reasonable efforts to protect the Licensed Software from unauthorized use, reproduction, publication, or distribution.

17. Section 13 (Confidential Information) of the License Agreement provides, in pertinent part, as follows:

> The Licensed ESHA Software (including the nutritional and regulatory database information embedded therein) and all other information ESHA discloses to Licensee in connection with them, shall be considered ESHA's Confidential Information, which ESHA discloses only subject to this Agreement. Licensee agrees that it and its employees, agents and representatives shall, except as permitted herein: (i) keep ESHA's Confidential Information strictly confidential, and shall not disclose such information to any other person or entity without the express written consent of ESHA; (ii) limit internal disclosure of the Confidential Information solely to its employees, agents and representatives who must be apprised of the Confidential Information to advance the purposes of this Agreement, and only to the extent that they must be apprised for those purposes; (iii) contractually bind all such persons to honor the confidentiality and use restrictions imposed upon the Licensee; (iv) use the Confidential Information solely for the purpose of using the Licensed Software as licensed by ESHA in this Agreement; and (v) upon demand, immediately surrender to ESHA the Confidential Information and all notes, records, documentation, models, software, databases and other items or materials containing such Confidential Information.

18. Section 18 (Remedies) of the License Agreement provides, in pertinent part, as follows:

> The parties agree that in the event of a breach of any of the covenants pertaining to ESHA's intellectual property rights or Confidential Information, such a breach will result in irreparable and continuing damage in an amount which is not readily ascertainable and for which there will be no adequate remedy at law. In the event of any breach of such covenants, ESHA shall be entitled to injunctive relief and such other and further relief, including damages, as may be provided by law.

19. Section 22 (Governing Law) of the License Agreement provides that it "shall be governed by and construed in accordance with the laws of the state of Delaware without regard to, or application of, any conflict of law provisions."

20. As mentioned above, Trustwell first introduced its Genesis Foods software system to customers in 1991, enabling companies to formulate foods virtually, create government-compliant nutrition panels and labels, and analyze the nutritional content of recipes, among a host

of related functions.  Through decades of investment in research and development, Trustwell has continually updated and improved the system.  In 2024, Trustwell launched the next generation of Genesis Foods, providing a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance, including U.S., Mexico, Canada, Australia, New Zealand, and European Union food labeling requirements and guidelines.  While concept work for the new platform began several years before, coding work began in earnest in 2021.  In 2023, Foodwit received a confidential presentation regarding planned upgrades to the platform, including the new user interface.  The new platform features a streamlined user interface offering fast and intuitive product formulation and data entry while assisting users with regulatory compliance through built-in, automated data checks and alerts, and is supported by Trustwell's industry-leading and proprietary food and ingredient database.  The platform also automates the process of labeling calculations, making it easy for companies to create new product formulations within minutes and make real-time updates to existing recipes.

21. Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means.  Indeed, Genesis Foods is widely recognized as the gold-standard system for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance.  By licensing access to and use of its Trade Secrets, including Genesis Foods, subject to strict terms, conditions, and protections, Trustwell generates revenue and income through licensing fees.  Such licensing represents a substantial portion of Trustwell's business.

22. Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.  For example, Trustwell provides its customers access to such information solely pursuant to agreements that contain confidentiality provisions and other protections substantially similar to those contained in the License Agreement.  Moreover, Trustwell uses electronic, physical, and

other security measures to maintain the secrecy of such information maintained in its secure facilities, such as password protections, firewalls, and other technical mechanisms. Trustwell also executes confidentiality agreements with employees, and tracks and limits employee access to such information, providing it only to the extent necessary to perform their job functions. Trustwell also regularly instructs and repeatedly reminds its employees of the highly sensitive and confidential nature of its Trade Secrets, which must be protected at all times from disclosure to third parties.

23.     Over a period of several months in 2022 and 2023, Foodwit engaged in discussions with Trustwell's Delaware parent company regarding a potential investment in or acquisition of Foodwit by Trustwell's parent company. Over the course of those discussions, Foodwit's founder and majority owner, Becki Holmes, revealed that Foodwit is a "super user" of Genesis Foods, utilizing it on a daily basis. In fact, Foodwit evidently relied so heavily on Genesis Foods that one of the required qualifications for certain positions was listed as "[p]roficiency in [Trustwell] Genesis nutrient analysis software." Ms. Holmes mentioned that she did not believe there were viable competitors to Genesis Foods in the market because of its unique and powerful regulatory compliance tools. She added that, because of her extensive experience with Genesis Foods, she had unique insight into what "is working / not working" with the platform. She claimed, however, that Foodwit had a greater industry reach than Trustwell, suggesting that if Foodwit replicated the Genesis Foods system, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach. Trustwell's parent company did not invest in or acquire Foodwit.

24.     In 2024, Trustwell launched the next generation of Genesis Foods. Pursuant to the terms, conditions, and protections of the limited-use License Agreement, Foodwit accessed and used the new Genesis Foods system. However, on information and belief, Foodwit secretly

accessed and used the new Genesis Foods system to help design and build Workbench, and exported a substantial volume of proprietary data from Genesis Foods for that purpose.  In fact, Ms. Holmes made sure to confirm before renewing the License Agreement for the final time that "API / Import / Export functionality [would be] included."  Foodwit subsequently announced the creation and launch of Workbench, which Foodwit describes as a "world-class compliance solution" that "features integrated compliance checks and workflows to validate compliance, formulation, claim and labeling data."

25.     Trustwell has reviewed publicly available information, including screenshots and other information, regarding the features and functionalities of Workbench.  On information and belief, Workbench is based on and derived from Genesis Foods with respect to at least a large number of features and functionalities, including but not limited to the following:

- Build and scale recipes from ingredients;
- Analyze real-time formula impact to nutrient, ingredient, and allergen profiles;
- Integrated regulatory compliance checks;
- Automated alerts for regulatory compliance issues;
- Automated alerts based on ingredients for things like allergens;
- SaaS-based application;
- Look and feel of the user interface;
- Ingredient statement with manual override;
- Ingredient standard of identity;
- Listing of standard and non-standard nutrients;
- Nutrient fact panel displayed with recipe formulation;
- Reporting and downloadable print production assets (labels); and

- Upload documents per recipes.

This is not surprising given that Foodwit accessed and used Genesis Foods on a daily basis and, on information and belief, exported a substantial volume of proprietary data from it while simultaneously developing and building Workbench. Indeed, it appears that Foodwit and Ms. Holmes essentially duplicated at least substantial portions of Genesis Foods.

26. Foodwit makes the following additional representations, among others, regarding Workbench on its website:

- "Engineered by food and supplement industry veterans;"
- "Go-to-market more quickly with built-in compliance analyses, document management, reporting and downloadable production-ready label assets;"
- "See real-time formula impacts to nutrient, ingredient and allergen profiles;"
- "[B]uilt-in compliance analyses for food regulations;"
- "Trusted by leading brands;"
- "Workbench … is a breakthrough for compliance software in the food and beverage industry, offering unmatched compliance and efficiency;" and
- "[I]t's a revolution in managing compliance, offering real-time nutrient evaluation and allergen compliance with the peace of mind that regulatory experts have validated its methods."

27. At least substantial portions of the Workbench software system that Foodwit advertises and repeatedly touts on its website as, among other things, a "breakthrough," a "revolution," and "world-class" appear to be, in fact, Trustwell's Trade Secrets, access to which was provided to Foodwit solely pursuant to the limited-use License Agreement. Foodwit omits that it secretly leveraged Trustwell's Trade Secrets to design and build Workbench. Foodwit also omits that, by doing so, it avoided decades of investment in research and development and

thereby gained access to valuable technology and markets without commensurate investment. On information and belief, Foodwit knew it could not afford the investment—in time or money—necessary to develop legitimately a software system that could compete with Genesis Foods; Foodwit resorted to misappropriation to quickly and cheaply create a competitive product. In so doing, Foodwit also relieved itself of its heavy reliance on Genesis Foods. It no longer had to license Genesis Foods because it essentially duplicated the system.

28. At no point did Trustwell ever authorize Foodwit to access, use, or disclose its Trade Secrets in any way beyond the terms and conditions of the limited-use License Agreement. Trustwell has never and would never knowingly provide access to its Trade Secrets to enable a company to commercialize or otherwise leverage those materials to help build competitive and valuable product lines with virtually no investment. On information and belief, Foodwit failed even to provide proper attribution, as required by section 6 of the License Agreement. In other words, on information and belief, through the above representations and omissions, as well as numerous others on its website and elsewhere, Foodwit falsely and deceptively marketed, and continues to falsely and deceptively market, Trustwell's crown-jewel Trade Secrets as Foodwit's own creation, the result of Foodwit's own honest, hard work.

29. In response to Trustwell's cease-and-desist letter, which Foodwit promptly dismissed as nothing more than a "bullying tactic," Foodwit baldly denied any misconduct. Trustwell's CEO immediately reached out to Ms. Holmes directly, in an attempt to resolve this dispute informally. Ms. Holmes rebuffed the attempt, responding that "it would be best for the attorneys to handle any additional communication." Trustwell nevertheless spent the next several months attempting to discuss with Foodwit ways in which it could substantiate its denials, in a concerted effort to resolve the dispute short of litigation. Trustwell proposed a trust-but-verify approach that required substantiation. Unfortunately, Foodwit rejected each of Trustwell's

proposals and ultimately refused to provide any substantiation whatsoever. Foodwit insisted that Trustwell trust but *not* verify. Given the substantial identity between the two systems, however, as well as Foodwit's export history and comments about replicating the Genesis Foods system, Trustwell was unwilling to blindly trust Foodwit's unsupported denials.

30. Foodwit's limited-use License Agreement expired on August 29, 2024. Of course, Foodwit has no further need for Genesis Foods given that it appears to have copied for its own use at least substantial portions of Trustwell's system. On information and belief, Foodwit's repeated but slow-rolled rejections of Trustwell's proposals to substantiate Foodwit's denials of misconduct were meant to delay and obstruct this lawsuit and minimize publicly available information about Workbench so as not to reveal even more substantial similarities with Genesis Foods, demonstrating the malicious and oppressive nature of Foodwit's continuing misconduct.

31. When Foodwit repeatedly refused to comply with Trustwell's demands, Trustwell's only available recourse, and only available means to protect its Trade Secrets, was to file suit.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

32. Trustwell hereby incorporates by reference paragraphs 1 through 31, inclusive, as if set forth fully herein.

33. As set forth above, Foodwit entered into the limited-use License Agreement with Trustwell in 2017, renewing it annually until it expired in 2024. Trustwell provided Foodwit access to and use of Genesis Foods and related information pursuant to the terms, conditions, and protections of the License Agreement.

34. By using Genesis Foods and related information as described above, and by refusing to comply with Trustwell's demands, Foodwit has breached and continues to breach at least sections 3, 6, 7, and 13 of the License Agreement.

35. As a direct and proximate result of Foodwit's breaches, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of attorneys' fees pursuant to section 24 of the License Agreement, which provides, in pertinent part, that "[i]f either party to this Agreement breaches any term of this Agreement, then the other party shall be entitled to recover all expenses of whatever form or nature, costs, and attorneys' fees reasonably incurred to enforce the terms of the Agreement, whether or not suit is filed."

## SECOND CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq*.)

36. Trustwell hereby incorporates by reference paragraphs 1 through 35, inclusive, as if set forth fully herein.

37. Trustwell owns and possesses its Trade Secrets. As set forth above, Trustwell granted Foodwit access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the limited-use License Agreement.

38. As set forth above, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and launch Workbench.

39. As set forth above, and on information and belief, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets to market and sell Workbench to the

same types of customers who presently utilize Genesis Foods, in an effort to divert such customers and business away from Trustwell and to Foodwit.

40. As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

41. As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means. Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, as they have to Foodwit.

42. As set forth above, Foodwit willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for their own competitive use and for their own financial benefit.

43. On information and belief, and as set forth above, Foodwit, including through its founder and majority owner, Ms. Holmes, intentionally, knowingly, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

44. On information and belief, and as set forth above, Foodwit is still in possession of, and continues to use and disclose, Trustwell's Trade Secrets; thus, if Foodwit's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

45. Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its Trade Secrets and other legitimate business interests. Moreover, as set forth above, Foodwit's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to

prevent such future misconduct. Therefore, Trustwell also seeks an order under 18 U.S.C. § 1836(b)(2) for the seizure of any and all of Trustwell's Trade Secrets and confidential or proprietary information in the possession, custody, or control of Foodwit.

46. As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

### THIRD CAUSE OF ACTION

### FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))

47. Trustwell hereby incorporates by reference paragraphs 1 through 46, inclusive, as if set forth fully herein.

48. As set forth above, Foodwit misappropriated Trustwell's confidential, proprietary, and trade secret Genesis Foods software system and related information to build, market, and launch its competing product, Workbench, to customers across the country. In the process, and as set forth above, Foodwit has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of Workbench, including its features and functionalities, which were built using Trustwell's stolen materials.

49. On information and belief, and as set forth above, Foodwit's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), who would not seek to purchase or license Workbench if they knew the truth, and instead likely would do business (or continue to do business) with Trustwell.

50. As set forth above, Foodwit's falsely-represented product, Workbench, is marketed and sold across the country and travels in, and has a substantial effect on, interstate commerce.

51. As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of treble damages and attorneys' fees.

## FOURTH CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DELAWARE UNIFORM TRADE SECRETS ACT (6 DEL. CODE ANN. § 2001, *et seq.*)

52. Trustwell hereby incorporates by reference paragraphs 1 through 51, inclusive, as if set forth fully herein.

53. As set forth above, Trustwell owns and possesses its Trade Secrets. Trustwell granted Foodwit access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the limited-use License Agreement.

54. As set forth above, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and launch Workbench.

55. As set forth above, and on information and belief, Foodwit secretly accessed and used, and continues to use and disclose, the Trade Secrets to market and sell Workbench to the same types of customers who presently utilize Genesis Foods, in an effort to divert such customers and business away from Trustwell and to Foodwit.

56. As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

57. As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means. Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, and they have to Foodwit.

58. As set forth above, Foodwit willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for its own competitive use and for its own financial benefit.

59. On information and belief, and as set forth above, Foodwit, including through its founder and majority owner, Ms. Holmes, intentionally, knowingly, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

60. On information and belief, and as set forth above, Foodwit is still in possession of, and continues to use and disclose, Trustwell's Trade Secrets; thus, if Foodwit's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

61. Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests. Moreover, as set forth above, Foodwit's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to prevent such future misconduct. Therefore, Trustwell also seeks an order under 6 Del. Code Ann. § 2002(c) for the seizure of any and all of Trustwell's Trade Secrets in the possession, custody, or control of Foodwit.

62. As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

## FIFTH CAUSE OF ACTION

### DECEPTIVE TRADE PRACTICES UNDER THE DELAWARE DECEPTIVE TRADE PRACTICES ACT (6 DEL. CODE ANN. § 2531, *et seq.*)

63. Trustwell hereby incorporates by reference paragraphs 1 through 62, inclusive, as if set forth fully herein.

64. As set forth above, Foodwit misappropriated Trustwell's confidential, proprietary, and trade secret Genesis Foods software system and related information to help build, market, and launch Workbench, a competing product, to customers across the country. In the process, as set forth above, Foodwit has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of Workbench, including its software and source data, which was built using Trustwell's stolen materials, in violation of at least sections 2532(a)(1), (2), (5), and (12) of Title 6 of the Delaware Code Annotated.

65. On information and belief, and as set forth above, Foodwit's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), who would not seek to purchase or license Workbench if they knew the truth, and instead likely would do business (or continue to do business) with Trustwell.

66. As set forth above, Foodwit's falsely-represented Workbench is marketed and sold across the country and travels in, and has a substantial effect on, interstate commerce.

67. As a direct and proximate result of Foodwit's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of punitive damages and attorneys' fees.

## JURY TRIAL DEMAND

68. Trustwell respectfully requests a jury trial in this action on all issue so triable.

## PRAYER FOR RELIEF

Based on the foregoing, Trustwell prays for the following relief against Foodwit:

1. Judgment in Trustwell's favor and against Foodwit on all causes of action alleged herein;

2. A preliminary and permanent injunction to enjoin Foodwit, its agents, representatives, employees, attorneys, successors, and assigns, and all persons and entities acting in concert with them, from further misappropriation or unauthorized use of Trustwell's confidential, proprietary, and trade secret information and materials;

3. An order for Foodwit to pay Trustwell compensatory damages based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law;

4. An order for Foodwit to pay Trustwell consequential and actual damages or disgorgement of Foodwit's profits unjustly obtained, restitution, and/or reasonable royalties, based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law;

5. An order for Foodwit to pay Trustwell exemplary, treble, and/or punitive damages for Foodwit's intentional, knowing, willful, malicious, fraudulent, and oppressive conduct;

6. An order for Foodwit to pay Trustwell its reasonable attorneys' fees and allowable costs and expenses; and

7. All other such relief to Trustwell under law and equity as the Court deems just and proper.

Dated: February 20, 2025

       /s/ Kenneth L. Dorsney
Kenneth L Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone: (302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Of Counsel:*

Cary D. Sullivan (*pro hac vice* to be filed)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
Telephone: (949) 851-3939
carysullivan@jonesday.com

*Attorneys for Plaintiff
ESHA Research, LLC, now known as
Trustwell*