IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ESHA RESEARCH, LLC, now known as TRUSTWELL, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 25-206-RGA |
| v. | ) ) | |
| RLH ASSETS, LLC d/b/a FOODWIT; and DOES 1-20, | ) ) ) | |
| Defendants. | ) ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR TRANSFER UNDER 28 U.S.C. § 1406 OR TO TRANSFER UNDER 28 U.S.C. § 1404**

OF COUNSEL:
Matthew S. Warren
Erika H. Warren
Shaida Shahinfar
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, CA, 94114
(415) 895-2940

Dated: April 22, 2025

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorney for Defendant RLH Assets, LLC d/b/a Foodwit*

# **TABLE OF CONTENTS**

**Pages**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NATURE AND STAGE OF THE PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    Foodwit's Agreements With ESHA Require Disputes in the District of Oregon. . . . . . . 2

B.    Purchased by Private Equity, ESHA Jacks Up Its Prices; Foodwit Responds
       by Starting to Develop a Product That Would Compete With ESHA's Genesis
       Product; ESHA Threatens Foodwit, Enclosing a Draft Document Edited
       on February 1, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

C.    ESHA's Action Against Cronometer, and Cronometer's Counterclaims. . . . . . . . . . . . . 4

D.    ESHA Files This Action, Omitting the Draft Document From Its Complaint. . . . . . . . . 4

E.    Foodwit Sues ESHA in the District of Oregon, Where Foodwit and ESHA Reside. . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    Foodwit Never Executed the Draft Contract Attached to ESHA's Draft Complaint
      Or Any Agreement Waiving Objections to Venue in This Court; To the Contrary,
      Foodwit's Agreements With ESHA Specified Exclusive Jurisdiction in Oregon. . . . . . . 5

II.   This Court Should Dismiss or Transfer This Action to the District of Oregon. . . . . . . . . 6

      A.    Foodwit Does Not Reside in Delaware Under § 1391(b)(1). . . . . . . . . . . . . . . . . 6

            1.    ESHA Has Not Alleged General Jurisdiction, and None Exists. . . . . . . . . 8

            2.    ESHA Has Not Alleged Specific Jurisdiction, and None Exists. . . . . . . . . 9

                  i.     Foodwit Did Not Transact Business in Delaware. . . . . . . . . . . . . 9

                  ii.    Foodwit Did Not Supply Services in Delaware. . . . . . . . . . . . . . . 10

                  iii.   Foodwit Did Not Cause Tortious Injury in Delaware. . . . . . . . . . 10

                  iv.    ESHA Has Not Alleged Any Nexus Between Any Alleged
                         Action in Delaware and Its Claims, and None Exists. . . . . . . . . . 11

                  v.     The Constitution Bars Jurisdiction Over Foodwit in This Court. . 11

## TABLE OF CONTENTS
*(continued)*

**Pages**

B.    No Events Occurred in Delaware, Barring Venue Under § 1391(b)(2). . . . . . . . . 12

C.    Foodwit Resides in Oregon, Barring Venue Under § 1391(b)(3). . . . . . . . . . . . 13

D.    The Court Has Discretion to Transfer This Action to the District of Oregon. . . . 13

III.    The Court Should Also Transfer This Action to Oregon Under 28 U.S.C. § 1404(a). . . .14

A.    ESHA Could Have Brought This Case in the District of Oregon. . . . . . . . . . . . 14

B.    The *Jumara* Factors Strongly Favor Transfer. . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.    The Court Should Transfer This Action to the District of Oregon. . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

*Cases*                                                                      **Pages**

*786 Challenger St. LLC v. Bombardier Aerospace Corp.*,
    No. 20-919, 2021 WL 9598628 (D. Del. Jan. 27, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Alterra Am. Ins. Co. v. James W. Fowler Co.*,
    347 F. Supp. 3d 604 (D. Or. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Ascenda Biosciences, LLC v. Little*,
    No. 20-278, 2020 WL 4464600 (D. Del. Aug. 4, 2020) . . . . . . . . . . . . . . . . . . . . . . . . .6-7

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 13

*Bristol-Myers Squibb Co. v. Superior Ct. of California*,
    582 U.S. 255 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Camcara, Inc. v. Air Prods. & Chemicals, Inc.*,
    No. 20-1271, 2021 WL 5428884 (D. Del. May 4, 2021) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Chen v. Sagrera*,
    No. 16-385, 2017 WL 4001568 (D. Del. Sept. 11, 2017) . . . . . . . . . . . . . . . . . . . . . 13-14

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
    No. 21-1365, 2022 WL 16921988 (D. Del. Nov. 14, 2022) . . . . . . . . . . . . . . . . . . . . . . .14

*Cont'l Grain Co. v. The FBL-585*,
    364 U.S. 19 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Cornerstone Techs. L.L.C. v. Conrad*,
    No. 19712, 2003 WL 1787959 (Del. Ch. Mar. 31, 2003) . . . . . . . . . . . . . . . . . . . . . . . 11

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## <u>TABLE OF AUTHORITIES</u>
*(continued)*

| *Cases* | **Pages** |
|---|---|

*Exp. Global Metals, Inc. v. Memking Recycling Group, LLC,*
  No. 13-747, 2013 WL 5781212 (D. Or. Sept. 26, 2016)...........................19

*Express Mobile, Inc. v. Web.com Grp., Inc.,*
  No. 19-1936, 2020 WL 3971776 (D. Del. July 14, 2020)........................16

*Fischer v. Hilton,*
  549 F. Supp. 389 (D. Del. 1982)................................................10

*Goldlawr, Inc. v. Heiman,*
  369 U.S. 463 (1962)...........................................................13-14

*Goodyear Dunlop Tires Operations, S.A v. Brown,*
  564 U.S. 915 (2011).............................................................8, 12

*Greenly v. Davis,*
  486 A.2d 669 (Del. 1984).......................................................10

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947).............................................................19

*Harris v. Harris,*
  289 A.3d 277 (Del. Ch. 2023)..................................................11

*Hooli v. Mitcham,*
  No. 21-702, 2022 WL 611250 (D. Del. Jan. 31, 2022)..........................12

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945).............................................................7

*IpVenture, Inc. v. Acer, Inc.,*
  879 F. Supp. 2d 426 (D. Del. 2012)............................................17

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.,*
  No. 13-824, 2014 WL 4829027 (D. Del. Sept. 25, 2014).........................16

*Jacobson v. Ronsdorf,*
  No. 518, 2005 WL 29881 (Del. Ch. Jan. 6, 2005), *aff'd,* 906 A.2d 807 (Del. 2006).....7

*Joint Stock Soc. Trade House of Descendants of Peter Smirnoff,*
*Off. Purveyor to the Imperial Ct. v. Heublein, Inc.,*
  936 F. Supp. 177 (D. Del. 1996)...............................................11

## <u>TABLE OF AUTHORITIES</u>

*(continued)*

*Cases*                                                                                     **Pages**

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13-17, 19

*Kennedy v. Walmart, Inc.*,
    No. 18-1270, 2019 WL 2052350 (D. Del. May 9, 2019). . . . . . . . . . . . . . . . . . . . . . . 6

*Labreck v. Bank of Am., N.A.*,
    No. 17-15, 2018 WL 6427717 (D. Del. Dec. 7, 2018). . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Law Bulletin Pub., Co. v. LRP Publications, Inc.*,
    992 F. Supp. 1014 (N.D. Ill. 1998). . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . 17

*Locs. 302 & 612 of Int'l Union of Operating Eng'rs Constr. Indus. Health &*
*Sec. Fund v. Ross Island Sand & Gravel Co.*,
    No. 23-1060, 2024 WL 139864 (D. Or. Jan. 12, 2024). . . . . . . . . . . . . . . . . . . . . . . 13

*M2M Sols. LLC v. Simcom Wireless Sols. Co.*,
    935 F. Supp. 2d 740 (D. Del. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Mannie & Catherine Jackson Descendant Tr. v. Rizzo*,
    No. 15-659, 2015 WL 6449149 (D. Del. Oct. 26, 2015). . . . . . . . . . . . . . . . . . . . . 18-20

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Memory Integrity, LLC v. Intel Corp.*,
    No. 13-1804, 2015 WL 632026 (D. Del. Feb. 13, 2015). . . . . . . . . . . . . . . . . . . . . .16

*N. Am. Rescue Products Inc. v. Bound Tree Med.*,
    No. 07-2936, 2008 WL 304881 (D.S.C. Jan. 31, 2008). . . . . . . . . . . . . . . . . . . . . . . 17

*Novartis Pharms. Corp. v. Zydus Noveltech Inc.*,
    No. 14-1104, 2015 WL 4720578 (D. Del. Aug. 7, 2015). . . . . . . . . . . . . . . . . . . . . . . 8

*NXP USA, Inc. v. IMPINJ, Inc.*,
    No. 19-1875, 2020 WL 5665257 (D. Del. Sept. 23, 2020). . . . . . . . . . . . . . . . . . . . 15, 19

*Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*,
    No. 23-1250, 2024 WL 3925117 (D. Del. Aug. 23, 2024). . . . . . . . . . . . . . . . . .14-17, 20

*Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
    No. 21-1403, 2022 WL 1063845 (D. Del. Apr. 8, 2022). . . . . . . . . . . . . . . . . . . . . .14

**TABLE OF AUTHORITIES**

*(continued)*

|  |  |
|---|---|
| *Cases* | **Pages** |

*Pennwalt Corp. v. Purex Industries, Inc.*,
659 F.Supp. 287 (D. Del. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Perma-liner Indus., LLC v. D'hulster*,
No. 20-409, 2021 WL 951185 (D. Del. Mar. 12, 2021). . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pourbabai v. Duff*,
No. 21-92, 2022 WL 610705 (D. Del. Jan. 21, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Registered Agents, Ltd. v. Registered Agent, Inc.*,
880 F. Supp. 2d 541 (D. Del. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Rocke v. Pebble Beach Co.*,
541 Fed. App'x 208 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-9

*Roe v. Wyndham Worldwide, Inc.*,
No. 18-1525, 2020 WL 707371 (D. Del. Feb. 12, 2020). . . . . . . . . . . . . . . . . . . . . . . . 7-9

*Semcon Tech, LLC v. Intel Corp.*,
No. 12-531, 2013 WL 126421 (D. Del. Jan. 8, 2013). . . . . . . . . . . . . . . . . . . . . .15, 18, 20

*Shoemaker v. McConnell*,
556 F. Supp. 2d 351 (D. Del. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Signal Tech, LLC v. Analog Devices, Inc.*,
No. 11-1073, 2012 WL 1134723 (D. Del. Apr. 3, 2012). . . . . . . . . . . . . . . . . . . . . . .15, 19

*Sprint Nextel Corp. v. iPCS, Inc.*,
No. 3746, 2008 WL 2737409 (Del. Ch. Ct. July 14, 2008). . . . . . . . . . . . . . . . . . . . . .9, 11

*Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*,
No. 12875, 2017 WL 3575712 (Del. Ch. Aug. 18, 2017),
*aff'd* 184 A.3d 1290 (Del. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Thorn EMI North America, Inc. v. Micron Technology, Inc.*,
821 F. Supp. 272 (D. Del. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Walden v. Fiore*,
571 U.S. 277 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**TABLE OF AUTHORITIES**

*(continued)*

*Cases*                                                                              **Pages**

*Yankees Ent. & Sports Network, LLC v. Hartford Fire Ins. Co.*,
    634 F. Supp. 3d 203 (D. Del. 2022),
    *aff'd*, No. 22-3121, 2023 WL 6291784 (3d Cir. Sept. 27, 2023). . . . . . . . . . . . . . . . . .9-12

*Zausner Foods Corp. v. ECB USA, Inc.*,
    No. 20-1769, 2022 WL 609110 (D. Del. Jan. 31, 2022). . . . . . . . . . . . . . . . . . . . . . . . . .9

*Statutes & Rules*

28 U.S.C. § 1391. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 12-13

28 U.S.C. § 1404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 18, 19

28 U.S.C. § 1406. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

*Other Proceedings*

*ESHA Research, Inc. v. Cronometer Software*,
    No. 24-1586 (D. Or.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*RLH Assets, LLC v. ESHA Research, LLC*,
    No. 25-656 (D. Or.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## NATURE AND STAGE OF THE PROCEEDINGS

This case is in the wrong Court.  Plaintiff ESHA Research, LLC is an Oregon corporation based in Oregon.  Defendant Foodwit is also an Oregon corporation based in Oregon.  In the District of Oregon, ESHA sued another company, Cronometer, for "the calculated theft" of its "crown jewels," namely, "trade secret nutritional data and related information."  In this case, ESHA sued Foodwit, claiming "the calculated theft" of different "crown jewels," this time a "software system called Genesis Foods."  Cronometer has counterclaimed against ESHA, asserting claims including for violations of the Sherman Act.  Foodwit has also sued ESHA in Oregon, also asserting claims including for violations of the Sherman Act.  All of these claims and counterclaims are before the District of Oregon, except for the complaint in this matter.

Although it could have sued in Oregon where it and Foodwit both reside, ESHA chose instead to bring its complaint against Foodwit before this Court, presumably hoping to avoid having a single Court evaluate and consider the full sweep of its anticompetitive conduct.  Unfortunately for ESHA, this Court has no jurisdiction over its claims.  ESHA claims jurisdiction based on a purported agreement that allows (but does not require) resolution in Delaware.  But Foodwit never executed this purported agreement, or even saw it before ESHA attached it to a draft complaint in September 2024.  Indeed, the purported agreement that ESHA transmitted with its draft complaint cannot be a final agreement between ESHA and Foodwit, or between ESHA and anyone, because it *had comments in it confirming it was a draft*, and those comments had dates that fell *after* the date on which ESHA claims that Foodwit executed the purported agreement.  ESHA must have noticed these telltale comments sometime after sending Foodwit its draft complaint but before filing its final complaint in this Court, because it removed the telltale draft from its filing and presented excerpts instead, nevertheless maintaining without

evidence its claim that Foodwit agreed to the telltale draft. This claim is false: ESHA and Foodwit's agreements always required dispute resolution in Oregon, and ESHA breached those agreements by filing this case. The telltale draft cannot provide jurisdiction in this Court.

Beyond the telltale draft, ESHA does not seriously try to tender grounds for jurisdiction. It mutters briefly that Foodwit had discussions with its parent company, which it claims is incorporated in Delaware but admits is not a party to this action. That is not close to sufficient. The Court should transfer this action to the District of Oregon, where ESHA could and should have brought it, and which will consider ESHA's other claims of "theft" of its "crown jewels," as well as Foodwit and Cronometer's allegations that ESHA is violating the Sherman Act.

## SUMMARY OF ARGUMENT

1.      Under 28 U.S.C. § 1406(a), the Court should dismiss or transfer this action to the District of Oregon because venue is improper here. ESHA's claim of venue rests almost entirely on the telltale draft, which Foodwit never executed or saw before September 2024, and which could not be a final contract between ESHA and anyone. ESHA's remaining allegations briefly allege that Foodwit had discussions with its private-equity parent, which is not a party to this action; those allegations are not close to sufficient to provide venue in this Court.

2.      In the alternative, under 28 U.S.C. § 1404(a), the Court should transfer this case to the District of Oregon, as the *Jumara* factors counsel in favor of transfer.

## STATEMENT OF FACTS

### A.      Foodwit's Agreements With ESHA Require Disputes in the District of Oregon

Foodwit and ESHA reside in Oregon. D.I. 1 ¶¶ 8-9; Declaration of Becki Holmes ¶ 3. Between 2017 and 2022, Foodwit executed several license agreements with ESHA; all of them stated that "The parties agree that any suit, action or arbitration proceeding arising out of or

relating to this Agreement shall be brought in Multnomah County, Oregon, and the parties expressly consent to the personal jurisdiction over them of any state or federal court in Multnomah County, Oregon." Holmes Decl. ¶¶ 7, 14; *see id.* ¶¶ 4-19. In 2023, Foodwit executed a renewal agreement that referred to terms of service, but ESHA did not transmit any new terms, or provide any indication that it wanted to alter the old terms. *Id.* ¶¶ 20-21.

**B.**  **Purchased by Private Equity, ESHA Jacks Up Its Prices; Foodwit Responds by Starting to Develop a Product That Would Compete With ESHA's Genesis Product; ESHA Threatens Foodwit, Enclosing a Draft Document Edited on February 1, 2024**

In 2022, private equity company The Riverside Company acquired ESHA. Holmes Decl. ¶ 23. In 2023, ESHA raised its prices steeply, to the consternation of its customers. *Id.* ¶¶ 24-25. Foodwit saw an opportunity to capitalize on the flaws in the Genesis product, combined with the price increases, to create a better product called Workbench. *Id.* ¶ 26. ESHA responded with threats of litigation. *Id.* ¶ 27. On September 17, 2024, ESHA sent Foodwit a letter captioned "Final Attempt to Avoid Litigation," enclosing a draft complaint. *Id.* ¶ 28 & Ex. 9. ESHA's draft complaint attached a purported contract entitled "ESHA RESEARCH TERMS OF SERVICES AND END USER LICENSE AGREEMENT." *Id.* Ex. 9 at 21-33. Foodwit had never seen this document before. *Id.* ¶ 29. And no wonder: this document was not a contract between ESHA and Foodwit. It was not a contract between ESHA and anyone; it was not even a final document. This non-final document contained multiple comments confirming that ESHA was still drafting it in February 2024. The comments discussed editing sections of the draft, and proposed possible revisions, including for example a change to an



indemnification clause that "would include claims beyond IP infringement." *Id.* Ex. 9 at 24. The date of the comments was February 1, 2024. *Id.* ¶¶ 30-32. The author of the comments was Stephen Bruce, who was ESHA's CEO in February 2024. *Id.* ¶ 33.

**C.    ESHA's Action Against Cronometer, and Cronometer's Counterclaims**

On September 18, 2024, ESHA filed a complaint alleging a different "theft" of different "crown jewels" by Cronometer Software, Inc. *ESHA Rsch., Inc. v. Cronometer Software, Inc.*, No. 24-1586, D.I. 1 (D. Or. Sept. 18, 2024). ESHA's complaint against Cronometer is similar to its complaint against Foodwit. *Compare id. with* D.I. 1. Cronometer asserted counterclaims including for violations of the Sherman Act, 15 U.S.C. § 2. *ESHA v. Cronometer*, D.I. 6.

ESHA's action against Cronometer has yielded significant results regarding ESHA's trade secret claims. ESHA claimed its "trade secret" was "the data contained in Trustwell's master food and nutrition database." *ESHA v. Cronometer*, D.I. 20 at 8. Cronometer responded that "simply claiming 'the data' does nothing to provide the requisite level of particularity" for trade secrets. *Id.* at 12. This dispute led to two rounds of briefing and a hearing before the Court. *Id.*, D.I. 12-13, 17-18, 20-22, 30, 32, 34, 36. Following the second round of briefing, the Court found that ESHA "has not carried its burden to identify the trade secrets at issue and show they exist," and ordered ESHA to supplement its trade secrets identification. *Id.*, D.I. 36. The Court further ordered that, "[i]f Plaintiff is alleging its trade secrets are entirely compilation trade secrets, it must identify the steps in the process and explain how those steps make the method or process unique." *Id.* (citation and internal quotation marks omitted).

**D.    ESHA Files This Action, Omitting the Draft Document From Its Complaint**

On February 20, 2025, ESHA filed this action. D.I. 1. The complaint largely tracked the September 2024 complaint. Declaration of Matthew S. Warren, Ex. 1. Without explanation,

however, the complaint omitted the telltale draft document with comments from Stephen Bruce. D.I. 1. Instead, it quoted at length from a "contract" it simply assumed to exist. *Id.* ¶¶ 11-18.

**E.    Foodwit Sues ESHA in the District of Oregon, Where Foodwit and ESHA Reside**

On April 22, 2025, Foodwit sued ESHA in the District of Oregon, where Foodwit and ESHA both reside. *RLH Assets, LLC v. ESHA Research, LLC*, No. 25-656 (D. Or.). Foodwit asserts claims against ESHA including for violations of the Sherman Act, 15 U.S.C. § 2. *Foodwit v. ESHA*, D.I. 1. There are now three pending cases addressing ESHA's claims of "theft" of its "crown jewels," as well as claims that ESHA's claims of "theft" form part of an improper campaign to drive out competition in violation of the Sherman Act: *ESHA v. Cronometer* and *Foodwit v. ESHA*, both in Oregon, and this action in this Court.

## ARGUMENT

**I.    Foodwit Never Executed the Draft Contract Attached to ESHA's Draft Complaint Or Any Agreement Waiving Objections to Venue in This Court; To the Contrary, Foodwit's Agreements With ESHA Specified Exclusive Jurisdiction in Oregon**

ESHA's claim of venue in this Court largely relies on the telltale draft agreement. D.I. 1 ¶¶ 11-12. But Foodwit never executed the telltale draft, or even received it until September 2024. *See supra* §§ A, B. Even now, no copy of the telltale draft is available on any of ESHA's websites. *See* Holmes Decl. ¶¶ 34-43. Instead, ESHA continues to make available a "Terms of Service and End User License Agreement" document that, like those executed by Foodwit and referenced in the Cronometer case, provides for jurisdiction before courts in Oregon. *See id.*

Foodwit never agreed to jurisdiction or venue in this Court. *See supra* § A, B. ESHA claims that it "entered into a limited-use license agreement with Foodwit (the 'License Agreement'), which the Parties renewed annually." D.I. 1 ¶ 5. It then claims that the "License Agreement" selects jurisdiction here. *Id.* ¶ 11. Although ESHA tries to obscure the history with

the undefined defined term "License Agreement," that history shows that Foodwit agreed only to jurisdiction in Oregon. *See supra* § A, B. ESHA's artful pleading cannot override the facts, and the telltale draft cannot provide venue here. ESHA can proceed only if venue otherwise exists.

## II.    This Court Should Dismiss or Transfer This Action to the District of Oregon

It does not. "When venue is challenged, the Court must determine whether the case falls within one of the three categories set forth in § 1391(b)." *Labreck v. Bank of Am., N.A.*, No. 17-15, 2018 WL 6427717, at *2 (D. Del. Dec. 7, 2018) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013)). Those categories are:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Kennedy v. Walmart, Inc.*, No. 18-1270, 2019 WL 2052350, at *1 (D. Del. May 9, 2019) (quoting 28 U.S.C. § 1391(b)). None of these categories provide this Court with venue over this action.

### A.    Foodwit Does Not Reside in Delaware Under § 1391(b)(1)

Foodwit does not reside in Delaware. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A corporation such as Foodwit "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Since Foodwit is the sole defendant in this action, the question of venue reduces to the question of personal jurisdiction. "Pursuant to Rule 4(k) of the Federal Rules of Civil Procedure, 'a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.'" *Ascenda Biosciences, LLC v. Little*, No. 20-278, 2020 WL

4464600, at *1 (D. Del. Aug. 4, 2020) (quoting *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir.

2007)).  "Under Delaware law, a plaintiff bears the burden of showing the basis for the court to

exercise jurisdiction over a nonresident defendant."  *Ascenda*, 2020 WL 4464600, at *1 (citing

*Jacobson v. Ronsdorf*, No. 518, 2005 WL 29881, at *3 (Del. Ch. Jan. 6, 2005), *aff'd*, 906 A.2d

807 (Del. 2006)).  "To establish personal jurisdiction over a non-resident defendant, a plaintiff

must satisfy both a statutory requirement and a constitutional requirement."  *Roe v. Wyndham*

*Worldwide, Inc.,* No. 18-1525, 2020 WL 707371, at *2 (D. Del. Feb. 12, 2020).  "For the

statutory requirement, the court must find that the defendant's actions fall within the forum

state's long-arm statute," and for the "constitutional requirement, the court must find that exercise

of personal jurisdiction comports with the defendant's rights to due process."  *Roe*, 2020 WL

707371, at *2 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

    "Delaware's long-arm statute authorizes jurisdiction over a nonresident who in person or

through an agent:  (1) transacts any business or performs any character of work or service in the

State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State

by an act or omission in this State; (4) causes tortious injury in the State or outside the State by

an act or omission outside the State if the person regularly does or solicits business, engages in

any other persistent course of conduct in the State, or derives substantial revenue from services

or things used or consumed in the State."  *Roe*, 2020 WL 707371, at *2 (citing 10 Del. C.

§§ 3104(c)(1)-(4)).[1]  "Subsections (c)(1) through (c)(3) provide for 'specific jurisdiction' if the

cause of action 'arises out of' defendant's contacts with the forum state."  *Roe*, 2020 WL

---

[1] The statute also allows jurisdiction over parties that own real property in Delaware or
provide insurance in Delaware.  *See* 10 Del. C. §§ 3104(c)(5)-(6).  These are also "specific
jurisdiction provisions," requiring a nexus between the actions and the asserted claims.  *M2M*
*Sols. LLC v. Sincom Wireless Sols. Co.*, 935 F. Supp. 2d 740, 744 (D. Del. 2013).  In any event,
Foodwit does neither.  *See* Holmes Decl. ¶¶ 44-45.  ESHA does not allege otherwise.  *See* D.I. 1.

707371, at *3 (citing *Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008); *Rocke v. Pebble Beach Co.*, 541 Fed. App'x 208, 210 (3d Cir. 2013)).  "Subsection (c)(4) provides for 'general jurisdiction' if the defendant's contacts are so 'continuous and systematic as to render them essentially at home in the forum state.'"  *Roe*, 2020 WL 707371, at *3 (quoting *Goodyear Dunlop Tires Operations, S.A v. Brown*, 564 U.S. 915, 919 (2011)).  "Only general jurisdiction allows a plaintiff's cause of action to be 'unrelated to the defendant's activities in the forum state.'"  *Roe*, 2020 WL 707371, at *3 (quoting *Rocke*, 541 F. App'x at 210).

ESHA's complaint does not specify jurisdictional allegations, but rests on the vague statements that venue is "proper in this judicial district pursuant to 28 U.S.C. § 1391(b) & (c)" and "Foodwit possesses the requisite minimum contacts with Delaware."  D.I. 1 ¶¶ 11-12.  Foodwit therefore must and will address both general and specific jurisdiction.

### 1.     ESHA Has Not Alleged General Jurisdiction, and None Exists

There is no general jurisdiction here.  General jurisdiction exists when a defendant's contacts with a state are "so continuous and systematic as to render it essentially at home in the forum State."  *Novartis Pharms. Corp. v. Zydus Noveltech Inc.*, No. 14-1104, 2015 WL 4720578, at *2 (D. Del. Aug. 7, 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)).  That is not so here.  Foodwit is "not a Delaware corporation and this state is not its principal place of business.  It has no property, staff or offices in the state and does not conduct any business here."  *Novartis*, 2015 WL 4720578, at *4; *see* Holmes Decl. ¶¶ 3, 44-49.  And it "has not registered to do business in Delaware."  *Novartis*, 2015 WL 4720578, at *4; *see* Holmes Decl. ¶ 49.[2]  ESHA has failed to allege general jurisdiction, because none exists.

---

[2] In addition, the Secretary of State has no records for any entity including "RLH Assets." https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.  The Court can take judicial notice of Secretary of State records (or, here, the lack thereof).  *E.g.*, *786 Challenger St. LLC v. Bombardier Aerospace Corp.*, No. 20-919, 2021 WL 9598628, at *2 (D. Del. Jan. 27, 2021).

### 2.    ESHA Has Not Alleged Specific Jurisdiction, and None Exists

There is likewise no specific jurisdiction here.  "Delaware's long-arm statute" allows specific jurisdiction if a non-resident defendant such as Foodwit "(1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State by an act or omission in this State," and if "the cause of action 'arises out of' defendant's contacts with the forum state."  *Roe*, 2020 WL 707371, at *2-3 (quoting *Rocke,* 541 F. App'x at 210).  In other words, these provisions allow personal jurisdiction "only with respect to claims that have a nexus to such forum-related conduct."  *Sprint Nextel Corp. v. iPCS, Inc.*, No. 3746, 2008 WL 2737409, at *8 (Del. Ch. Ct. July 14, 2008).  ESHA provides neither the required acts nor the nexus.

### i.    Foodwit Did Not Transact Business in Delaware

ESHA's complaint states that, "[o]ver a period of several months in 2022 and 2023, Foodwit engaged in discussions with [ESHA's] Delaware parent company regarding a potential" transaction.  D.I. 1 ¶ 23.  Following these discussions, ESHA admits, its "parent company did not invest in or acquire Foodwit."  *Id*.  Assuming their truth, these allegations cannot constitute "transact[ing] any business or perform[ing] any character of work or service in the State" under 10 Del. C. § 3104(c)(1).  Even if EHSA's parent company were a party to this action (which it is not) and even if it reached a deal with Foodwit (which it did not), its incorporation here would not matter, as "Delaware courts have rejected attempts to satisfy subsection (c)(1) based upon little more than a contract partner's status as a Delaware company or resident."  *Yankees Ent. & Sports Network, LLC v. Hartford Fire Ins. Co.*, 634 F. Supp. 3d 203, 210 (D. Del. 2022) (citing *Zausner Foods Corp. v. ECB USA, Inc.*, No. 20-1769, 2022 WL 609110, at *8 (D. Del. Jan. 31, 2022)), *aff'd*, No. 22-3121, 2023 WL 6291784 (3d Cir. Sept. 27, 2023)).  "To prove that

[Foodwit] has transacted business in Delaware, [ESHA] must point to some relevant action that the defendant—not the plaintiff—has taken within the state of Delaware." *Yankees*, 634 F. Supp. 3d at 210; *see, e.g.*, *Fischer v. Hilton*, 549 F. Supp. 389, 391 (D. Del. 1982). ESHA has pointed to no such actions, *see generally* D.I. 1, and no such actions exist. Holmes Decl. ¶¶ 44-49.

ESHA's allegations fail for another reason: Foodwit was not "transact[ing] business" at all under 10 Del. C. § 3104(c)(1). "In interpreting Delaware's long-arm statute, this court has consistently held that solicitations do not normally rise to the level of transacting business." *Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 547 (D. Del. 2012) (citing *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 274 (D. Del. 1993)). ESHA's complaint alleges discussions, but no transaction, which cannot provide venue. *Greenly v. Davis*, 486 A.2d 669, 671 (Del. 1984). Foodwit did not transact business in Delaware.

### ii.    Foodwit Did Not Supply Services in Delaware

Foodwit also did not supply services in Delaware, and ESHA makes no allegations to the contrary. *See generally* D.I. 1. To "supply services or things in" Delaware under 10 Del. C. § 3104(c)(2), "the Delaware long-arm statute requires that service contracts must be for services performed in Delaware." *Registered Agents*, 880 F. Supp. 2d at 546 (citing *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)). Foodwit has never employed anyone working in Delaware, or sent an employee or agent to perform work in Delaware, and thus could not have performed services in Delaware. Holmes Decl. ¶¶ 44, 46.

### iii.    Foodwit Did Not Cause Tortious Injury in Delaware

Although Foodwit did not cause tortious injury at all, for now the Court need only decide whether it did so "in the State by an act or omission in this State" under 10 Del. C. § 3104(c)(3). This question is easy to answer, and the easy answer is no. ESHA resides in Oregon, not

Delaware, *see supra* § A, and therefore cannot claim any injury it suffers as a Delaware injury. And even if ESHA did reside in Delaware, it would not matter, since "[i]n order for a defendant to commit an act in Delaware and be subject to subsection (c)(3) of the Delaware long-arm statute, the defendant, or an agent of the defendant, must be present in Delaware when the deed is done." *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Off. Purveyor to the Imperial Ct. v. Heublein, Inc.*, 936 F. Supp. 177, 193 (D. Del. 1996). Again, Foodwit has never employed anyone working in Delaware, or sent an employee or agent to perform work in Delaware, and thus could not have caused tortious injury in Delaware. Holmes Decl. ¶¶ 46, 48.

### iv.    ESHA Has Not Alleged Any Nexus Between Any Alleged Action in Delaware and Its Claims, and None Exists

Even if ESHA had alleged actions in Delaware under 10 Del. C. § 3104(c)(1)-(3)—which it did not, *see supra*—those provisions allow jurisdiction "only with respect to claims that have a nexus to such forum-related conduct." *Sprint*, 2008 WL 2737409, at *8 (quoting *Cornerstone Techs. L.L.C. v. Conrad*, No. 19712, 2003 WL 1787959, at *9 (Del. Ch. Mar. 31, 2003)). The alleged communications between Foodwit and ESHA's parent were known to ESHA, *e.g.*, D.I. 1 ¶ 23, the wrongdoing ESHA alleges was hidden from ESHA. *E.g.*, D.I. 1 ¶¶ 2, 5, 24. There is no "factual relationship" between open conversations and alleged secret theft, nor could there be. *Harris v. Harris*, 289 A.3d 277, 305 (Del. Ch. 2023) (quoting *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, No. 12875, 2017 WL 3575712, at *6 (Del. Ch. Aug. 18, 2017), *aff'd* 184 A.3d 1290 (Del. 2018)). ESHA alleges none. *See generally* D.I. 1.

### v.    The Constitution Bars Jurisdiction Over Foodwit in This Court

"Because this court cannot exercise personal jurisdiction over [Foodwit] pursuant to Delaware's long-arm statute," it need not consider Foodwit's "constitutional right to due

process." *Yankees*, 634 F. Supp. 3d at 211.  Should the Court reach the Constitution, however, it too would require dismissal or transfer of this action.  The Constitution's "'primary concern' is 'the burden on the defendant.'"  *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 263 (2017) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'"  *Bristol-Myers Squibb*, 582 U.S. at 264 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (alteration in original).  This "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original).  And it must be based on the defendant's "own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475).  ESHA's allegations do not meet this standard; they do not come close. Should the Court confront the Constitution, it too would require dismissal or transfer.

## B.    No Events Occurred in Delaware, Barring Venue Under § 1391(b)(2)

The venue statute allows cases to proceed in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  ESHA makes no allegations regarding property in Delaware, *see* D.I. 1, nor could it.  Thus, to provide venue, "[t]he events or omissions giving rise to a claim must be 'substantial' and events and omissions which only bear 'some tangential connection with the dispute in litigation are not enough.'"  *Hooli v. Mitcham*, No. 21-702, 2022 WL 611250, at *2 (D. Del. Jan. 31, 2022) (quoting *Cottman Transmission Sys.,*

*Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *see, e.g., Chen v. Sagrera*, No. 16-385, 2017 WL 4001568, at *5 (D. Del. Sept. 11, 2017). ESHA's allegations do not clear this bar or even approach it. And the Constitution does not allow jurisdiction here. *See supra* § II.A.2.v.

> **C.    Foodwit Resides in Oregon, Barring Venue Under § 1391(b)(3)**

Finally, the venue statute allows cases to proceed in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," but only "if there is no district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(b)(3). The Constitution does not allow personal jurisdiction over Foodwit here, *see supra* § II.A.2.v, but the Court need not reach this question, as Foodwit is an Oregon corporation (D.I. 1 ¶ 9; Holmes Decl. ¶ 3), making the District of Oregon a "district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(b)(3); *see, e.g., Locs. 302 & 612 of Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v. Ross Island Sand & Gravel Co.*, No. 23-1060, 2024 WL 139864, at *2 (D. Or. Jan. 12, 2024). ESHA could and should have sued Foodwit in Oregon, precluding § 1391(b)(3) venue here.

> **D.    The Court Has Discretion to Transfer This Action to the District of Oregon**

When an action falls outside "the three categories set forth in § 1391(b)," this Court's "venue is improper, and the case must be dismissed or transferred under 28 U.S.C. § 1406(a)." *Labreck*, 2018 WL 6427717, at *2 (citing *Atl. Marine*, 571 U.S. at 55). Whether to dismiss or transfer is in this Court's discretion, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995), and "transfer under § 1406(a) is appropriate even where the court in which the case was filed lacked personal jurisdiction over the defendants." *Chen*, 2017 WL 4001568, at *6 (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466-67 (1962)). "[T]ransfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." *Chen*,

2017 WL 4001568, at *6 (quoting *Goldlawr,* 369 U.S. at 466).  ESHA could have brought this action in Oregon, where Foodwit resides, *supra* § II.C; should the Court transfer there, Foodwit would contest ESHA's allegations before the proper Court.

## III.     The Court Should Also Transfer This Action to Oregon Under 28 U.S.C. § 1404(a)

Should the Court find it has jurisdiction and venue over this action, it should nevertheless transfer it to the District of Oregon under 28 U.S.C. § 1404(a).  Oregon is where both parties reside, and the District of Oregon is already familiar with allegations in this case.

### A.     ESHA Could Have Brought This Case in the District of Oregon

"A court considering a motion to transfer must first determine 'whether the case could have been brought in the district to which the movant wishes to transfer.'" *Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*, No. 23-1250, 2024 WL 3925117, at *1 (D. Del. Aug. 23, 2024) (quoting *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022)).  That is so here.  Foodwit is an Oregon corporation, and so ESHA could have brought this case in the District of Oregon.  *Supra* § II.C.

### B.     The *Jumara* Factors Strongly Favor Transfer

Once the Court finds a transferee district, it "must then determine whether the non-exhaustive list of public and private interest factors set forth in *Jumara* favors transfer." *Pacira*, 2024 WL 3925117, at *1 (citing *Cisco*, 2022 WL 16921988, at *3-4.  "To prevail, the movant must show that 'the balance of convenience of the parties is strongly in favor' of transfer." *Pacira*, 2024 WL 3925117, at *1 (quoting *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 21-1403, 2022 WL 1063845, at *2 (D. Del. Apr. 8, 2022)).  Foodwit can do so here.

Plaintiff's Forum Preference.  This factor opposes transfer, to an extent.  "Here, Plaintiff's choice to sue in Delaware weighs strongly in Plaintiff's favor, though not as strongly as it would

if Plaintiff had its principal place of business in Delaware." *Pacira*, 2024 WL 3925117, at *2 (citing *Signal Tech, LLC v. Analog Devices, Inc.*, No. 11-1073, 2012 WL 1134723, at *2 (D. Del. Apr. 3, 2012)). Like the plaintiff in *Pacira*, ESHA "maintains its principal place of business" out-of-state, and "does not have offices in Delaware." 2024 WL 3925117, at *2. When evaluating the *Jumara* factors, "plaintiff's choice of forum not as compelling if it is not plaintiff's 'home turf.'" *Semcon Tech, LLC v. Intel Corp.,* No. 12-531, 2013 WL 126421, at *2 (D. Del. Jan. 8, 2013) (quoting *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986)). "Accordingly, Plaintiff's choice will be given paramount consideration, but it will not carry the same weight in the balancing of factors as would a similar decision by a plaintiff with a principal place of business in Delaware." *Pacira*, 2024 WL 3925117, at *3.

> <u>Defendant's Forum Preference</u>. This factor favors transfer. Foodwit prefers to litigate in Oregon, where it resides. Courts consider whether the transferee district is the "Defendant's home turf," which is "undoubtedly the most convenient venue for Defendant." *NXP USA, Inc. v. IMPINJ, Inc.*, No. 19-1875, 2020 WL 5665257, at *2 (D. Del. Sept. 23, 2020). When it is, "Defendant's choice has a legitimate basis, and therefore this factor weighs in favor of transfer." *Id.*; *see, e.g., Pourbabai v. Duff,* No. 21-92, 2022 WL 610705, at *1 (D. Del. Jan. 21, 2022) (granting transfer where "Defendant resides in Virginia, his law practice is located there where presumably he has records of the matter of which Plaintiff complains"). So too here.

> <u>Where the Claim Arose</u>. This factor favors transfer. ESHA alleges that Foodwit stole its "proprietary, confidential, and trade secret software system and related database (collectively, the 'Trade Secrets'), developed through decades of investment in research and development." D.I. 1 ¶ 4. During those "decades of investment in research and development," ESHA was an Oregon corporation with its principal place of business in Oregon. The Oregon Secretary of State shows

registration records from January 19, 1981, through the present; Foodwit has also been an Oregon corporation since its founding.[3]  Although Foodwit stole nothing, ESHA alleges that Foodwit, an Oregon corporation, stole the intellectual property of another Oregon corporation, built up over years of work performed in Oregon.  This factor favors transfer.

 Convenience of the Parties.  "In assessing the convenience of the parties, the Court examines '(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.'"  *Express Mobile, Inc. v. Web.com Grp., Inc.,* No. 19-1936, 2020 WL 3971776, at *2 (D. Del. July 14, 2020) (quoting *Memory Integrity*, *LLC v. Intel Corp.*, No. 13-1804, 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015).  Foodwit and ESHA are both Oregon residents.  ESHA has greater resources through its parent company, and apparently plans to expend those resources on litigating here, far from its headquarters.  "It is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties."  *Pacira*, 2024 WL 3925117, at *3 (quoting *Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, No. 13-824, 2014 WL 4829027, at *4 (D. Del. Sept. 25, 2014)).  This factor favors transfer, which would reduce the burden on all parties.

 Convenience of the Witnesses.  This factor favors transfer.  "Under Third Circuit law, district courts consider the convenience of witnesses 'only to the extent that the witnesses may actually be unavailable for trial in one of the fora.'"  *Pacira*, 2024 WL 3925117, at *4 (quoting *Jumara*, 55 F.3d at 879).  "In addition, 'witnesses who are employed by a party carry no weight,'

---

[3] https://sos.oregon.gov/business/Pages/find.aspx; search "ESHA Research" and "RLH Assets."  The Court can take judicial notice of these records.  *See supra* at 8 n.2.

because 'each party is able, indeed, obligated to procure the attendance of its own employees for trial.'" *Pacira*, 2024 WL 3925117, at *4 (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998)). This case "is not like a car accident, where the fact witnesses—or likely trial witnesses—can be identified from day one." *IpVenture, Inc. v. Acer, Inc.*, 879 F. Supp. 2d 426, 435 (D. Del. 2012). Since both Foodwit and ESHA have been Oregon corporations for their entire histories, *see supra* § A, and considering only former employees whom the parties cannot require to attend trial, "there is a statistically greater likelihood that such witnesses would be within the subpoena power of the [District of Oregon] than within the subpoena power of the District of Delaware." *IpVenture*, 879 F. Supp. 2d 426 at 436. This factor favors transfer.

    <u>Location of Books and Records</u>. "Although it may not be difficult to produce relevant records in Delaware in light of modern technology, this factor cannot be ignored." *Pacira*, 2024 WL 3925117, at *4. Since both Foodwit and ESHA have been Oregon corporations for their entire histories, *see supra* § A, their records will be in Oregon, including records regarding ESHA's development of Genesis and any alleged trade secrets. This factor favors transfer.

    <u>Enforceability of a Judgment</u>. This factor favors transfer. Foodwit resides in Oregon, "and plaintiff seeks injunctive relief that will restrain [its] activities there." *Perma-liner Indus., LLC v. D'hulster*, No. 20-409, 2021 WL 951185, at *4 (D. Del. Mar. 12, 2021) (citing *N. Am. Rescue Prods. Inc. v. Bound Tree Med.*, No. 07-2936, 2008 WL 304881, at *2 (D.S.C. Jan. 31, 2008)). The District of Oregon "would be 'closer to the action' and, therefore, 'the better forum to enforce and monitor any injunctive relief awarded.'" *Perma-liner*, 2021 WL 951185, at *4 (quoting *Law Bulletin Pub., Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1021 (N.D. Ill. 1998)).

    <u>Practical Considerations</u>. This factor favors transfer for at least three reasons. First, with an Oregon plaintiff and an Oregon defendant, "[p]ractical considerations that would make the

– 17 –

trial easy or inexpensive favor [Oregon] as a venue.  There is a big difference in terms of time away from work and family and increased expense, in going to trial in Delaware, a state with which the witnesses lack familiarity, on the other side of the country." *Mannie & Catherine Jackson Descendant Tr. v. Rizzo*, No. 15-659, 2015 WL 6449149, at *2 (D. Del. Oct. 26, 2015).

Second, the District of Oregon is familiar with ESHA and its claims from its supervision of the Cronometer litigation.  *See supra* § C; *Semcon Tech,* 2013 WL 126421, at *4 (a court's "familiarity" with facts or issues of a matter is a "legitimate concern to factor into the analysis").

Third, Foodwit alleges that ESHA's case against Cronometer forms part of its Sherman Act claim; it makes no sense for two Courts to consider the two cases.  And doing so would allow for inconsistent rulings on the same issues.  The District of Oregon has already ruled on ESHA's ability to claim, as a trade secret, "the data contained in Trustwell's master food and nutrition database."  *See supra* § C.  Here, ESHA alleges that Foodwit improperly "exported a substantial volume of proprietary data from Genesis Foods" (D.I. 1 ¶ 24), all but guaranteeing that the same issue will arise in this action.  The District of Oregon has already considered and ruled on ESHA's asserted trade secrets and how it can assert them; there is no reason for this Court to waste its time reinventing the wheel.  To the contrary, "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).  The Court should prevent that situation here.

Court Congestion.  This factor favors transfer.  "Court congestion in the District of Delaware is among the worst in the country."  *Camcara, Inc. v. Air Prods. & Chemicals, Inc.*, No. 20-1271, 2021 WL 5428884, at *1 (D. Del. May 4, 2021).  According to the most recent Civil Justice Reform Act reports, this Court's five District Judges average 20.4 motions pending over

six months, while the District of Oregon's ten District Judges average just 5.5 such motions. *See* https://www.uscourts.gov/sites/default/files/2025-01/cjra_8_0930.2024.pdf; *NXP*, 2020 WL 5665257, at \*4.  Similarly, this Court averages 25 three-year-old cases per District Judge, while Oregon averages only 6.1 three-year-old cases per District Judge.  *See* https://www.uscourts.gov/sites/default/files/2025-01/cjra_7_0930.2024.pdf; *NXP*, 2020 WL 5665257, at \*4.  Considering Congressional action on additional judgeships as a proxy for congestion, the Senate recently passed the JUDGES Act of 2024, S.4199, which established one additional judgeship for this District but none for the District of Oregon.  *See id.* § 3(a)(1)(A)(iv); *see NXP*, 2020 WL 5665257, at \*4.  The Court should not stretch its jurisdiction to hear this case when the District of Oregon has more available resources and is much closer to the action.

Local Interest.  Courts have long recognized a "a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).  Although first recognized in the common law of *forum non conveniens*, *see id.*, courts continue to apply this concept following enactment of § 1404, including through this *Jumara* factor.  Oregon has a strong local interest in resolving a dispute between two Oregon corporations.  *See, e.g.*, *Jackson*, 2015 WL 6449149, at \*2 ("I think it is fair to consider that this dispute has some element of a 'local controversy,' given that it concerns a dispute between Arizonan individuals about the management and actions of an Arizonan–based business").  This factor favors transfer.

Public Policy.  "'Oregon has a substantial interest in adjudicating disputes involving Oregon residents.'" *Alterra Am. Ins. Co. v. James W. Fowler Co.*, 347 F. Supp. 3d 604, 611 (D. Or. 2018) (quoting *Exp. Global Metals, Inc. v. Memking Recycling Group, LLC*, No. 13-747, 2013 WL 5781212, at \*6 (D. Or. Sept. 26, 2016)).  Delaware has no great interest in a case between two Oregon residents.  *Signal*, 2012 WL 1134723, at \*4.  This factor favors transfer.

– 19 –

<u>Familiarity With Applicable State Law</u>.  This factor is neutral.  "This is not a diversity case, and thus knowledge of state law is irrelevant here."  *Semcon Tech*, 2013 WL 126421, at *4. Here, ESHA filed two tag-along claims under Delaware trade secret and unfair competition law; against Cronometer, it filed similar tag-along claims under Oregon law.  *Compare* D.I. 1 ¶¶ 52-67 *with ESHA v. Cronometer*, D.I. 1 at ¶¶ 52-67.  Once this case is in the correct Court, Foodwit will explain that ESHA cannot maintain Delaware state-law claims for the same reason that it cannot maintain venue in this court:  the case has no connection to Delaware.  *See supra* § II.

## C.    The Court Should Transfer This Action to the District of Oregon

Ten factors favor transfer; one is neutral; the plaintiff's choice of forum alone opposes transfer.  "While this is an important consideration, it must give way in consideration of the other relevant factors."  *Jackson*, 2015 WL 6449149, at *2.  "[T]he balance of convenience of the parties is strongly in favor of transfer."  *Pacira*, 2024 WL 3925117, at *1.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should dismiss this action, or transfer it to the District of Oregon to join the other litigation regarding ESHA.

<table>
<tr><td></td><td>/s/ Nathan R. Hoeschen</td></tr>
</table>

|  |  |
|---|---|
|  | */s/ Nathan R. Hoeschen* |
|  | Karen E. Keller (No. 4489) |
| OF COUNSEL: | Nathan R. Hoeschen (No. 6232) |
| Matthew S. Warren | SHAW KELLER LLP |
| Erika H. Warren | I.M. Pei Building |
| Shaida Shahinfar | 1105 North Market Street, 12th Floor |
| WARREN KASH WARREN LLP | Wilmington, DE 19801 |
| 2261 Market Street, No. 606 | (302) 298-0700 |
| San Francisco, CA, 94114 | kkeller@shawkeller.com |
| (415) 895-2940 | nhoeschen@shawkeller.com |
|  | *Attorney for Defendant RLH Assets, LLC* |
| Dated: April 22, 2025 | *d/b/a Foodwit* |