IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESHA RESEARCH, LLC, now known as TRUSTWELL,<br><br>    Plaintiff,<br><br>v.<br><br>RLH ASSETS, LLC d/b/a FOODWIT; and DOES 1-20,<br><br>    Defendants. | Case No. 1:25-cv-00206-RGA<br><br>JURY TRIAL DEMANDED |

**DECLARATION OF BECKI HOLMES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR TRANSFER
UNDER 28 U.S.C. § 1406 OR TO TRANSFER UNDER 28 U.S.C. § 1404**

I, Becki Holmes, declare under 28 U.S.C. § 1746:

1. I am the founder and principal of RLH Assets, LLC ("Foodwit"). I have personal knowledge of the matters set forth herein and, if called as a witness, could and would testify competently thereto.

2. I write this motion in support of Foodwit's motion to dismiss or transfer this action to the District of Oregon.

3. Foodwit is a limited liability company organized and existing under the laws of the State of Oregon, with its principal place of business in Portland, Oregon.

4. On May 4, 2016, I filled out ESHA's online quote request form. Later that same day, Benjamin Miller of ESHA emailed me to offer various subscription options, including a Consultant License, explaining that:

> The ESHA Consulting License provides full access to all Genesis R&D Food modules, on an annual subscription basis. Package includes ESHA Port utility, priority support, and updates. The annual cost is $3,499. In addition, our Genesis consultant has the

– 1 –

option to be exclusive Genesis software resellers.  As a reseller, you can sell Genesis to customers at standard rates and receive a 30% reimbursement for each software sale.  This program lets you have everything ESHA Genesis offers at a discounted rate to assist in building your business with ESHA's 30 plus years of expertise as a leader in nutrition labeling and formulation software as your partner.

Attached as Exhibit 1 is a true copy of that email and its attachments.

5.     Mr. Miller and I continued to discuss by telephone the terms on which Foodwit might subscribe to Genesis.  On May 9, 2016, Mr. Miller sent me an email including a "Commercial Software License for companies and consultants," which incorporated the "Standard ESHA Software EULA," and a copy of that "End User License Agreement."  Attached as Exhibit 2 is a true copy of that email and its attachments.

6.     Paragraph 20 of the End User License Agreement, entitled "Governing Law," stated that "This Agreement shall be governed by and construed in accordance with the laws of the state of Oregon without regard to, or application of, any conflict of law provisions."

7.     Paragraph 21 of the End User License Agreement, entitled "Jurisdiction, Venue," stated that "The parties agree that any suit, action or arbitration proceeding arising out of or relating to this Agreement shall be brought in Multnomah County, Oregon, and the parties expressly consent to the personal jurisdiction over them of any state or federal court in Multnomah County, Oregon."

8.     Paragraph 22 of the End User License Agreement, entitled "Attorneys' Fees," stated that "If either party to this Agreement breaches any term of this Agreement, then the other party shall be entitled to recover all expenses of whatever form or nature, costs and attorneys fees reasonably incurred to enforce the terms of the Agreement, whether or not suit is filed, including such costs or fees as may be awarded in arbitration or by a court at trial or on appeal."

9. Paragraph 25 of the End User License Agreement, entitled "Amendments," stated that "This Agreement may be amended or modified only by a written instrument executed by the parties which expressly states the intent of the parties to modify or amend this Agreement."

10. On August 14, 2017, I again filled out ESHA's quote request form. The following day, August 15, 2017, Mr. Miller again emailed me in response. This time, remembering our previous conversation, Mr. Miller stated:

> The ESHA Consulting License provides full access to all Genesis R&D Food modules, on an annual subscription basis. Package includes ESHA Port utility, priority support, and updates. Attached is pricing information. In addition, our Genesis consultant has the option to be exclusive Genesis software resellers. As a reseller, you can sell Genesis to customers at standard rates and receive a 30% reimbursement for each software sale. This program lets you have everything ESHA Genesis offers at a discounted rate to assist in building your business with ESHA's 30 plus years of expertise as a leader in nutrition labeling and formulation software as your partner.

Attached as Exhibit 3 is a true copy of this email and its attachments.

11. On August 30, 2017, I confirmed that Foodwit would like to proceed with a subscription to Genesis, and provided a completed form selecting the $3,499 base configuration. Attached as Exhibit 4 is a true copy of that email and its attachment.

12. Later that day, Mr. Miller responded that Foodwit must also fill out the "ESHA Cloud Registration Form," which he linked to http://www.esha.com/esha-cloud-registration/. Attached as Exhibit 5 is a true copy of that email. The page that Mr. Miller referenced is no longer available on the Internet but the Internet Archive maintains a copy at the URL https://web.archive.org/web/20170827011806/http://www.esha.com/esha-cloud-registration/. That registration page requires the user to check a box stating "I agree to the Terms of Service" before hitting "Submit." The page on the Internet Archive matches my recollection of the process Mr. Miller asked me to undertake. On the Internet Archive, the link to the "Terms of

Service" is no longer functional, but Foodwit previously downloaded the document linked there. Attached as Exhibit 6 is a true copy of that document. Foodwit executed the form, and I confirmed to Mr. Miller that we had done so. Attached as Exhibit 7 is a true copy of that email.

13. Paragraph 20 of the End User License Agreement, entitled "Governing Law," stated that "This Agreement shall be governed by and construed in accordance with the laws of the state of Oregon without regard to, or application of, any conflict of law provisions."

14. Paragraph 21 of the End User License Agreement, entitled "Jurisdiction, Venue," stated that "The parties agree that any suit, action or arbitration proceeding arising out of or relating to this Agreement shall be brought in Multnomah County, Oregon, and the parties expressly consent to the personal jurisdiction over them of any state or federal court in Multnomah County, Oregon."

15. Paragraph 22 of the End User License Agreement, entitled "Attorneys' Fees," stated that "If either party to this Agreement breaches any term of this Agreement, then the other party shall be entitled to recover all expenses of whatever form or nature, costs and attorneys fees reasonably incurred to enforce the terms of the Agreement, whether or not suit is filed, including such costs or fees as may be awarded in arbitration or by a court at trial or on appeal."

16. Paragraph 25 of the End User License Agreement, entitled "Amendments," stated that "This Agreement may be amended or modified only by a written instrument executed by the parties which expressly states the intent of the parties to modify or amend this Agreement."

17. On January 22, 2018, Foodwit requested a second Genesis license. I again completed the Cloud Registration Form and agreed on Foodwit's behalf to the same End User License Agreement.

18. On February 5, 2018, Foodwit requested a third Genesis license. I again completed the Cloud Registration Form and agreed on Foodwit's behalf to the same End User License Agreement.

19. Between 2018 and 2023, Foodwit received invoices and paid them, but never received or executed any documents referring to any contract terms.

20. On August 30, 2023, Foodwit executed its last renewal of Genesis.

21. The renewal invoice, Exhibit 8, referred to the "Trustwell Web Application Terms of Services and End User License Agreement ('Agreement')." But Trustwell did not transmit any new terms of service document with the renewal invoice. And the renewal invoice did not indicate it was modifying the previous terms and conditions.

22. Foodwit made its final payment to ESHA on January 15, 2024.

23. Sometime in 2022, The Riverside Company ("Riverside") acquired ESHA.

24. In 2023, ESHA embarked on a strategy of steep price increases.

25. Although Foodwit does not have nearly complete information on ESHA's price increases, on information and belief, we heard from other players in the industry that many of ESHA's new prices were between five and ten times higher than ESHA's old prices.

26. Foodwit saw a market opportunity to capitalize on the flaws in ESHA's Genesis product, combined with the price increases that alarmed many in the industry, to create a better product, which we called Workbench.

27. In response, and although Foodwit had done nothing wrong, ESHA threatened litigation.

28. As part of these threats, on September 17, 2024, ESHA sent a letter captioned "Final Attempt to Avoid Litigation" enclosing a draft complaint. A true copy of this letter and draft complaint is attached as Exhibit 9.

29. The draft complaint enclosed a document entitled "ESHA RESEARCH TERMS OF SERVICES AND END USER LICENSE AGREEMENT." Until I reviewed the draft complaint from September 2024, I had never seen this document before.

30. I noticed that this document included inline comments.

31. The first inline comment, authored by Stephen Bruce, states: "The indemnification for Licensee Data would include claims beyond IP infringement, for example data access claims for Personal Data." Viewed in Adobe Acrobat, and using the "Comment properties" feature of Adobe Acrobat, this comment has a date of February 1, 2024.

32. The second inline comment, also authored by Stephen Bruce, states: "Added to mutual warranties below." Viewed in Adobe Acrobat, and using the "Comment properties" feature of Adobe Acrobat, this comment also has a date of February 1, 2024.

33. Stephen Bruce was ESHA's Chief Executive Officer in February 2024.

34. After receiving this document, I tried to determine whether ESHA had ever published a copy of this agreement anywhere online. I was not able to find any copy of this document anywhere online.

35. As recently as a few days before I signed this declaration, there was no way to find online a copy of the document ESHA sent in September 2024.

36. When I searched Google for the "Trustwell Web Application Terms of Services and End User License Agreement," the results looked like this:



37. When I clicked on the first link above, it took me to the URL: https://www.trustwell.com/wp-content/uploads/2025/01/ESHA-Cloud-Terms-and-Conditions.pdf

38. I downloaded the file available at that URL. A true copy of that file is attached as Exhibit 10.

39. Exhibit 10 states in part: "Jurisdiction, Venue. The parties agree that any suit, action or arbitration proceeding arising out of or relating to this Agreement shall be brought in Multnomah County, Oregon, and the parties expressly consent to the personal jurisdiction over them of any state or federal court in Multnomah County, Oregon."

40. I was also interested to see if I could find any reference to the provisions in the complaint. So I searched Google for the phrase "consent to the exclusive jurisdiction of the courts of the state of Delaware." This phrase appears in ESHA's complaint in this action, and also appears in the draft document entitled "ESHA RESEARCH TERMS OF SERVICES AND END USER LICENSE AGREEMENT" with February 2024 comments from Stephen Bruce, that ESHA sent with a draft complaint in September 2024. But it does not appear in any of the agreements that Foodwit executed with ESHA.

41. When I searched for this phrase, restricting results to "esha.com," I got no hits. The results looked like this:



42. I tried again, this time restricting results to "trustwell.com," and again I got no hits. The results looked like this:



43. I next tried searching for a phrase that appears in the contracts Foodwit executed, "personal jurisdiction over them of any state or federal court in Multnomah" restricted first to esha.com and then to trustwell.com. Both requests yielded a single result: the file I already discussed above in Paragraphs 36-37.

44. Foodwit does not own any real property in Delaware.

45. Foodwit does not provide any insurance in Delaware.

46. Foodwit does not have any employees in Delaware, and has never employed anyone living in Delaware.

47. Foodwit does not have any offices in Delaware.

48. Foodwit has never sent an employee or agent to Delaware for any purpose, including for example to conduct any business.

49. Foodwit has not registered to do business in Delaware.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 22, 2025.

*Rebecca Holmes*
_____
Becki Holmes