P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice* pending)
Erika H. Warren (*pro hac vice* pending)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC
d/b/a Foodwit*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, LLC, an Oregon limited liability company, | Case No. 3:25-cv-00880-JR |
| Plaintiff, | **FOODWIT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | **REQUEST FOR ORAL ARGUMENT** |
| RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company, | |
| Defendant. | |

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

LOCAL RULE 7-1(A) CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    ESHA Sues Foodwit in the Wrong Court, Alleging a Contract That Does Not Exist . . . . 1

B.    Foodwit Files Suit in This Court and Moves to Dismiss in the District of Delaware . . . . 2

C.    ESHA Declines to Defend Its Non-Existent Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.    ESHA Files Its First Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    The Court Should Dismiss ESHA's Breach of Contract Claim . . . . . . . . . . . . . . . . . . . . 4

      A.    ESHA's First Amended Complaint Does Not Allege a Contract . . . . . . . . . . . . . 4

      B.    ESHA's First Amended Complaint Does Not Allege a Breach . . . . . . . . . . . . . . 7

II.   The Court Should Dismiss the FAC Under ESHA's Asserted Forum Selection Clause . . 9

III.  The Court Should Dismiss ESHA's Trade Secrets Claims . . . . . . . . . . . . . . . . . . . . . . . 11

IV.   The Court Should Dismiss ESHA's Lanham Act Claim . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    ESHA Makes Only Vague Allegations of Deception by Omission . . . . . . . . . . . 14

      B.    The Court Should Dismiss ESHA's Lanham Act Claim . . . . . . . . . . . . . . . . . . . 14

            1.    ESHA Cannot Plead its Lanham Act Claim on Information and Belief . .15

            2.    ESHA Cannot Allege Deception Under Supreme Court Precedent . . . . . 16

            3.    ESHA Fails to Plead a Lanham Act Claim . . . . . . . . . . . . . . . . . . . . . . . 19

                  i.    ESHA Fails to Allege an Actionable, False Statement of Fact . . .19

                  ii.   ESHA Fails to Allege Confusion . . . . . . . . . . . . . . . . . . . . . . . . 20

                  iii.  ESHA Fails to Allege Material Deception . . . . . . . . . . . . . . . . . 21

                  iv.   ESHA Fails to Plead Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**TABLE OF CONTENTS**
*(continued)*

*Page*

V.     The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim . . . . . . . . . . . 22

     A.     Oregon Law Bars ESHA's Claim Under Or. Rev. Stat. § 646.608(1)(u) . . . . . . . 22

     B.     The Court Should Dismiss ESHA's Claim Under the Oregon UTPA . . . . . . . . . 22

          1.     ESHA Fails to Allege an UTPA Violation . . . . . . . . . . . . . . . . . . . . . . . 24

          2.     ESHA Fails to Allege Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

          3.     ESHA Fails to Allege Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

          4.     ESHA Fails to Allege Willfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.     The Court Should Deny Leave to Further Amend the First Amended Complaint . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                    Page

*A.H. Lundberg Assocs., Inc. v. TSI, Inc.*,
    No. 14-1160, 2014 WL 5365514 (W.D. Wash. Oct. 21, 2014) . . . . . . . . . . . . . . . . . . . . .18

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

*Baden Sports, Inc. v. Molten USA, Inc.*,
    556 F.3d 1300 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Barnes v. Chase Home Fin., LLC*,
    825 F. Supp. 2d 1057 (D. Or. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Benko v. Quality Loan Serv. Corp.*,
    789 F.3d 1111 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*BioD, LLC v. Amnio Tech., LLC*,
    No. 13-1670, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014). . . . . . . . . . . . . . . . . . . . . .28-29

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
    No. 15-1370, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) . . . . . . . . . . . . . . . . . . . . . . 13

*Bowen v. Adidas Am., Inc.*,
    416 F. Supp. 3d 574 (D.S.C. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Burtness v. Legacy Health*,
    No. 24-1256, 2024 WL 5168364 (D. Or. Dec. 18, 2024) . . . . . . . . . . . . . 4, 21-22, 26-27

*Butters v. Travelers Indemnity Co.*,
    No. 22-726, 2023 WL 2988763 (D. Or. Jan. 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Bykov v. Rosen*,
    703 F. App'x 484 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Caterpillar Fin. Servs. Corp.*,
    No. 22-23002, 2023 WL 4540436 (S.D. Fl. July 14, 2023) . . . . . . . . . . . . . . . . . . . . . 8-9

**<u>TABLE OF AUTHORITIES</u>**

*(continued)*

*Cases*                                                                    Page

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19-20

*CollegeNet, Inc. v. Embark.Com, Inc.*,
    230 F. Supp. 2d 1167 (D. Or. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19-20

*Colquitt v. Mfrs. & Traders Tr. Co.*,
    144 F. Supp. 3d 1219 (D. Or. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-26

*Columbia Sportswear Co. v. Ferreira*,
    No. 23-594, 2025 WL 1520299 (D. Or. May 28, 2025) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19-20

*Ctr. for Biological Diversity v. United States Forest Serv.*,
    80 F.4th 943 (9th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-21

*DCD Programs, LTD. v. Leighton*,
    833 F.2d 183 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*DeRubeis v. Witten Techs., Inc.*,
    244 F.R.D. 676 (N.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*DropzoneMS, LLC v. Cockayne*,
    No. 16-2348, 2019 WL 7630788 (D. Or. Sept. 12, 2019) . . . . . . . . . . . . . . . . . . . . . . . 11

*Engage BDR v. GoDaddy*,
    No. 21-2014, 2021 WL 8820555 (C.D. Cal. Sept. 23, 2021) . . . . . . . . . . . . . . . . . . . . . .5

*Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*,
    681 F. Supp. 2d 694 (S.D.W. Va. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Fauley v. Washington Mut. Bank FA*,
    No. 13-581, 2014 WL 1317852 (D. Or. Mar. 21, 2014). . . . . . . . . . . . . . . . . . . . . . . . 26

**TABLE OF AUTHORITIES**

*(continued)*

*Cases*                                                                    *Page*

*Fleshman v. Wells Fargo Bank,*
  27 F. Supp. 3d 1127 (D. Or. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23, 26-27

*FSP Stallion 1 v. Luce,*
  No. 08-1155, 2009 WL 10693631 (D. Nev. Oct. 29, 2009) . . . . . . . . . . . . . . . . . . . . . 5-6

*Gaede v. Delay,*
  No. 22-380, 2023 WL 2305939 (D. Or. Mar. 1, 2023),
  *aff'd in relevant part*, No. 23-35217, 2024 WL 957490 (9th Cir. Mar. 6, 2024),
  *cert. denied*, 145 S. Ct. 156 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gallagher v. Capella Educ. Co.,*
  No. 19-1342, 2019 WL 8333532 (D. Or. Dec. 23, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gasland Petrol., Inc. v. Firestream Worldwide, Inc.,*
  No. 14-597, 2015 WL 2074501 (N.D.N.Y. May 4, 2015) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Genasys Inc. v. Vector Acoustics, LLC,*
  638 F. Supp. 3d 1135 (S.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Gregg v. Univ. of Portland,*
  No. 22-1680, 2023 WL 11832321 (D. Or. Mar. 16, 2023) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Harbour v. Farquhar,*
  245 F. App'x 582 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Horton v. Nelson,*
  288 P.3d 967 (Or. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Huskey v. Oregon Dep't of Corr.,*
  564 P.3d 142 (Or. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*IntelliCAD Tech, Consortium v. Suzhou Gstarsoft Co.,*
  465 F. Supp. 3d 1130 (D. Or. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ivie v. Mission Rock Res. LLC,*
  No. 21-1122, 2022 WL 2612215 (D. Or. May 27, 2022). . . . . . . . . . . . . . . . . . . . . . . . 23

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Kearney v. Equilon Enters., LLC,*
  65 F. Supp. 3d 1033 (D. Or. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24, 26-27

# TABLE OF AUTHORITIES

*(continued)*

*Cases*                                                                                    Page

*Knisely v. Nat'l Better Living Ass'n, Inc.*,
    No. 14-15, 2014 WL 4084517 (N.D.W. Va. Aug. 19, 2014) ... . . . . . . . . . . . . . . . . . . . . 8

*Knit Pearl, LLC v. Shibui, LLC*,
    No. 5-845, 2006 WL 8458984 (D. Or. Oct. 17, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Kuklok v. U.S. Dep't of Veterans Affairs*,
    No. 21-15105, 2022 WL 256361 (9th Cir. Jan. 26, 2022) . . . . . . . . . . . . . . . . . . . . . . . 27

*Langan v. United Servs. Auto. Ass'n*,
    69 F. Supp. 3d (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Latham v. PWCC Marketplace, LLC*,
    No. 21-1381, 2022 WL 226807 (D. Or. Jan. 25, 2022). . . . . . . . . . . . . . . . . . . . . . . 23-24

*Leighton v. Three Rivers School Dist.*,
    No. 12-1275, 2014 WL 6063638 (D. Or. Nov. 12, 2014). . . . . . . . . . . . . . . . . . . . . 27-28

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
    729 F. App'x 528 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 63 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Longo v. FlightSafety Int'l, Inc.*,
    1 F. Supp. 3d 63 (E.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Mendoza v. Lithia Motors, Inc.*,
    No. 16-1264, 2018 WL 1513650 (D. Or. Mar. 27, 2018) . . . . . . . . . . . . . . . . . . . . 24-25

*Meredith Lodging LLC v. Vacasa LLC*,
    No. 21-326, 2021 WL 5316986 (D. Or. Nov. 15, 2021) . . . . . . . . . . . . . . . . . . . . . . . .15

*MGA Ent., Inc. v. Dynacraft BSC, Inc.*,
    No. 17–8222, 2018 WL 2448123 (C.D. Cal. May 30, 2018) . . . . . . . . . . . . . . . . . . . . 21

*Navigation Holdings, LLC v. Molavi*,
    445 F. Supp. 3d 69 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16, 24, 26-27

## TABLE OF AUTHORITIES

*(continued)*

*Cases*                                                                                    *Page*

*Newcal Indus., Inc. v. Ikon Office Sol.*,
  513 F.3d 1038 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Nutrition Dist., LLC v. New Health Ventures, LLC*,
  No. 16-2338, 2017 WL 2547307 (S.D. Cal. June 13, 2017) . . . . . . . . . . . . . . . . . . . . . 16

*OptoLum, Inc. v. Cree, Inc.*,
  244 F. Supp. 3d 1005 (D. Ariz. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Oracle Int'l Corp. v. Rimini St., Inc.*,
  123 F.4th 986 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Otterness v. City of Waldport*,
  883 P.2d 228 (Or. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pac. Off. Automation, Inc. v. Tracy*,
  No. 17-1484, 2018 WL 847245 (D. Or. Feb. 10, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Race Winning Brands, Inc. v. Gearhart*,
  No. 22-1446, 2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) . . . . . . . . . . . . . . . . . . . . . 13

*Rathgeber v. James Hemenway, Inc.*,
  69 P.3d 710 (Or. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Regal v. Butler & Hosch, P.A.*,
  No. 15-61081, 2015 WL 11198248 (S.D. Fla. Oct. 8, 2015) . . . . . . . . . . . . . . . . . . . . . 9

*Register.Com, Inc. v. Domain Registry of Am., Inc.*,
  No. 02-6915, 2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002) . . . . . . . . . . . . . . . . . . . . 16

*Renaissance Recovery Sols., LLC v. Monroe Guar. Ins. Co.*,
  No. 14-102, 2017 WL 4018861 (S.D. Ga. Sept. 12, 2017) . . . . . . . . . . . . . . . . . . . . . . 7

*Rice v. McAlister*,
  519 P.2d 1263 (Or. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Salu v. Multnomah Cty.*,
  No. 21-1387, 2023 WL 6239088 (D. Or. Sept. 26, 2023). . . . . . . . . . . . . . . . . . . . . . . 27

*SKEDKO, Inc. v. ARC Prods., LLC*,
  No. 13-696, 2014 WL 585379 (D. Or. Feb. 13, 2014). . . . . . . . . . . . . . . . . . . . . . 15-16, 20

## TABLE OF AUTHORITIES

*(continued)*

| Cases | Page |
|---|---|

*Skydive Arizona, Inc. v. Quattrocchi,*
    673 F.3d 1105 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Stahl L. Firm v. Judicate W.,*
    No. 13-1668, 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013). . . . . . . . . . . . . . . . . . .21-22

*Sun Hong Foods, Inc. v. Future Best Trading Inc.,*
    No. 23-5835, 2023 WL 11197084 (C.D. Cal. Sept. 29, 2023) . . . . . . . . . . . . . . . . . . . .13

*Swango v. Nationstar Sub1, LLC,*
    292 F. Supp. 3d 1134 (D. Or. 2018). . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . 22

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sybersound Recs., Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Synopsys, Inc. v. ATopTech, Inc.,*
    No. 13-2965, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) . . . . . . . . . . . . . . . . . . . .12-13

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26-27

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
    758 F.3d 1069 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19-21

*Yei A. Sun v. Advanced China Healthcare, Inc.,*
    901 F.3d 1081 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 10

### Statutes

15 U.S.C. § 1125(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18-19

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**
*(continued)*

*Statutes*                            *Page*

Or. Rev. Stat. § 646.605(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

Or. Rev. Stat. § 646.608(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22, 24-25

Or. Rev. Stat. § 646.608(1)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22, 24-25

Or. Rev. Stat. § 646.608(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Or. Rev. Stat. § 646.608(1)(u) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Or. Rev. Stat. § 646.608(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Or. Rev. Stat. § 646.638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Other Authorities*

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 20 (D. Or. Mar. 18, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 22-1 (D. Or. Mar. 18, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 30 (D. Or. Mar. 28, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 31 (D. Or. Mar. 28, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 34 (D. Or. Apr. 10, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 36 (D. Or. Apr. 15, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 37 (D. Or. May 6, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 29

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
  No. 24-1586, Docket No. 39 (D. Or. May 8, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## **TABLE OF AUTHORITIES**

*(continued)*

*Other Authorities*                                                       *Page*

*RLH Assets, LLC v. ESHA Research, LLC*,
   No. 25-656, Docket No. 1 (D. Or. Apr. 1, 2025). . . . . . . . . . . . . . . . . . . . . . .2-3, 6-8, 12, 28-29

*RLH Assets, LLC v. ESHA Research, LLC*,
   No. 25-656, Docket No. 17 (D. Or. June 4, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*RLH Assets, LLC v. ESHA Research, LLC*,
   No. 25-656, Docket No. 20 (D. Or. June 20, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*McCarthy on Trademarks & Unfair Competition* § 27:13 (2002). . . . . . . . . . . . . . . . . . . . . . . .16

Wright & Miller, Federal Practice & Procedure § 1235 (4th ed.). . . . . . . . . . . . . . . . . . . . . . . . 5

## LOCAL RULE 7-1(A) CERTIFICATION

Before filing this motion, counsel for defendant conferred by telephone with counsel for plaintiff in an attempt to resolve this motion.  The parties were unable to reach agreement.

## INTRODUCTION

Since ESHA first contacted Foodwit with allegations of theft, Foodwit's response has never changed:  'we didn't steal anything from you, we know that we didn't, so if you think we did, tell us what you think we stole.'  ESHA has always refused to answer this question.  Now in litigation, ESHA continues to resist explaining what it claims Foodwit stole, how it claims Foodwit stole anything, or even what contract governs the dispute.  ESHA's decision to hide the ball has consequences, including that it has failed to state a claim on which this Court can grant relief.  ESHA's complaint claims breach of contract, but identifies neither a contract nor a breach. It claims theft of trade secrets but again identifies none, and has admitted elsewhere that much of the data in its product is public, despite saying the opposite in its complaint.  ESHA brings a Lanham Act claim that contradicts Supreme Court precedent.  Finally, ESHA brings an Oregon trade practices claim, but its allegations fail under Oregon law and the rules of this Court.

As Foodwit explained in its own complaint, ESHA's litigation is baseless, brought not for its truth but to force a smaller competitor to give up on competition.  ESHA has denied these allegations, but its complaint provides compelling evidence in their favor.  The Court should dismiss ESHA's first amended complaint and deny leave to further amend.

## BACKGROUND

**A.     ESHA Sues Foodwit in the Wrong Court, Alleging a Contract That Does Not Exist**

On February 20, 2025, ESHA filed its original complaint in the District of Delaware. Docket No. 1.  ESHA accused Foodwit of stealing ESHA's intellectual property, but solely "on

information and belief." *Id.* ¶¶ 2, 5, 24, 25, 27, 28, 30, 39, 43, 44, 55, 59, 60.  The original complaint alleged a contract between ESHA and Foodwit that selected Delaware law (*id.* ¶ 19), and restricted "any suit, action, or arbitration proceeding" to the "exclusive jurisdiction of the courts of the state of Delaware." *Id.* ¶ 11.  ESHA asserted five causes of action:  breach of contract, misappropriation of trade secrets under the Defend Trade Secrets Act, false advertising under the Lanham Act, misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act, and deceptive trade practices under the Delaware Deceptive Trade Practices Act. *See id.* ¶¶ 32-67; *see generally id.*  But the contract alleged by this complaint did not exist. Indeed, the alleged contract was not a contract between ESHA and anyone but a draft agreement, including telltale comments from ESHA's then-CEO, dated *after* ESHA alleged that Foodwit executed this contract.  *See* Docket No. 6 at 1-6; Docket No. 7-9 at 22-36.  ESHA's alleged contract did not appear anywhere else, even ESHA's own website.  *See* Docket No. 7 ¶¶ 29-43.

## B.     Foodwit Files Suit in This Court and Moves to Dismiss in the District of Delaware

Faced with ESHA's improper complaint alleging breach of a contract that did not exist, Foodwit responded on two fronts.  First, Foodwit moved to dismiss ESHA's claims, since Delaware had no connection to this case beyond the telltale draft that ESHA incorrectly claimed was a binding contract.  Docket Nos. 5-8.  Second, Foodwit filed its own action in this Court. *RLH Assets, LLC v. ESHA Research, LLC*, No. 25-656 (D. Or.) ("*Foodwit v. ESHA*").  There, among other things, Foodwit alleged that ESHA's complaint was "objectively and subjectively baseless," and that "no reasonable litigant would conclude that ESHA's substantive allegations in support of its claims, or its venue and jurisdiction allegations, are reasonably likely to result in a favorable outcome."  *Id.*, Docket No. 1 ¶ 190; *see id.* Count II, ¶¶ 190-94.  Foodwit further alleged that, by filing in Delaware, ESHA had breached a contractual requirement that "any suit,

action or arbitration proceeding arising out of or relating to this Agreement shall be brought in

Multnomah County, Oregon." *Id.* ¶ 218; *see id.* Count VI, ¶¶ 216-21.[1]

## C.    ESHA Declines to Defend Its Non-Existent Contract

Faced with Foodwit's motion to dismiss claiming that ESHA's asserted contract did not

exist, *see* Docket Nos. 5-8, ESHA abandoned its allegations, declining to defend its asserted

contract calling for resolution in Delaware.  Docket No. 12.  Cutting and running solved ESHA's

immediate problem of defending an indefensible claim, but ESHA's strategic decision had

consequences:  having eschewed any response to Foodwit's arguments that its alleged contract

did not exist, ESHA could not later argue that it did exist.  *See* Docket No. 13.

## D.    ESHA Files Its First Amended Complaint

The District of Delaware transferred this case to this Court.  Docket No. 14.  On May 27,

2025, ESHA filed the First Amended Complaint ("FAC").  Docket No. 18.  The FAC largely

repeated the allegations of ESHA's original complaint, and continued ESHA's practice of only

alleging theft "on information and belief."  *Compare* Docket No. 1 *with* FAC.[2]  Like the original

complaint, the FAC asserted breach of contract, misappropriation of trade secrets under the

Defend Trade Secrets Act, and false advertising under the Lanham Act.  FAC ¶¶ 32-51.  ESHA

removed from the FAC causes of action for misappropriation of trade secrets under the Delaware

Uniform Trade Secrets Act and deceptive trade practices under the Delaware Deceptive Trade

---

[1] On a motion to dismiss, a "court properly may take judicial notice of pleadings filed in other actions," *Barnes v. Chase Home Fin., LLC*, 825 F. Supp. 2d 1057, 1059 (D. Or. 2011), and need not "accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g.*, *Bykov v. Rosen*, 703 F. App'x 484, 486-87 (9th Cir. 2017) (affirming dismissal where district court took judicial notice of documents in state court that contradicted claim in complaint).

[2] For the Court's convenience, Foodwit has prepared a redline showing the differences between the two.  Declaration of Matthew S. Warren Ex. 1; *see id.* ¶ 2.

Practices Act, and inserted, using almost verbatim language, causes of action under the Oregon

Uniform Trade Secrets Act and the Oregon Unlawful Trade Practices Act.  FAC ¶¶ 52-67.

## ARGUMENT

### I.    The Court Should Dismiss ESHA's Breach of Contract Claim

Plaintiff's breach of contract allegations satisfy neither Oregon law nor the pleading

standard of this Court.[3]  In Oregon, "to state a claim for breach of contract, a plaintiff must, at a

minimum, plead facts with sufficient particularity as to allege the existence of a contract, its

relevant terms, and a breach by defendant that resulted in damage to plaintiff."  *Huskey v. Oregon*

*Dep't of Corr.*, 564 P.3d 142, 146 (Or. 2025).  In this Court, a "claim is plausible on its face when

the factual allegations allow the Court to infer the defendant's liability based on the alleged

conduct," and the "factual allegations must present more than 'the mere possibility of

misconduct.'"  *Burtness v. Legacy Health*, No. 24-1256, 2024 WL 5168364, at *1 (D. Or. Dec.

18, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The FAC satisfies neither.

### A.    ESHA's First Amended Complaint Does Not Allege a Contract

As ESHA drafted the FAC, it faced a problem:  a breach of contract claim requires a

contract, but ESHA could not allege any contract without harming its own claims.  On the one

hand, if ESHA repeated its allegations of a contract specifying a Delaware forum and law,

Foodwit would attack those allegations on the grounds that the asserted contract never existed,

and that ESHA had waived its ability to claim it did by failing to respond to Foodwit's previous

---

[3] Because ESHA has refused to specify the contract under which it alleges breach, it is not clear whether the Court should consider Oregon or Delaware law.  Foodwit has briefed only Oregon law, however, because if ESHA proceeds with an alleged contract selecting Delaware venue and law, this Court "must dismiss" the entirety of ESHA's complaint as improperly filed "'in a forum other than the one specified in a valid forum-selection clause.'"  *Yei A. Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081, 1091 (9th Cir. 2018) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 66 n.8 (2013)); *see infra* § II.

motion to dismiss.  *See* Docket Nos. 5-8, 13.  Even if ESHA fended off those attacks, its victory would be Pyrrhic, as it would have committed itself to a contract requiring resolution in Delaware, thus requiring dismissal in this Court.  *See supra* n.3.  On the other hand, if ESHA asserted a contract specifying Oregon forum and law, ESHA would admit the merit of at least Counts II and VI of Foodwit's complaint, which contend that ESHA's Delaware filing was objectively baseless and breached its contract requiring disputes in this District.  *See supra* § B.

Unable to navigate between Scylla on one side and Charybdis on the other, ESHA fudged.  The FAC notes a dispute over what contract is in force (*id.* ¶ 11), briefly claims that ESHA's claimed contract should govern (*id.*), but then proceeds to cite and quote from the contract "that Foodwit believes applies."  *Id.* ¶ 11 n.1; *see id.* ¶¶ 12, 15-19.  Adding confusion, ESHA's claim for breach of contract refers to a "License Agreement," a term the FAC never defines.  *Id.* ¶¶ 33-35.  Does "License Agreement" mean ESHA's claimed contract choosing Delaware venue and law?  Or the contract choosing Oregon for both?  There is no way to tell.

Because there is no way to tell which contract ESHA alleges that Foodwit breached, the Court must dismiss ESHA's claim for breach of contract.  To "plead a claim for breach of contract, Plaintiff must at least allege the material terms of a specific contract."  *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 980 (N.D. Cal. 2014); *see, e.g., Engage BDR v. GoDaddy*, No. 21-2014, 2021 WL 8820555, at *2 (C.D. Cal. Sept. 23, 2021) (granting motion to dismiss where "Plaintiffs do not identify which contract, let alone which specific terms of that contract, GoDaddy allegedly breached"); Wright & Miller, Federal Practice & Procedure § 1235 (4th ed.) (collecting cases holding that "a complaint in a contract action must allege the existence of a valid and binding contract").  *FSP Stallion 1 v. Luce*, No. 08-1155, 2009 WL 10693631 (D. Nev. Oct. 29, 2009), applied this rule on facts similar to those here.  Defendant Walters filed a

third-party complaint, which identified multiple contracts but failed to "identify which of the possible contracts is at issue." *Id.* at *8. The third-party defendants moved to dismiss, arguing that "Walters has not provided a sufficient factual basis about the alleged contract [third-party defendants] allegedly breached." *Id.* at *7. The Court agreed and dismissed the claims, finding that Walters "refuses to specify which contract or contracts [third-party defendants] allegedly breached or whether he was a party to the contract or contracts at issue." *Id.* at *8. The Court concluded that the third-party defendants "cannot reasonably respond if Walters is unwilling to specify which contract or contracts are the bases for his claims," among other things. *Id.* The same rule applies here, and the Court should dismiss ESHA's breach of contract claim. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020) ("Because Plaintiffs have failed to allege adequately the existence of a contract that was subject to breach, we affirm the district court's dismissal of their breach of contract claim.").

Doubtless aware that it must allege a specific contract, and trying to avoid the consequences of not doing so, ESHA claims in the FAC that "the substantive terms and conditions in both" contracts "are virtually identical, so there is no dispute as to the substantive terms and conditions that apply." FAC ¶ 11. This is wrong on several levels. First, contracts are not hand grenades; it does not matter if two contracts are "virtually identical" or even identical; ESHA must pick one to allege a breach of contract claim. *See supra.* Second, the FAC asserts that "Foodwit agreed that the substantive terms and conditions" in ESHA's claimed contract "are the same" as the terms Foodwit submitted to the Court. *Id.* This assertion is without citation, and for good reason: Foodwit never made any such 'agreement.' Foodwit has always believed that the contract ESHA asserted in the original complaint (and perhaps now asserts in the FAC?) never existed, and thus has no "substantive terms and conditions" at all. *See, e.g.,* Docket No. 6

at 1-5; *Foodwit v. ESHA,* Docket No. 1 ¶¶ 137-149.  Third, even if Foodwit agreed that ESHA's

asserted contract existed (it does not) and even if the two contracts were word-for-word identical

(they are not), the parties would still have a "dispute as to the substantive terms and conditions

that apply," because the two contracts choose different law, *compare* Docket No. 7-9 at 30 ¶ 22

*with* Docket No. 7-6 at 7 ¶ 20, their "interpretation must be governed by the state law which

governs," and their substance thus differs according to Oregon and Delaware law.  *Renaissance*

*Recovery Sols., LLC v. Monroe Guar. Ins. Co.*, No. 14-102, 2017 WL 4018861, at *11 (S.D. Ga.

Sept. 12, 2017).  Fourth, the two contracts are not word-for-word identical; they are not "virtually

identical" as ESHA claims; they are not anywhere close to that.  *Compare* Docket No. 7-9 at

22-36 *with* Docket No. 7-6.[4]  A cursory comparison puts paid to ESHA's claim that they are

"virtually identical," an assertion that is both incorrect and legally irrelevant.  The Court should

dismiss it, and then dismiss ESHA's breach of contract claim.

### B.    ESHA's First Amended Complaint Does Not Allege a Breach

ESHA faced another problem in drafting the FAC:  it did not have any breach of contract

to allege.  Although ESHA really brought this case because Foodwit became a competitor, *see*

*generally Foodwit v. ESHA*, ESHA did not want to say that out loud, and thus cast about for a

breach of contract claim.  When it could find no breach to allege, it tried to hide its failure by

diffusing its allegations across the FAC.  ESHA first alleges that "Workbench is based on and

derived from Genesis Foods" in a laundry list of ways, including because Workbench is a

"SaaS-based application," and because it allows a user to "Upload documents per recipes" and

generate a "Nutrient fact panel displayed with recipe formulation."  FAC ¶ 25.  But ESHA

carefully does not allege that any specific item in this laundry list constitutes a breach.  *See id.*

---

[4] For the Court's convenience, Foodwit has prepared a redline showing the differences
between the two.  Warren Decl. Ex. 2; *see id.* ¶ 3.

One can see why: if ESHA alleged that a contract prevented Foodwit from building any "SaaS-based application," or prevented Foodwit from building any application that allows a user to "Upload documents per recipes" and generate a "Nutrient fact panel displayed with recipe formulation," it would strengthen if not admit the truth of Foodwit's claim that ESHA is seeking "to maintain its monopoly position in the U.S. market for SaaS-based applications for packaged food-labeling compliance." *Foodwit v. ESHA*, Docket No. 1 ¶ 183. So, again, ESHA fudged: it alleges only that Foodwit has breached "[b]y using Genesis Foods and related information as described above, and by refusing to comply with Trustwell's demands." FAC ¶ 34. But ESHA does not specify what if any actions "described above" constitute a breach or how those actions breach a contract, and does not specify which of its "demands" have the force of contract, or how Foodwit's "refusing to comply" with those unspecified demands constitutes a breach.

This is insufficient. To state a claim for breach of contract, ESHA must "pinpoint an identifiable contractual promise that the defendant failed to honor." *Gregg v. Univ. of Portland*, No. 22-1680, 2023 WL 11832321, at *4 (D. Or. Mar. 16, 2023) (quoting *Gallagher v. Capella Educ. Co.*, No. 19-1342, 2019 WL 8333532, *5 (D. Or. Dec. 23, 2019)). To survive a motion to dismiss, "a complaint must allege 'the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages.'" *Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 14-15, 2014 WL 4084517, at *15 (N.D.W. Va. Aug. 19, 2014) (alteration in original) (quoting *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009)). ESHA has done neither; its FAC has the same failings as the complaint in *Caterpillar Fin. Servs. Corp. v. Venquip Machinery Sales Corp.*, No. 22-23002, 2023 WL 4540436 (S.D. Fl. July 14, 2023), which alleged that the defendant "materially breached its contractual obligations by, ***among other things***, failing to make [] required

payments." *Id.* at *3 (emphasis in original). The Court found that such "'ambiguous catchall allegations are insufficient' to allege a breach of contract." *Id.* (quoting *Regal v. Butler & Hosch, P.A.*, No. 15-61081, 2015 WL 11198248 at *5 (S.D. Fla. Oct. 8, 2015)). So too here. "The complaint leaves to utter speculation what it is that [Foodwit] did that constituted a breach of its duties." *Otterness v. City of Waldport*, 883 P.2d 228, 231 (Or. App. 1994). Although ESHA has claimed since August 2024 to know how Foodwit breached, it withheld that information from the complaint. The Court should dismiss the breach of contract claim.

## II.    The Court Should Dismiss the FAC Under ESHA's Asserted Forum Selection Clause

ESHA's original complaint, filed in the District of Delaware, claimed that the governing contract required resolution of disputes there. ESHA quoted in its original complaint:

> The parties agree that any suit, action, or arbitration proceeding arising out of or relating to this [License] Agreement shall be brought in and the parties expressly consent to the exclusive jurisdiction of the courts of the state of Delaware.

Docket No. 1 ¶ 11 (alteration in original). According to ESHA in the original complaint, this action is a "suit . . . arising out of or relating to this [License] Agreement" which must proceed under the "exclusive jurisdiction of the courts of the state of Delaware." *Id.* Foodwit did not challenge that interpretation, arguing instead that this contract did not exist. *See supra* §§ A, B. Although the FAC fails to allege a breach of any particular contract, *see supra* § I, it specifically notes that ESHA "believes a version of the EULA that provides for venue and jurisdiction in Delaware applies." FAC ¶ 11. The FAC then states that, out of the goodness of its heart, ESHA will waive its right to proceed in Delaware because litigation here "may actually be more efficient for both Parties," and because ESHA wants to "get to the merits of this action." *Id.*

ESHA's ostensible altruism masks a cold self-interest: ESHA does not want to renounce the non-existent contract "that provides for venue and jurisdiction in Delaware," FAC ¶ 11,

because doing so would strengthen Foodwit's claims in *Foodwit v. ESHA*. But ESHA also does

not want to litigate in Delaware, because it would have to defend its non-existent contract against

Foodwit's substantive and waiver arguments. So, once again, ESHA fudged, seeking to litigate

in Oregon while claiming a contract requiring resolution in Delaware. But in doing so ESHA

'altruistically' sought to waive not its own rights, but Foodwit's. If the contract "that provides

for venue and jurisdiction in Delaware applies," FAC ¶ 11, then Foodwit has a right to resolution

in Delaware, and Foodwit does not waive that right, which covers every cause of action in the

FAC. ESHA admitted as much in the original complaint, *see* Docket No. 1, and for good reason:

its quoted forum-selection clause covers any action "arising out of or relating to" its purported

agreement, the broadest version of language in forum selection clauses. *E.g., IntelliCAD Tech.*

*Consortium v. Suzhou Gstarsoft Co.*, 465 F. Supp. 3d 1130, 1138 (D. Or. 2020).

It does not matter that Foodwit disputes the existence of this contract: ESHA must follow

it, because a party "is not entitled to make claims based on" an agreement "while simultaneously

disclaiming the relevance of its other provisions." *Gasland Petrol., Inc. v. Firestream Worldwide,*

*Inc.*, No. 14-597, 2015 WL 2074501, at *5 (N.D.N.Y. May 4, 2015); *see, e.g., Longo v.*

*FlightSafety Int'l, Inc.*, 1 F. Supp. 3d 63, 71 (E.D.N.Y. 2014) (plaintiff cannot disclaim forum

selection clause where "Plaintiff herself brings a breach of contract claim against Defendants").

If ESHA asserts the contract "that provides for venue and jurisdiction in Delaware," FAC ¶ 11,

ESHA must follow the provisions of its alleged contract, and the Court "must dismiss" ESHA's

complaint as improperly filed "'in a forum other than the one specified in a valid forum-selection

clause,'" regardless of anything else. *Yei A. Sun*, 901 F.3d at 1091 (quoting *Atl. Marine*, 571 U.S.

at 66 n.8). For this reason alone, the Court can and should dismiss the FAC based on ESHA's

claim to a contract "that provides for venue and jurisdiction in Delaware." FAC ¶ 11.

Although the Court need not reach the specifics of ESHA's remaining claims, should it proceed to examine them, it will see that they fail on their own terms.

## III.    The Court Should Dismiss ESHA's Trade Secrets Claims

ESHA brings two trade secret claims, Count II under the Defend Trade Secrets Act and Count IV under the Oregon Uniform Trade Secrets Act.  "Because the DTSA and OUTSA are similar, many courts," including this one, "evaluate them together."  *Columbia Sportswear Co. v. Ferreira*, No. 23-594, 2025 WL 1520299, at *6 (D. Or. May 28, 2025) (citing *DropzoneMS, LLC v. Cockayne*, No. 16-2348, 2019 WL 7630788, at *9 (D. Or. Sept. 12, 2019)).  Both claims fail.

ESHA again structures the FAC to obfuscate the scope of its claims.  The FAC introduces ESHA's "Genesis Foods software system," but does not immediately claim any part of it is a trade secret.  *Id.* ¶ 3.  ESHA instead alleges that "Genesis Foods is backed by Trustwell's industry-leading food and ingredient database, which is embedded in the platform," and claims that "[t]he database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available."  *Id.* ¶ 4.  But in ESHA's case against Cronometer, ESHA had already admitted that it could not maintain this claim.  There, ESHA first claimed that the "trade secret information that [ESHA] alleges Cronometer misappropriated in this action is the data contained in [ESHA's] master food and nutrition database."  *ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-1586, Docket No. 22-1 (D. Or. Mar. 18, 2025); *see id.*, Docket No. 31 ¶ 3 (withdrawing any claim of confidentiality).  Under pressure, ESHA backed down and asserted only a compilation claim, withdrawing any claim over the data itself.  *See id.*, Docket No. 31 ¶ 6 (discussing compilation claim), Docket No. 37 (confirming assertion of only a compilation claim).  ESHA admitted in *Cronometer*, three weeks before filing the FAC, that it could not maintain the trade secrets claim

it makes in the FAC.  And, in *Foodwit v. ESHA*, ESHA admitted that "[s]ome of the entries in ESHA's food and nutrition database come from public sources," and "[s]ome of the entries in ESHA's food and nutrition database are identical to publicly available information such as information from the databases on the Food Data Central website, or from commercial food labels." *Id.*, Docket No. 1 ¶¶ 51, 52; *see id.*, Docket No. 17 ¶¶ 51, 52 (unqualified admissions).

Ignoring these admissions, ESHA defines its "Trade Secrets" as its "proprietary, confidential, and trade secret software system and related database."  FAC ¶ 4.  The words "proprietary, confidential, and trade secret" just mean "trade secret," so ESHA's definition of its "Trade Secrets" reduces to its "software system and related database."  *Id.*  And ESHA has already disclaimed its assertion regarding the "related database," *see supra*, leaving just the "software system."  FAC ¶ 4.  But *what* software system?  And what about that system is a trade secret?  By the time it defines (more or less) the term "Trade Secrets" in paragraph 4 of the FAC, ESHA has already alleged two versions of Genesis Foods, one dating to 1991 and the other, "the next generation of the system" launched in 2024.  FAC ¶ 3.  By "software system," does ESHA mean one of these, or the other, or both?  The FAC does not say, and it does not explain what parts of its "software system" constitute a trade secret.

That is not enough to state a claim.  "Materials are not trade secrets just because Plaintiff says they are:  there must be some minimally plausible factual explanation for why trade secret protection applies."  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-2965, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013).  "To allege a trade secret, a plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"  *Genasys Inc. v. Vector Acoustics*,

*LLC*, 638 F. Supp. 3d 1135, 1151 (S.D. Cal. 2022) (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020)).  A plaintiff's "'vague references to an enormous array of potential sources do not suffice to survive' a motion to dismiss when the court cannot 'determine where trade secret protection begins and ends as to any of this material.'"  *Id.* at 1152 (quoting *Synopsys*, 2013 WL 5770542, at *6).  ESHA makes just such "vague references" to the "software system and related database," FAC ¶ 4, provides no way for "the defendant to ascertain at least the boundaries within which the secret lies," and no "minimally plausible factual explanation" why any part of those sources is a trade secret.  *Genasys*, 638 F. Supp. 3d at 1151; *Synopsys*, 2013 WL 5770542, at *6.  Instead, ESHA relies on boilerplate.  *E.g.*, FAC ¶¶ 21-22, 40-46.  "These are conclusions of law disguised as factual pleadings, and they do not state claims under *Twombly* and *Iqbal*."  *Synopsys*, 2013 WL 5770542, at *6.

Courts dismiss complaints alleging trade secrets with more specificity than ESHA here. *See, e.g., Sun Hong Foods, Inc. v. Future Best Trading Inc.*, No. 23-5835, 2023 WL 11197084, at *2 (C.D. Cal. Sept. 29, 2023) ("'catchall' phrases and general categories of information are insufficient to properly identify Plaintiff's trade secrets"); *Race Winning Brands, Inc. v. Gearhart*, No. 22-1446, 2023 WL 4681539, at *5 (C.D. Cal. Apr. 21, 2023) (generic lists of categories of various types of information are insufficient to plead a trade secret claim); *Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 15-1370, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015).  In *Genasys*, plaintiff asserted trade secrets including "the Army Confidential Presentation Materials and additional Confidential Client Data, the Proposed Product Modifications, the Customer Network, and the Pricing Information."  638 F. Supp. 3d at 1151.  But the Court found that:

> Plaintiff fails to plead facts supporting its conclusory allegations that the identified
> sources of information constitute trade secrets.  Further, some of the information
> within the categories listed is publicly available, as Plaintiff itself acknowledges,

which, without more, fails to provide the Court with a roadmap to distill what
information may be a trade secret and what may not.

*Id.* at 1152.  The Court dismissed the trade secret claims.  *Id.*  ESHA's claims are less specific

than in *Genasys*, but have the same flaws.  For the same reasons, this Court should dismiss them.

## IV.    The Court Should Dismiss ESHA's Lanham Act Claim

### A.    ESHA Makes Only Vague Allegations of Deception by Omission

ESHA's Lanham Act allegations also fail to state a claim.  ESHA briefly lists alleged

"representations" by Foodwit about its Workbench product, including that it is "Engineered by

food and supplement industry veterans" and "Trusted by leading brands."  FAC ¶ 26.  ESHA

does not claim that any of these statements are untrue—and how could it?—but claims that

"Foodwit omits that it secretly leveraged Trustwell's Trade Secrets to design and build

Workbench."  *Id.* ¶ 27.  ESHA thus alleges that the statement "Trusted by leading brands" is

deceptive because, ESHA claims, Foodwit should have added:  '. . . but also, sorry, the product

includes trade secrets we stole from ESHA.'  *Id.* ¶¶ 26-27.  ESHA claims that Foodwit must add

this sorry-we-stole disclaimer to, apparently, pretty much anything it says about Workbench.  *See*

*id.*  The FAC then makes boilerplate claims that "Foodwit has made and continues to make false

and misleading statements," and "deceptively failed to disclose material information."  *Id.* ¶ 48.

### B.    The Court Should Dismiss ESHA's Lanham Act Claim

To advance past the pleadings, ESHA must allege "all five elements" of a false

advertising claim:

> (1) a false statement of fact by the defendant in a commercial advertisement about
> its own or another's product; (2) the statement actually deceived or has the tendency
> to deceive a substantial segment of its audience; (3) the deception is material, in that
> it is likely to influence the purchasing decision; (4) the defendant caused its false
> statement to enter interstate commerce; and (5) the plaintiff has been or is likely to

be injured as a result of the false statement, either by direct diversion of sales from
itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071-72 (9th Cir. 2014)

(quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).  "As this

claim sounds in fraud, Plaintiff must meet the heightened pleadings standards of rule 9(b)."

*Meredith Lodging LLC v. Vacasa LLC*, No. 21-326, 2021 WL 5316986, at *2 (D. Or. Nov. 15,

2021) (citing *SKEDKO, Inc. v. ARC Prods., LLC*, No. 13-696, 2014 WL 585379, at *3 (D. Or.

Feb. 13, 2014)).  "To satisfy Rule 9(b), 'a pleading must identify the who, what, when, where,

and how of the misconduct charged, as well as what is false or misleading about the purportedly

false statement, and why it is false.'"  *SKEDKO*, 2014 WL 585379, at *1 (quoting *Cafasso, U.S.

ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011)).  The FAC does

not clear this bar, and otherwise does not allege the elements of a Lanham Act claim.

### 1.    ESHA Cannot Plead its Lanham Act Claim on Information and Belief

ESHA's Lanham Act claim "sounds in fraud," so it "must meet the heightened pleadings

standards of rule 9(b)."  *Meredith*, 2021 WL 5316986, at *2; *see supra* § IV.B.  The claim

depends on Foodwit's alleged theft, FAC ¶ 48, and every allegation of that theft is on information

and belief.  *See supra* § A.  But "factual allegations based on 'information and belief' are

generally inappropriate under Rule 9(b) and insufficient to satisfy Rule 9(b)'s heightened

pleading standard."  *Bowen v. Adidas Am., Inc.*, 416 F. Supp. 3d 574, 578 (D.S.C. 2019).

Even for "matters within the opposing party's knowledge," under Rule 9(b) "a plaintiff

who makes allegations on information and belief must state the factual basis for the belief."

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  ESHA has not done so; it has not even

tried.  FAC ¶¶ 26-27, 48-49.  More importantly, that exception does not apply, as ESHA's

allegations do not concern matters uniquely within Foodwit's knowledge and Rule 9(b) thus applies with full force. *See Neubronner*, 6 F.3d at 672. ESHA claims that Foodwit should have disclosed its use of "Trustwell's Trade Secrets" (*e.g.*, FAC ¶¶ 36-46, 52-62), which ESHA claims to know (*e.g., id.* ¶¶ 4, 21). Thus Foodwit's alleged theft is not a "matter[] within the opposing party's knowledge," and the FAC cannot proceed on information and belief. *Neubronner*, 6 F.3d at 672. Instead, ESHA can make a Lanham Act claim only if it explains, with specificity, "what is false or misleading about the purportedly false statement, and why it is false.'" *SKEDKO*, 2014 WL 585379, at *1. It has failed to do so, and the Court should dismiss this claim.

### 2.    ESHA Cannot Allege Deception Under Supreme Court Precedent

A Lanham Act claim must allege "what is false or misleading about the purportedly false statement, and why it is false.'" *SKEDKO*, 2014 WL 585379, at *1. ESHA does not challenge any alleged statement directly; it claims only that Foodwit should have added the sorry-we-stole disclaimer, and that various statements are false because it did not. FAC ¶¶ 26-27. This cannot suffice. "As courts have routinely held, the Lanham Act does not impose an affirmative duty of disclosure." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 640 (S.D.N.Y. 2018). As a result, a mere "'failure to disclose facts is not actionable under [Lanham Act Section] 43(a),' unless the failure is relevant to an affirmative statement that is made false or misleading by its omission." *Register.Com, Inc. v. Domain Registry of Am., Inc.*, No. 02-6915, 2002 WL 31894625, at *14 (S.D.N.Y. Dec. 27, 2002) (quoting J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 27:13 (2002)). To survive a motion to dismiss, the FAC must explain "how Defendant's alleged omissions render affirmative statements misleading or untrue. *Nutrition Dist., LLC v. New Health Ventures, LLC*, No. 16-2338, 2017 WL 2547307, at *7 (S.D. Cal. June 13, 2017). The FAC does not clear this bar; it does not try.

But even if Foodwit's omission of the sorry-we-stole disclaimer somehow rendered its affirmative statements untrue, ESHA still could not plead a Lanham Act claim under Supreme Court precedent. ESHA alleges that Foodwit misrepresented material information "about the origin, development, and purportedly unique nature of Workbench, including its features and functionalities, which were built using Trustwell's stolen materials." FAC ¶ 48. But the Supreme Court excluded this kind of claim from the Lanham Act in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). There, Twentieth Century Fox produced a T.V. series about World War II called "Crusade in Europe." *Id.* at 25-26. After the copyright expired, Dastar purchased a copy of "Crusade in Europe," and used it to create "a video set entitled World War II Campaigns in Europe," that drew heavily from the "original Crusade television series." *Id.* at 26-27. "Dastar manufactured and sold the Campaigns video set as its own product," without crediting anyone involved with "Crusade." *Id.* at 27. Twentieth Century Fox brought a Lanham Act claim based on Dastar's "marketing and selling Campaigns as its own product without acknowledging its nearly wholesale reliance on the Crusade television series." *Id.* at 31.

The lower courts credited this claim, but not the Supreme Court, which found that "the phrase 'origin of goods' in the Lanham Act" refers "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. Thus, despite its "nearly wholesale reliance" on another's previous product, "Dastar was the 'origin' of the products it sold as its own," and Twentieth Century Fox and its affiliates "cannot prevail on their Lanham Act claim." *Id.* at 38. In *Sybersound Records, Inc. v. UAV Corp.*, the Court of Appeals explained that *Dastar* limited the Lanham Act to statements about the "characteristics of the good itself," rather than intellectual property claims about a good such as "licensing status." 517 F.3d 1137, 1144 (9th Cir. 2008). And the Federal Circuit,

applying Ninth Circuit law, found that "authorship, like licensing status, is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act." *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009).

Courts continue to enforce *Dastar* and its progeny against Lanham Act claims based on alleged intellectual property rights.  *See, e.g.*, *Harbour v. Farquhar*, 245 F. App'x 582, 582-83 (9th Cir. 2007) (no Lanham Act claim for alleged licensing of another's "digitalized musical compositions to various television and film producers and falsely representing that Farquhar had provided the musical services, composed the music, and produced the digital goods"); *Gaede v. Delay*, No. 22-380, 2023 WL 2305939, at *4 (D. Or. Mar. 1, 2023) (no Lanham Act claim where "defendants used the theories in plaintiffs' book to create different media that used synonyms or different words to explain plaintiffs' ideas"), *aff'd in relevant part*, No. 23-35217, 2024 WL 957490 (9th Cir. Mar. 6, 2024), *cert. denied*, 145 S. Ct. 156 (2024); *A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, No. 14-1160, 2014 WL 5365514, at *3 (W.D. Wash. Oct. 21, 2014) (no Lanham Act claim where "Lundberg alleges that TSI is selling products based on Lundberg's designs").

The FAC cannot survive *Dastar* and its progeny.  Just as in all these cases, ESHA's Lanham Act claim alleges only violations based on Foodwit's failure to include the sorry-we-stole disclaimer.  FAC ¶¶ 47-51; *see supra*.  Although ESHA includes the words "development, and purportedly unique nature of Workbench," those allegations too depend on the failure to say 'sorry we stole,' and thus ESHA's "claim that [Foodwit] misrepresented the nature, characteristics, qualities, and origin of its products by falsely claiming to have designed its system amounts to a claim for false designation of authorship and is barred under § 1125(a)(1)(B)."  *A.H. Lundberg*, 2014 WL 5365514, at *5.  The Court must dismiss ESHA's Lanham Act claim under *Dastar* and its progeny.

### 3.    ESHA Fails to Plead a Lanham Act Claim

In light of ESHA's pleading on information and belief, as well as the impossibility of

avoiding *Dastar* and its progeny, the Court need not further examine ESHA's Lanham Act claim.

Should it do so, however, it will see that the FAC further fails to allege a cognizable claim.

### i.    ESHA Fails to Allege an Actionable, False Statement of Fact

ESHA fails to allege "a false statement of fact." *Wells Fargo*, 758 F.3d at 1071-72. "[T]o

be liable for false advertising under the Lanham Act," a party's statement "must include false or

misleading representations of fact, not simply statements of opinion." *Ariix, LLC v. NutriSearch

Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). "[T]he determination of whether an alleged

misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may

be resolved on a Rule 12(b)(6) motion." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038,

1053 (9th Cir. 2008) (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*, 911 F.2d

242, 245 (9th Cir. 1990)). A "statement that is quantifiable, that makes a claim as to the 'specific

or absolute characteristics of a product,' may be an actionable statement of fact while a general,

subjective claim about a product is non-actionable puffery." *Newcal*, 513 F.3d at 1053 (quoting

*Cook*, 911 F.2d at 245).

The statements in the FAC are the latter. *See id.* ¶ 26. "Comparative assertions about

effectiveness, riskiness, and security are the kinds of generalized statements of product

superiority that we have routinely found to be nonactionable." *Oracle Int'l Corp. v. Rimini St.,

Inc.*, 123 F.4th 986, 1001 (9th Cir. 2024). Each statement listed in the FAC is too vague to be "a

specific and measurable claim, capable of being proved false" and thus actionable under the

Lanham Act. *Ariix*, 985 F.3d at 1121 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins.

Co.*, 173 F.3d 725, 731 (9th Cir. 1999)). In *CollegeNet, Inc. v. Embark.Com, Inc.*, this Court

considered the statement that a defendant "holds a 50% market share of the top United States universities," and found it inactionable under the Lanham Act because the "phrase 'top universities' is too vague," and in "order to prove falsity, one would need to know which schools are 'top universities.'" 230 F. Supp. 2d 1167, 1177 (D. Or. 2001). Each statement alleged in the FAC fails this test: none include a single number, and none include "a specific and measurable claim, capable of being proved false." *Ariix*, 985 F.3d at 1121.

### ii.    ESHA Fails to Allege Confusion

ESHA fails to allege that a "statement actually deceived or has the tendency to deceive a substantial segment of its audience." *Wells Fargo*, 758 F.3d at 1071-72. To plead this element under Rule 9(b), ESHA's "pleading must identify the who, what, when, where, and how of the misconduct charged," *SKEDKO*, 2014 WL 585379, at *1, including a "time-frame for the misconduct," as well as "when the alleged misrepresentations were made; where the misrepresentations were made; or who relied on them." *Pac. Off. Automation, Inc. v. Tracy*, No. 17-1484, 2018 WL 847245, at *3 (D. Or. Feb. 10, 2018). The FAC does none of this. *See id.* ¶¶ 26-27, 47-51. Even outside of Rule 9(b), ESHA fails to state this element. "[R]eliance will be induced by specific rather than general assertions," and ESHA has alleged none. *Cook*, 911 F.2d at 246; *see supra* § IV.B.3.i. And a customer that "buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product—and typically does not care whether it is. The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1012 (D. Ariz. 2017) (quoting *Dastar*, 539 U.S. at 32-33). Finally, ESHA asserts (FAC ¶ 49) "nothing more than a 'formulaic recitation of the elements' of a claim," thus "'conclusory and not entitled to be assumed true.'"

*Burtness*, 2024 WL 5168364, at *1 (quoting *Iqbal*, 556 U.S. at 680-81); *see MGA Ent., Inc. v. Dynacraft BSC, Inc*., No. 17-8222, 2018 WL 2448123, at *5 (C.D. Cal. May 30, 2018).

### iii.     ESHA Fails to Allege Material Deception

ESHA fails to allege that "the deception is material, in that it is likely to influence the purchasing decision." *Wells Fargo*, 758 F.3d at 1071-72.  ESHA's alleged statements (FAC ¶ 26) are "extremely unlikely to induce consumer reliance," and thus cannot state a claim.  *Newcal*, 513 F.3d at 1053; *see supra* § IV.B.3.i.  Similarly, the entity that "came up with the idea for the product" is "typically of no consequence to purchasers."  *Dastar*, 539 U.S. at 32-33.  Finally, ESHA's deception allegations (FAC ¶ 49) are "nothing more than a 'formulaic recitation of the elements' of a claim," and thus "'conclusory and not entitled to be assumed true.'"  *Burtness*, 2024 WL 5168364, at *1 (quoting *Iqbal*, 556 U.S. at 680-81).

### iv.     ESHA Fails to Plead Injury

ESHA fails to allege that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products."  *Wells Fargo*, 758 F.3d at 1071-72.  But a proper Lanham Act claim must contain "*factual* allegations that [ESHA] has been or is likely to be injured as a result of [Foodwit's] alleged false or misleading statements."  *Stahl L. Firm v. Judicate W.*, No. 13-1668, 2013 WL 6200245, at *7 (N.D. Cal. Nov. 27, 2013) (emphasis in original) (quoting *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)).  As in *Stahl*, ESHA "nowhere alleges" any "facts supporting [its] legal assertions" that it "has or will experience" any damages.  *Id.*  "The Court is not 'bound to accept as true' this or Plaintiff's other 'legal conclusion[s] couched as [ ] factual allegation[s].'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678) (alterations in original); *see Burtness*, 2024 WL 5168364, at *1.

**V.      The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim**

    **A.      Oregon Law Bars ESHA's Claim Under Or. Rev. Stat. § 646.608(1)(u)**

After the District of Delaware transferred this action to this Court, ESHA switched its claim under the Delaware Deceptive Trade Practices Act to a claim under Oregon's Unlawful Trade Practices Act, using nearly verbatim language. *Compare* Docket No. 1 ¶¶ 63-67 *with* FAC ¶¶ 63-67; *see supra* § D.  ESHA alleges that Foodwit is "in violation of at least sections 646.608(1)(a), (b), and (u)." FAC ¶ 64.  Subsection (1)(u) states that a "person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person . . . Engages in any other unfair or deceptive conduct in trade or commerce." *Id.*  But Or. Rev. Stat. § 646.608(4) adds that "An action or suit may not be brought under subsection (1)(u) of this section unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce." *Id.* Oregon courts will dismiss a complaint which "does not specify under which administrative rule defendants' conduct constitutes an unfair trade practice." *Horton v. Nelson*, 288 P.3d 967, 972 (Or. App. 2012).  Because a violation of (1)(u) requires "'an administrative rule prohibiting that specific conduct,'" this Court will dismiss a complaint under § 646.608(1)(u) where "Plaintiff failed to identify any administrative rule." *Swango v. Nationstar Sub1, LLC*, 292 F. Supp. 3d 1134, 1151 (D. Or. 2018) (quoting *Horton*, 288 P.3d at 972); *see, e.g.*, *Fleshman v. Wells Fargo Bank*, 27 F. Supp. 3d 1127, 1140 n.6 (D. Or. 2014).  The FAC "failed to identify any administrative rule," and the Court must dismiss this claim. *Swango*, 292 F. Supp. 3d at 1151.

    **B.      The Court Should Dismiss ESHA's Claim Under the Oregon UTPA**

To state a claim, ESHA must allege "(1) violation of § 646.608(1), (2) causation, (3) damages, and (4) willfulness by Defendant." *Colquitt v. Mfrs. & Traders Tr. Co.*, 144 F. Supp. 3d

1219, 1231 (D. Or. 2015) (citing *Fleshman*, 27 F. Supp. 3d at 1139).  Because ESHA alleges that

the "defendant has engaged in fraud, the complaint must meet the heightened pleading standard

of Fed. R. Civ. P. 9(b)."  *Latham v. PWCC Marketplace, LLC*, No. 21-1381, 2022 WL 226807, at

*1 (D. Or. Jan. 25, 2022).  "In determining whether a claim alleges fraud, federal courts look to

the elements of fraud under state law."  *Latham*, 2022 WL 226807, at *2 (citing *Kearns v. Ford

Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).  Those elements are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
> of its falsity or ignorance of its truth; (5) his intent that it should be acted on by
> the person and in the manner reasonably contemplated; (6) the hearer's ignorance
> of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his
> consequent and proximate injury.

*Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1042-43 (D. Or. 2014) (quoting *Rice v.

McAlister*, 519 P.2d 1263, 1265 (Or. 1974)).  The "relevant inquiry is not whether the state

consumer protection statutes specifically mention fraud or require an individual to plead the

elements of fraud," but "whether Plaintiffs have alleged a unified course of fraudulent conduct

and rely entirely on that course of conduct as the basis for their claim."  *Kearney*, 65 F. Supp. 2d

at 1043 (citing *Kearns*, 567 F.3d at 1125); *see also Ivie v. Mission Rock Res. LLC*, No. 21-1122,

2022 WL 2612215, at *9-12 (D. Or. May 27, 2022) (collecting cases).

ESHA alleges that "Foodwit has made and continues to make false and misleading

statements" (representation, falsity, knowledge); that these "false and misleading representations

had the tendency to confuse and deceive, and did confuse and deceive, consumers across the

country" (materiality, intent, ignorance, reliance); and that ESHA, "[a]s a direct and proximate

result of Foodwit's misconduct," has "suffered and will continue to suffer irreparable injury and

substantial damage" (materiality again, injury).  FAC ¶¶ 63-67.  So ESHA "must state with

particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and "identify

the 'time, place, and specific content of the false representations as well as the parties to the misrepresentations." *Latham*, 2022 WL 226807 at *1 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)); *see also Kearney*, 65 F. Supp. 2d at 1043 (UTPA "allegations grounded in fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged") (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

### 1.    ESHA Fails to Allege an UTPA Violation

ESHA fails to allege a "violation of § 646.608(1)." *Colquitt*, 144 F. Supp. 3d at 1231. First, ESHA's claims rely upon theft, alleged only on information and belief. *See supra* § A. These cannot suffice under Rule 9(b). *Neubronner*, 6 F.3d at 672; *see supra* § IV.B.1. Second, ESHA fails to state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney*, 65 F. Supp. at 1043 (quoting *Vess*, 317 F.3d at 1106). ESHA makes only the vague and unsubstantiated assertion that Foodwit "did confuse and deceive," FAC ¶ 65; its "vagueness falls far below the requirements of Rule 9(b) and is cause for dismissal." *Latham*, 2022 WL 226807, at *3; *see, e.g.*, *Kearney*, 65 F. Supp. 2d at 1044-45.

Even without Rule 9(b), ESHA fails to allege a violation of Or. Rev. Stat. § 646.608(1)(a) or (1)(b). A party violates § 646.608(1)(a) if it "[p]asses off real estate, goods or services as the real estate, good or services of another," and § (1)(b) if it "[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." *Mendoza v. Lithia Motors, Inc.*, No. 16-1264, 2018 WL 1513650, at *5 (D. Or. Mar. 27, 2018) (quoting Or. Rev. Stat. § 646.608(1)(a)-(b)). These cases usually allege passing off or confusion based on ambiguity in the *identity* of the provider of goods or services, such as two knitting companies fighting over the use of the names "knit purl," "Knit Purl," and "Knit Pearl." *Knit Pearl, LLC v. Shibui, LLC*, No. 5-845, 2006 WL 8458984, at *13 (D. Or. Oct. 17, 2006); *see*

*supra* § IV.B.2 (discussing the same distinction in the Lanham Act).  Unlike those cases, the FAC does not allege a violation of § 646.608(1)(a) or (b); instead it agrees that Workbench is Foodwit's product, and claims that Foodwit violated UTPA by making "false and misleading statements" about its own product.  FAC ¶ 64.  But allegedly false statements about one's own product do not violate § 646.608(1)(a) or (b).  *Mendoza*, 2018 WL 1513650, at *5.  In *Mendoza*, defendant car dealership "arranged for vehicle financing with an interest rate of 3.94%, a higher rate than provided by the lender," and "sold Mr. Mendoza products and services obtained through third parties," but did not "disclose its specific fees associated with the arrangement of financing or the profit margins related to the sale of third-party products and services."  *Id.* at *1.  Plaintiff claimed this practice violated § 646.608(1)(a), (b), and (c) by representing that "consumers were paying for third party products, when, in fact, these payments were mostly kept by Lithia—without disclosure and without consent."  *Id.* at *5.  The court granted a motion to dismiss, finding that (a), (b), and (c) "require transparency regarding, among other things, the *identity* of service providers—not the profit margins secured by a party selling the services."  *Id.* at *5 (emphasis in original).  ESHA does not challenge the *identity* of Workbench's seller, indeed, its claims require Foodwit in that role.  *E.g.*, FAC ¶¶ 27, 64, 65.  Like the plaintiff in *Mendoza*, the FAC addresses how the seller assembled the product that it sold.  *Id.*  Like the plaintiff in *Mendoza*, ESHA alleges that Foodwit improperly increased the "profit margins secured by a party selling the services."  *E.g.*, FAC ¶ 27.  As in *Mendoza*, ESHA cannot recover under Or. Rev. Stat. § 646.608(1)(a) or (b).  2018 WL 1513650, at *5.

### 2.    ESHA Fails to Allege Causation

ESHA fails to allege "causation."  *Colquitt*, 144 F. Supp. 3d at 1231.  Again, ESHA's claims rely upon theft, alleged only on information and belief, which cannot suffice under Rule

9(b). *Neubronner*, 6 F.3d at 672; *see supra* §§ A, IV.B.1. Second, ESHA fails to state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney*, 65 F. Supp. 2d at 1043 (quoting *Vess*, 317 F.3d at 1106). Even without Rule 9(b), ESHA fails "to plead causation in sufficient detail to put [Foodwit] on notice of the casual [sic] relationship between a particular alleged unfair business practice and the ascertainable loss and damages incurred as a result of that particular conduct." *Fleshman*, 27 F. Supp. 3d at 1141. "[R]egardless of the quantity of the plaintiff's loss, a causal link between the plaintiff's loss and the defendant's actions must exist to state a viable UTPA claim." *Fauley v. Washington Mut. Bank FA*, No. 13-581, 2014 WL 1317852, at *4 (D. Or. Mar. 21, 2014). ESHA fails to plead this link, requiring dismissal.

### 3. ESHA Fails to Allege Damages

ESHA fails to allege "damages." *Colquitt*, 144 F. Supp. 3d at 1231. Once again, ESHA's claims rely upon theft, alleged only on information and belief, which cannot suffice under Rule 9(b). *Neubronner*, 6 F.3d at 672; *see supra* §§ A, IV.B.1. Even without Rule 9(b), ESHA has not stated this element. A "private plaintiff may bring a UTPA claim only if it has suffered an 'ascertainable loss of money or property.'" *Rathgeber v. James Hemenway, Inc.*, 69 P.3d 710, 715 n.5 (Or. 2003) (quoting Or. Rev. Stat. § 646.638). But ESHA asserts only hypothetical "consumers across the country" who "would *likely* do business (or continue to do business)" with ESHA. FAC ¶ 65 (emphasis added). This allegation is "nothing more than a 'formulaic recitation of the elements' of a claim" and is thus "'conclusory and not entitled to be assumed true.'" *Burtness*, 2024 WL 5168364, at *1 (quoting *Iqbal*, 556 U.S. at 680-81).

### 4. ESHA Fails to Allege Willfulness

ESHA fails to allege "willfulness by Defendant." *Colquitt*, 144 F. Supp. 3d at 1231. Once again, ESHA's claims rely upon theft, alleged only on information and belief, which cannot

suffice under Rule 9(b). *See Neubronner*, 6 F.3d at 672; *see supra* §§ A, IV.B.1. Second, ESHA

fails to state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney*, 65

F. Supp. 2d at 1043 (quoting *Vess*, 317 F.3d at 1106). Finally, even without Rule 9(b), ESHA has

not stated this element. "A willful violation occurs when the person committing the violation

knew or should have known that the conduct of the person was a violation." *Fleshman*, 27 F.

Supp. 3d at 1141 (quoting Or. Rev. Stat. § 646.605(10)). The FAC does not attempt to meet this

bar; instead its willfulness allegation (FAC ¶ 58) is "nothing more than a 'formulaic recitation of

the elements' of a claim" and is thus "'conclusory and not entitled to be assumed true.'"

*Burtness*, 2024 WL 5168364, at *1 (quoting *Iqbal*, 556 U.S. at 680-81).

## VI.    The Court Should Deny Leave to Further Amend the First Amended Complaint

Although the "court should freely give leave when justice so requires," Fed. R. Civ. P.

15(a)(2), the "district court has discretion to deny leave to amend when there are 'countervailing

considerations' such as 'undue delay, prejudice, bad faith, or futility.'" *Ctr. for Biological*

*Diversity v. United States Forest Serv*., 80 F.4th 943, 956 (9th Cir. 2023) (quoting *Benko v.*

*Quality Loan Serv. Corp*., 789 F.3d 1111, 1117 (9th Cir. 2015)); *see also Salu v. Multnomah Cty.*,

No. 21-1387, 2023 WL 6239088, at *2 (D. Or. Sept. 26, 2023) (same). A district court's

discretion is "particularly broad where plaintiff has previously amended the complaint." *Butters*

*v. Travelers Indemnity Co.*, No. 22-726, 2023 WL 2988763, at *11 (D. Or. Jan. 23, 2023)

(quoting *Kuklok v. U.S. Dep't of Veterans Affairs*, No. 21-15105, 2022 WL 256361, at *1 (9th

Cir. Jan. 26, 2022)). The Court can deny leave to amend "when the adverse party offers evidence

that shows 'wrongful motive' on the part of the moving party." *Leighton v. Three Rivers Sch.*

*Dist.*, No. 12-1275, 2014 WL 6063638, at *2 (D. Or. Nov. 12, 2014) (quoting *DCD Programs,*

*LTD. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

Exercising this discretion, the Court should deny any request for leave to further amend. Since ESHA sent its first cease-and-desist letter on August 6, 2024, *Foodwit v. ESHA,* Docket No. 1, Ex. 14, Foodwit has responded, over and over again, 'tell us what you think we stole.'  On August 9, 2024, Foodwit noted that ESHA "provides no evidence of Foodwit's breach of any laws or the License Agreement." *Id.*, Ex. 15.  ESHA responded on September 17, stating that "we believe Foodwit's breaches of the license agreement and other violations of federal and state law are egregious," but again provided no specifics. *Id.*, Ex. 16.  On October 9, Foodwit asked ESHA to specify "what specific aspects of Workbench you believe may violate any obligations Foodwit has to Trustwell." *Id.*, Ex. 18.  ESHA's response ignored this request. *Id.*, Ex. 19.  On October 15, Foodwit reminded ESHA that it had still not provided any specifics. *Id.*, Ex. 20. ESHA responded:  "Under no circumstance would we be willing (sic) disclose to you the specific proprietary and trade secret items we'd be looking for in the inspection." *Id.*, Ex. 21.

After a call between the CEOs, ESHA appeared to revise its view, stating that "[w]e are now compiling a list of specific items we would like to review within your product to help us determine whether it may contain elements" of ESHA's intellectual property. *Id.*, Ex. 22.  But that list never came.  Instead, ignoring its previous statement, ESHA again demanded an opportunity to review Foodwit's Workbench product—a review which would allow ESHA to "mold its cause of action around" whatever it learned from Foodwit. *Id.*, Ex. 23; *BioD, LLC v. Amnio Tech., LLC*, No. 13-1670, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) (quoting *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007)).  Foodwit declined ESHA's offer to review Foodwit's product and claim as a trade secret whatever it found. *Foodwit v. ESHA*, Docket No. 1, Ex. 24.  And Foodwit once again asked ESHA to "tell us what specific aspects of Workbench you believe may violate any obligations Foodwit has." *Id.*  Once again,

ESHA's response did not address this request. *Id.*, Ex. 25. On February 6, Foodwit wrote: "We have repeatedly asked for specific allegations of wrongdoing, and you have repeatedly declined to provide them." *Id.,* Ex. 27. ESHA's response was to file this action.

Even in litigation, ESHA has refused to provide its trade secrets, either in its complaint or separately. *See supra* § III; *Foodwit v. ESHA*, Docket No. 20 at 9-11. ESHA seems fated to repeat *ESHA Research, Inc. v. Cronometer Software, Inc.*, where this Court granted a motion to compel ESHA to identify its trade secrets. *Id.*, Docket Nos. 20, 30, 34, 36, 37, 39.

ESHA's failure to provide its asserted trade secrets or its claims of breach is telling. This failure springs from undue delay, bad-faith conduct and wrongful motive. If ESHA really knew what it thought Foodwit had stolen, it would not hesitate to tell Foodwit what that is. After all, in ESHA's view, this is a list of things that *Foodwit already has*, because it stole them from ESHA. Foodwit has repeatedly asked for this list, and ESHA has consistently refused to provide it. Foodwit can see only one explanation for this behavior: ESHA never knew what it thought Foodwit stole, did not know when it filed its complaint, and does not know now. Instead ESHA thought litigation would scare the much smaller Foodwit into settlement, and had no backup plan if it didn't. Indeed, in *Foodwit v. ESHA,* ESHA is *still* trying to access Workbench so it can "mold its cause of action around" whatever it finds. *BioD*, 2014 WL 3864658, at *5; *Foodwit v. ESHA*, Docket No. 20 at 9-11. The Court should not reward this undue delay, bad-faith conduct and wrongful motive; it should deny further leave to amend the First Amended Complaint.

The Court should also deny leave to amend as futile. ESHA does not know what breaches Foodwit committed or what trade secrets it stole; if it knew these things it would have provided them already. *See supra.* ESHA's other claims all depend on its allegations of theft, and cannot survive without those allegations. Amendment will thus serve no purpose; since

ESHA has nothing to provide, there is no "reason to suppose further amendment would be anything but futile." *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 532 (9th Cir. 2018).  The Court should deny leave to amend for this reason as well.

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss ESHA's First Amended Complaint, and deny ESHA leave to further amend.

Date:  July 1, 2025                                    Respectfully submitted,

*s/ P. Andrew McStay, Jr.*
P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon, 97201
+1 (503) 778-5302
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice* pending)
Erika H. Warren (*pro hac vice* pending)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*