Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| **ESHA RESEARCH, LLC., now known as TRUSTWELL,**<br><br>Plaintiff,<br><br>v.<br><br>**RLH ASSETS, LLC, doing business as FOODWIT, an Oregon limited liability company,**<br><br>Defendant. | Civil No. 3:25-cv-00880-JR<br><br>**PLAINTIFF TRUSTWELL'S OPPOSITION TO DEFENDANT FOODWIT'S MOTION TO DISMISS**<br><br>**[ORAL ARGUMENT REQUESTED]** |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT .......................................................................................................... 3

I.     TRUSTWELL SUFFICIENTLY PLEADS BREACH OF CONTRACT ......................... 3

       A.     Trustwell Sufficiently Alleges a Contract ............................................... 4

       B.     Trustwell Sufficiently Alleges Multiple Breaches ................................... 7

II.    THE FORUM SELECTION CLAUSE PROVIDES NO BASIS FOR
       DISMISSAL. ................................................................................................... 9

III.   TRUSTWELL SUFFICIENTLY PLEADS TRADE SECRET
       MISAPPROPRIATION. ................................................................................... 10

IV.    TRUSTWELL SUFFICIENTLY PLEADS LANHAM ACT VIOLATIONS. ............... 13

       A.     Trustwell Specifically Alleges Deceptive and Misleading Statements. .............. 13

       B.     Trustwell Sufficiently Alleges Lanham Act Violations ......................... 14

              1.     Trustwell Cannot Be Expected to Specifically Allege Facts
                     Uniquely Within Foodwit's Knowledge. ................................... 14

              2.     Dastar Does Not Bar Lanham Act Liability Here. .................... 16

              3.     Trustwell Sufficiently Alleges Each of the Elements. ............. 17

                     i.     Trustwell Sufficiently Alleges Actionable, False Statements
                            of Fact. ....................................................................... 17

                     ii.    Trustwell Sufficiently Alleges Causation. ................... 17

                     iii.   Trustwell Sufficiently Alleges Material Deception. ........ 18

                     iv.    Trustwell Sufficiently Alleges Injury. ........................ 18

V.     TRUSTWELL SUFFICIENTLY PLEADS UTPA VIOLATIONS UNDER
       SECTIONS 646.608(1)(A) & (B) ................................................................ 19

       A.     Trustwell Sufficiently Alleges a UTPA Violation ................................. 19

       B.     Trustwell Sufficiently Alleges Causation. ............................................ 21

       C.     Trustwell Sufficiently Alleges Damages. ............................................. 22

       D.     Trustwell Sufficiently Alleges Willfulness ........................................... 22

VI.    TO THE EXTENT THE COURT FINDS ANY OF TRUSTWELL'S
       ALLEGATIONS INSUFFICIENT, LEAVE TO AMEND SHOULD BE
       GRANTED. .................................................................................................... 22

CONCLUSION ...................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

CASES

*Adidas Am., Inc. v. TRB Acquisitions LLC*,
No. 3:15-cv-2113-SI, 2016 WL 11673273 (D. Or. July 16, 2016) ........................................25

*Andrew v. Torres*,
594 F. App'x 450 (9th Cir. 2015) ........................................................................................25

*Arnett v. Bank of Am., N.A.*,
874 F. Supp. 2d 1021 (D. Or. 2012) .....................................................................................5

*Burtness v. Legacy Health*,
No. 24-1256, 2024 WL 5168364 (D. Or. Dec. 18, 2024) ......................................................3

*Caterpillar Fin. Servs. Corp. v. Venquip Mach. Sales Corp.*,
No. 22-23002, 2023 WL 4540436 (S.D. Fla. July 14, 2023) .................................................8

*Cisco Sys., Inc. v. Synqor, Inc.*,
No. 11-86, 2011 WL 1326062 (D. Del. Apr. 1, 2011) ...........................................................7

*Columbia Sportswear Co. v. Ferreira*,
No. 3:23-cv-000594-AB, 2025 WL 1520299 (D. Or. Ma 28, 2025) ....................................11

*Crane v. U.S.*,
No. 3:10-68-AC, 2011 WL 7277317 (D. Or. Nov. 29, 2011) ..............................................23

*Dallas Buyers, LLC v. Integrity Computer Servs.*,
No. 3:15-cv-00907-AC, 2016 WL 3085907 (D. Or. Apr. 29, 2016) ....................................25

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ........................................................................................................16, 17

*Dunn & Fenley, LLC v. Diederich*,
Nos. 06-6243-TC, 06-6281-TC, 09-6095-TC, 2010 WL 28662 (D. Or. Jan. 5,
2010) ....................................................................................................................................6

*Engage BDR v. GoDaddy*,
No. 21-2014, 2021 WL 8820555 (C.D. Cal. Sept. 23, 2021) .................................................6

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
No. 24-1586, Dkt. 39 ...........................................................................................................11

*Fauley v. Washington Mut. Bank FA*,
No. 13-581, 2014 WL 1317852 (D. Or. Mar. 21, 2014) ......................................................21

*Feitler v. Animation Celection, Inc.*,
120 Or. App. 702 (Or. Ct. App. 2000) ...................................................................22

*Foman v. Davis*
371 U.S. 178 (1962) ................................................................................................23

*FSP Stallion 1 v. Luce*,
No. 08-1155, 2009 WL 10693631 (D. Nev. Oct. 29, 2009) ....................................6

*Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*,
No. 14-597, 2015 WL 2074501 (N.D.N.Y. May 4, 2015) ........................................9

*Genasys Inc. v. Vector Acoustics, LLC*,
638 F. Supp. 3d 1135 (S.D. Cal. 2022) .................................................................12

*Giorgio, Inc. v. Parfums de Coeur, Ltd.*,
865 F.2d 1271, 1989 WL 1734 (9th Cir. 1989) .....................................................13

*Granados v. OnPoint Cmty. Credit Union*,
No. 3:21-cv-847-SI, 2023 WL 3570039 ..................................................................6

*Gregg v. Univ. of Portland*,
No. 22-1680, 2023 WL 11832321 (D. Or. Mar. 16, 2023) .......................................7

*Grove City Veterinary Serv., LLC v. Charter Practices Int'l, LLC*,
No. 3:13-cv-02276-AC, 2016 WL 8731781 (D. Or. Feb. 5, 2016) ..........................5

*Huskey v. Oregon Dep't of Corr.*,
373 Or. 270 (2025) ..................................................................................................3

*In re Oregon Arena Corp.*,
No. 304-31605-ELP11, Civ. 05-857-HA, 2006 WL 488713 (D. Or. Feb. 28, 2006) ......................................................................................................................5

*InteliClear LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ..........................................................................1, 13

*Kearney v. Equilon Enters., LLC*,
65 F. Supp. 3d 1033 (D. Or. 2014) .......................................................................20

*Knisely v. Nat'l Better Living Ass'n, Inc.*,
No. 14-15, 2014 WL 4084517 (N.D.W. Va. Aug. 19, 2014) ...................................7

*Langan v. United Servs. Auto. Ass'n*,
69 F. Supp. 3d 965 (N.D. Cal. 2014) ......................................................................6

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
306 F. Supp. 3d 629 (S.D.N.Y. 2018) ...................................................................16

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS**

*Longo v. FlightSafety Int'l, Inc.*,
    1 F. Supp. 3d 63 (E.D.N.Y. 2014) ....................................................................9

*Lory v. Fed. Ins. Co.*,
    122 F. App'x 314 (9th Cir. 2005) ...................................................................23

*Mason-Ealy v. City of Pomona*,
    557 F. App'x 675 (9th Cir. 2014) ...................................................................24

*Navarette v. PeaceHealth*,
    No. 6:22-cv-00181-AA, 2025 WL 1388890 (D. Or. May 14, 2025)...............24, 25

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ..................................................................... passim

*Newcal Indus., Inc. v. Ikon Office Sol.*
    513 F.3d 1038 (9th Cir. 2008) .......................................................................18

*Nw. Env't Defense Ctr. V. H & H Welding*,
    No. 3:13-cv-653-AC, 2013 WL 4782159 (D. Or. Sept. 5, 2013) ...........................23

*Quaiz v. Rockler Retail Grp., Inc.*,
    No. 3:16-cv-1879-SI, 2017 WL 960360 (D. Or. Mar. 13, 2017)...........................10

*Rathgeber v. James Hemenway, Inc.*,
    355 Or. 404 (2003).......................................................................................21

*Register.Com, Inc. v. Domain Registry of Am., Inc.*,
    No. 02-6915, 2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002) ...............................16

*RLH Assets, LLC v. ESHA Research, LLC*,
    No. 25-656 (D. Or.), Dkt. 1..............................................................................2

*Roney v. Miller*,
    705 F. App'x 670 (9th Cir. 2017) ...................................................................23

*Sennco Sols., Inc. v. Mobile Techs., Inc.*,
    No. 3:20-cv-01426-JR, 2020 WL 8836070 (D. Or. Dec. 21, 2020) .....................10

*SKEDKO, Inc. v. ARC Prods., LLC*,
    No. 13-696, 2014 WL 585379 (D. Or. Feb. 13, 2014) ........................................17

*State ex rel. Rosenblum v. Johnson & Johnson*,
    275 Or. App. 23 (Or. Ct. App. 2015)...............................................................20

*Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*,
    519 F. Supp. 3d 839 (D. Or. 2021) .................................................................13

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS**

*Synopsys, Inc. v. ATopTech, Inc.*,
No. 13-2965, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .................................................12

*Tibbets v. Athene Annuity & Life Assurance Co. of New York*,
No. 3:19-cv-00796-BR, 2020 WL 129093 (D. Or. Jan. 10, 2020) ...........................................6

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
147 F. Supp. 3d 1147 (D. Or. 2015) ....................................................................................12

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
758 F.3d 1069 (9th Cir. 2014) ............................................................................................17

*Workshops Portland Carson, L.L.C. v. Carson Oil Co., Inc.*,
No. 3:15-cv-01234-AC, 2017 WL 8948976 (D. Or. Mar. 27, 2017)........................................5

**STATUTES**

28 U.S.C. § 1404..................................................................................................................2

28 U.S.C. § 1406..................................................................................................................2

Lanham Act................................................................................................................. passim

ORS 646.608(1)(a)...............................................................................................................20

ORS 646.608(1)(b) ..............................................................................................................19

ORS 646.608(1)(u) ..............................................................................................................19

ORS 646.608(2) ..................................................................................................................21

**OTHER AUTHORITIES**

OAR 137-020-0010(6)...........................................................................................................19

FRCP 9(b) ................................................................................................................... passim

FRCP 15(a) .........................................................................................................................23

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS**

Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell") hereby opposes Defendant RLH Assets, LLC, doing business as Foodwit's ("Foodwit," and collectively with Trustwell, the "Parties") motion to dismiss.

## **INTRODUCTION**

This case arises from Foodwit's theft of Trustwell's industry-leading software platform called Genesis Foods and the embedded food and nutrition database. Originally launched in 1991 with a next-generation update in 2024, Genesis Foods is widely recognized as the gold-standard for food and nutrition research and development and regulatory compliance.

In 2017, Foodwit applied for a license to use the Genesis Foods system solely for its own internal business use. The Parties entered into a limited-use license agreement (the "License Agreement"), which the Parties renewed annually until it expired in 2024. The License Agreement expressly barred Foodwit from, among other things, commercializing or otherwise leveraging the Genesis Foods system and database to develop and launch a competing product. Nevertheless, in 2024, Trustwell became aware that Foodwit appeared to have done just that, in launching a competing product called Workbench. Over the next six months, Trustwell tried repeatedly to resolve this dispute informally. Unfortunately, Foodwit steadfastly refused to substantiate its denials of wrongdoing, and demanded instead that Trustwell disclose all of its trade secrets (without any protections) to Foodwit, a direct competitor.[1] This suit followed.

Relevant here, Foodwit has repeatedly refused to allow Trustwell access to the Workbench product, even through a confidential third-party review. As a result, Trustwell has not been able to determine conclusively the extent to which Foodwit copied Genesis Foods, whether in whole or in part. Much of Foodwit's motion is predicated on this lack of direct knowledge, essentially arguing that because Trustwell does not know exactly how much Foodwit copied Genesis Foods,

---

[1] Trustwell even proposed a third-party platform review, as a way to protect both Parties' confidentiality while providing a way to determine the extent of Foodwit's theft and misappropriation. Foodwit still refused, demanding instead full and unprotected disclosure of Trustwell's trade secrets as a precondition to reviewing the Workbench product. As the Ninth Circuit recognized, there are "commercially valid reasons to avoid being overly specific at the outset in defining [a party's] intellectual property." *InteliClear LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020). Foodwit's demands to the contrary defy both the law and common sense.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS**

and because certain of the allegations in Trustwell's First Amended Complaint ("FAC") are therefore pled on information and belief, the allegations are insufficient. But Foodwit cannot use its efforts to cover its own tracks as both a shield and sword. Because Foodwit has repeatedly refused to substantiate its position, Trustwell has no choice but to plead certain facts on information and belief—because those facts are uniquely within Foodwit's knowledge. Foodwit cannot now be heard to complain that it forced Trustwell to plead those facts on information and belief.

## **<u>BACKGROUND</u>**

On February 20, 2025, pursuant to the exclusive jurisdiction and venue provision in the License Agreement, Trustwell filed suit against Foodwit in the District of Delaware, alleging breach of contract, misappropriation of trade secrets under both federal and state law, Lanham Act violations, and deceptive trade practices under Delaware law. Dkt. 1, ¶¶ 32-67. Foodwit moved to dismiss or, in the alternative, to transfer the case to this District, arguing the License Agreement provided instead for exclusive jurisdiction and venue in Oregon. *See* Dkt. 5. Notably, Foodwit did not address Trustwell's substantive claims; Foodwit challenged only jurisdiction and venue. *See* Dkt. 6. As discussed below, Trustwell did not oppose the requested transfer. *See* Dkt. 12. The District of Delaware denied the requested dismissal but granted the requested transfer to this District.[2]

On April 22, 2025, Foodwit filed its own complaint—effectively counterclaims—against Trustwell in this Court, alleging antitrust violations under a "sham litigation" theory, tortious interference, and breach of contract. *RLH Assets, LLC v. ESHA Research, LLC*, No. 25-656 (D. Or.), Dkt. 1, ¶¶ 179-96, 211-21. In light of the pending transfer of its complaint to this District, Trustwell proposed that the Parties stipulate to consolidate both cases; after all, each of Foodwit's claims is predicated on Trustwell's complaint against Foodwit. Dkt. 12, at 2. By email dated May 23, 2025, Foodwit refused. On May 27, 2025, Trustwell filed its FAC in this Court. Dkt. 18 ("FAC"). The FAC contains the same substantive claims and allegations as Trustwell's initial

---

[2] The District of Delaware denied Foodwit's request for dismissal, holding, "[w]hether under § 1404 or § 1406, the Court would transfer the case to the District of Oregon." Dkt. 14, n.1.

complaint, merely exchanging the Delaware state law claims for analogous claims under Oregon law. *Id.* at ¶¶ 52-67. Foodwit now moves to dismiss the FAC, challenging for the first time the sufficiency of Trustwell's pleading. Dkt. 28 ("Mot."). For the reasons below, the Court should deny Foodwit's motion in its entirety.

## ARGUMENT

### I.    TRUSTWELL SUFFICIENTLY PLEADS BREACH OF CONTRACT.

Foodwit begins by stridently arguing that Trustwell "Does Not Allege A Contract." Mot. at 4. Foodwit then argues, apparently in the alternative, that Trustwell's breach of contract allegations are nevertheless insufficient. *Id.* Both arguments fail.

Contrary to Foodwit's assertions, Trustwell's allegations plainly meet even the Oregon state-law pleading requirements for breach of contract, which require parties to, "at a minimum, plead facts with sufficient particularity as to allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 275 (2025).[3] Indeed, Trustwell's allegations "allow the Court to infer [Foodwit's] liability based on the alleged conduct," and "present more than 'the mere possibility of misconduct.'" *Burtness v. Legacy Health*, No. 24-1256, 2024 WL 5168364, at *1 (D. Or. Dec. 18, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Trustwell plainly alleges a contract here: the License Agreement. In fact, Trustwell block-quotes the substantive provisions that it alleges Foodwit breached. FAC, ¶¶ 15-19, 34. Foodwit ignores this dispositive fact. And Foodwit and its CEO, Becki Holmes, have expressly admitted the existence, execution, and application of the License Agreement. Dkt. 6, at 2 ("ESHA and Foodwit's [license] agreements always required dispute resolution in Oregon"); Dkt. 7, ¶ 12 ("Foodwit executed the form, and I confirmed to [Trustwell] that we had done so"). In fact, Ms. Holmes declared under oath that she executed the annual License Agreement on Foodwit's behalf

---

[3] Foodwit cites Oregon state-law pleading requirements, Mot. at 4 (citing *Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 275 (2025)), which are not applicable here. Nevertheless, Trustwell's allegations plainly satisfy those requirements as well.

Page 3        **PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS**

at least four separate times.  Dkt. 7, ¶¶ 12, 17-20.  That Foodwit still argues no contract exists demonstrates the falsity of its argument.

Trustwell's allegations are more than sufficient to allow the Court to infer Foodwit's liability.  *See* FAC, ¶¶ 15-19, 34; Dkt. 6, at 2; Dkt. 7, ¶ 12.  And Trustwell's factual allegations present more than a mere possibility of misconduct.  *See* FAC, ¶ 23 ("[Holmes] claimed, however, that Foodwit had a greater industry reach than Trustwell, suggesting that if Foodwit replicated the Genesis Foods system, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach"), ¶ 24 ("Foodwit secretly accessed and used the new Genesis Foods system to help design and build Workbench, and exported a substantial volume of proprietary data from Genesis Foods" in violation of the cited contractual provisions), ¶ 34 ("[b]y using Genesis Foods and related information as described above . . . Foodwit has breached and continues to breach at least sections 3, 6, 7, 8, and 12 of the License Agreement").

### A.    Trustwell Sufficiently Alleges a Contract.

Trustwell's position regarding the terms of Foodwit's License Agreement has never changed.  During the period in which Ms. Holmes executed the License Agreement on Foodwit's behalf, Trustwell maintained a master set of terms and conditions that applied to all license agreements that were not specifically negotiated.  The master terms and conditions during that period provided for exclusive jurisdiction and venue in Delaware.  The terms of Foodwit's License Agreement were not specifically negotiated.  As a result, it is Trustwell's continuing belief that the master terms and conditions during that period apply to Foodwit's License Agreement, providing for exclusive jurisdiction and venue in Delaware.  FAC, ¶ 11.  That is why Trustwell originally filed suit in the District of Delaware.  However, Trustwell did not maintain the specific terms and conditions that Ms. Holmes accessed at the time she executed Foodwit's License Agreement.

In connection with Foodwit's motion to transfer, Ms. Holmes submitted a sworn declaration that the License Agreement she executed on Foodwit's behalf incorporated a version of the terms and conditions providing for exclusive jurisdiction and venue in Oregon, and that she

had never seen the Delaware version. Dkt. 7, ¶¶ 13-14, 29. Although the master version of the terms and conditions during that period provided for jurisdiction and venue in Delaware, the prior version provided for jurisdiction and venue in Oregon.

Because Ms. Holmes declared under penalty of perjury that the License Agreement she executed incorporated the Oregon version of the terms and conditions, and because Trustwell did not maintain the specific terms and conditions that Ms. Holmes accessed when she executed Foodwit's License Agreement, Trustwell is willing to take Ms. Holmes at her word. *See* Dkt. 12.[4]

Moreover, the substantive terms and conditions—for example, the "Scope of License," "Confidential Information," "Ownership, Copyrights," "Limitations on License," and "Licensee's Obligations to Protect the Licensed Software"—are virtually identical.[5] *See* FAC, ¶ 11; Dkt. 29-1, Ex. 1, ¶¶ 15-18. In other words, aside from jurisdiction and venue, the License Agreement's substantive obligations remain the same. Nevertheless, despite being granted the transfer it requested, Foodwit now frames Trustwell's agreement to the transfer as nothing more than a self-serving ploy warranting dismissal. Mot. at 5-6.

There can be no question that Trustwell sufficiently pleads the existence of the License Agreement.[6] *Trustwell block-quotes the substantive provisions at issue*. FAC, ¶¶ 15-19. And Trustwell specifically alleges breaches of those provisions. *Id.* at ¶¶ 34. The notion that such allegations are insufficient is absurd.

---

[4] Trustwell also notes that it likely is more efficient for the Parties to litigate this dispute in this Court.

[5] Exhibit 1 to Mr. Warren's declaration in support of Foodwit's motion to dismiss, a redlined comparison of Trustwell's initial complaint and FAC, shows that each of these provisions is substantively identical as between the Delaware and Oregon versions of the terms and conditions. Dkt. 29-1, Ex. 1, ¶¶ 15-18.

[6] Foodwit's arguments regarding the existence of so-called competing agreements are inapposite. "Under Oregon law, when 'parties contemporaneously execute multiple agreements that address interrelated subjects, we are bound to construe them together as one contract to discern the parties' intent.'" *In re Oregon Arena Corp.*, No. 304-31605-ELP11, Civ. 05-857-HA, 2006 WL 488713, at *2 (D. Or. Feb. 28, 2006) (*quoting Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or. App. 523, 528 (Or. App. 1994)); *see also Grove City Veterinary Serv., LLC v. Charter Practices Int'l, LLC*, No. 3:13-cv-02276-AC, 2016 WL 8731781, at *8 (D. Or. Feb. 5, 2016) ("Under Oregon law, one document need not expressly incorporate the other by reference if the connection between them is unmistakable") (citation and internal quotations omitted); *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1030 (D. Or. 2012) (same); *Workshops Portland Carson, L.L.C. v. Carson Oil Co., Inc.*, No. 3:15-cv-01234-AC, 2017 WL 8948976, at *3 (D. Or. Mar. 27, 2017) (same). In other words, even if the Court were to find multiple versions of the License Agreement, they should be construed as a single instrument.

Foodwit's claim of "confusion," Mot. at 5, is also inapt. Trustwell makes clear in its FAC that the quoted provisions come from the terms and conditions that Ms. Holmes contends apply to Foodwit's License Agreement, and which Ms. Holmes attached to her declaration. *Id.* at ¶ 11 n.1; Dkt. 7, Ex. 2. After all, that was the basis of Foodwit's motion to transfer. Foodwit cannot now deny the existence of the License Agreement on which it relied to transfer the case to this Court. That is more than sufficient to "raise a right to relief above the speculative level," and to provide Foodwit fair notice of the factual bases of the claim, particularly given that Trustwell is not even required "to attach the contract or recite the contract's terms verbatim." *Tibbets v. Athene Annuity & Life Assurance Co. of New York*, No. 3:19-cv-00796-BR, 2020 WL 129093, at *3 (D. Or. Jan. 10, 2020); *see also Granados v. OnPoint Cmty. Credit Union*, No. 3:21-cv-847-SI, 2023 WL 3570039, at *5 (holding in a breach of contract action that "[a] claim will survive a motion to dismiss if the complaint contains even vague allegations of all material facts").

Foodwit cites a number of cases that are inapplicable. In *Langan v. United Servs. Auto. Ass'n*, for example, the court could not discern "what material obligation of the contract the defendant allegedly breached" because there was "no way for the Court to know even generally what that the terms of the contract or contracts were, or even how many agreements are at issue" due to the ambiguous allegations. 69 F. Supp. 3d 965, at 979-80 (N.D. Cal. 2014). The courts in *Engage BDR v. GoDaddy*, No. 21-2014, 2021 WL 8820555, at *2 (C.D. Cal. Sept. 23, 2021) and *FSP Stallion 1 v. Luce*, No. 08-1155, 2009 WL 10693631, at *8 (D. Nev. Oct. 29, 2009) similarly noted that the allegations failed to identify which terms of the contracts at issue were breached. And in *FSP Stallion*, the third-party complainant "refuse[d] to specify . . . whether he was a party to the contact or contracts at issue." 2009 WL 10693631, at *8. None of these failures exist here.

Foodwit's remaining arguments attempt to manufacture disputes where none exist.[7] Ms. Holmes testified in a sworn declaration that she executed the License Agreement—at least four

---

[7] As both the District of Oregon and District of Delaware recognize, when transferring a case, dispositive motions should be resolved by the transferee court. *See, e.g., Dunn & Fenley, LLC v. Diederich*, Nos. 06-6243-TC, 06-6281-TC, 09-6095-TC, 2010 WL 28662, at *1 (D. Or. Jan. 5, 2010) ("Because I am granting the motions to

separate times—on Foodwit's behalf, and she attached the terms and conditions that she contends apply to the License Agreement. Dkt. 7, ¶¶ 12, 17-18. The FAC block-quotes the substantive provisions at issue, which are virtually identical to the provisions cited in Trustwell's initial complaint. FAC, ¶ 11, 15-19. There can be no reasonable question that Trustwell sufficiently alleges a contract.

### B.    Trustwell Sufficiently Alleges Multiple Breaches.

Foodwit's argument that Trustwell "Does Not Allege a Breach" ignores at least paragraphs 32-35 of the FAC, which expressly allege breaches of the provisions at issue, as well as paragraphs 5-7, 15-19, 24-25, 27-28, which contain numerous factual bases and examples of the breaches. Nothing more is necessary.[8]

As Foodwit acknowledges, *see* Mot. at 8, Trustwell need only plead "an identifiable contractual promise that the defendant failed to honor." *Gregg v. Univ. of Portland*, No. 22-1680, 2023 WL 11832321, at *4 (D. Or. Mar. 16, 2023) (quoting *Gallagher v. Capella Educ. Co*., No. 19-1342, 2019 WL 8333532, *5 (D. Or. Dec. 23, 2019)). Trustwell does that. Trustwell alleges breaches of at least five particular provisions of the License Agreement. FAC, ¶¶ 15-19, 34. Trustwell also alleges "'the facts and circumstances which entitle[s] [it] to damages.'" *Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 14-15, 2014 WL 4084517, at *15 (N.D.W. Va. Aug. 19, 2014) (alteration in original) (quoting *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009)); FAC, ¶ 5-7, 15-19, 24-25, 27-28.

For example, Trustwell alleges that "Foodwit secretly accessed and used the new Genesis Foods system to help design and build Workbench, and exported a substantial volume of proprietary data from Genesis Foods for that purpose." FAC, ¶ 24. This constitutes a breach of at least Sections 3, 6, 8, and 12 of the License Agreement. *See, e.g., id.* at ¶ 15 (prohibiting Foodwit

---

transfer, I am not considering the Defendants' motions to dismiss and intend to leave those motions for resolution by the transferee district."); *Cisco Sys., Inc. v. Synqor, Inc*., No. 11-86, 2011 WL 1326062, at *3 (D. Del. Apr. 1, 2011) ("We will grant the motion of [defendant] to transfer this action to the United States District Court for the Eastern District of Texas. The remaining motions are better decided by the transferee court.").

[8] Foodwit's arguments regarding the purportedly nefarious purpose of this action are irrelevant at the pleading stage and ignore the numerous factual bases pled in the FAC.

from using the Licensed Software "as part of its own commercially licensed products or services," converting, modifying, or otherwise reverse compiling the Licensed Software, and "collect[ing], directly or indirectly, the data from the nutritional database embedded within the Licensed Software").

Trustwell further alleges that "Foodwit omit[ted] that it secretly leveraged Trustwell's Trade Secrets to design and build Workbench" and "resorted to misappropriation to quickly and cheaply create a competitive product." *Id.* at ¶ 27. This constitutes a breach of at least Sections 3, 6, 8, and 12 of the License Agreement. *See id.* at ¶ 15 (prohibiting Foodwit from using the Licensed Software for any purpose outside of internal business use, including "as part of its own commercially licensed products or services"), ¶ 16 ("[Trustwell] is the sole owner of the Licensed Software, including the embedded nutritional database and all customized and derivative works based upon them, and including all copies thereof and all copyrights and other intellectual property rights embodied therein"), ¶ 17 (preventing unauthorized use of the Licensed Software and requiring "commercially reasonable efforts to protect the Licensed Software from unauthorized use, reproduction, publication, or distribution"), ¶ 18 (requiring Foodwit to maintain confidentiality of Trustwell's confidential information, prohibiting use of Trustwell's confidential information outside the scope of the License Agreement, and requiring Foodwit to return Trustwell's confidential information "and all notes, records, documentation, models, software, databases and other items or materials containing such information" upon demand).

Foodwit argues that Trustwell uses "'ambiguous catchall allegations'" that are insufficient to allege a breach of contract. Mot. at 9 (quoting *Caterpillar Fin. Servs. Corp. v. Venquip Mach. Sales Corp.*, No. 22-23002, 2023 WL 4540436, at *3 (S.D. Fla. July 14, 2023). Not so. In *Caterpillar*, the plaintiff failed to identify the contractual provisions that were allegedly breached, and instead alleged only that defendant "fail[ed] to make the required payments of principal and interest due and owing." *Id.* In contrast, as discussed above, Trustwell block-quotes five provisions of the License Agreement and specifically alleges that Foodwit breached each of them

and how it did so.  FAC, ¶¶ 15-19, 24, 27, 34.  There can be no reasonable question that Trustwell sufficiently alleges multiple breaches.

## II.    THE FORUM SELECTION CLAUSE PROVIDES NO BASIS FOR DISMISSAL.

Without any hint of irony, Foodwit argues that because it moved for and was granted a transfer of this action from the District of Delaware, the Court must now dismiss the entire action because it is no longer being litigated in the District of Delaware.  Mot. at 9-10.  While it is unfortunately representative of Foodwit's entire approach to this dispute, such gamesmanship should not be countenanced.

The facts surrounding the Parties' dispute regarding the jurisdiction and venue provision are set forth above.  Trustwell has never disclaimed the Delaware provision.  To the contrary, Trustwell continues to believe the Delaware version applies to Foodwit's License Agreement.  FAC, ¶ 11.  However, because it did not maintain the specific terms and conditions that Ms. Holmes accessed when she executed the License Agreement, and because Ms. Holmes testified under penalty of perjury that she was provided the Oregon version when she executed the License Agreement, Trustwell is willing to take her at her word.  *See* Dkt. 7.  And because the substantive provisions in both versions are virtually identical, the issue of the applicable jurisdiction and venue has no impact on Foodwit's substantive obligations under the License Agreement.  FAC, ¶ 11.

The cases on which Foodwit relies provide no support for its position.  In *Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*, for example, the plaintiff argued that the defendant failed to mention the forum selection clause, an earlier proposal letter should have governed the dispute, and that the forum selection clause was "tucked away in a secondary document" as a means of disclaiming the relevance of the provision.  No. 14-597, 2015 WL 2074501, at *5 (N.D.N.Y. May 4, 2015).  None of that occurred here.

Likewise, in *Longo v. FlightSafety Int'l, Inc.*, the plaintiff argued that the employment agreement at issue "is in actuality 'not stated to be [a contract],'" an argument which the court explained "cross[ed] the line from excusable mistake to either negligent reading of the basic evidence or willful misrepresentation to the court" and "all but compel[s] sanctions."  1 F. Supp.

3d 63, 71-72 (E.D.N.Y. 2014). These cases have no application here. Though Foodwit repeatedly questions Trustwell's motives and maligns its character, Trustwell seeks only to protect and vindicate its rights—whether in Delaware or Oregon. *See* FAC, ¶ 11.

## III.    TRUSTWELL SUFFICIENTLY PLEADS TRADE SECRET MISAPPROPRIATION.

In arguing that Trustwell "obfuscate[s] the scope of its [trade secret] claims," Mot. at 11-13, Foodwit conflates pleading standards with the subsequent trade secret identification process. They are not the same.

Trustwell asserts two basic trade secrets here: (1) Trustwell's Genesis Foods software platform, and (2) the food and nutrition database embedded in that platform. The law in this District is settled and requires only that a trade secret allegation be "sufficient to put defendant on notice of the nature of plaintiff's claim and enable defendant to determine the relevancy of any requested discovery, at least to allow this case to proceed past the pleading stage." *Sennco Sols., Inc. v. Mobile Techs., Inc.*, No. 3:20-cv-01426-JR, 2020 WL 8836070, at *3 (D. Or. Dec. 21, 2020) (citing *Redfin Corp. v. iPayOne.com, Inc.*, No. C17-001217-RAJ, 2018 WL 1397482, at *2 (W.D. Wash. Mar. 20, 2018) (denying motion for protective order "where the plaintiff's trade secret allegations provided enough information 'to give Redfin notice of what issues may arise later in this litigation as well as the scope of appropriate discovery'")); *see also Quaiz v. Rockler Retail Grp., Inc.*, No. 3:16-cv-1879-SI, 2017 WL 960360, at *3 (D. Or. Mar. 13, 2017) (reasonable particularity requires "'a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets'") (quoting *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015)). Trustwell plainly meets this standard.

In the FAC, Trustwell describes the Genesis Foods platform as "a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance." FAC, ¶ 20. Foodwit certainly cannot claim confusion about the Genesis Foods platform because it licensed the platform for seven years. *See* Dkt. 7, ¶¶ 12,

17-20.  Trustwell further alleges that, "[i]n 2023, Foodwit received a confidential presentation regarding planned upgrades to the platform," including "a streamlined user interface offering fast and intuitive product formulation and data entry while assisting users with regulatory compliance through built-in, automated data checks and alerts, and is supported by Trustwell's industry-leading and proprietary food and ingredient database."  FAC, ¶ 20.  Trustwell's identification of the Genesis Foods platform, taken together with the numerous features of the competing Workbench platform that Trustwell specifically alleges were copied from Genesis Foods, is more than sufficient to put Foodwit on notice of Trustwell's claims and to determine the relevancy of any requested discovery.  *See id.* at ¶ 25.

Trustwell also sufficiently identifies the food and nutrition database embedded in the platform.  As an initial matter, Foodwit is simply wrong to assert that Trustwell disclaimed the trade secret status of its food and nutrition database in a separate action pending in this District. Mot. at 11.  In that litigation, Trustwell asserted as a compilation trade secret the same food and nutrition database.  And after proceeding through the pleading phase, as well as the subsequent trade secret identification process, the Court held that Trustwell "has now carried its burden to identify the compilation trade secrets at issue."  *ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-1586, Dkt. 39.[9]  Indeed, as this Court has repeatedly recognized, the fact that some portion of a compilation may be publicly available does not defeat the trade secret status of the compilation as a whole.  *See, e.g., Columbia Sportswear Co. v. Ferreira*, No. 3:23-cv-000594-AB, 2025 WL 1520299, at *8 (D. Or. Ma 28, 2025) ("the public nature of some of the documents' contents does not necessarily defeat [plaintiff's] claim for trade secret protection") (citing *Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996) ("Trade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets.") (internal quotations omitted)).  Foodwit's *pleading* challenge to the identification of Trustwell's food and

---

[9] That Foodwit obliquely acknowledges this holding, following the trade secret identification process in the other litigation, *see* Mot. at 29, demonstrates Foodwit's knowledge of the proper time and procedure by which to identify a trade secret with particularity.  It is not at the pleading stage.

nutrition database, which was already found to be sufficiently identified during the subsequent trade secret identification process in a separate pending action, rings hollow.

Trustwell further alleges that it expended substantial "time, effort, and expense to compile [the] information" in the database, such that the compilation qualifies for trade secret protection. *Vesta Corp.*, 80 F. Supp. 3d at 1164 (quoting *Kaib's Roving R.PH Agency, Inc. v. Smith*, 237 Or. App. 96, 102-03 (2010)); FAC, ¶ 4 (Trustwell's software system and embedded database trade secrets were "developed through decades of investment in research and development"). Trustwell also alleges that that the database "includes, among other things, comprehensive nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,0000 brand name and generic foods and ingredients." FAC, ¶ 4.

In addition, Trustwell alleges more than "some minimally plausible factual explanation for why trade secret protection applies." *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-2965, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013). Trustwell alleges that the independent economic value of its trade secrets, as evidenced through Trustwell's licensing efforts to numerous customers (including Foodwit, for seven years), "represents a substantial portion of Trustwell's business." FAC, ¶ 21. Trustwell also alleges the reasonable steps it takes to protect the secrecy of its trade secrets, including limiting customer access "to such information solely pursuant to agreements that contain confidentiality provisions and other protections substantially similar to those contained in the license agreement," and using "electronic, physical, and other security measures to maintain the secrecy of such information maintained in its secure facilities." *Id.* at ¶ 22. Foodwit's reliance on *Genasys Inc. v. Vector Acoustics, LLC*, which involved only "vague references to an enormous array of potential" sources of trade secret information, 638 F. Supp. 3d 1135, 1152 (S.D. Cal. 2022), is misplaced. Foodwit has more than reasonable notice of Trustwell's trade secret claims

and can ascertain the bounds of those trade secrets. These allegations are more than sufficient at the pleading stage.[10]

## IV.    TRUSTWELL SUFFICIENTLY PLEADS LANHAM ACT VIOLATIONS.

### A.    Trustwell Specifically Alleges Deceptive and Misleading Statements.

Foodwit begins by half-heartedly arguing that Trustwell fails to allege any specific misleading statements. Mot. at 14. The FAC proves otherwise. Trustwell first alleges that "Foodwit falsely and deceptively marketed, and continues to falsely and deceptively market, Trustwell's crown-jewel Trade Secrets as Foodwit's own creation, the result of Foodwit's own honest, hard work." FAC, ¶ 28. Trustwell goes on to allege that Foodwit does so through, among other things, a number of specific statements on its website, including that Workbench is "[e]ngineered by food and supplement industry veterans" (i.e., through the honest "engineer[ing]" of Foodwit's own employees); "[t]rusted by leading brands;" "a breakthrough for compliance software in the food and beverage industry, offering unmatched compliance and efficiency;" and "a revolution in managing compliance" (i.e., not just a copy of Genesis Foods). *Id.* at ¶ 26.

Of course, even "a truthful statement, if misleading, can support a claim under section 43(a) of the Lanham Act." *Giorgio, Inc. v. Parfums de Coeur, Ltd.*, 865 F.2d 1271, 1989 WL 1734, at *3 (9th Cir. 1989) (citing *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1247 (D. Ariz. 1981) ("[t]he Courts have also recognized that a statement can be literally true, but nevertheless misleading in the way it is presented")); *see also Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839, 846 (D. Or. 2021) ("'To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.'" (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

---

[10] As the Ninth Circuit observed, discovery—not the pleading stage—is the appropriate time to engage in "an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear*, 978 F.3d at 662.

To be clear, the statements above are deceptive and misleading by implying that (1) Workbench was engineered honestly and legitimately by Foodwit's own "industry veteran[]" employees; (2) Workbench is trusted by leading brands as a unique, standalone product, not simply a copy of Genesis Foods; and (3) Workbench is in some way a "breakthrough" or "revolution" in compliance software, rather than just a copy of Genesis Foods.  Trustwell also points to numerous features allegedly developed for Workbench that are actually part of Genesis Foods, FAC, ¶ 25, which Foodwit was authorized to access and use solely pursuant to the limitations and protections of the limited-use License Agreement.  Genesis Foods was indeed engineered by industry veterans, is trusted by leading brands, and is a revolution in compliance software.  However, Foodwit cannot lawfully claim these accolades for Workbench when it appears to be nothing more than a copy of Genesis Foods.

### B.    Trustwell Sufficiently Alleges Lanham Act Violations.

Foodwit makes a number of interrelated arguments regarding the sufficiency of Trustwell's Lanham Act allegations, each of which fails.

### 1.    Trustwell Cannot Be Expected to Specifically Allege Facts Uniquely Within Foodwit's Knowledge.

Foodwit first argues that Trustwell cannot plead a Lanham Act claim on information and belief.  Mot. at 15-16.  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citation and internal quotations omitted). Moreover, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Id.*

In alleging Foodwit's misrepresentations about Workbench, including those discussed above, Trustwell alleges the factual context that forms the bases of its claim.  FAC, ¶¶ 23-25, 27-30.  For example, Trustwell alleges that, "[o]ver a period of several months in 2022 and 2023, Foodwit engaged in discussions with Trustwell's Delaware parent company regarding a potential

investment in or acquisition of Foodwit by Trustwell's parent company." FAC, ¶ 23. In those discussions, Ms. Holmes stated that "she did not believe there were viable competitors to Genesis Foods in the market because of its unique and powerful regulatory compliance tools." *Id.* Ms. Holmes further stated that "Foodwit had a greater industry reach than Trustwell, suggesting that if Foodwit replicated the Genesis Foods system, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach." *Id.* After those discussions ended and Trustwell's parent company decided not to invest in or acquire Foodwit, in 2024, Ms. Holmes confirmed before renewing Foodwit's License Agreement a final time and before launching Workbench that "Export functionality [would be] included," such that Foodwit could export and copy Trustwell's data from and through Genesis Foods. *Id.* at ¶ 24.

Those allegations, in conjunction with the deceptive website statements discussed above, provide the factual bases for Trustwell's Lanham Act claim, including the allegations made on information and belief, and provide sufficient notice to Foodwit of the claims against which it must defend itself. *See* FAC, ¶¶ 23, 24, 27. That is more than sufficient to satisfy Rule 9(b) here, where the particulars regarding the scope and extent of Foodwit's theft remain uniquely within Foodwit's knowledge.

Foodwit's conclusory argument to the contrary, *see* Mot. at 16, misses the mark. Foodwit cites paragraphs 4 and 21 of the FAC to suggest that because Trustwell "claims to know" the trade secrets at issue (they are, after all, Trustwell's trade secrets), Trustwell therefore must know the complete scope of Foodwit's theft and deception. *Id.* The cited paragraphs, however, simply identify and describe the trade secrets at issue. They have nothing to do with the scope of Foodwit's misconduct, or the extent to which additional information is uniquely within Foodwit's knowledge.

As discussed above, Foodwit has repeatedly refused, both before and during this litigation, to allow Trustwell any access to the Workbench product, even by way of a confidential third-party review. FAC, ¶ 29; Mot. at 28. As a result, Foodwit cannot complain that Trustwell has not been able to ascertain the precise scope and extent of Foodwit's theft and deception, including the extent

to which Foodwit copied Genesis Foods. In other words, Trustwell's reliance on certain information-and-belief allegations is necessitated by Foodwit's efforts to cover its own tracks. Rule 9(b) allows for this. *Neubronner*, 6 F.3d at 672.

### 2. *Dastar* Does Not Bar Lanham Act Liability Here.

Foodwit next argues that Supreme Court precedent bars this claim essentially because Trustwell does not specifically allege that Workbench is a complete copy of Genesis Foods. Mot. at 16-18 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23 (2003)). That argument, however, weaponizes Foodwit's efforts to cover its own tracks, and would lead to perverse incentives.

As noted above, although "the Lanham Act does not impose an affirmative duty of disclosure," Foodwit's failure to disclose its copying of Genesis Foods is relevant to its affirmative representations suggesting legitimate, independent development, rendering those statements deceptive and misleading by omission. *See, e.g., Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 640 (S.D.N.Y. 2018); *Register.Com, Inc. v. Domain Registry of Am., Inc.*, No. 02-6915, 2002 WL 31894625, at *14 (S.D.N.Y. Dec. 27, 2002) (quoting J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 27:13 (2002)).

Trustwell alleges, "[a]t least substantial portions of the Workbench software system that Foodwit advertises and repeatedly touts on its website as, among other things, a 'breakthrough,' a 'revolution,' and 'world-class' appear to be, in fact, Trustwell's Trade Secrets." FAC, ¶ 27. In other words, Trustwell alleges that Foodwit copied at least substantial portions of Genesis Foods to create Workbench. To date, however, Foodwit has successfully prevented Trustwell from determining whether and to what extent—if at all—Foodwit modified or otherwise made any changes to Genesis Foods before repackaging and launching it as Workbench.

Again, for a period of six months before filing this lawsuit, Trustwell repeatedly requested a platform inspection of Workbench, either directly or confidentially through a third party, as a means of determining the extent and scope of Foodwit's theft, in an effort to resolve this dispute informally. *Id.* at ¶ 29; Mot. at 28. Even after filing suit, Trustwell continued to propose a

confidential third-party review.  *See* FAC, ¶ 29; Mot. at 28.  In each instance, Foodwit refused. FAC, ¶ 29; Mot. at 28.

Because Foodwit has continuously refused to allow an inspection of Workbench, and otherwise refused to substantiate any of its denials of wrongdoing, Trustwell can only assume that Workbench is nothing but a renamed copy of Genesis Foods.  But unless and until Foodwit permits Trustwell to inspect Workbench, Trustwell is unable to specifically allege as much.  *Dastar* does not bar Lanham Act liability under these circumstances.  To hold otherwise would incentivize track-covering as a means of immunization against Lanham Act liability.  Such perverse incentives find no support in the law.

### 3.    Trustwell Sufficiently Alleges Each of the Elements.

#### i.    Trustwell Sufficiently Alleges Actionable, False Statements of Fact.

Foodwit misconstrues Trustwell's allegations regarding false statements of fact as non-actionable puffery.  Mot. at 19-20.  Trustwell does not allege statements of opinion, subjective claims, or other forms of puffery.  As discussed above, Trustwell alleges several objective misrepresentations of fact that Workbench was independently and legitimately developed by Foodwit's own employees without theft or misappropriation of Trustwell's confidential, proprietary, and trade secret information, and amounted to a "breakthrough" and "revolution" in the industry.  *See* FAC, ¶¶ 26, 48-49.  To the extent Foodwit repackaged and sold Genesis Foods as Workbench, Foodwit's statements are plainly false and actionable.

#### ii.    Trustwell Sufficiently Alleges Causation.

Trustwell alleges that the misrepresentations above have a tendency to deceive consumers in the food and nutrition industry, which make up a "substantial segment of [Foodwit's] audience." *See* FAC, ¶ 49; *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014).  By alleging that Foodwit's statements have a tendency to deceive consumers in the food and nutrition industry, as a means to divert sales from Trustwell to Foodwit, Trustwell has sufficiently alleged "the who, what, when, where, and how of the misconduct charged."  *SKEDKO,*

*Inc. v. ARC Prods., LLC*, No. 13-696, 2014 WL 585379, at *1 (D. Or. Feb. 13, 2014). To the extent Workbench is a repackaged copy of Genesis Foods, it is nonsense to suggest that consumers would not be deceived by Foodwit's statements.

### iii.    Trustwell Sufficiently Alleges Material Deception.

Foodwit baldly asserts that its statements are "extremely unlikely to induce consumer reliance." Mot. at 21. Again, however, to the extent Workbench is a repackaged copy of Genesis Foods, it is absurd to suggest that Foodwit's statements would not be material to consumers. Trustwell alleges that Foodwit's statements are likely to and did deceive consumers. FAC, ¶ 49, 65. Nothing more is necessary at this stage.[11]

### iv.    Trustwell Sufficiently Alleges Injury.

As a direct competitor in the food and nutrition industry, Foodwit has acknowledged that Trustwell "was one of the first companies to market with a software application that generates compliant food labels from a list of ingredients" and because "there were few if any viable alternatives, many users became dependent on Genesis." *RLH Assets, No. 25-656*, Dkt. 1, ¶¶ 45, 47. Combined with Ms. Holmes' representations regarding Foodwit's ability to launch a more commercially successful product by replicating Genesis Foods, Foodwit implicitly concedes that Workbench sales induced by Foodwit's misrepresentations necessarily will cause injury to Trustwell. And damages are virtually certain due to the diversion of sales and loss of goodwill. *See* FAC, ¶ 26. Trustwell's allegations are again sufficient.

---

[11]    Foodwit's reliance on *Newcal Indus., Inc. v. Ikon Office Sol.* 513 F.3d 1038, 1053 (9th Cir. 2008), misses the point. There, the Ninth Circuit merely observed, "[a] statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." *Id.* That is not the case here.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS**

## V.   TRUSTWELL SUFFICIENTLY PLEADS UTPA VIOLATIONS UNDER SECTIONS 646.608(1)(A) & (B).[12]

Foodwit argues that Trustwell fails to allege each of the elements of its UTPA claim.  As Foodwit acknowledges, *see* Mot. at 22, the elements are 1) a violation of 646.608(1); 2) causation; 3) damages; and 4) willfulness.  Trustwell sufficiently alleges each of these elements.

### A.   Trustwell Sufficiently Alleges a UTPA Violation.

A party violates 646.608(1)(a) when it "[p]asses off real estate, goods or services as the real estate, goods, or services of another," and 646.608(1)(b) when it "[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods, or services."  Trustwell alleges that "Foodwit falsely and deceptively marketed, and continues to falsely and deceptively market, Trustwell's crown-jewel Trade Secrets ***as Foodwit's own creation, the result of Foodwit's own honest, hard work***."  FAC, ¶ 28 (emphasis added). Trustwell further alleges that "Foodwit's false and misleading misrepresentations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country . . . who would not seek to purchase or license Workbench if they knew the truth."  *Id.* at ¶ 65.

Even under Rule 9(b), Trustwell's allegations are sufficient.  The Ninth Circuit "has interpreted Rule 9(b) to require that 'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Neubronner* 6 F.3d at 671 (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that defendant can

---

[12] At 3:00 p.m. on Tuesday, July 1, 2025, Foodwit's counsel met and conferred by telephone with Trustwell's counsel regarding the bases for its motion to dismiss.  The call lasted just over six minutes, and Foodwit filed the motion three hours later.  During the call, Foodwit's counsel stated that the sole basis for its motion to dismiss as to the UTPA claim was that Trustwell purportedly did not sufficiently allege each of the elements. Foodwit's counsel mentioned nothing specific regarding the section 646.608(1)(u) claim.  To be clear, the sub-(u) claim relates to Foodwit's pricing practices for the stolen Workbench product, which practices are actionable under OAR 137-020-0010(6).  However, because Trustwell can only obtain the necessary information through discovery, Trustwell is willing to dismiss without prejudice its sub-(u) claim at this time.  Trustwell intends to seek leave to add that claim back into the case once Foodwit provides the discovery that Trustwell has requested.

prepare an adequate answer from the allegations." *Id.* at 672 (citation and internal quotations omitted). Trustwell plainly meets this standard.

As Trustwell alleges, Foodwit's website contains numerous misrepresentations about Workbench, including that it is "[e]ngineered by food and supplement industry veterans" (i.e., through the honest "engineer[ing]" of Foodwit's own employees); "[t]rusted by leading brands;" "a breakthrough for compliance software in the food and beverage industry, offering unmatched compliance and efficiency;" and "a revolution in managing compliance" (i.e., not just a copy of Genesis Foods). FAC, ¶ 26. Trustwell further alleges the factual bases for its belief that Foodwit copied Genesis Foods and is passing it off as its own creation, including through Ms. Holmes' statements to Trustwell's parent company that Foodwit could produce a more commercially successful product by replicating the Genesis Foods platform, and Ms. Holmes' request for confirmation that "Export functionality [would be] included" in the most recent version of Genesis Foods, thus seeking confirmation that she would be able to export Trustwell's data to copy and create Workbench, and thereby avoiding decades of investment in legitimate research and development. *See supra* § V.B.1.

Taken together, Trustwell's allegations plainly state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1043 (D. Or. 2014) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Foodwit's argument that UTPA cases "usually allege passing off or confusion based on ambiguity in the *identity* of the provider of goods or services," Mot. at 24 (emphasis in original), misses the mark. Section 646.608(1)(a)-(b) does not limit the scope only to misrepresentations regarding the identity of the seller. In fact, in *State ex rel. Rosenblum v. Johnson & Johnson*, the Oregon Court of Appeal expressly held that ORS 646.608(1)(a) prohibits misrepresentations of "facts as to identity *and ownership*." 275 Or. App. 23, 33 n.3 (Or. Ct. App. 2015) (emphasis added). That is precisely the passing off and likelihood of confusion that Trustwell alleges here. Foodwit's misrepresentations regarding Workbench, which appears to be nothing but a stolen copy of Genesis Foods, pass off ownership of Workbench as an independent, honest, and legitimate

creation, and thereby creates a likelihood of confusion or misunderstanding as to the actual source of the product.

### B.    Trustwell Sufficiently Alleges Causation.

Relying on statements of law with no factual support, Foodwit argues that Trustwell's allegations fail to put Foodwit on notice of Trustwell's claims.  Dkt. 28, at 25-26.  Once again, however, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner*, 6 F.3d at 672.  *Id.*

"An actionable representation under the UTPA may be expressed or implied."  *Rathgeber v. James Hemenway, Inc.*, 355 Or. 404, 412 (2003); ORS 646.608(2) ("A representation under [646.608(1)] may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact.")  As discussed above, Trustwell's allegations, supported by the factual bases pled, establish and support "a causal link between [Trustwell's] loss and [Foodwit's] actions."  *See Fauley v. Washington Mut. Bank FA*, No. 13-581, 2014 WL 1317852, at *4 (D. Or. Mar. 21, 2014).

Foodwit even acknowledges that Trustwell "was one of the first companies to market with a software application that generates compliant food labels from a list of ingredients," and that "many users" rely on Genesis Foods.  *RLH Assets*, No. 25-656, Dkt. 1, ¶¶ 45, 47.  Ms. Holmes, Foodwit's CEO, boasted to Trustwell's parent company that Foodwit would be able to launch a more commercially successful product by replicating Genesis Foods.  FAC, ¶ 23.  Before its final renewal of the License Agreement (and before it launched Workbench), Ms. Holmes also made a point to confirm that Foodwit would be able to export data from Genesis Foods, suggesting an intent to export and copy the data.  *Id.* at ¶ 24.  Through Trustwell's allegations regarding Foodwit's replication of the Genesis Foods system and its deceptive marketing of the product to suggest that Foodwit legitimately and independently developed it, Trustwell has established a causal link between its lost sales and Foodwit's misconduct.

### C.    Trustwell Sufficiently Alleges Damages.

"'Ascertainable loss' under the UTPA is amorphous.  Any loss will satisfy that requirement so long as it is 'capable of being discovered, observed, or established.'"  *Feitler v. Animation Celection, Inc.*, 120 Or. App. 702, 712 (Or. Ct. App. 2000) (quoting *Scott v. Western Int. Sales, Inc.*, 267 Or. 512, 515 (1973)).  For the same reasons discussed above, Trustwell sufficiently alleges damages.

Foodwit's acknowledgement of Trustwell as an industry leader, coupled with its assertion that it could launch a more successful product by replicating Genesis Foods, supports Trustwell's claim that by copying Genesis Foods and misrepresenting key characteristics of Workbench, Foodwit directly harmed Trustwell's business.  Though Trustwell cannot know at this time, without discovery, the precise extent of the harm caused by lost and diverted sales, such precision is not required at the pleading stage.  *See Feitler*, 120 Or. App. at 712.

### D.    Trustwell Sufficiently Alleges Willfulness.

Trustwell also sufficiently alleges willfulness, particularly in light of Ms. Holmes' representations regarding Foodwit's ability to launch a competing platform that purportedly would outperform Genesis Foods, by replicating it.  Dkt. 7, ¶ 26.  Trustwell not only alleges Ms. Holmes' boasts regarding the commercial success of a competing product, but also Ms. Holmes' specific inquiries regarding Foodwit's ability to export Trustwell's data.  FAC, ¶¶ 23-24.  Notably, Ms. Holmes requested that confirmation before Foodwit's final renewal of the License Agreement and before it launched Workbench.  *Id.* at ¶ 24.

Once again, Trustwell cannot know at this time, without discovery, Foodwit's and Ms. Holmes' state of mind.  Such facts are uniquely within Foodwit's and Ms. Holmes' knowledge.  As a result, the relaxed pleading standard exception under Rule 9(b) applies.  Trustwell's allegations are sufficient at this stage.

## VI.    TO THE EXTENT THE COURT FINDS ANY OF TRUSTWELL'S ALLEGATIONS INSUFFICIENT, LEAVE TO AMEND SHOULD BE GRANTED.

This is the first time Foodwit has challenged the sufficiency of Trustwell's pleading.  "When dismissing a complaint for failure to state a claim, district courts should liberally grant

leave to amend." *Lory v. Fed. Ins. Co.*, 122 F. App'x 314, 319 (9th Cir. 2005) (citing *Cook Perkiss & Liehe v. N. California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  In *Foman v. Davis*, the Supreme Court identified five factors that may justify the extreme result of denying leave to amend: (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility. 371 U.S. 178, 182 (1962).  "'Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.'" *Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).  None of the *Foman* factors are present here.

*First*, granting Trustwell leave to amend to cure any deficiencies would not create undue delay.  "The Ninth Circuit test for undue delay is 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" *Crane v. U.S.*, No. 3:10-68-AC, 2011 WL 7277317, at *9 (D. Or. Nov. 29, 2011) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)).  Here, Trustwell has not previously requested leave to amend and does not believe that additional facts or theories are necessary to render its allegations sufficient.  Rather, Foodwit is now challenging the sufficiency of Trustwell's pleading for the first time, after failing to do so in the District of Delaware.[13]  To the extent the Court finds any of Trustwell's allegations insufficient, Trustwell is entitled to amend to cure any such defects.

Additionally, "delay alone, no matter how lengthy, cannot justify denial of a motion to amend." *Nw. Env't Defense Ctr. V. H & H Welding*, No. 3:13-cv-653-AC, 2013 WL 4782159, at *2 (D. Or. Sept. 5, 2013) (citing *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (Ninth Circuit will reverse denial of leave to amend in the absence of prejudice, bad faith, or futility)); *see also Crane*, 2011 WL 7277317, at *10 ("Because the litigation process is designed to 'vindicate

---

[13] While Trustwell filed an amended complaint when this action was transferred to this District, it merely exchanged the Delaware state law claims for analogous claims under Oregon law.  As Foodwit concedes, Trustwell did not revise or amend any of its substantive claims or allegations.  *See* Mot. at 3-4 ("The FAC largely repeated the allegations of [the] original complaint;" Trustwell "removed from the FAC causes of action [under Delaware law] … and inserted, using almost verbatim language, causes of action under [Oregon law].").

meritorious claims,' '[r]efusing, solely because of delay, to permit an amendment to a pleading in order to state a potentially valid claim would hinder this purpose while not promoting any other sound judicial policy.'") (quoting *Howey v. United States*, 481 F.2d 1187, 1190–1191 (9th Cir. 1973)).

*Second*, there is nothing to suggest that Trustwell has acted in bad faith. To the contrary, Trustwell spent six months trying to resolve this dispute informally before filing suit as a last resort. Trustwell also did not oppose Foodwit's motion to transfer, seeking the quickest and most efficient way to get to the merits of this action. FAC, ¶ 29; Dkt. 12. Trustwell even suggested that the Parties stipulate to consolidate this action with Foodwit's parallel pending action, but Foodwit refused. Dkt. 12, at 2. At all times, Trustwell has sought the most expeditious resolution of this dispute on the merits.

*Third*, Trustwell filed the FAC in response to the transfer of this action—not due to any purported deficiencies in its pleadings—simply to exchange claims under Delaware law for analogous claims under Oregon law. Although Foodwit argues "[a] district court's discretion is 'particularly broad where plaintiff has previously amended the complaint,'" this is the first time Foodwit has challenged the sufficiency of Trustwell's pleading. Mot. at 27 (quoting *Butters v. Travelers Indemnity Co.*, No. 22-726, 2023 WL 2988763, at *11 (D. Or. Jan. 23, 2023)). And leave to amend should be freely granted to the extent the Court finds any deficiencies. *See Mason-Ealy v. City of Pomona*, 557 F. App'x 675, 677 (9th Cir. 2014) ("This court has long held that leave to amend should be granted even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citation omitted).

*Fourth*, Foodwit does not allege that any prejudice would result from amendment, nor could it. Courts "may find prejudice to the opposing party where allowing amendment would 'reopen discovery and therefore delay the proceedings.'" *Navarette v. PeaceHealth*, No. 6:22-cv-00181-AA, 2025 WL 1388890, at *3 (D. Or. May 14, 2025) (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)). Courts may also find prejudice "where an

amended complaint asserts a new legal theory at a later stage of litigation." *Id.* Neither situation exists here. Even if Trustwell were to assert a new legal theory, there would be no prejudice to Foodwit at this initial stage of litigation. *See Dallas Buyers, LLC v. Integrity Computer Servs.*, No. 3:15-cv-00907-AC, 2016 WL 3085907, at *4 (D. Or. Apr. 29, 2016) (finding no prejudice "as litigation is still in its early stages"); *Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-cv-2113-SI, 2016 WL 11673273, at *3 (D. Or. July 16, 2016) ("[t]hat a case is still in the early stages of discovery may defeat an argument that a party will be unfairly prejudiced by amendment to the complaint" and "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action") (citations omitted); *Andrew v. Torres*, 594 F. App'x 450, 451 (9th Cir. 2015) ("dismissal of [plaintiff's] claims without leave to amend was improper at this early stage of the proceedings").

*Fifth*, Foodwit relies on nothing more than conclusory assertions of futility. For example, Foodwit's argument that "[Trustwell] does not know what breaches Foodwit committed or what trade secrets it stole," *see* Mot. at 29, is directly refuted by the FAC. Once again, Trustwell block-quotes five provisions of the License Agreement that it specifically alleges Foodwit breached, and identifies two trade secrets (one of which this Court already ruled was sufficiently identified in a separate action) that it alleges Foodwit misappropriated. FAC, ¶¶ 4, 15-19, 34, 42-44, 58-60. Foodwit's argument that, "if [Trustwell] knew these things it would have provided them already," Mot. at 19, simply ignores the allegations.

<u>CONCLUSION</u>

For all of the reasons above, Trustwell respectfully requests that the Court deny Foodwit's motion in its entirety. To the extent the Court finds any of Trustwell's allegations insufficient, Trustwell respectfully requests leave to amend.

Dated:  July 15, 2025

Respectfully submitted,

**JONES DAY**

_s/ Cary D. Sullivan_
Cary D. Sullivan (_admitted Pro Hac Vice_)
Email: carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email:  btalcott@dunncarney.com

_Attorneys for Plaintiff_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of July, 2025, I caused to be served the foregoing

**PLAINTIFF TRUSTWELL'S OPPOSITION TO DEFENDANT FOODWIT'S MOTION**

**TO DISMISS** on the following party via the following method(s):

P. Andrew McStay, Jr.
Email: andymcstay@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
Telephone: +1 (503) 241-2300
Facsimile: +1 (503) 778-5299

by:
☐   U.S. Postal Service, ordinary first class mail
☒   electronic service
☐   other (specify)  Email

*Attorney for Defendant*
*RLH Assets, LLC d/b/a Foodwit*

**JONES DAY**

  *s/ Cary D. Sullivan*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email:  btalcott@dunncarney.com