P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice* pending)
Erika H. Warren (*pro hac vice* pending)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, LLC, an Oregon limited liability company, <br><br>                  Plaintiff, <br><br>      v. <br><br> RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company, <br><br>                  Defendant. | Case No. 3:25-cv-00880-JR <br><br> **FOODWIT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      ESHA's New Admissions Fatally Undermine Its Allegations in the FAC . . . . . . . . . . . . 1

        A.      ESHA Admits It Never Knew Which Contract Governed . . . . . . . . . . . . . . . . . . . 1

        B.      ESHA Admits It Cannot Identify Anything that Foodwit Stole . . . . . . . . . . . . . . 2

II.     The Court Should Dismiss the FAC Under ESHA's Asserted Forum Selection Clause . . . 4

III.    The Court Should Dismiss ESHA's Breach of Contract Claim . . . . . . . . . . . . . . . . . . . . 6

        A.      ESHA Fails to Allege a Contract, and Admits It Never Can . . . . . . . . . . . . . . . . 6

        B.      ESHA Fails to Allege a Breach, and Admits it Never Can . . . . . . . . . . . . . . . . . . 10

IV.     The Court Should Dismiss ESHA's Trade Secret Claims . . . . . . . . . . . . . . . . . . . . . . . . 12

V.      The Court Should Dismiss ESHA's Lanham Act Claim . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.      *Dastar* and Its Progeny Bar ESHA's Lanham Act Claim . . . . . . . . . . . . . . . . . . . 18

        B.      ESHA Admits It Must Plead Under Rule 9(b), But Cannot Do So . . . . . . . . . . . 19

        C.      ESHA Fails to Plead of a Lanham Act Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                1.      ESHA Fails to Allege an Actionable, False Statement of Fact . . . . . . . . 20

                2.      ESHA Fails to Allege Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                3.      ESHA Fails to Allege Material Deception . . . . . . . . . . . . . . . . . . . . . . . . 21

                4.      ESHA Fails to Plead Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.     The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim . . . . . . . . . . . 22

        A.      The Court Should Dismiss ESHA's Or. Rev. Stat. § 646.608(1)(u) Claim . . . . . . 22

**TABLE OF CONTENTS**

*(continued)*

*Page*

B.    The Court Should Dismiss ESHA's Claim Under the Oregon UTPA . . . . . . . . .  23

    1.    ESHA Fails to Meet the Pleading Standard of Rule 9(b) . . . . . . . . . . . . 23

    2.    ESHA Fails to Allege an UTPA Violation . . . . . . . . . . . . . . . . . . . . . . . 24

    3.    ESHA Fails to Allege Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    4.    ESHA Fails to Allege Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    5.    ESHA Fails to Allege Willfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII.    The Court Should Deny Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**<u>TABLE OF AUTHORITIES</u>**

*Cases*                                                                  *Page*

*7EDU Impact Acad. Inc. v. You*,
    760 F. Supp. 3d 981 (N.D. Cal. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*A Slice of Pie Prods., LLC v. Wayan Bros. Ent.*,
    392 F. Supp. 2d 297 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Acequia, Inc. v. Prudential Ins. Co. of Am.*,
    226 F.3d 798 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Agence France Presse v. Morel*,
    769 F. Supp. 2d 295 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*A.H. Lundberg Assocs., Inc. v. TSI, Inc.*,
    No. 14-1160, 2014 WL 5365514 (W.D. Wash. Oct. 21, 2014) . . . . . . . . . . . . . . . . . . . . 18

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Arnett v. Bank of Am., N.A.*,
    874 F. Supp. 2d 1021 (D. Or. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 21, 26

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Attia v. Google LLC*,
    983 F.3d 420 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Baden Sports, Inc. v. Molten USA, Inc.*,
    556 F.3d 1300 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Beaulieu Grp., LLC v. Mohawk Indus., Inc.*,
    No. 15-124, 2015 WL 11722814 (N.D. Ga. Oct. 26, 2015) . . . . . . . . . . . . . . . . . . . . . . . 22

*BioD, LLC v. Amnio Tech., LLC*,
    No. 13-1670, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014) . . . . . . . . . . . . . . . . . . . . . . 3, 18

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
    No. 15-1370, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) . . . . . . . . . . . . . . . . . . . . 14, 15

**<u>TABLE OF AUTHORITIES</u>**

*(continued)*

*Page*

*Buffets, Inc. v. Klinke*,
    73 F.3d 965 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Burtness v. Legacy Health*,
    No. 24-1256, 2024 WL 5168364 (D. Or. Dec. 18, 2024) . . . . . . . . . . . . . . . 11, 12, 21, 26

*Caterpillar Fin. Servs. Corp. v. Venquip Machinery Sales Corp.*,
    No. 22-23002, 2023 WL 4540436 (S.D. Fl. July 14, 2023) . . . . . . . . . . . . . . . . . . . . . . 10

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cisco Sys., Inc. v. Chung*,
    462 F. Supp. 3d 1024 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Columbia Sportswear Co. v. Ferreira*,
    No. 23-594, 2025 WL 1520299 (D. Or. May 28, 2025) . . . . . . . . . . . . . . . . . . . . . 15, 17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21, 24

*de Borja v. Razon*,
    340 F.R.D. 400 (D. Or. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Defined Space, Inc. v. Lakeshore East, LLC*,
    797 F. Supp. 2d 896 (N.D. Ill. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*DeRubeis v. Witten Techs., Inc.*,
    244 F.R.D. 676 (N.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

*Ebeid ex rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fauley v. Washington Mut. Bank FA*,
    No. 13-581, 2014 WL 1217852 (D. Or. Mar. 21, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Feitler v. Animation Celection, Inc.*,
    170 Or. App. 702 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

**TABLE OF AUTHORITIES**

*(continued)*

Page

*Fleshman v. Wells Fargo, N.A.*,
    27 F. Supp. 3d 1127 (D. Or. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Foman v. Davis*,
    371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Gaede v. Delay*,
    No. 22-380, 2023 WL 2305939 (D. Or. Mar. 1, 2023), *aff'd in relevant part*,
    No. 23-35217, 2024 WL 957490 (9th Cir. Mar. 6, 2024), *cert. denied*,
    145 S. Ct. 156 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gasland Petrol., Inc. v. Firestream Worldwide, Inc.*,
    No. 14-597, 2015 WL 2074501 (N.D.N.Y. May 4, 2015) . . . . . . . . . . . . . . . . . . . . . . 5

*Genasys Inc. v. Vector Acoustics, LLC*,
    638 F. Supp. 3d 1135 (S.D. Cal. Nov. 1, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 16

*GovernmentGPT Inc. v. Axon Enter. Inc.*,
    769 F. Supp. 3d 959 (D. Ariz. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Green Sol. Recycling, LLC v. Refuse, Inc.*,
    No. 16-334, 2017 WL 1136664 (D. Nev. Mar. 27, 2017) . . . . . . . . . . . . . . . . . . . . . . .11

*Grove City Veterinary Serv., LLC v. Charter Pracs. Int'l, LLC*,
    No. 13-2276, 2016 WL 8731781 (D. Or. Feb. 5, 2016), *report and recommendation
    adopted*, 2016 WL 8711508 (D. Or. Mar. 11, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*GSS Properties, Inc., v. Kendale Shopping Ctr., Inc.*,
    119 F.R.D. 379 (M.D.N.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Harbour v. Farquhar*,
    245 F. App'x 582 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jones v. Target Corp*,
    No. 23-1301, 2023 WL 9065120 (D. Or. Nov. 17, 2023) . . . . . . . . . . . . . . .11, 13, 21, 26

*Kearney v. Equilon Enters., LLC*,
    65 F. Supp. 3d 1033 (D. Or. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*Klimek v. Perisich*,
    231 Or. 71 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**TABLE OF AUTHORITIES**

*(continued)*

*Page*

*Langan v. United Servs. Auto. Ass'n*,
    69 F. Supp. 3d 965 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Lans v. Digit. Equip. Corp.*,
    252 F.3d 1320 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 629 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Longo v. FlightSafety Int'l, Inc.*,
    1 F. Supp. 3d 63 (E.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

*Marroquin v. OneWest Bank, FSB*,
    No. 12-4688, 2012 WL 12904071 (C.D. Cal. July 12, 2012) . . . . . . . . . . . . . . . . . . . . .28

*Mendoza v. Lithia Motors, Inc.*,
    No. 16-1264, 2018 WL 1513650 (D. Or. Mar. 27, 2018) . . . . . . . . . . . . . . . . . . . . . . . .24

*Micro/sys, Inc. v. DRS Techs., Inc.*,
    No. 14-3441, 2015 WL 12748631 (C.D. Cal. Feb. 18, 2015) . . . . . . . . . . . . . . . . . . . . 19

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Nike, Inc. v. Enter Play Sports, Inc.*,
    305 F.R.D. 642 (D. Or. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Otterness v. City of Waldport*,
    130 Or. App. 550 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Pac. Dawn LLC v. Pritzker*,
    831 F. 3d 1166 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Pac. Off. Automation, Inc. v. Tracy*,
    No. 17-1484, 2018 WL 847245 (D. Or. Feb. 10, 2018) . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Puri v. Khalsa*,
    674 Fed. App'x 679 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**TABLE OF AUTHORITIES**

*(continued)*

*Page*

*Quaiz v. Rockler Retail Grp., Inc.*,
No. 16-1879, 2017 WL 960360 (D. Or. Mar. 13, 2017) . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Race Winning Brands, Inc. v. Gearhart*,
No. 22-1446, 2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) . . . . . . . . . . . . . . . . . . . . . 15

*Rasooly v. Peine*,
No. 15-4540, 2016 WL 3443382 (N.D. Cal. June 23, 2016) . . . . . . . . . . . . . . . . . . . . . 28

*Redfin Corp. v. iPayOne.com, LLC*,
No. 17-1217, 2018 WL 1397482 (W.D. Wash. Mar. 20, 2018) . . . . . . . . . . . . . . . . . . . 17

*Register.Com, Inc. v. Domain Registry of Am., Inc.*,
No. 02-6915, 2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002) . . . . . . . . . . . . . . . . . . . . 19

*Royal Ins. Co. of Am. v. Sw. Marine*,
194 F.3d 1009 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Rubicon Global Ventures, Inc. v. Chongqing Zhongshen Grp. Import/Export Corp.*,
No. 09-818, 2011 WL 13250944 (D. Or. Jan. 18, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sennco Sols., Inc. v. Mobile Techs., Inc.*,
No. 20-1426, 2020 WL 8836070 (D. Or. Dec. 21, 2020), *report and recommendation
adopted*, 2021 WL 463436 (D. Or. Feb. 9, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Simmons v. All Am. Life Ins. Co.*,
115 Or. App. 409 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*SKEDKO, Inc. v. ARC Prods., LLC*,
No. 13-696, 2014 WL 585379 (D. Or. Feb. 13, 2014) . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Soueidan v. St. Louis Univ.*,
926 F.3d 1029 (8th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Stahl L. Firm v. Judicate W.*,
No. 13-1668, 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013) . . . . . . . . . . . . . . . . . . . . . 21

*State ex rel. Rosenblum v. Johnson & Johnson*,
275 Or. App. 23 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**<u>TABLE OF AUTHORITIES</u>**

*(continued)*

Page

*Sun Hong Foods, Inc. v. Future Best Trading Inc.*,
　　No. 23-5835, 2023 WL 11197084 (C.D. Cal. Sept. 29, 2023) . . . . . . . . . . . . . . . . . . . . . . 15

*Switch Commc'ns Grp. v. Ballard*,
　　No. 11-285, 2012 WL 2342929 (D. Nev. June 19, 2012) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sybersound Records, Inc. v. UAV Corp.*,
　　517 F. 3d 1137 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Synopsys, Inc. v. ATopTech, Inc.*,
　　No. 13-2965, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) . . . . . . . . . . . . . . . . 12, 14, 15

*Vess v. Ciba-Geigy Corp. USA*,
　　317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 25

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
　　147 F. Supp. 3d 1147 (D. Or. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
　　758 F.3d 1069 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
　　901 F.3d 1081 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Youmans v. Prudential Ins. Co. of Am.*,
　　No. 91-2552, 1992 WL 266925 (4th Cir. Sept. 28, 1992) . . . . . . . . . . . . . . . . . . . . . . . 10

*Statutes and Rules*

Or. Rev. Stat. § 646.605(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Or. Rev. Stat. § 646.608(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

Or. Rev. Stat. § 646.608(1)(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

Or. Rev. Stat. § 646.608(1)(u) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Or. Rev. Stat. § 646.608(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

*(continued)*

*Page*

*Other Authorities*

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-1586, Docket No. 37 (D. Or. May 6, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-1586, Docket No. 39 (D. Or. May 8, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*RLH Assets, LLC v. ESHA Research, LLC*,
    No. 25-656, Docket No. 1 (D. Or. Apr. 1, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*RLH Assets, LLC v. ESHA Research, LLC*,
    No. 25-656, Docket No. 17 (D. Or. June 4, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **INTRODUCTION**

Since ESHA first contacted Foodwit with allegations of theft, Foodwit's response has never changed: 'we didn't steal anything from you, we know that we didn't, so if you think we did, tell us what you think we stole.' ESHA has always refused to answer this question. Until its opposition brief, which finally provided the answer: ESHA hasn't the foggiest idea. ESHA also admits, also for the first time, that it doesn't know what contract Foodwit executed, because it did not maintain its records of this information. These admissions fatally undermine its claims.

The First Amended Complaint ("FAC") has many other problems, each requiring dismissal. ESHA asserts a clause that bars this Court from hearing its allegations, and so this Court cannot hear its allegations and must dismiss them. ESHA continues to assert multiple conflicting contracts rather than alleging a specific contract as the law requires, but its opposition makes things worse by increasing the number of conflicting contracts from two to infinity. ESHA continues to assert trade secret claims but is unwilling to disclose its trade secrets. ESHA continues to assert Lanham Act claims that the Supreme Court does not allow, and continues to assert UTPA claims that Oregon law does not allow. Each of these failures is fatal to ESHA's claims. ESHA asks the Court for leave to amend but offers no amendment, and no amendment could help it anyway, as its claims require allegations of theft that ESHA cannot make. The Court should dismiss ESHA's FAC, and deny ESHA further leave to amend.

## **ARGUMENT**

### I.     **ESHA's New Admissions Fatally Undermine Its Allegations in the FAC**

#### A.     **ESHA Admits It Never Knew Which Contract Governed**

ESHA's opposition admits for the first time that ESHA never knew which contract governed its relationship with Foodwit. It didn't know when it sent Foodwit a draft complaint; it

didn't know when it filed its original or amended complaints in this action; and it doesn't know now.  Three times over the course of its opposition, ESHA admits that it "did not maintain the specific terms and conditions that Ms. Holmes accessed at the time she executed Foodwit's License Agreement," and thus cannot actually say which contract applies.  Opp. at 4, 5, 9.

This admission undermines the FAC, as well as ESHA's conduct of this action.  ESHA's complaint alleged, not on information and belief, that Foodwit agreed to multiple contractual provisions.  Docket No. 1 ¶¶ 11-19.  But ESHA had no idea whether those allegations were true.  Among other things, ESHA alleged, not on information and belief, that Foodwit consented to the District of Delaware's "personal jurisdiction over them pursuant to section 23" and that the contract required that it "shall be governed by and construed in accordance with the laws of the state of Delaware."  *Id.* ¶¶ 11, 19.  ESHA relied on these allegations to file its complaint in the District of Delaware.  But, again, ESHA had no idea whether or not these allegations were true.

ESHA still doesn't know if those allegations are true.  But it hasn't retracted them, or the similar allegations in the FAC, *e.g., id.* ¶ 11, or its opposition.  *E.g., id.* at 2 ("On February 20, 2025, pursuant to the exclusive jurisdiction and venue provision in the License Agreement, Trustwell filed suit against Foodwit in the District of Delaware").  Instead of admitting it didn't know what contract governed, ESHA tried to cover up its lack of knowledge, first by seeking to avoid filing a response to Foodwit's first motion to dismiss, and then by failing to oppose when Foodwit declined to agree.  Docket No. 12.  Only when forced by Foodwit's second motion to dismiss did ESHA admit it never knew which contract applied, despite pleading the contrary.

### B.    ESHA Admits It Cannot Identify Anything that Foodwit Stole

ESHA has always alleged theft by Foodwit on information and belief, conceding that it is not certain whether Foodwit actually committed theft at all.  *See* Mot. §§ A, D.  But ESHA has

always been cagey about *what* Foodwit might have stolen, implying that some specific theory of theft might lie behind its vague allegations. In its opposition, ESHA now concedes that it cannot name a single thing it claims Foodwit has stolen. ESHA tries to blame Foodwit for this failure:

- "Foodwit has repeatedly refused to allow Trustwell access to the Workbench product, even through a confidential third-party review. As a result, **Trustwell has not been able to determine conclusively the extent to which Foodwit copied Genesis Foods, whether in whole or in part**." Opp. at 1 (emphasis added).

- "As discussed above, Foodwit has repeatedly refused, both before and during this litigation, to allow Trustwell any access to the Workbench product, even by way of a confidential third-party review. As a result, Foodwit cannot complain that Trustwell has not been able to ascertain the precise scope and extent of Foodwit's theft and deception, **including the extent to which Foodwit copied Genesis Foods**." Opp. at 15-16 (emphasis added; citations omitted).

- "Because Foodwit has continuously refused to allow an inspection of Workbench, and otherwise refused to substantiate any of its denials of wrongdoing, **Trustwell can only assume that Workbench is nothing but a renamed copy of Genesis Foods**. But unless and until Foodwit permits Trustwell to inspect Workbench, **Trustwell is unable to specifically allege as much**." Opp. at 17 (emphasis added).

But ESHA cannot blame Foodwit, as Foodwit has no obligation to provide pre-litigation discovery allowing ESHA to "mold its cause of action around the discovery it receives" by claiming whatever it finds as a trade secret. *BioD, LLC v. Amnio Tech., LLC*, No. 13-1670, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) (quoting *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007)). ESHA filed the complaints in this action, and ESHA was obliged to complete a reasonable pre-filing investigation before doing so. *See, e.g.*, *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *de Borja v. Razon*, 340 F.R.D. 400, 413 (D. Or. 2021); *Rubicon Global Ventures, Inc. v. Chongqing Zhongshen Grp. Import/Export Corp.*, No. 09-818, 2011 WL 13250944, at *1 (D. Or. Jan. 18, 2011). ESHA has now confirmed that it commenced this action without any basis to claim Foodwit stole anything except asserted "information and belief," and without any specific claim of what Foodwit stole to support this serious allegation.

**II.    The Court Should Dismiss the FAC Under ESHA's Asserted Forum Selection Clause**

Although ESHA's FAC has many fatal failures, *see supra* and *infra*, the Court can and should dispose of the entire FAC based on ESHA's asserted forum selection clause, which bars resolution of ESHA's claims in this Court. ESHA originally filed this action in the District of Delaware, claiming a contract requiring resolution there. Mot. §§ A, II. Foodwit moved to dismiss or transfer, arguing that this contract did not exist. *Id.* §§ B, C, II. Seeking to avoid explaining that it did not know which contract governed, *see supra* § I.A, ESHA did not try to defend its asserted contract, but instead asked for transfer to this Court. *Id.* But once it achieved the transfer it requested, ESHA doubled down on its assertion that this Court cannot resolve its claims. *See, e.g.*, FAC ¶ 11; Opp. at 9 ("Trustwell continues to believe the Delaware version applies to Foodwit's License Agreement."). ESHA is wrong because its claimed contract does not exist (Mot. §§ A-C, *supra* § I.A), but the Court need not resolve that issue; it can and should dismiss this action based on ESHA's assertion that resolution cannot occur here.[1]

ESHA does not dispute the scope of the forum-selection clause. Its original complaint confirmed the clause covered all of ESHA's claims in this action (Docket No. 1 ¶ 11), Foodwit's motion noted this point (Mot. at 9), and ESHA's opposition does not contest or even address it, thus waiving any right to do so. Opp. at 9-10; *see, e.g., Pac. Dawn LLC v. Pritzker*, 831 F. 3d 1166, 1178 n.7 (9th Cir. 2016). ESHA similarly does not dispute that dismissal is appropriate if the Court finds that it cannot proceed with this action. Foodwit's motion stated that "ESHA must follow the provisions of its alleged contract, and the Court 'must dismiss' ESHA's complaint as improperly filed 'in a forum other than the one specified in a valid forum-selection clause,'

---

[1] If the Court proceeds to consider whether any contract exists including a Delaware forum- and law-selection clause, it will find that ESHA waived this issue by failing to contest it in Delaware, *see* Docket No. 13, and also that no such contract exists. *See* Docket Nos. 6, 7.

regardless of anything else." Mot. at 10 (quoting *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091 (9th Cir. 2018) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 n.8 (2013))); *see* Mot. at 4 n.3, 9-10. ESHA's opposition does not contest this point, address it, or mention either *Yei A. Sun* or *Atlantic Marine*; again, ESHA has waived any response. Opp. at 9-10; *see generally id.*; *see, e.g., Pac. Dawn*, 831 F. 3d at 1178 n.7.

With those points undisputed, the only question before the Court is whether ESHA's asserted forum-selection clause barring resolution in this Court is a "valid forum-selection clause" that requires dismissal of ESHA's complaint. (Mot. § B; Opp. at 4, 5, 9). The answer is yes: having failed to defend its asserted Delaware forum-selection clause in Delaware, ESHA cannot assert the same clause in this Court and avoid the consequences of doing so. "It does not matter that Foodwit disputes the existence of this contract: ESHA must follow it, because a party 'is not entitled to make claims based on' an agreement 'while simultaneously disclaiming the relevance of its other provisions.'" Mot. at 10 (quoting *Gasland Petrol., Inc. v. Firestream Worldwide, Inc.*, No. 14-597, 2015 WL 2074501, at *5 (N.D.N.Y. May 4, 2015); citing *Longo v. FlightSafety Int'l, Inc.*, 1 F. Supp. 3d 63, 71 (E.D.N.Y. 2014)). ESHA does not challenge this rule. Instead, ESHA tries to distinguish *Gasland* by noting its forum-selection clause was difficult to find (Opp. at 9), but that argument undercuts ESHA's claim here. In *Gasland*, plaintiff argued the forum-selection clause was not "reasonably communicated" to it and thus should not apply. 2015 WL 2074501, at *4-5. The Court disagreed and dismissed the action, finding that "Gasland is not entitled to make claims based on the Master Agreement while simultaneously disclaiming the relevance of its other provisions." *Id.* at *4-5. But ESHA cannot argue that its asserted forum-selection clause, which it claims to have drafted, was not "reasonably communicated" by ESHA to itself. Similarly, ESHA tries to distinguish *Longo* by noting the

*Longo* court's disapproval of plaintiff's arguments. Opp. at 9-10 (citing *Longo*, 1 F. Supp. 3d at 71-72). But the court's approval or lack thereof did not affect its holding that plaintiff's asserted contract's "forum-selection clause governs" and required dismissal. 1 F. Supp. 3d at 72. The same is true here. *Longo* confirms that the Court should dismiss this action.

Worse, ESHA offers no affirmative argument supporting its view that this Court should ignore its asserted forum-selection clause and proceed to adjudicate its claims. ESHA implies that Foodwit's previous motion to dismiss or transfer somehow estops this argument (Opp. at 9), but Foodwit has always argued that the contract asserted by ESHA did not exist, and that any dispute should proceed under the contract Foodwit and ESHA actually executed, which has a different forum-selection clause requiring resolution here. *See* Mot. § A-C, II; Docket No. 6 at 2-6; Docket No. 13. In response to Foodwit's unchanging view, ESHA first declined to defend its Delaware forum-selection clause in Delaware—where it should have raised this argument if it wanted to do so—but then kept asserting the same Delaware forum-selection clause in this Court (*e.g.*, FAC ¶ 11), and now argues that, because it failed to defend its Delaware forum-selection clause in Delaware, it can assert the same clause here and demand this Court resolve its claims anyway. To state this argument is to refute it. ESHA otherwise has no explanation for why the Court should consider ESHA's claims when ESHA insists on a forum-selection clause stating that this Court cannot consider its claims. There is none. The Court should dismiss this action.

## III.    The Court Should Dismiss ESHA's Breach of Contract Claim

### A.    ESHA Fails to Allege a Contract, and Admits It Never Can

As Foodwit explained in its motion, to allege a breach of contract a plaintiff must assert a specific contract; the FAC failed to do so by mixing and matching elements of two contracts, the one Foodwit executed and ESHA's asserted contract that existed only as a draft and that Foodwit

had never seen.  Mot. § I.A.  In response, ESHA's opposition breaks new legal and factual

ground, claiming for the first time that the governing "License Agreement" is not written down in

any particular document or known to anyone but ESHA, but is instead found within the

amorphous "master terms and conditions" that ESHA "maintains" in its own files and changes at

its own will.  Opp. at 4-5.  ESHA's opposition raises the number of potential contracts before the

Court from two to infinity, as ESHA claims that all iterations of these "master terms and

conditions" must be read together (*id.* at 5 & n.6), even though there is no way for Foodwit or the

Court to verify the contents of the ever-changing "master terms and conditions."  ESHA posits a

contractual multiverse, where the terms of any provision can change at any time, based on what

ESHA 'finds' in its files.  ESHA's contractual multiverse would give ESHA—and only

ESHA—absolute authority to determine which contractual provisions govern any dispute.

ESHA has already sought to wield this absolute power:  in its opposition, ESHA deigns to accept

certain provisions of the contract Foodwit and ESHA actually executed, *id.* at 5, but rejects that

agreement's forum- and law-selection clause.  *Id.* at 4.  ESHA explains that some clauses are

acceptable and others are not because . . . well, actually, it doesn't say.  *See id.*  But the beauty of

ESHA's contractual multiverse is that it doesn't have to say; ESHA's diktat is final.  Tomorrow

ESHA could reach into the multiverse and discover yet another clause, saying something new or

even modifying the clauses it has already found, and its diktat would be final then too.

     While the laws of the box office allow for such a multiverse, the law of contract does not.

A contract requires "an offer and an acceptance," and the "offer must be certain so that upon an

unqualified acceptance the nature and extent of the obligations of each party are fixed and may be

determined with reasonable certainty."  *Klimek v. Perisich*, 231 Or. 71, 78-79 (1962).  "In other

words, there must be a meeting of the minds as to the obligations each assumes under the

contract before it can be said that a contract exists." *Id.* at 79; *see also, e.g.*, *Simmons v. All Am. Life Ins. Co.*, 115 Or. App. 409, 412 (1992).  ESHA admits that it cannot plead a "meeting of the minds," because it does not know what contract Foodwit executed.  *See supra* § I.A.  ESHA tries to avoid dismissal by claiming it "*block-quotes the substantive provisions at issue*" (Opp. at 5 (emphasis in original)), but typography is not legally binding, and ESHA fails to address the question that matters:  provisions of what?  Not the agreement Foodwit executed, because ESHA continues to claim "exclusive jurisdiction and venue in Delaware" and governing Delaware law.  Opp. at 4; *see* FAC ¶ 11.  ESHA's quoted provisions arise instead from its contractual multiverse, mixing and matching potential permutations of the "master terms and conditions" known only to ESHA.  Opp. at 4; *see id.* at 4-7.  ESHA cannot show a meeting of the minds to the "master terms and conditions," which Foodwit never saw and which ESHA admits it did not track.  *See supra* § I.A.  To the contrary, both the agreement Foodwit executed and the draft agreement that ESHA originally claimed that Foodwit executed state that they may only be modified through a writing "which expressly states the intent of the parties to modify or amend this Agreement."  Docket No. 7-6 ¶ 25; Docket No. 7-9 ¶ 27.  Both documents reject the contractual multiverse ESHA alleges.  As does the law:  a "meeting of the minds" can never take place in ESHA's contractual multiverse, which yields no set of known terms and thus no way for the "obligations of each party" to be "determined with reasonable certainty."  *Klimek*, 231 Or. at 78-79.

ESHA next argues that Foodwit's cited cases are "inapplicable" because they address situations where "there was 'no way for the Court to know even generally what the terms of the contract or contracts were, or even how many agreements are at issue.'"  Opp. at 6 (quoting *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 980 (N.D. Cal. 2014)).  ESHA claims without explanation that "[n]one of these failures exist here."  Opp. at 6.  But *all* of those failures

exist here: under ESHA's theory, it can always pull new provisions from the contractual multiverse, which will bind Foodwit and constrain the Court. *See supra*; *see* Opp. at 5-6. Neither Foodwit nor the Court can ever know "even generally what the terms of the contract or contracts were, or even how many agreements are at issue." *Langan*, 69 F. Supp. 3d at 980; *see, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020).

ESHA claims that the provisions in its FAC are "substantively identical as between the Delaware and Oregon versions of the terms and conditions." Opp. at 5 n.5. But ESHA does not explain how the terms can be identical when Foodwit contends one set of them does not exist (*see* Mot. §§ A-C, I.A), when different laws require different interpretations (*id.* at 6-7), or when one set of terms specifically protects "trade secret rights" and the other does not. Docket No. 29-2 at 6. In the end, though, the terms ESHA has revealed so far do not and cannot matter: even if there were no sea of red ink, *see generally* Docket No. 29-2, and even if all the known provisions were word-for-word identical and interpreted under the same law, ESHA still could pull new provisions from the multiverse at any time, rendering the four corners of the contract inherently and irretrievably indefinite. *See Langan*, 69 F. Supp. 3d at 980; *see supra*.

Finally and briefly, ESHA argues that the "multiple versions of the License Agreement" swirling around its multiverse "should be construed as a single instrument." Opp. at 5 n.6. But the cases ESHA cites show the opposite. "Oregon courts have identified three factors that, when present together, demonstrate that multiple documents should be construed as a single contract: (1) the documents are made by the same parties; (2) the documents are executed at or about the same time; and (3) the documents are part of the same transaction." *Grove City Veterinary Serv., LLC v. Charter Pracs. Int'l, LLC*, No. 13-2276, 2016 WL 8731781, at *8 (D. Or. Feb. 5, 2016), *report and recommendation adopted*, 2016 WL 8711508 (D. Or. Mar. 11, 2016) (quoting *Arnett*

*v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1030 (D. Or. 2012) (citations omitted)).  ESHA's

contractual multiverse meets none of these requirements.  The versions of ESHA's "master terms

and conditions" are not "made by the same parties" or "executed at or about the same time," as

Foodwit executed only one contract, although ESHA does not know which one (Opp. at 5), while

any other contracts exist only in ESHA's multiverse.  *Id.* at 4-6.  Nor can these documents be

"part of the same transaction," as they directly conflict with each other, barring the Court from

reading them together.  *See, e.g., Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798,

803-04 (7th Cir. 2000) (where "terms in two documents cannot both be given effect," they "are

contradictory and cannot be read together"); *Youmans v. Prudential Ins. Co. of Am.*, No. 91-2552,

1992 WL 266925, at *5 (4th Cir. Sept. 28, 1992) ("Two provisions that directly conflict cannot

be read together; only one can remain binding.").  To bring a breach of contract claim, one must

allege a contract.  Mot. § I.A.  ESHA fails to do so, and admits it "did not maintain the specific

terms and conditions that Ms. Holmes accessed at the time she executed Foodwit's License

Agreement," and thus never can.  *Supra* § I.A.  The Court should dismiss ESHA's contract claim.

**B.    ESHA Fails to Allege a Breach, and Admits it Never Can**

As Foodwit explained, ESHA failed to allege a breach because its "ambiguous catchall

allegations" leave "to utter speculation" what Foodwit "did that constituted a breach of its

duties."  Mot. at 9 (quoting *Caterpillar Fin. Servs. Corp. v. Venquip Machinery Sales Corp.*, No.

22-23002, 2023 WL 4540436, at *3 (S.D. Fl. July 14, 2023), *Otterness v. City of Waldport*, 130

Or. App. 550, 555 (1994)); *see* Mot. § I.B.  In response, ESHA admits that the FAC is insufficient

by making new allegations in its opposition.  ESHA claims for the first time that the allegations

in paragraphs 24 and 27 would, if true, "constitute[] a breach of at least Sections 3, 6, 8, and 12

of the License Agreement."  Opp. at 7, 8.  But the FAC itself does not connect any alleged action

to any alleged breach.  FAC ¶¶ 24, 27; *see* Mot. § I.B.  When "reviewing a Rule 12(b)(6) motion, a 'court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'"  *Jones v. Target Corp.*, No. 23-1301, 2023 WL 9065120, at *3 n.2 (D. Or. Nov. 17, 2023) (emphasis in original) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)); *see also, e.g., Green Sols. Recycling, LLC v. Refuse, Inc.*, No. 16-334, 2017 WL 1136664, at *3 (D. Nev. Mar. 27, 2017).  ESHA's attempt to bridge the gaps in the FAC only serves to confirm those gaps.

But even if the FAC were drafted as ESHA rewrote it in its opposition, it would not allege a breach, because ESHA does not (and cannot) allege that Foodwit actually stole anything.  *See supra* § I.B.  The only specific allegation in these paragraphs comes in paragraph 24, which alleges on information and belief that Foodwit "exported" data from ESHA's product—but which admits in the next sentence that Foodwit's contract allowed it to do so.  *See id.*  Because ESHA has no idea whether Foodwit stole anything, *see supra* § I.B, ESHA's claims of breach, even as bolstered by its opposition, boil down to (1) Foodwit used ESHA's product, and (2) Foodwit built a competitive product.  *See* FAC ¶¶ 24, 27.  But ESHA does not allege a contract that bars Foodwit from competing, and cannot do so, because none exists.  So ESHA assumes without explanation that making a competitive product must breach something, somewhere in the contract.  The law does not allow this assumption.  A plaintiff's "claim is plausible on its face when the factual allegations allow the Court to infer the defendant's liability based on the alleged conduct," and the "factual allegations must present more than 'the mere possibility of misconduct.'"  *Burtness v. Legacy Health*, No. 24-1256, 2024 WL 5168364, at *1 (D. Or. Dec. 18, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Because ESHA does not know whether Foodwit stole anything, *see supra* § I.B, ESHA alleges only "the mere possibility of

misconduct," 2024 WL 5168364, at *1, which cannot suffice.  And ESHA can never fill this gap, since it has now admitted that it has no indication whatsoever that Foodwit stole anything and thus could have committed a breach.  *See supra* § I.B.  It thus cannot ever bring a contract claim.

## IV.    The Court Should Dismiss ESHA's Trade Secret Claims

ESHA has come up with ever-more-creative excuses for why it cannot disclose its trade secrets.  Before litigation, ESHA said disclosure must wait for litigation.  Mot. at 27-29.  Now in litigation in this action, ESHA says disclosure must wait for discovery.  Opp. at 12-13.  Now in discovery in *Foodwit v. ESHA*, Foodwit says disclosure must wait for discovery in *this* action, even though *Foodwit v. ESHA* has a trade-secrets count past the pleadings and this action does not.  *See RLH Assets, LLC v. ESHA Research, LLC*, No. 25-656 (D. Or.) ("*Foodwit v. ESHA*"), Docket No. 1 ¶¶ 197-204, Docket No. 17 ¶¶ 197-204; Declaration of Matthew S. Warren, Exs. 3, 4.  We now know the real reason behind ESHA's ever-changing excuses:  ESHA does not know whether Foodwit stole anything and cannot name anything it might have stolen, let alone a trade secret, and thus has no trade secret case.  *See supra* § I.B.  Despite this admission, ESHA continues to press trade secret claims, hoping to access Foodwit's products and claim as a trade secret whatever it finds.  The law does not allow this.  The Court must dismiss this claim.

In its motion, Foodwit argued that the FAC claimed as a trade secret 'the whole database' and 'the whole system' without specifying more, and thus provided no way for Foodwit or the Court "to ascertain at least the boundaries within which the secret lies," and no "minimally plausible factual explanation" why any part of those sources is a trade secret, relying instead on boilerplate.  Mot. at 12-13 (citing *Genasys Inc. v. Vector Acoustics, LLC* , 638 F. Supp. 3d 1135, 1151 (S.D. Cal. Nov. 1, 2022); *Synopsys, Inc. v. ATopTech, Inc*., No. 13-2965, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013)); *see* Opp. § III.  In response, ESHA claims that it is

perfectly acceptable to claim the whole system and the whole database—although the opposition admits, as the FAC did not, that ESHA can make only a compilation claim over the database—and it is perfectly acceptable to provide only boilerplate. Opp. at 10-13. It is not.

Start with the database. The FAC claims that "[t]he database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available." FAC ¶ 4. But as Foodwit's motion explained, three weeks before filing the FAC, ESHA limited its database assertion against Cronometer to a compilation claim, which does not claim any "confidential and proprietary ingredient components and related data," and merely claims a secret compilation of otherwise public data. Mot. at 11-12.[2] So paragraph 4 of the FAC is wrong, and ESHA knew it was wrong when it filed the FAC. Seeking to avoid admission of error, ESHA tries to retroactively rewrite the FAC to claim only a compilation. *See* Opp. at 11-12. But the FAC says what it says, not what ESHA now wishes it says; on this motion the "court *may not* look beyond the complaint to a plaintiff's moving papers." *Jones*, 2023 WL 9065120, at *3 n.2 (emphasis in original); *see supra* § III.B. This overstatement, which ESHA now admits without admitting, is sufficient to dismiss ESHA's trade secret claims.

Now the system. ESHA's claim of a "trade secret software system," without anything more, cannot suffice. Mot. § III. ESHA responds, without a case citation: yes it can. *See* Opp. at 10-11. But the FAC confirms that ESHA is wrong, by admitting many elements of ESHA's "trade secret software system" are not secret and cannot qualify for trade secret protection. The

---

[2] ESHA tries to spin this retrenchment as a victory, stating that "the Court held that Trustwell 'has now carried its burden to identify the compilation trade secrets at issue.'" Opp. at 11 (quoting *ESHA Research, Inc. v. Cronometer Software, Inc.*, Case No. 24-1586, Docket No. 39 (D. Or. May 8, 2025)). But ESHA omits that Cronometer withdrew its motion to compel further disclosure, stating that, "While Cronometer contests that the identified compilation is a trade secret, Cronometer does not object to Trustwell's answer as a sufficient description of the allegedly misappropriated trade secret in this case." *Id.*, Docket No. 37 (May 6, 2025).

FAC contains a list of features ESHA claims are central to its "trade secret software system," including that it is a "SaaS-based application," can provide "Automated alerts for regulatory compliance issues," and can generate a "Nutrient fact panel displayed with recipe formulation." FAC ¶ 25. These features are not trade secrets, and ESHA admits as much; although some trade-secrets plaintiffs file complaints redacting their asserted trade secrets, *see, e.g.*, *Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 15-1370, 2015 WL 8028294, at *1-2 (N.D. Cal. Dec. 7, 2015), ESHA chose to reveal these features in its public complaint. *See Synopsys*, 2013 WL 5770542, at *6-7 ("If Plaintiff filed unredacted material and now claims that material as trade secrets, Plaintiff's claims fail, since that material is publicly accessible."). The non-trade-secret features listed in paragraph 25 run the gamut of ESHA's claimed "trade secret software system," and ESHA's willingness to list them publicly casts substantial doubt on its ability to assert any trade secret claim over that "software system." If ESHA wishes to maintain a trade secret claim over its "software system," it must specify what that claim is, not what it is not. *See* Mot. at 12-14.

Finally, the boilerplate. As Foodwit explained in its motion, "[m]aterials are not trade secrets just because Plaintiff says they are: there must be some minimally plausible factual explanation for why trade secret protection applies." Mot. at 12 (quoting *Synopsys*, 2013 WL 5770542, at *6); *see* Mot. § III. Instead of providing this explanation, Foodwit explained, the FAC depends on boilerplate. Mot. at 13 (citing FAC ¶¶ 21-22, 40-46). In response, ESHA relies entirely on its boilerplate allegations in paragraphs 21 and 22. Opp. at 12-13. These paragraphs allege that ESHA "takes reasonable steps to protect the secrecy of its Trade Secrets," and as a result "derives independent economic value" from those secrets. FAC ¶¶ 21-22. "These are conclusions of law disguised as factual pleadings, and they do not state claims under *Twombly* and *Iqbal*." *Synopsys*, 2013 WL 5770542, at *6. But even if the Court gave credence to these

allegations, they would not provide a "minimally plausible factual explanation for why trade secret protection applies." *Id.* Not all secrets are trade secrets: as ESHA admits, a trade secret must derive "independent economic value from being kept secret." *Columbia Sportswear Co. v. Ferreira*, No. 23-594, 2025 WL 1520299, at *7 (D. Or. May 28, 2025) (quoting *Attia v. Google LLC*, 983 F.3d 420, 425-26 (9th Cir. 2020)); *see* FAC ¶ 21. For example, if ESHA kept secret that its product was a "SaaS-based application," that would not be a trade secret, because SaaS-based applications are ubiquitous, a competitor would know about SaaS-based applications whether or not it knew that ESHA used one, so the secrecy would yield no value. Similarly, if ESHA kept secret the software stack used to build its "SaaS-based application," that too could not be a trade secret because there are many such software stacks, all known in the industry, and a competitor could build a competitive product without knowing or caring which one ESHA used. At best, paragraphs 21-22 allege that ESHA had unspecified secrets that it kept secret; these paragraphs give no "minimally plausible factual explanation" to show that any secrets are trade secrets, and thus that "trade secret protection applies." *Synopsys*, 2013 WL 5770542, at *6.

Unable to defend its FAC, ESHA turns to its favorite tactic of delay. ESHA claims its asserted trade secrets will arrive, like Godot, if Foodwit waits until discovery. Opp. at 10-13. But ESHA ignores Foodwit's cases dismissing complaints, at the pleading stage, that provided far better disclosure than ESHA's FAC. *See* Mot. at 13-14.[3] And ESHA's own cases confirm that

---

[3] Foodwit cites five cases in which a district court granted a motion to dismiss based on insufficient trade secret disclosure. *See* Mot. § III. ESHA's opposition does not mention three of the five: *Sun Hong Foods, Inc. v. Future Best Trading Inc.*, No. 23-5835, 2023 WL 11197084, at *2 (C.D. Cal. Sept. 29, 2023); *Race Winning Brands, Inc. v. Gearhart*, No. 22-1446, 2023 WL 4681539, at *5 (C.D. Cal. Apr. 21, 2023); *Bladeroom*, 2015 WL 8028294, at *3-4. Of the other two cases, ESHA quotes *Synopsys*, 2013 WL 5770542, at *6, for statements of law, but does not try to distinguish or address its facts. *See* Opp. at 12. ESHA tries to distinguish only one of the five, *Genasys*, 638 F. Supp. 3d 1135 (S.D. Cal. 2022), but fails to do so. ESHA claims *Genasys* "is misplaced" because it "involved only 'vague references to an enormous array of potential'

its allegations are insufficient. ESHA cites *Sennco Sols., Inc. v. Mobile Techs., Inc.*, No. 20-1426, 2020 WL 8836070 (D. Or. Dec. 21, 2020), *report and recommendation adopted*, 2021 WL 463436 (D. Or. Feb. 9, 2021), Opp. at 10, but *Sennco* requires dismissal of ESHA's claims. In *Sennco*, defendant moved for judgment on the pleadings based on plaintiff's failure to identify its trade secrets. 2020 WL 8836070, at *1-2. Plaintiff's complaint identified two trade secrets. First, it identified "a structure upon which a retailer could mount a product such as a camera, smart phone, or other electronic device," and provided substantial elaboration including a list of five specific elements required to practice the secret. *Id.* at *3. Second, and this time without any elaboration, the complaint identified as a trade secret plaintiff's "ideas on manufacturing the structure." *Id.* The Court denied the defendant's motion regarding the five-element structure, but granted the motion regarding the undefined "ideas on manufacturing," which the Court found to be "impermissibly vague." *Id.* As *Sennco* explained, allegations of trade secret theft "'pass . . . the test' when they 'limi[t] the categories of the information allegedly misappropriated by [the defendant] to the particular subjects referenced.'" *Id.* (alterations in original) (quoting *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1049 (N.D. Cal. 2020)). The FAC is nowhere near the five-element structure claim that *Sennco* allowed; it is like the "ideas on manufacturing" which the Court found to be "impermissibly vague." *Id.* *Sennco* requires dismissal here.

---

sources of trade secret information." Opp. at 12 (quoting *Genasys*, 638 F. Supp. 3d at 1152). But that is exactly what is in the FAC, *see* Mot. § III. The opposition doubles down on vagueness, stating without explanation that "Foodwit has more than reasonable notice of [ESHA's] trade secret claims and can ascertain the bounds of those trade secrets." Opp. at 12-13.

ESHA also ignores the fact that some courts in this District consider a defendant's filing of an answer to admit at least some understanding of trade secrets in the complaint. *E.g.*, *Quaiz v. Rockler Retail Grp., Inc.*, No. 16-1879, 2017 WL 960360, at *3 (D. Or. Mar. 13, 2017) (citing *Nike, Inc. v. Enter Play Sports, Inc.*, 305 F.R.D. 642, 646 (D. Or. 2015)). Although Foodwit respectfully disagrees with those holdings, to avoid any chance of their application, Foodwit must challenge ESHA's deficient trade secrets identification at the pleading stage.

ESHA's other cases also require dismissal.  *Redfin Corp. v. iPayOne.com, LLC*, No. 17-1217, 2018 WL 1397482 (W.D. Wash. Mar. 20, 2018), found disclosure sufficient once limited to "the success metrics of certain marketing strategies and campaigns, market research, and other aspects underlying its '1% commission structure,'" a far cry from the FAC's claims of 'the database' and 'the system.'  *Id.* at *1-2.  Similarly, in *Quaiz*, the court allowed trade secrets where plaintiff "submitted only one design to Rockler," and "promptly provided 14 drawings" showing that design "when informed that Rockler did not retain the design that Plaintiff previously submitted."  2017 WL 960360, at *3.  Again, *Quaiz* shows that ESHA's disclosure of 'the database' and 'the system' is insufficient.  Finally, in *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147 (D. Or. 2015), the Court found that plaintiff's asserted trade secrets were "too general and generic to satisfy the reasonable particularity standard," because they did not "specify any trade secrets, 'but rather reveal[] the end results of, or functions performed by, the claimed trade secrets.'"  *Id.* at 1156 (alteration in original) (quoting *Switch Commc'ns Grp. v. Ballard*, No. 11-285, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012)).  ESHA's claims do much less than "reveal[] the end results of, or functions performed by, the claimed trade secrets," which *Vesta* found insufficient in any event.  These cases require dismissal here.[4]

Finally, in considering Foodwit's motion, the Court should not forget that ESHA could provide its claimed trade secrets at any time.  Instead of spilling ink in opposition, it would have

---

[4] ESHA cites *Columbia Sportswear*, 2025 WL 1520299, at *8, and *Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996), to support its assertion that a compilation of public information can be a proper trade secret.  *See* Opp. at 11.  But this question and therefore these cases are irrelevant to Foodwit's motion, as the FAC does not make a compilation claim; it asserts as a trade secret "a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available" (FAC ¶ 4), a claim ESHA abandoned three weeks before filing the FAC and does not defend in response to Foodwit's motion.  *See supra*; Mot. at 11-12; Opp. at 11-12.

been easier and simpler for ESHA to write down its alleged trade secrets.  Why didn't they?  The

Court knows the answer:  ESHA doesn't know what if anything Foodwit stole, *see supra* § I.B,

but it wants to claim trade secrets that match Foodwit's product, and so it must delay disclosure

until it can gain that access and "mold its cause of action around the discovery it receives" by

claiming whatever it finds.  *BioD*, 2014 WL 3864658, at \*5 (quoting *DeRubeis*, 244 F.R.D. at

681).  Decades of decisions confirm this tactic is improper, but ESHA asks the Court to ignore

those decisions.  The Court should decline this invitation and dismiss this claim.

## V.    The Court Should Dismiss ESHA's Lanham Act Claim

### A.    *Dastar* and Its Progeny Bar ESHA's Lanham Act Claim

*Dastar* and its progeny bar Lanham Act claims based on disputes regarding underlying

intellectual property rights, including ESHA's in this action.  Mot. § IV.B.2; *Dastar Corp. v.*

*Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  In its opposition, ESHA does not

address the holding in *Dastar* and does not even mention any of the cases applying it.[5]  Instead,

ESHA confirms its Lanham Act allegations depend on its claim that "Foodwit copied at least

substantial portions of Genesis Foods to create Workbench" (Opp. at 16)—precisely the kind of

claims barred by *Dastar*, which found that "the phrase 'origin of goods' in the Lanham Act"

refers "to the producer of the tangible goods that are offered for sale, and not to the author of any

idea, concept, or communication embodied in those goods," and thus declined to endorse a

"cause of action for, in effect, plagiarism."  539 U.S. at 36-38.  Foodwit covered all this (Mot.

---

[5] *See* Opp. at 16-17.  Foodwit cited *Sybersound Records, Inc. v. UAV Corp.*, 517 F. 3d
1137, 1144 (9th Cir. 2008), *Harbour v. Farquhar*, 245 F. App'x 582, 582-83 (9th Cir. 2007),
*Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009), *Gaede v. Delay*,
No. 22-380, 2023 WL 2305939, at \*4 (D. Or. Mar. 1, 2023), *aff'd in relevant part*, No. 23-35217,
2024 WL 957490 (9th Cir. Mar. 6, 2024), *cert. denied*, 145 S. Ct. 156 (2024), and *A.H. Lundberg*
*Assocs., Inc. v. TSI, Inc*., No. 14-1160, 2014 WL 5365514 at \*3 (W.D. Wash. Oct. 21, 2014).  *See*
Mot. § IV.B.2.  ESHA does not address or even mention any of these cases.

§ IV.B.2); ESHA has no response.[6]  *Dastar* and its progeny bar ESHA's Lanham Act claim.

*See* Mot. § IV.B.2; *see also, e.g.*, *Micro/sys, Inc. v. DRS Techs., Inc.*, No. 14-3441, 2015 WL

12748631, at *3 (C.D. Cal. Feb. 18, 2015) (dismissing where "sole factual predicate for

Micro/sys's Lanham Act claims is that DRS misrepresented to USPS that it had acquired all

necessary rights to the XDOS software"); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295,

307-08 (S.D.N.Y. 2011).  As a matter of law, the Court must dismiss this claim.

### B.    ESHA Admits It Must Plead Under Rule 9(b), But Cannot Do So

Foodwit established that ESHA must plead under Rule 9(b), Mot. § IV.B.1, and ESHA

agrees.  Opp. at 14.  But ESHA then invents from whole cloth a new standard for compliance

with Rule 9(b), that it need only "allege[] the factual context that forms the bases of its claim."

Opp. at 14; *see id.* at 14-15.  ESHA cites no case for this new standard, and none exists.  ESHA

cannot proceed on information and belief, because its allegations address only its trade secrets

(which it admits it knows, Opp. at 15) and statements ESHA alleges Foodwit made publicly

(which ESHA must also know), and thus include nothing outside ESHA's knowledge.  *See* Mot.

at 15-16.  Even for "matters within the opposing party's knowledge," under Rule 9(b) "a plaintiff

who makes allegations on information and belief must state the factual basis for the belief,"

which would include at least what ESHA claims Foodwit stole.  *Neubronner v. Milken*, 6 F.3d

666, 672 (9th Cir. 1993).  ESHA failed to clear this bar, because it doesn't know.  *Supra* § I.B.

---

[6] ESHA cites *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 640
(S.D.N.Y. 2018), and *Register.Com, Inc. v. Domain Registry of Am., Inc.*, No. 02-6915, 2002 WL
31894625, at *14 (S.D.N.Y. Dec. 27, 2002), Opp. at 16, but these cases have no bearing:
*Register.Com* predates *Dastar*, neither addresses this issue, and neither could overrule the
Supreme Court.  ESHA attempts to articulate a policy argument about "perverse incentives" and
"track-covering" (Opp. at 16, 17); Foodwit could not make heads or tails of this argument, but it
does not matter; *Dastar* considered policy issues at length.  *See* 539 U.S. at 28-38.

Even if ESHA can proceed under the "relaxed" 9(b) standard, that "exception does not nullify Rule 9(b)." *Neubronner*, 6 F.3d at 672. "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* The FAC lacks any of this. "[ESHA's] pleadings fail to state when the alleged misrepresentations were made; where the misrepresentations were made; or who relied on them. Such pleadings do not satisfy even a relaxed Rule 9(b) standard." *SKEDKO, Inc. v. ARC Prods., LLC*, No. 13-696, 2014 WL 585379, at *3 (D. Or. Feb. 13, 2014).

**C.    ESHA Fails to Plead of a Lanham Act Claim**

A successful Lanham Act pleading alleges "all five elements" set forth in Foodwit's motion. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071-72 (9th Cir. 2014); Mot. § IV.B. The FAC fails here as well.

**1.    ESHA Fails to Allege an Actionable, False Statement of Fact**

ESHA failed to allege "a false statement of fact," *Wells Fargo*, 758 F.3d at 1071-72, that is, an alleged statement that "include[s] false or misleading representations of fact, not simply statements of opinion." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021); *see* Mot. § IV.B.3.i. In opposition, ESHA does not cite any cases and does not try to rebut Foodwit's points; it merely repeats that "Foodwit's statements are plainly false and actionable." Opp. at 17. For the reasons set forth in Foodwit's motion, ESHA is wrong. Mot. § IV.B.3.i.

**2.    ESHA Fails to Allege Confusion**

ESHA failed to allege that a "statement actually deceived or has the tendency to deceive a substantial segment of its audience," *Wells Fargo*, 758 F.3d at 1071-72, including "when the alleged misrepresentations were made; where the misrepresentations were made; or who relied on them." *Pac. Off. Automation, Inc. v. Tracy*, No. 17-1484, 2018 WL 847245, at *3 (D. Or. Feb.

10, 2018) (quoting *SKEDKO*, 2014 WL 585379, at *3); *see* Mot. § IV.B.3.ii.  ESHA again

responds:  yes we did.  Opp. at 17-18.  For the reasons set forth in Foodwit's motion, ESHA is

again wrong.  Mot. § IV.B.3.ii.

### 3.    ESHA Fails to Allege Material Deception

ESHA failed to allege that "the deception is material, in that it is likely to influence the

purchasing decision."  *Wells Fargo*, 758 F.3d at 1071-72; *see* Mot. § IV.B.3.iii.  As Foodwit

explained, the entity that "came up with the idea for the product" is "typically of no consequence

to purchasers."  Mot. § IV.B.3.iii (quoting *Dastar*, 539 U.S. at 32-33), and ESHA's deception

allegations are "nothing more than a 'formulaic recitation of the elements' of a claim," and thus

"'conclusory and not entitled to be assumed true.'"  Mot. § IV.B.3.iii (quoting *Burtness*, 2024

WL 5168364, at *1).  ESHA responds, again without citation, that Foodwit's arguments are

"absurd."  Opp. at 18.  For the reasons set forth in Foodwit's motion and by the Supreme Court,

ESHA is again incorrect.  Mot. § IV.B.3.iii; *Dastar*, 539 U.S. at 32-33.

### 4.    ESHA Fails to Plead Injury

ESHA failed to allege that it "has been or is likely to be injured as a result of the false

statement, either by direct diversion of sales from itself to defendant or by lessening of the

goodwill associated with its products."  *Wells Fargo*, 758 F.3d at 1071-72; *see* Mot. § IV.B.3.iv.

ESHA's complaint contained only boilerplate on this point (*e.g.*, FAC ¶ 51), which the Court is

"not 'bound to accept as true.'"  *See Stahl L. Firm v. Judicate W.*, No. 13-1668, 2013 WL

6200245, at *7 (N.D. Cal. Nov. 27, 2013) (quoting *Iqbal*, 556 U.S. at 678).  In opposition, ESHA

claims that *any* sales of Workbench "necessarily will cause injury" to ESHA.  Opp. at 18.  The

Court need not decide whether this new allegation is sufficient, as it does not appear in the FAC.

*See Jones*, 2023 WL 9065120, at *3 n.2; *see supra* § III.B.  Even if this allegation did appear in

the FAC, it would not suffice.  *See, e.g.*, *GovernmentGPT Inc. v. Axon Enter. Inc.*, 769 F. Supp. 3d

959, 990 (D. Ariz. 2025); *7EDU Impact Acad. Inc. v. You*, 760 F. Supp. 3d 981, 1006 (N.D. Cal.

2024); *Beaulieu Grp., LLC v. Mohawk Indus., Inc*., No. 15-124, 2015 WL 11722814, at *5 (N.D.

Ga. Oct. 26, 2015).

## VI.    The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim

### A.    The Court Should Dismiss ESHA's Or. Rev. Stat. § 646.608(1)(u) Claim

Foodwit's motion established that ESHA failed to allege a claim under § 646.608(1)(u)

because it failed to identify any Oregon Administrative Rule, as required by Or. Rev. Stat.

§ 646.608(4).  *See* Mot. § V.A.  Professing to act from the goodness of its heart, ESHA states that

it "is willing to dismiss without prejudice its sub-(u) claim at the time."  Opp. at 19 n.12.  But

ESHA cannot excuse its pleading failure, and the Court should dismiss this claim with prejudice.

ESHA claims that, "[t]o be clear, the sub-(u) claim relates to Foodwit's pricing practices

for the stolen Workbench product, which practices are actionable under OAR 137-020-0010(6)."

Opp. at 19 n.12.  ESHA does not explain why, if it knew all along that its § 646.608(1)(u) claim

would rely on OAR 137-020-0010(6), the complaint includes no reference to 137-020-0010(6)

specifically or the OAR generally, and does not mention or hint at any claim regarding

"Foodwit's pricing practices."  Occam's Razor cuts ESHA's excuse to shreds:  the simplest

explanation is that ESHA failed to read § 646.608(4) before filing the complaint, but does not

want to admit it.[7]  But even if ESHA's convoluted excuse is correct, it cannot help ESHA.  *See,*

---

[7] ESHA tries to blame Foodwit by implying that Foodwit failed to meet and confer under
Loc. R. 7-1(a).  ESHA states that the "call lasted just over six minutes, and Foodwit filed the
motion three hours later."  Opp. at 19 n.12.  ESHA leaves this implication hanging, evidently
hoping the Court will think Foodwit delayed the parties' conference.  But that is false.  On
Friday, June 27, Foodwit emailed ESHA to confirm that it would move to dismiss, and suggested
the parties confer on Monday, June 30.  Warren Decl. Ex. 5.  ESHA responded:  "I will be
traveling back from vacation on Monday and on an airplane most of that day, so I will not be

*e.g.*, *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since inception of the cause of action").

### B.    The Court Should Dismiss ESHA's Claim Under the Oregon UTPA

#### 1.    ESHA Fails to Meet the Pleading Standard of Rule 9(b)

As with ESHA's Lanham Act claim, ESHA agrees that Rule 9(b) applies to its UTPA claim (Mot. § V; Opp. at 19-20), but then ignores Rule 9(b) entirely, arguing that, "[t]aken together," its "allegations plainly state the 'who, what, when, where, and how' of the misconduct charged." Opp. at 20 (quoting *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1043 (D. Or. 2014)). But if plaintiffs could satisfy Rule 9(b) merely by saying 'take my allegations together and figure it out yourself,' then Rule 9(b) would have no meaning. ESHA's "general allegations—lacking any details or facts setting out the 'who, what, when, where, and how' of the [alleged fraudulent conduct]—are insufficient under Rule 9(b)." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *see also Puri v. Khalsa*, 674 Fed. App'x 679, 687 (9th Cir. 2017) (under Rule 9(b), "[m]ere conclusory allegations of fraud are insufficient" and "[b]road allegations that include 'no particularized supporting detail' do not suffice'").

---

available to meet and confer. I do have availability Tuesday afternoon (PT). Please let me know what time works best on Tuesday afternoon." *Id.*, Ex. 6. After Foodwit followed up, *id.*, Exs. 7, 8, ESHA agreed to talk at 3:00 p.m. PDT on Tuesday, July 1, the day Foodwit's motion was due. *Id.*, Ex. 9. The call was short, because ESHA confirmed it would oppose every aspect of Foodwit's motion, and did not seek any further discussion on any of Foodwit's points. Foodwit filed its motion later that same day, because that is when it was due. None of this makes Foodwit responsible for ESHA's pleading failures, or its attempt to excuse those failures.

## 2.    ESHA Fails to Allege an UTPA Violation

ESHA cannot allege an UTPA violation because it claims only that Foodwit made misleading statements about its own product.  Mot. § V.B.1.  ESHA does not respond to *Mendoza v. Lithia Motors, Inc.*, No. 16-1264, 2018 WL 1513650 (D. Or. Mar. 27, 2018), but tries to save its claim by noting that *State ex rel. Rosenblum v. Johnson & Johnson* mentions that "ORS 646.608(1)(a) prohibits misrepresentations of 'facts as to identity and ownership.'"  Opp. at 20 (emphasis omitted) (quoting 275 Or. App. 23, 33 n.3 (2015)).  ESHA's argument fails on several grounds.  First, the reference in *Rosenblum* is to "[r]elated provisions, not implicated here," and has no bearing on its holding.  *Id.* at 33 n.3; *see generally id.*  Second, ESHA's view requires the "ownership" in "identity and ownership" to mean not legal ownership but underlying intellectual property status.  ESHA provides neither a rationale for this definition of "ownership" nor any indication that *Rosenblum* meant to use it rather than the standard legal definition.  Third, even if *Rosenblum* intended footnote three as a holding and further intended "ownership" to mean 'underlying intellectual property status,' such an expansion of UTPA would run squarely into Federal law, including *Dastar* and its progeny.  *See, e.g.*, *Defined Space, Inc. v. Lakeshore East, LLC*, 797 F. Supp. 2d 896, 901-03 (N.D. Ill. 2011) (compiling cases) (dismissing Illinois unfair and deceptive trade practices claim); *A Slice of Pie Prods., LLC v. Wayan Bros. Ent.*, 392 F. Supp. 2d 297, 315-316 (D. Conn. 2005) (dismissing Connecticut unfair and deceptive trade practices claim based on allegation "that defendants 'deceiv[ed] the public as to the true source and nature of the screenplay and [passed] the screenplay . . . off as its own'") (alterations in original); *see supra* § V.A.  In short, Oregon law does not allow ESHA's UTPA claim (Mot. § V.B.1), but even if Oregon law sought to stretch to allow this claim, Federal law would bar it.

### 3.    ESHA Fails to Allege Causation

Foodwit's motion established that ESHA fails to allege "a causal link between the plaintiff's loss and the defendant's actions." *Fauley v. Washington Mut. Bank FA*, No. 13-581, 2014 WL 1217852, at *4 (D. Or. Mar. 21, 2014); Mot. § V.B.2.  In opposition, ESHA resorts to irrelevancy, listing alleged statements that it does not accuse under UTPA, and which it claims Foodwit made to ESHA's parent company, not prospective purchasers.  Opp. at 21-22.  ESHA then claims that these irrelevancies have, in some unspecified way, shown "a causal link between its lost sales and Foodwit's misconduct."  *Id.* at 21.  ESHA is wrong; none of its allegations, and particularly not those called out in its opposition, state "the 'who, what, when, where, and how' of the misconduct charged."  *Kearney*, 65 F. Supp. 2d at 1043 (quoting *Vess*, 317 F.3d at 1106).  Even if Rule 9(b) did not apply, the FAC has not pleaded "sufficient detail to put [Foodwit] on notice of the casual [sic] relationship between a particular alleged unfair business practice and the ascertainable loss and damages incurred as a result of that particular conduct."  *Fleshman v. Wells Fargo, N.A.*, 27 F. Supp. 3d 1127, 1141 (D. Or. 2014).

### 4.    ESHA Fails to Allege Damages

Foodwit's motion established that ESHA failed to allege damages.  Mot. § V.B.3.  ESHA responds that it has sufficiently alleged damages "[f]or the same reasons discussed above," although it does not say what those are.  Opp. at 22.  ESHA cites *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702 (2000), Opp. at 22, but *Feitler* undermines its argument.  In *Feitler*, defendant told plaintiff that it would sell its complete collection of drawings from the making of *Plane Crazy*, an early Mickey Mouse cartoon.  170 Or. App. at 705.  But defendant lied, and withheld four drawings from the sale.  *Id.*  The Court found that "if defendant had, in fact, conveyed 'all' of its *Plane Crazy* drawings, plaintiff would have acquired a complete set of all

known 'telephone pole' scene drawings.  In these circumstances, exclusivity was a 'characteristic' of the drawings for purposes of ORS 646.608(1)(e)," and "if plaintiff did, in fact, rely on defendant's misrepresentations of exclusivity, plaintiff incurred 'ascertainable loss' within the meaning of ORS 646.638(1)."  170 Or. App. at 712-13.  *Feitler* cannot help ESHA.  The allegations in *Feitler* outlined damages with specificity:  plaintiff paid more than he otherwise would have he thought he was getting "all known 'telephone pole' scene drawings."  *Id.* at 712.  ESHA here asserts only hypothetical "consumers across the country" who "likely would do business (or continue to do business)" with ESHA.  FAC ¶ 65.  This is "nothing more than a 'formulaic recitation of the elements' of a claim," thus "'conclusory and not entitled to be assumed true.'"  *Burtness*, 2024 WL 5168364, at *1 (quoting *Iqbal*, 556 U.S. at 680-81).

### 5.     ESHA Fails to Allege Willfulness

Foodwit's motion establishes that ESHA failed to allege willfulness.  Mot. § V.B.4.  ESHA tries to fill this hole with allegations outside the FAC; it cannot.  *See Jones*, 2023 WL 9065120, at *3 n.2; *see supra* § III.B.  But even if those allegations were in the FAC, neither they nor ESHA's other allegations would show anything more than Foodwit's desire to compete with ESHA; none provide any hint of theft, as ESHA admits it cannot.  Opp. at 22; *see supra* § I.B.  Much as ESHA evidently wishes to the contrary, Foodwit's perception of a market opportunity and its decision to enter the market with a competing product does not mean Foodwit "knew or should have known that" its conduct "was a violation."  *Fleshman*, 27 F. Supp. 3d at 1141 (quoting Or. Rev. Stat. § 646.605(10)).  ESHA's willfulness allegation (FAC ¶ 58) is "nothing more than a 'formulaic recitation of the elements' of a claim," thus "'conclusory and not entitled to be assumed true.'"  *Burtness*, 2024 WL 5168364, at *1 (quoting *Iqbal*, 556 U.S. at 680-81).

## VII.    The Court Should Deny Leave to Amend

ESHA closes by stating that, to "the extent the Court finds any of [ESHA]'s allegations insufficient, [ESHA] is entitled to amend to cure any such defects." Opp. at 23; *see id.* at 23-25. But ESHA has no entitlement; amendment is in the Court's discretion, and the Court should deny it. *See* Mot. § VI.  ESHA agrees with Foodwit that "bad faith" and "futility" are reasons to deny leave. Opp. at 23 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Both are present here.[8]

Not lacking in chutzpah, ESHA claims that "there is nothing to suggest" that it "acted in bad faith." Opp. at 24.  To the contrary:

- ESHA brought and pursued its claims, all of which depend on allegations of theft, despite having no idea what it claims Foodwit allegedly stole (*supra* § I.B);

- ESHA alleged the application of a contract, including recitation of specific provisions, despite having no idea whether that contract applied (*supra* § I.A);

- Challenged on its contract allegations, ESHA tried to cover up its failure by agreeing to transfer instead of defending the indefensible (*supra* § I.A);

- ESHA pursued claims in this Court that bar resolution by this Court, and when caught continued to press those claims without explanation (*supra* § II);

- ESHA posited the unheard-of and untenable contractual multiverse, from which it could always discover new clauses to support its claims (*supra* § III);

- ESHA alleged that its database included "a substantial volume of confidential and proprietary ingredient components," three weeks after it abandoned that claim, and when caught failed to admit it had done so (*supra* § IV);

- ESHA alleged Lanham Act claims barred by the Supreme Court's opinion in *Dastar*, and when caught failed to admit its overreach (*supra* § V.A);

- ESHA alleged UTPA claims barred by Oregon law, and when caught failed to admit its overreach (*supra* § VI.A); and

- ESHA repeatedly refused to reveal its asserted trade secrets, providing instead a shifting litany of excuses, in the hope that it will gain access to Foodwit's product so that it can claim whatever it finds as a trade secret (Mot. § VI; *supra* § IV).

---

[8] ESHA claims that "[t]his is the first time Foodwit has challenged the sufficiency of [ESHA]'s pleading." Opp. at 22; *see id.* at 23.  Once again, ESHA is wrong:  Foodwit argued the original complaint depended on a contract that did not exist, and that the entire complaint failed for that reason.  Docket No. 6 § I; Docket No. 13.

When denying leave to amend, courts have found far less to be bad faith.  *See, e.g., GSS Properties, Inc., v. Kendale Shopping Ctr., Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988) (denying leave to amend and finding "bad faith in plaintiff's withholding facts clearly known to it prior to the filing of the complaint and then moving to amend the complaint where the evidence suggests that plaintiff had an ulterior purpose of either attempting to force defendant to settle or punishing defendant for failing to settle"); *Lans v. Digit. Equip. Corp.*, 252 F.3d 1320, 1328-29 (Fed. Cir. 2001) (concluding "district court remained well within its broad discretion in denying [plaintiff's] motion for leave to amend his complaint" where plaintiff "purported to own a patent he did not actually own").  ESHA has acted in bad faith throughout this litigation.  Enough is enough.  The Court should deny further leave to amend.

The Court should also deny further leave as futile.  ESHA's opposition does not propose any amendments to cure deficiencies in its FAC.  Opp. § VI.  To the contrary, ESHA states that no "additional facts or theories are necessary to render its allegations sufficient."  Opp. at 23.  Having failed to provide any potential amendment, ESHA cannot expect to receive further leave to amend.  *See, e.g.*, *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1037 (8th Cir. 2019) (affirming dismissal without leave to amend where plaintiff "did not submit a proposed amendment to the trial court, nor include anything in his brief to indicate what an amended complaint would have contained"); *Rasooly v. Peine*, No. 15-4540, 2016 WL 3443382, at *2 (N.D. Cal. June 23, 2016) (plaintiff had "two tries at stating these claims, and his failure to provide any concrete proposal for amendment suggests further amendment is futile"); *Marroquin v. OneWest Bank, FSB*, No. 12-4688, 2012 WL 12904071, at *1-2 (C.D. Cal. July 12, 2012) (dismissing claim with prejudice and denying request for leave to amend where plaintiff "failed to provide the Court with any facts or argument that indicate leave to amend would not be futile").

Finally, and conclusively, the opposition admits that ESHA has no idea whether or not Foodwit actually stole anything, and nothing to claim about what Foodwit might have stolen. *Supra* § I.B.  As Foodwit explained (Mot. at 29-30) and ESHA does not challenge (Opp. at 22-25), all of ESHA's allegations depend on its claim of theft by Foodwit.  But ESHA has now admitted that it cannot claim any theft of anything, and thus that it cannot replead its claims. *Supra* § I.B.  Where, as here, ESHA "cannot cure the flaws in [its] pleading," and because "any amendment would be futile, there [i]s no need to prolong the litigation by permitting further amendment."  *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

## CONCLUSION

For all the foregoing reasons and those set forth in Foodwit's motion, the Court should dismiss ESHA's First Amended Complaint, and deny ESHA leave to further amend.

Date:   July 29, 2025

Respectfully submitted,

*s/ P. Andrew McStay, Jr.*
P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon, 97201
+1 (503) 778-5302
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice* pending)
Erika H. Warren (*pro hac vice* pending)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*