IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ESHA RESEARCH, LLC, now known as   )
TRUSTWELL,                          )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    No. 3:25-cv-00880-AB
                                    )
RLH ASSETS, LLC, doing business as )
FOODWIT, an Oregon limited          )
liability company,                  )
                                    )
          Defendant.                )



Oral Argument

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE AMY M. BAGGIO

UNITED STATES DISTRICT COURT JUDGE

August 26, 2025

```
 1                           APPEARANCES

 2

 3   FOR THE PLAINTIFF:

 4           CARY SULLIVAN
             Jones Day
 5           3161 Michelson Drive
             Suite 800
 6           Irvine, CA 92612-4408

 7   FOR THE PLAINTIFF:

 8           BRIAN R. TALCOTT
             Dunn Carney LLP
 9           851 S.W. Sixth Avenue
             Suite 1500
10           Portland, OR 97204-1357

11

12   FOR THE DEFENDANT:

13           P. ANDREW McSTAY
             Davis Wright Tremaine, LLP
14           560 S.W. 10th Avenue
             Suite 700
15           Portland, OR 97205

16   FOR THE DEFENDANT:

17           MATTHEW S. WARREN
             Warren Kash Warren LLP
18           2261 Market Street
             No. 606
19           San Francisco, CA 94114

20

21   COURT REPORTER:   Lindsey A. Weresch, RMR, CRR, CSR
                        United States District Courthouse
22                      1000 S.W. Third Avenue, Room 301
                        Portland, Oregon 97204
23                      (503)326-8047

24

25
```

```
 1                (Tuesday, August 26, 2025, 10:37 a.m.)

 2                         P R O C E E D I N G S

 3                (Whereupon, the following proceedings were held in

 4       open court:)

 5                THE COURTROOM DEPUTY CLERK:  Your Honor, we're here

 6       today in the matter of ESHA Research, LLC, versus RLH Assets,

 7       LLC, et al.  It's Case Number 25-cv-880.  This is the time set

 8       for oral argument on defendant's motion to dismiss.

 9                Counsel, please state your appearance for the record,

10       starting with the plaintiff.

11                MR. SULLIVAN:  Good morning, Your Honor.  Cary

12       Sullivan with Jones Day on behalf of the plaintiff.

13                MR. TALCOTT:  And good morning, Your Honor.  Brian

14       Talcott with Dunn Carney on behalf.

15                THE COURT:  Hello.

16                MR. McSTAY:  Good morning.  Andy McStay, Davis Wright

17       Tremaine, for defendant.

18                MR. WARREN:  Good morning, Your Honor.  Matthew

19       Warren of Warren Kash Warren, also for the defendant.

20                THE COURT:  All right.  Good afternoon, everyone.

21       And thank you for the briefing that you have submitted.  I want

22       to check, before we dig into defendant's motion to dismiss,

23       whether there's anything that we need to address before we

24       proceed to oral argument.

25                Let me hear, from plaintiff's perspective, any
```

1    logistics or other issues we need to address first?

2              MR. SULLIVAN:  Not that we're aware of, Your Honor.

3    We did file a motion to consolidate per your order, and that's

4    pending.

5              THE COURT:  Got it.

6              Okay.  How about from defense's perspective?

7              MR. WARREN:  No, Your Honor.  We're ready to proceed.

8              THE COURT:  Okay.  Very well.

9              So the way we're going to proceed today is that I'm

10   going to start by offering my tentative thoughts on defendant's

11   motion to dismiss so that you can target your arguments here

12   this morning.

13             First, I'd like to address standing.  I asked the

14   parties to file supplemental briefing on standing, and both

15   sides did.  I thank you for that.  I do have an independent

16   duty to ensure that the plaintiff has standing so that I, in

17   fact, have subject matter jurisdiction over this matter.

18             My primary concern with standing is that Trustwell's

19   allegations may be too conclusory to support a finding that it

20   has suffered an injury in fact that is concrete,

21   particularized, and actual or imminent, as the Supreme Court

22   requires.

23             I note that Trustwell's allegations of its injury are

24   pled mostly on information and belief, along with statements by

25   Foodwit's founder about competing with Trustwell and exporting

1    Trustwell's data pursuant to the license agreement.  But

2    Trustwell does not plead an injury such as loss of sales,

3    reputation, or customer goodwill, which is information

4    presumably within Trustwell's control.

5         Trustwell also does not plead how it knows that

6    Foodwit stole or misappropriated its product.  And Ms. Holmes

7    alleged statements do not speak for themselves.

8         Compounding my concern is Trustwell's apparent

9    admission in its opposition briefing that it is only assuming

10   that Workbench is stolen from Trustwell, but that it cannot

11   verify without discovery.  And that appears in the opposition

12   at page 22, which is in the Court's docket as ECF entry 31.

13        So, with regard to standing, my question is whether

14   Trustwell's assumption and its allegations about perhaps

15   suspicious timing of Foodwit's competing product are sufficient

16   to show injury in fact.  It appears to me this is a close call,

17   and I welcome counsels' arguments on it.

18        Second, Trustwell's briefing cites extensively to a

19   declaration that Foodwit's founder, Ms. Holmes, submitted in

20   support of its motion to dismiss or, alternatively, transfer

21   venue that was filed when the case was pending in the Delaware

22   District Court.

23        That declaration was proper in the District of

24   Delaware in support of the motion to transfer, but I do not

25   believe that I can consider it with this pending motion to

1 dismiss without converting this into a motion for summary

2 judgment.

3          There are only two exceptions to this general rule at

4 the motion to dismiss stage:  Judicial notice and incorporation

5 by reference.  I do not believe that this declaration qualifies

6 for either, but I welcome the parties' thoughts and arguments.

7          Third, turning to the substantive claims, the

8 standard for a motion to dismiss is well known.  I must

9 consider well-pled allegations as true and view them in the

10 light most favorable to Trustwell.

11          I will start with claim one, the breach of contract

12 claim.  Under Oregon law a plaintiff must, at a minimum, plead

13 facts with sufficient particularity as to allege the existence

14 of a contract.  I'm not sure Trustwell has alleged the

15 existence of one specific contract for two reasons.

16          First, Trustwell's amended complaint describes two or

17 more possible contracts that could be the basis for its claim,

18 a contract with a Delaware exclusive jurisdiction clause and a

19 contract with an Oregon jurisdiction clause.  But the complaint

20 does not pick one.  It just says both are substantively

21 similar, suggesting that it does not need to pick one.  I think

22 that it probably does need to pick a contract.

23          Second, Trustwell's opposition admits that it did not

24 keep a copy of the agreement Foodwit signed in 2017, but that

25 its position is unchanged that the contract with Delaware --

excuse me -- with the Delaware provision applies, although I
note in the first amended complaint filed here in Oregon the
block quote cited appeared to track the Oregon version, not the
Delaware version.

So, as to this issue, my questions to Trustwell are,
one, if that is your position that the Delaware provision
applies, why are you proceeding in this court?  And if you did
not keep a copy of that agreement, how do you know what
agreement was breached?

Next, claims two and four are mirrors of each other,
so I will consider them together.  I am concerned that
Trustwell's pled trade secret definition is circular and only
describes the categories that could contain trade secret
information instead of defining the parameters of the trade
secrets.

I am aware that there are business reasons to keep
trade secrets close to the vest at the pleading stage and that
later trade secret identification can proceed under seal and
allow for more open disclosure.  However, there is still a
pleading burden plaintiffs must meet in trade secrets cases,
and I am not sure that Trustwell has met it.

Turning to claim three, Trustwell brings both false
advertising and false designation of origin claims under the
Lanham Act.  Foodwit's motion seems to lump these two together,
but I will consider them separately, as I believe the law

1    requires me to.

2            First, I agree with Foodwit that Dastar Corporation

3    versus 20th Century Fox Film Corporation precludes the false

4    representation of origin claim because the trade secrets here

5    are intellectual property.  I do not believe that case applied

6    to false advertising claims, but I welcome Foodwit's arguments

7    on that.

8            Separately, I am not sure Trustwell pleads a false

9    advertising claim because its list of statements in paragraph

10   26 of the amended complaint seem to me to constitute mere

11   puffery instead of factual statements that can be proven or

12   disproven.

13           Lastly, as to claim five, Trustwell brings an

14   unlawful trade practices claim under the Oregon Unlawful Trade

15   Practices Act.  I agree that Rule 9's heightened pleading

16   standard applies here because Trustwell's allegations sound in

17   fraud as Oregon law defines it.  Trustwell did not seem to

18   dispute that this standard applies in its briefing, but I

19   welcome any clarifications.

20           That standard means that Trustwell must plead the

21   who, what, when, where, and how of the alleged unlawful trade

22   practices.  My tentative thoughts are that Trustwell pleads

23   mostly on information and belief, which does not meet that

24   standard.

25           The only factually specific allegations relate to

1    Ms. Holmes' statements about Foodwit competing with Trustwell

2    and her confirmation that she could export Trustwell data under

3    the license agreement.  I am not sure those fully satisfy

4    Trustwell's heightened pleading standard for this claim, but I

5    welcome counsels' arguments on it.

6            I hope that outline is helpful to counsel as you

7    proceed with your arguments.  And, with that, we will start

8    with counsel for the defendant, since it is your motion to

9    dismiss.

10           MR. WARREN:  Thank you, Your Honor.  Should I stand

11   over here?

12           THE COURT:  Wherever you're most comfortable, sir.

13   Thank you.

14           MR. WARREN:  Okay.  So I'm happy to answer the

15   Court's questions.  Obviously, we explained in our

16   constitutional brief why we believe that standing has not been

17   alleged.  I will note that, unfortunately, as sometimes occurs

18   in simultaneous briefing cases, the parties did a little bit of

19   talking past each other.

20           I think the main thrust of their brief was -- was

21   that -- conditioned on them being able to successfully allege

22   theft, you know, that their claims could survive.  We have

23   obviously said that they have failed to allege any theft.  I

24   think that they have been very clear that they are not doing

25   that.

```
1              I will note that there's a bit of confusion that has
2    been, I think, introduced by footnote one to their
3    constitutional brief, which I will read.  Begin footnote one,
4    it says, "In its opposition to Foodwit's motion to dismiss,
5    Trustwell explained that it has not been able to determine
6    conclusively" --
7              THE COURT:  Excuse me.  I'm sorry.  I need you to
8    read really slowly 'cause we have the court reporter here, so
9    if you could just pace it down a bit.
10             MR. WARREN:  I apologize.
11             THE COURT:  Go ahead.  If you would restart with
12   footnote one.
13             MR. WARREN:  Sure.  So I'll go back, actually, a
14   second.  You know, the Court has already noted that Trustwell
15   made some statements about how it didn't know what we stole,
16   and we used those statements in our reply brief.  We summarized
17   them in Section 1(B).
18             We said in our reply brief that those statements were
19   admissions that ESHA didn't know what it thinks we stole and
20   that those admissions undercut their whole case and made
21   amendment futile.  And they briefly addressed those arguments
22   in footnote one of their constitutional brief, which I will now
23   read, and I promise to read more slowly.
24             Begin footnote, "In its opposition to Foodwit's
25   motion to dismiss, Trustwell explained that it," quote, "has
```

1  not been able to determine conclusively the extent to which

2  Foodwit copied Genesis Foods, whether in whole or in part,"

3  closed quote.  And there's a citation to Docket 31 at 1.

4        "In other words, Trustwell has been able to determine

5  that Foodwit copied at least substantial portions of Genesis

6  Foods, but Trustwell has not been able to determine whether

7  Foodwit copied the entire platform," end footnote.  And that's

8  constitutional brief, docket number 38, page one, footnote one.

9        So footnote one is saying that we misread their

10  statements in their opposition brief; and that, when they made

11  those statements in their opposition brief, what they really

12  meant was that they did know some things that we stole, just

13  maybe not all of them.

14        And the problem with that is if that is true, then it

15  further undercuts many statements in the opposition brief.

16  I'll give the Court some examples.  At the top of page two,

17  ESHA states, quote, "Because Foodwit has repeatedly refused to

18  substantiate its position, Trustwell has no choice but to plead

19  certain facts on information and belief because those facts are

20  uniquely within Foodwit's knowledge," period, closed quote.

21        If footnote one is accurate and what they meant in

22  the opposition brief was that they did know some things that we

23  stole, then that statement is not correct because what we stole

24  is not uniquely within our knowledge -- what we allegedly

25  stole -- I'm not going to keep saying that over and over again,

1  but I trust the Court doesn't think I'm up here admitting

2  things.

3          And so I was not sure -- you know, I don't know if

4  footnote one is accurate or if the statement in the opposition

5  brief is accurate.  But if footnote one is accurate, then I

6  think the Court's analysis, while generally correct, has an

7  additional element, which is that, to the extent that they are

8  claiming in the opposition brief that they don't have to, you

9  know, provide information because it is uniquely within our

10 knowledge, they've now said in footnote one that it's not

11 uniquely within our knowledge and they do have that

12 information.

13         So I don't know how to deal with that, but I do think

14 it's important that we try to resolve that today because I

15 think that the Court's preliminary analysis implicates that.

16 The only other comment that I will make is, with regard to the

17 Lanham Act, we obviously did think that the Dastar case applies

18 to all Lanham Act claims.  I think, in particular, the progeny

19 of that case apply to all Lanham Act claims.

20         That said, as the Court notes, I think it's also true

21 that the statements are mere puffery.  And so, to the extent

22 the Court does not believe or does not want to decide that

23 Dastar applies, it is -- it is perfectly reasonable to dismiss

24 that case on the puffery grounds as well.

25         With that, I'm happy to answer the Court's questions.

```
1                THE COURT:  Nope.  Thank you.
2                MR. WARREN:  Thank you, Your Honor.
3                THE COURT:  Mr. Sullivan.
4                MR. SULLIVAN:  Good morning, Your Honor.  Cary
5     Sullivan.
6                All right.  We have a laundry list of issues to work
7     through.  Let me start with standing.  That's how Your Honor
8     began, and I'll do the same.
9                In our constitutional brief, we cited a whole bunch
10    of cases, and I'll give you actually the -- the circuits are in
11    accord, with a few minor exceptions.  Second, Third, Fourth,
12    Seventh, Eighth, Ninth, and the Federal Circuit all agree that
13    misappropriation may be inferred from two facts:  One, access
14    to a trade secret; and, two, production of a similar product.
15               We've alleged both of those facts here.  And all of
16    those circuits are aligned that that is sufficient, at the
17    pleading stage, for standing purposes, to plead a trade secret
18    misappropriation claim under the DTSA.  We've cited a whole
19    bunch of cases.  The Ninth Circuit, the Sixth Circuit, Seventh
20    Circuit, District Courts in California, Northern District,
21    Southern District, District Court of Oregon, all in accord
22    here.
23               We have clearly pled at the outset they had access to
24    our trade secrets by virtue of this seven-year license
25    agreement.  And I'll come back to the details in the license
```

1    agreement, but they had access to it as a result of this

2    seven-year license agreement.

3        And what we can tell is the product that they ended

4    up producing, Workbench, the portions that we have seen are

5    carbon copies of Genesis Foods. Now, I will admit at the

6    outset we have not seen the entirety of the platform. We've

7    requested access to that repeatedly. We've been denied.

8        The portions that we have seen look to be identical.

9    So what I can tell you is we've pled access to our trade

10   secrets by this limited use license agreement. We've pled the

11   fact that they produced Workbench. And we've pled the

12   substantial identity in a number of features and

13   functionalities.

14       And that is sufficient under the law in the majority

15   of the circuits here to plead a trade secret misappropriation

16   claim under the DTSA for standing purposes. And I won't go

17   through the cases, but they are in our brief.

18       Let me move to, I think, what is maybe the first

19   issue for the defense, which is the contract issue, the terms

20   and conditions here. So, as Your Honor pointed out, there is

21   no dispute that there was a license agreement. Ms. Holmes has

22   stated, under penalty of perjury, in her declaration -- we've

23   pled this -- there was a license agreement. It began in 2017

24   and terminated last year, a seven-year period.

25       What is in dispute are the terms and conditions that

1   apply to that license agreement.  As Your Honor pointed out,

2   Trustwell maintains, for recordkeeping purposes, going back

3   that far, a single master set of terms and conditions that was

4   in use for a particular period of time.

5          And it evolves over time.  But, for a particular

6   period of time, they maintain a master set, which apply to all

7   the license agreements during that period.  And the master set

8   during that period called for jurisdiction of venue in

9   Delaware.

10         That's how this whole District of Delaware case was

11  filed in Delaware.  In response to that, in their motion to

12  transfer, Ms. Holmes said, "Listen, I didn't sign those terms

13  and conditions.  Those were never presented to me.  In fact,

14  I've signed a version that involves Oregon jurisdiction and

15  venue."

16         And she attaches those to her declaration, basically

17  saying, "I didn't sign the version you said I signed.  Here's

18  the version I signed."  And that's under penalty of perjury.

19  That's a declaration.  It's also a party admission.  So our

20  position is we can't disprove that you signed the version that

21  contains the Oregon terms and conditions.

22         You're telling us, under penalty of perjury, that's

23  what you signed.  Okay, we'll take you at your word.  There's

24  no dispute that she signed the license agreement on behalf of

25  Foodwit.  She's saying the terms and conditions that applied

were what she attached to her declaration.  Okay, that's what
we're willing to go with.

　　　　　We're not claiming two versions of the declaration
[sic].  We did try to explain how this dispute came about.  But
what we're saying is if her position is that she signed the
version calling for Oregon jurisdiction and venue, that's what
we'll sue under.  Those are the terms and conditions that we
will say apply to this transaction, to this relationship.

　　　　　And those terms and conditions substantively are
almost identical, save -- obviously, setting aside the
jurisdiction and venue.  So there's not two competing
contracts.  We're willing to go along with Ms. Holmes'
testimony, which is that the Oregon version is what applied to
this license and this relationship.  And that's what we're
proceeding under.

　　　　　And the provisions that we've cited in the complaint
come from that Oregon version.  So there's no dispute.  Our
complaint doesn't cite the Delaware version -- the first
amended complaint that was filed in this Court does not cite
the Delaware version.  We cite and quote only the Oregon
version, and that's based on Ms. Holmes' sworn testimony in the
Delaware court.

　　　　　THE COURT:  May I pause you there, please, sir.

　　　　　MR. SULLIVAN:  Yes, of course.

　　　　　THE COURT:  So why are you also asserting that there

1   is the Delaware contract?  And, secondly, if -- or the -- you

2   know what I mean by that?

3               MR. SULLIVAN:  Yeah.

4               THE COURT:  And, secondly, if there is a separate

5   version that includes a jurisdiction provision specific to

6   Delaware and some differences in the language of the contract,

7   isn't the defendant entitled to possibly sue under that

8   contract?  Like, why do you get to choose?

9               MR. SULLIVAN:  We're not choosing.  Ms. Holmes chose.

10  Ms. Holmes said in her declaration, "I've never seen the" --

11  and I'm using the Delaware version, just for purposes of

12  conversation.  Ms. Holmes says, in sum and substance, "I wasn't

13  given the Delaware version.  I've never seen that version.  The

14  only version I gave and the only version I signed was the

15  Oregon version."

16              Okay, we're willing to take her at her word.  We will

17  proceed under the Oregon version of this contract.  She said

18  she never signed the Delaware version.  If she never signed it,

19  it never applied to the transaction, to the relationship.

20  She's saying the only version that she signed incorporated the

21  Oregon version.

22              And let's assume that's true.  Those would be the

23  terms, conditions, provisions, and limitations that apply to

24  this relationship.  There's only one license agreement that can

25  apply.  She's saying it's the Oregon version, and so we're

1   willing to take her at her word.

2          THE COURT:  Isn't it strange to continue to assert,

3   both in the first amended complaint and in your opposition

4   briefing here, that there is this other version that applies;

5   and you continue to believe that's the proper contract between

6   the parties?  And what do I do with that?

7          MR. SULLIVAN:  Respectfully, Your Honor, that -- if

8   that was your impression, that was not our intent.  What we --

9   what we intended or meant to convey was that our belief was

10  based on the master terms and conditions that were in effect

11  during the period of time in question, and that's why we pled

12  the Delaware version.  That's why we filed suit in Delaware.

13         What Ms. Holmes is now saying is she never got that;

14  she never signed it; she never saw it; she doesn't agree to it.

15  Okay, so then that obviously couldn't apply.  We were trying

16  simply to explain the source of the dispute here.  But,

17  obviously, if Ms. Holmes swears under penalty of perjury that

18  she never signed or agreed to the Delaware version, that can't

19  apply to the relationship.  She's saying she signed the Oregon

20  version.  And we're willing to take her at her word, and we're

21  willing to pursue under those claims.

22         THE COURT:  Thank you.

23         MR. SULLIVAN:  All right.  I'm just moving through

24  the notes here that you raised initially, Your Honor.

25         Trade secret definition, Your Honor raised issues

1    about whether it was circular or not specific enough.  I think

2    the case law is very clear in this area that specificity is

3    not -- the pleading stage is not the point for specificity.

4    Specificity comes later.

5        We've alleged that there's essentially two basic

6    trade secret or trade secret categories here.  One is the

7    software platform called Genesis Foods, and two is the embedded

8    database within that software platform.  Those are the two

9    general categories we're pursuing here.

10        So Your Honor's aware, the defense has already

11    propounded an interrogatory seeking particularity and

12    specificity as to those trade secret definitions.  And we'll

13    respond to that in due course.  But the pleading stage, there's

14    no requirement that trade secrets be pled with specificity.

15        Obviously, we can't publicly disclose what we're

16    declaring as trade secrets because that would waive protection.

17    So our position is that the pleadings, by identifying the

18    categories at issue -- and there's really no question about

19    what's at issue here.

20        They've paid us tens of thousands of dollars a year

21    to access and use our Genesis Foods system.  To claim that they

22    don't understand what that system is, is a little absurd, I

23    will say.  But we have defined two basic categories.  One is

24    the Genesis Foods system, and two is the embedded database

25    within that.

 1          That database, by the way, Your Honor, is the same

 2    database that was at issue in the Cronometer matter.  The

 3    software platform was not at issue in Cronometer.

 4          So I would say that our pleadings, in terms of

 5    defining the general categories of trade secrets here, are

 6    plenty sufficient for pleading purposes.  We will respond with

 7    a particularized definition to the discovery request we

 8    received, but that is not required at the pleading stage.

 9          Dastar, a couple of comments on Dastar, Your Honor.

10    First of all, that's a copyright case, right?  That involved a

11    TV series about World War II that was first broadcast in the

12    late 1940s.  Decades go by.  Copyright expires.  Information

13    enters the public domain.

14          It was taken by the defendant in that case.  It was

15    modified and edited and repackaged and sold as something new,

16    right?  As a matter of law, that doesn't have application here.

17    The information in Dastar was under no restriction.  It was

18    information in the public domain.  There was no restriction on

19    anyone accessing or using that.

20          That is not the case here.  This is information that

21    is tightly regulated by the license agreement.  It's a limited

22    use license agreement, and the terms and conditions are very

23    clear about what you can and what you cannot do with this

24    information.  Dastar is talking about public domain information

25    that has no restriction on use whatsoever.

1          Secondarily, Dastar involved modifications, changes

2    to that information, changes to the television series that was

3    then repackaged and sold as something new.  Our position here,

4    just to be clear, the portions of Workbench that we have seen

5    so far appear to be identical to Genesis Foods.

6          We have pled that in the complaint.  I believe that's

7    paragraphs 25 and 27 of the complaint.  I believe we said that

8    they copied or replicated at least substantial portions of

9    Genesis Foods, and that's also footnote one.  Our position is

10   that at least portions of Workbench are identical to Genesis

11   Foods.

12         But we haven't seen the whole thing.  We don't know

13   the portions that we haven't seen.  Obviously, we can't tell

14   you whether they are copied or not.  That's why a lot of the

15   allegations are pled on information and belief.  We know what

16   we've seen, and we've pled the features and functionalities.

17         I believe -- Your Honor, I believe that's paragraph

18   25, if I remember correctly.  We've pled the features and

19   functionalities that have been copied in the portions that

20   we've seen.  So we've identified specific portions of Workbench

21   that, to our belief, had been identically copied, just a

22   copycat version with a new name.

23         But we also don't know what we don't know.  There's

24   portions that we have not been able to access.  And until we

25   can see the whole platform, we don't know whether it's an

1    identical copy with just a new name, whether it's been

2    partially copied.

3              We don't know the portion that we haven't seen.  So

4    we can't tell whether Dastar, as a factual matter, is even

5    applicable here because we don't know whether they've made any

6    modifications whatsoever to the Genesis Foods platform.  The

7    portions that we've seen do not appear to have been modified or

8    changed in any way, but we do acknowledge that there are

9    portions that we have not seen.

10             One comment I will raise with respect to false

11   advertising in the -- in our constitutional brief.  So long as

12   you allege a misrepresentation and directly competing

13   competitors, which there's no dispute here that -- Foodwit

14   describes itself as a competitor, and so do we.  There's no

15   dispute that Foodwit and Trustwell are competitors -- a

16   commercial injury is presumed sufficient to establish standing,

17   right?

18             So there's no -- although we have -- I would take a

19   step back, and I would say we've actually pled specific injury

20   here.  There's no need, at the pleading stage, to do that

21   because a commercial injury is presumed based on a

22   misrepresentation from a direct competitor.  So I'll leave the

23   false advertising and Lanham Act claims with that.

24             The UTPA, I think, has a similar analysis to the

25   Lanham Act.  I will say that we didn't find a lot of guidance

1    in the cases addressing standing and some of these pleading

2    challenges at the outset to the UTPA case -- or to the claim.

3              But I would say it is analytically similar to the

4    Lanham Act claim, right?  They're based on false advertising

5    statements.  And I just want to put into context some of the

6    statements that we pled as misrepresentations.  And these come

7    from paragraph 26 of the complaint.

8              "Engineered by industry veterans."  So if we're

9    assuming -- for the sake of argument, let's assume that the

10   entirety of Workbench is an identical copy of Genesis Foods.

11   That is at least misleading, if not an outright lie, to say it

12   was engineered by Foodwit's industry veterans.

13             The implication there is that they, with their

14   industry veterans, their expertise, have engineered and created

15   this, as they call, revolutionary, break-through, unmatched --

16   those are all words that we've quoted and come from their

17   website -- product, this new product.

18             Now, if we're in the world that it's an entire

19   copycat version of Genesis Foods, all of that is false, as a

20   matter of fact, because they didn't develop anything -- they

21   simply copied ours -- and misleading in the extreme because the

22   natural implication of all of these statements is that Foodwit,

23   on its own, legitimately, through its own time, investment,

24   effort, hard work, developed this incredible new product,

25   right?

1          It's -- "validated by regulatory experts, engineered

2     by industry veterans, trusted by leading brands, break-through,

3     unmatched, revolutionary."  That's simply false if it's a

4     copycat of our product.

5          The natural implication of all those statements is

6     they have -- they had made this incredible new product; it's

7     new to the industry; it's incredibly powerful; when, in fact,

8     all it is, is our product.  So I would say that you cannot

9     describe in that context these representations as mere puffery.

10          They're marketing and advertising the Workbench

11     product as a new result of their own legitimate industry

12     expertise and efforts, all of which we would say, based on what

13     we know so far, that they've copied at least substantial

14     portions of our product, appear to be just outright false.

15          I worked through my list at least of the comments

16     that Your Honor made.  I'm happy to answer any questions that

17     you may have.

18          THE COURT:  I think I'd like to hear the response

19     from defendant first.

20          MR. SULLIVAN:  Of course.

21          THE COURT:  Thank you for your argument.  I

22     appreciate it.

23          MR. WARREN:  Thank you, Your Honor.  I'm going to

24     stand here because I have multiple binders open, so I --

25          THE COURT:  Take your time.  And you can feel free to

```
 1   be seated, too, if that's easier for you.  I appreciate the
 2   show of respect.
 3              MR. WARREN:  I'm constitutionally unable to sit down
 4   in front of the Court, Your Honor.
 5              THE COURT:  As you wish.
 6              MR. WARREN:  That's not something that's possible for
 7   me.
 8              Let me just proceed generally in the order that
 9   Mr. Sullivan proceeded.  He started by saying that one could
10   allege trade secret misappropriation based on production of
11   a -- quote, "production of a similar product," closed quote.
12   He didn't say similar to what, and that's a key distinction
13   here because I think Mr. Sullivan would like to imply that just
14   the two products have to be similar, but that's not true.
15              What the cases say -- and I'll cite from the
16   Stratienko case that they cite, 429 F.3d 592 at 602.  It says,
17   "Misappropriation of a trade secret requires that an idea not
18   be one that is already used by others.  Dr. Stratienko must
19   demonstrate similarity between his secret idea" -- that's in
20   italics in the decision -- open paren, "not his product in
21   general," closed paren, "and Cordis' device."  Cordis is the
22   defendant.
23              And so I don't agree with ESHA that they have alleged
24   misappropriation based on any belief.  And paragraph 25 lists
25   some points of similarity.  We'll come back to that.  But we
```

know that the things in paragraph 25 are not trade secrets
because they put them in their complaint and they filed it on
PACER and it's available for anybody to download.

          And so the things in paragraph 25 can't be trade
secrets.  And so anything -- any similarities between -- you
know, Your Honor has to look at the complaint in the best
possible light for the plaintiff.  Even assuming that those
things are all similar, that does not meet the standard.

          The standard is that they have to allege -- at
minimum, they have to allege something is similar to the trade
secret.  I submit that they have not done that, and I submit
that there is no standing because of that.

          That brings me naturally to Mr. Sullivan's comments
about the sufficiency of their allegations of a trade secret.
And the words that he used -- and the Court can check the
transcript on this -- were, quote, "general categories," closed
quote.  He said it several times.

          And so I will read from our brief -- our opening
brief, page 13, docket number 28, quote, "Catch-all phrases and
general categories of information are insufficient to properly
identify plaintiff's trade secrets," closed quote.

          That's the Sun Nong Foods case, and that's on page --
like I said, page 13 of our brief.  You know, Mr. Sullivan
really hopes that the Court will just sort of say, "Oh, it's
the pleading stage.  Forget about it, Jake.  It's Chinatown.

1    It doesn't matter."

2            But that's not what the cases say.  The cases say

3    there is a minimum.  And the Court did mention that in

4    Your Honor's, you know, tentative discussion.  And I think

5    saying that they've identified the general categories pretty

6    clearly admits that they have failed to meet this standard.

7            And, you know, separating that out, they have

8    essentially -- you know, the complaint says, "Well, there's a

9    database and there's an application."  The database, I think,

10   we've already discussed.  You know, the -- what's in the

11   complaint is not what's in their brief.

12           What's in the complaint is the database is a trade

13   secret.  What's in their brief, after we called them out on it,

14   is, "Oh, it's just a compilation."  But the Court has to look

15   at what's in the complaint.  And I think they've now admitted

16   that they failed to allege a trade secret based on what's in

17   the complaint.

18           That brings us to the application.  The only points

19   of similarity that Mr. Sullivan noted are the points of

20   similarity in paragraph 25.  We know that what's in paragraph

21   25 is -- is not a trade secret because it's all listed on the

22   public docket.

23           That also brings me to -- it's not necessarily

24   entirely clear from the complaint, but we didn't have access to

25   the source code of this product, right?  The complaint does

1   allege that the product is a software, is a service-based

2   product.  We had access to it as a service.

3        And so Mr. Sullivan sort of implies that it would've

4   been very easy for us to, you know, copy the product.  And

5   that's just not true.  I don't know what the Court can do with

6   that at the motion to dismiss stage, but I wouldn't want to let

7   those allegations pass unchallenged because it is simply

8   incorrect to say that we could just download the program and

9   use the program.

10       That's just not how it worked.  We had access to the

11  software.  We built our own software.  There is an allegation

12  that, in building our own software, you know, we copied

13  features from their software.  And they've put forward their

14  allegation in paragraph 25.  None of those are trade secrets.

15  I think that doesn't matter, and I think that they haven't

16  alleged standing as a result.

17       I do want to talk briefly about the contracts.

18  Mr. Sullivan said, quote, "We will proceed," closed quote,

19  based on the contract that we, Foodwit, have alleged is the

20  correct contract.  That's the first time I've heard that; but

21  what matters for this Court, at the motion to dismiss claim

22  [sic], is what's in the complaint.

23       And what's in the complaint is two contracts.  And so

24  if Mr. Sullivan wants to proceed on one contract, then I think

25  Mr. Sullivan agrees with me that the Court should dismiss the

claim as it currently stands.  And if he wants to try to

replead, maybe he can try to replead.  I have issues that I

think we've made clear about their ability to replead based on

their opposition brief.

But I don't want the Court to think that because

Mr. Sullivan has, you know, stood here and said, "That is what

we will do going forward," that that should affect how the

Court rules on the motion, because it shouldn't.

The Court, you know, should look at the motion and

should look at the complaint and realize that at least two

contracts -- two or more, depending on whether or not you

credit the opposition brief -- at least two contracts are

alleged in the complaint.  That is insufficient.  They have to

get down to one.

I will just very briefly say, you know, Dastar is a

copyright case.  Its progeny did expand that to other areas,

other than copyright.  We've cited those cases in our briefs.

And, obviously, I don't agree at all that it is a

misrepresentation for us to say that our product is a

break-through or is engineered by -- by food industry veterans,

just because they allege that we have copied certain, you know,

non-trade secret features that they have listed in paragraph 25

of their complaint.

With that, I'm happy to answer the Court's questions.

THE COURT:  Thank you.

```
1              All right.

2              MR. SULLIVAN:  Your Honor, may I be heard for just a

3   couple of brief points?

4              THE COURT:  Yes, of course.

5              MR. SULLIVAN:  I apologize.  I'll be --

6              THE COURT:  No, that's all right.  This is important.

7   I welcome it.  Come on back.

8              MR. SULLIVAN:  I appreciate that.

9              THE COURT:  And, of course, we'll give Mr. Warren the

10  final word, since its his motion.  But if you'd like to make a

11  clarification, I'm all ears.  Go ahead, sir.

12             MR. SULLIVAN:  Thank you, Your Honor.

13             Just in the order raised, as Mr. Warren points out,

14  we can't plead specific trade secrets in our complaint because,

15  as he would -- I would fully expect him to do, he will say, by

16  making those public, we have waived the protection.  That's one

17  of the reasons that, at the pleading stage, specificity has

18  never been required because disclosure waives the protection on

19  the first instance.

20             We have identified two basic categories of trade

21  secrets:  The software platform and the embedded database.

22  We -- this Court has found in the recently settled Cronometer

23  matter that we sufficiently identified the database as a

24  compilation trade secret.

25             I take issue with the notion that it's somehow not
```

1    really a trade secret because it's a compilation or maybe not,

2    like, afforded the same rights as a regular -- no, a

3    compilation trade secret is a trade secret, same with all the

4    protections of any other trade secret.

5        We've asserted a compilation trade secret with

6    respect to the database.  And the Court has found that we

7    sufficiently identified as a compilation trade secret in the

8    Cronometer matter that same database, right?

9        So the issue -- really the only issue here is how do

10   we define the software platform, but we can't define it with

11   specificity in the complaint because, as Mr. Warren just did,

12   he will say we waived the protection by doing so.  So we have

13   pled it generally.  It is a notice pleading requirement, to put

14   them on notice.

15       They paid us tens of thousands of dollars a year to

16   access our platform.  For them to say, "We somehow don't really

17   understand what you're talking about when we're talking about

18   Genesis Foods," I would say doesn't really stand up to

19   scrutiny.

20       I'll just make one more brief point, Your Honor, with

21   respect to the contract provision.  As I read it and as I've

22   filed it, the complaint does not plead that we're operating

23   under two different versions of the terms and conditions.  We

24   block quote the provisions at issue, which come from the Oregon

25   version.

1      We cite breaches of those block quoted provisions at

2 issue, which come from the Oregon version.  We do take a

3 paragraph to explain how the parties arrived at the dispute as

4 to which version attaches.

5      But we say we take Ms. Holmes at her word.  She

6 submitted sworn testimony.  And we quote, cite, and allege

7 breaches only of the provisions of the Oregon version of the

8 terms and conditions.

9      I respectfully submit that we don't put two versions

10 of the contract at issue.  We describe the dispute between the

11 parties; but then we refer only to the Oregon version in our

12 block quotes, in our cites, and in our allegations of breaches

13 with respect to the causes of action.

14      I appreciate the indulgence, Your Honor, and that's

15 all I have.

16      THE COURT:  Okay.  Thank you.

17      Final word, Mr. Warren.

18      MR. WARREN:  Sure.  Start with the last first.

19 Paragraph 11 includes the following sentence, quote, "Trustwell

20 believes a version of the ULA," U-L-A, "that provides for venue

21 and jurisdiction in Delaware applies," period, closed quote.  I

22 don't know what to do with that.  That's an allegation in a

23 complaint.  And so I just -- I don't think it's factually

24 correct to say that they don't put two contracts at issue.

25      I guess I'll proceed in reverse order.  Mr. Sullivan

1    said that it was not credible for Foodwit to say -- and I'm --

2    this is a quote within a quote, so I'm going to try not to be

3    confusing.

4          He was essentially saying that we're saying that we

5    don't understand what they're talking about when they say

6    Genesis Foods.  That's just false.  We understand what Genesis

7    Foods is.  We just don't think it has any trade secrets in it.

8    And so what we're entitled to, at the pleading stage, is

9    something that tells us what they're talking about in terms of

10   what the trade secrets are, not just general categories.

11         That brings me, I think, to my final point, which is

12   Mr. Sullivan says, "Oh, well, it's too bad we can't file a

13   public complaint, and so we can't put our trade secrets in the

14   complaint."  We cited a case, the BladeRoom case, in our

15   briefing where the plaintiff filed a confidential complaint.

16         And so they're -- they cannot rely on this sort of

17   circular excuse, which is to say they can't be particular at

18   the pleading stage because it's going to be public, when

19   there's a way to make their complaint not public.  If they

20   believe that the only way that they can allege -- and, you

21   know, the plaintiff is the master of his complaint.

22         If they believe that the only way that they can

23   allege the trade secrets is to do so confidentially, then they

24   should call me up and ask if I will consent to that motion.

25   And I will tell Your Honor in advance that I will.  And we can

1    figure that out, you know, when it happens.  But that does not

2    give them an excuse to avoid the pleading standards that are

3    set forth in the cases.

4         And that's all I have, Your Honor.

5         THE COURT:  Okay.  Thank you.

6         MR. WARREN:  Thank you, Your Honor.

7         THE COURT:  Okay, Counsel.  So what I'm going to do

8    is I'm going to take this motion under advisement.  I feel like

9    I'll be able to turn this around pretty quickly so that you all

10   can have my decision on this matter.

11        I'm thinking it probably also makes sense to hit the

12   pause button on the motion to consolidate in the reverse

13   parties case so that we can have a decision on the pending

14   motion to dismiss in the event that it impacts the motion to

15   consolidate litigation.

16        Any objection to me doing that as well, Mr. Sullivan?

17        MR. SULLIVAN:  No objection, Your Honor.  I would

18   just simply say that we would request -- and I think we've

19   briefed it -- leave to amend if Your Honor's inclined to

20   dismiss.

21        THE COURT:  Yes, understood.

22        Okay.  And any objection from Mr. Warren if we pause

23   the litigation on the motion to consolidate?

24        MR. WARREN:  No, Your Honor.  And, given the timing

25   of our response immediately after the Labor Day holiday, I

1  think my associates will write you a thank-you note.  So I

2  appreciate that.

3        And since he mentioned leave to amend, I'm not going

4  to burden the Court with it, but we obviously think that

5  there's sufficient bad faith to deny leave to amend.

6        THE COURT:  Okay.  Thank you.

7        Once again, I would like to say I appreciate the

8  briefing that was done by both sides.  I also appreciate oral

9  argument.  That was very helpful in my understanding of the

10 issues.  The defendant's motion to dismiss will be taken under

11 advisement.  And, again, look for a decision very soon.

12        So thank you all.  All right.  We'll be in recess.

13                        * * *

14        (Court adjourned, 8-26-25 at 11:23 a.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3        ESHA Research, LLC, v. RLH Assets, LLC

 4              Case No. 3:25-cv-00880-AB

 5                    Oral Argument

 6                  August 26, 2025

 7

 8          I certify, by signing below, that the foregoing is

 9    a true and correct transcript of the record, taken by

10    stenographic means, of the proceedings in the above-entitled

11    cause.  A transcript without an original signature,

12    conformed signature, or digitally signed signature is not

13    certified.

14

15    /s/Lindsey A. Weresch, RMR, CRR, CSR

16    _____

17    Official Court Reporter        Signature Date: 8/28/2025
      Oregon CSR No. 14-0427         CSR Expiration Date: 6/30/2026

18

19

20

21

22

23

24

25
```