IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

ESHA RESEARCH, LLC,
*now known as* Trustwell,

        Plaintiff,

    v.

RLH ASSETS, LLC,
*doing business as* Foodwit,

        Defendant.

Case No. 3:25-cv-00880-AB

OPINION & ORDER

**BAGGIO, District Judge:**

    Plaintiff ESHA Research, LLC, also known as Trustwell, brings this case against Defendant RLH Assets, LLC, doing business as Foodwit. Plaintiff brings five claims: (1) breach of contract; (2) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (3) false advertising and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (4) misappropriation of trade secrets under the Oregon Uniform Trade Secrets Act ("OUTSA"), Or. Rev. Stat. § ("ORS") 646.461 *et seq.*; and (5) unlawful trade

1 – OPINION & ORDER

practices under the Oregon Unlawful Trade Practices Act ("UTPA"), ORS 646.605 *et seq*. *See* Am. Compl. ("FAC") ¶¶ 32-67, ECF No. 18.

Defendant moves to dismiss Plaintiff's First Amended Complaint. *See* Def.'s Mot. Dismiss FAC ("Def.'s Mot."), ECF No. 28. The Court heard oral argument on Defendant's Motion on August 26, 2025. For the following reasons, the Court grants Defendant's Motion to Dismiss and dismisses Plaintiff's First Amended Complaint without prejudice.

## BACKGROUND

Plaintiff is "a leading SaaS provider to the food and supplements industries . . . ." FAC ¶ 3. Plaintiff was founded in 1981 in Oregon, and after a merger in 2022, rebranded as Trustwell. FAC ¶ 8. In 1991, Plaintiff introduced Genesis Foods—a software system that "automates processes for food and supplement formulation, labeling calculations, and regulatory compliance . . . ." FAC ¶ 2. Plaintiff "has continually updated and improved its Genesis Foods system over the years[,]" and in 2024, Plaintiff "launched the next generation of the system . . . ." FAC ¶ 3. "Genesis Foods is backed by [Plaintiff's] industry-leading food and ingredient database," which contains nutrient data "for more than 90,000 brand name and generic foods and ingredients." FAC ¶ 4. Plaintiff alleges that such "database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available." FAC ¶ 4. Plaintiff defines "[t]his proprietary, confidential, and trade secret software system and related database" as its "Trade Secrets." FAC ¶ 4.

In 2017, Defendant "entered into a limited-use license agreement" with Plaintiff to "access and use the Genesis Foods system for its own internal business use." FAC ¶ 5. Plaintiff alleges that it "generates revenue and income" through these licensing arrangements, and that such arrangements represent "a substantial portion of [Plaintiff's] business." FAC ¶ 21. Plaintiff

2 – OPINION & ORDER

and Defendant renewed their licensing agreement annually until it expired on August 29, 2024. FAC ¶ 14.

Recently, Defendant launched a competing product to Genesis Foods—Workbench. FAC ¶ 24. Plaintiff alleges, "[o]n information and belief," that Workbench is "based on and derived from Genesis Foods with respect to at least a large number of features and functionalities . . . ." FAC ¶ 25 (listing the various features and functionalities of Workbench that Plaintiff believes are derived from Genesis Foods). Plaintiff alleges that Defendant "secretly accessed and used the new Genesis Foods system to help design and build Workbench, and exported a substantial volume of proprietary data from Genesis Foods for that purpose." FAC ¶ 24. As support for its allegations, Plaintiff further alleges that Defendant's founder and majority owner, Becki Holmes, stated that Defendant is a "'super user' of Genesis Foods," that "there were [no] viable competitors to Genesis Foods in the market because of its unique and powerful regulatory compliance tools[,]" and that Defendant "had a greater industry reach than [Plaintiff] . . . ." FAC ¶ 23.

Plaintiff also alleges, on "information and belief," that Defendant "falsely and deceptively marketed, and continues to falsely and deceptively market, [Plaintiff's] . . . Trade Secrets as [Defendant's] own creation . . . ." FAC ¶ 28. Plaintiff identifies various representations made by Defendant about Workbench on its website and alleges that such representations are false and omit "that it secretly leveraged [Plaintiff's] Trade Secrets to design and build Workbench." FAC ¶ 26-27.

Plaintiff originally brought this case in the District of Delaware on February 20, 2025, pursuant to a Delaware exclusive jurisdiction and venue clause in its alleged contract with Defendant. *See* Compl. ¶¶ 11-12, ECF No. 1. Defendant then moved to dismiss or transfer the

3 – OPINION & ORDER

case to the District of Oregon. *See* Def.'s Mot. Dismiss or Transfer, ECF No. 5. Judge Richard Andrews issued a short order transferring the case to this District on May 7, 2025. *See* Order, ECF No. 14. Plaintiff filed its First Amended Complaint on May 27, 2025. Defendant moves to dismiss all five claims.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id.* at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

Defendant moves to dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6). Defendant argues, among other things, that Plaintiff's First Amended Complaint fails to identify

4 – OPINION & ORDER

a contract, fails to adequately identify Plaintiff's trade secrets, is contrary to Supreme Court precedent, and is contrary to Oregon law and the rules of the Court. Def.'s Mot. 1. Plaintiff responds that its allegations are sufficient, particularly because of Defendant's "refus[al] to allow [Plaintiff] access to the Workbench product, even through a confidential third-party review." Pl.'s Opp'n Def.'s Mot. ("Pl.'s Opp'n") 1, ECF No. 31.

Before resolving these issues, however, the Court must determine whether Plaintiff has constitutional standing and whether the Court may consider the Declaration of Becki Holmes—which is cited throughout Plaintiff's Opposition—in resolving Defendant's Motion to Dismiss. Although the Court finds Plaintiff has standing, the Court ultimately concludes that Plaintiff's allegations fail "to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). Accordingly, the Court grants Defendant's Motion to Dismiss and dismisses Plaintiff's First Amended Complaint without prejudice.

**I.      Constitutional Standing**

The Court has an independent obligation to ensure the requirements of standing are met before turning to the merits of a case. *See Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) ("The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case."). To that end, the Court ordered optional briefing on standing prior to oral argument. *See* Order, ECF No. 37. The Court concludes that Plaintiff has sufficiently pleaded an injury-in-fact to satisfy constitutional standing.

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be

5 – OPINION & ORDER

redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540 (2020). An injury-in-fact must be "actual or imminent, not conjectural or hypothetical . . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified).

Plaintiff's primary allegation relating to its injury is that Defendant "secretly accessed and used [Genesis Foods] to help build and launch a competing product called Workbench." FAC ¶ 2. Plaintiff alleges it accessed screenshots and other public information about Workbench and alleges that "Workbench is based on and derived from Genesis Foods with respect to at least a large number of features and functionalities . . . ." FAC ¶ 25. Plaintiff further alleges that Defendant "exported a substantial volume of proprietary data from [Genesis Foods] while simultaneously developing and building Workbench[,]" and that Defendant "and [Becki] Holmes essentially duplicated at least substantial portions of Genesis Foods." FAC ¶ 25.

Read in the light most favorable to Plaintiff, these allegations suggest a loss of its market position and Defendant's "ability to gain a competitive advantage through the use of confidential information to develop a competing product . . . ." *SolarPark Korea Co. v. Solaria Corp.*, No. 23-CV-01181-AMO, 2023 WL 4983159, at *8 (N.D. Cal. Aug. 2, 2023) (citation omitted). The Court concludes that these allegations are sufficient to plead an injury-in-fact to satisfy constitutional standing.

## II.     Declaration of Becki Holmes

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)" without converting that motion into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence [("FRE")] 201." *Id.* A court can take judicial

notice under FRE 201 of "an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (quoting FRE 201(b)). Alternatively, "incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. Although the parties do not address whether the Court may consider the Holmes Declaration, Holmes Decl., ECF No. 7, in resolving Defendant's pending Motion to Dismiss, the Court must decide whether it can.

Plaintiff frequently cites to the Holmes Declaration in its opposition to Defendant's Motion to Dismiss. *See* Pl.'s Opp'n 3-7, 9-10, 22 (citing "Dkt. 7"). The Holmes Declaration was initially filed in support of Defendant's Motion to Dismiss or Transfer. *See* Def.'s Mot. Dismiss or Transfer. Crucially, Plaintiff cites the Holmes Declaration to assert:

> Because Ms. Holmes declared under penalty of perjury that the License Agreement she executed incorporated the Oregon version of the terms and conditions, and because [Plaintiff] did not maintain the specific terms and conditions that Ms. Holmes accessed when she executed [Defendant's] License Agreement, [Plaintiff] is willing to take Ms. Holmes at her word.

Pl.'s Opp'n 4-5 (citing Holmes Decl. ¶¶ 12-14). In other words, Plaintiff admits that it lost a copy of the contract that Defendant agreed to in 2017 but would like to take Becki Holmes at her word that an agreement exists and proceed in this case on that assumption.

The Court concludes that the Holmes Declaration neither qualifies for judicial notice nor is properly incorporated by reference. The Holmes Declaration does not contain facts that are "'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja*, 899 F.3d at 999 (quoting FRE 201(b)(1)-(2)). And while the Holmes Declaration attaches three versions of what could be the operative agreement in Plaintiff's First Amended Complaint, *see* Holmes Decl. Exs. 6, 9-10, the Court cannot determine which of these, if any, is the applicable agreement, *see, e.g.*, FAC ¶¶ 15-19 (citing

7 – OPINION & ORDER

provisions from the alleged operative agreement). Accordingly, the Court may not consider the Holmes Declaration or its exhibits in resolving Defendant's Motion to Dismiss.

**III.    Motion to Dismiss Under Rule 12(b)(6)**

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6). The Court agrees with Defendant that Plaintiff's claims should be dismissed and dismisses Plaintiff's First Amended Complaint without prejudice.

  A.  <u>Claim One: Breach of Contract</u>

Plaintiff alleges a breach of contract. FAC ¶¶ 32-35. Defendant moves to dismiss this claim, arguing that Plaintiff's First Amended Complaint fails to properly allege the existence of a valid contract. *See* Def.'s Mot. 4-7. The Court agrees with Defendant.

Under Oregon law, "to state a claim for breach of contract, a plaintiff must, at a minimum, plead facts with sufficient particularity as to allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 275–76, 564 P.3d 142, 146 (2025) (en banc).

In Plaintiff's initial complaint, Plaintiff alleged that Defendant breached a contract with a Delaware exclusive jurisdiction and venue clause. Compl. ¶¶ 11-12. After stipulating to Defendant's Motion to Dismiss or Transfer the case to Oregon, Plaintiff amended its complaint and acknowledged that the parties have a dispute about the applicable contract:

> There is a dispute between the Parties as to the appropriate venue and jurisdiction for this action, based on the terms and conditions of an End User License Agreement ("EULA") that applies to [Defendant's] License Agreement with [Plaintiff]. [Plaintiff] believes a version of the EULA that provides for venue and jurisdiction in Delaware applies. [Defendant] believes a version of the EULA that provides for venue and jurisdiction in Oregon applies. However, the substantive terms and conditions in both versions of the EULA are virtually identical, so there is no dispute as to the substantive terms and conditions that apply.

8 – OPINION & ORDER

FAC ¶ 11. Then, in Plaintiff's Opposition, Plaintiff admits that it "did not maintain the specific terms and conditions that [Becki] Holmes accessed at the time she executed [Defendant's] License Agreement." Pl.'s Opp'n 4. Yet, Plaintiff also admits that its position is unchanged that a "master set of terms and conditions" apply that provide for "exclusive jurisdiction and venue in Delaware." *Id.*

Considering these allegations, the Court agrees with Defendant that Plaintiff's breach of contract claim must be dismissed because Plaintiff fails to adequately allege the existence of a valid contract. Pleading facts "with sufficient particularity as to allege the existence of a contract" is the cornerstone of a breach of contract claim. *Huskey*, 373 Or. at 275–76. Here, Plaintiff admits that it did not keep a copy of the agreement that Becki Holmes signed, but it also continues to allege that a Delaware agreement applies. If the Delaware agreements applies, however, it would foreclose proceeding in this District. Because Plaintiff refuses to specify which contract Defendant allegedly breached, Defendant cannot reasonably respond to this lawsuit. Without the foundational understanding of which contract Plaintiff believes Defendant breached, the Court cannot move forward in its analysis of Defendant's argument about venue or whether the remaining elements of a breach of contract are properly alleged. Accordingly, Plaintiff's breach of contract claim is dismissed without prejudice.

      B.      <u>Claims Two and Four: Misappropriation of Trade Secrets Under the DTSA and the OUTSA</u>

Plaintiff alleges misappropriation of trade secrets under the DTSA and the OUTSA. FAC ¶¶ 36-46, 52-62. Defendant moves to dismiss these claims, arguing that Plaintiff has failed to adequately identify its trade secrets because Plaintiff makes "vague references to the software system and related database, . . . provides no way for [Defendant] to ascertain at least the boundaries within which the [trade] secret lies, and [provides] no minimally plausible factual

9 – OPINION & ORDER

explanation why any part of those sources is a trade secret." Def.'s Mot. 13 (citation modified). The Court agrees with Defendant.

"Because the DTSA and OUTSA are similar, many courts" evaluate them together. *Columbia Sportswear Co. v. Ferreira*, No. 3:23-CV-000594-AB, 2025 WL 1520299, at *6 (D. Or. May 28, 2025). "To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret[;] (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)). Under the DTSA, a "trade secret" is defined as "all forms and types of financial [and] business . . . information" that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); *see also InteliClear, LLC*, 978 F.3d at 657 ("[T]he definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret.").

Similarly, "[t]o establish a claim under the [OUTSA], a plaintiff must demonstrate that: (1) the subject of the claim qualifies as a statutory trade secret; (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation." *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004). Like the DTSA, under the OUTSA, "trade secret" is defined as:

> [I]nformation, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that: (a) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure

or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

ORS 646.461(4).

The Ninth Circuit requires Plaintiffs to "refer to tangible trade secret material instead of referring to a system which potentially qualifies for trade secret protection." InteliClear, LLC, 978 F.3d at 658 (citation modified). Allegations "that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectable trade secrets are insufficient to state a claim." Five Star Gourmet Foods, Inc. v. Fresh Express, Inc., No. 19-CV-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020) (citation modified); see, e.g., Nat'l Specialty Pharmacy, LLC v. Padhye, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (dismissing with leave to amend the plaintiff's "catchall categories of the *kinds* of trade secrets that might be at issue"). Instead, a plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." InteliClear, LLC, 978 F.3d at 658 (citation modified).

Here, the Court agrees with Defendant that Plaintiff's identification of its trade secrets is insufficient at this stage of the proceeding. Plaintiff defines its "Trade Secrets" as its "proprietary, confidential, and trade secret software system and related database . . . ." FAC ¶ 4. Plaintiff then lists "features and functionalities" that it alleges are similar between Genesis Foods and Workbench, but it does not specify which of these, if any, are Plaintiff's trade secrets. *See* FAC ¶ 25. Plaintiff's definition of its trade secrets, thus, is circular and states only categories of information where trade secret material may lie. This does not give Defendant sufficient notice to respond to Plaintiff's claim. See Space Data Corp. v. X, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (holding that the plaintiff's trade secret allegations

11 – OPINION & ORDER

were insufficient to give the court or the defendants notice of the boundaries of the plaintiff's case).

Moreover, to the extent Plaintiff's trade secrets are publicly available, Plaintiff claims a compilation trade secret. *See* Pl.'s Opp'n 11-12. Plaintiff, however, fails to allege this in its First Amended Complaint. Nonetheless, Plaintiff's compilation claim strengthens the need for it to plead where the boundaries between free, public information and Plaintiff's trade secrets lie. *See Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1151–52 (S.D. Cal. 2022) ("[S]ome of the information within the categories listed is publicly available, as Plaintiff itself acknowledges . . . which, without more, fails to provide the Court with a roadmap to distill what information may be a trade secret and what may not."). Because Plaintiff's First Amended Complaint fails to adequately identify its trade secrets, Plaintiff's DTSA and OUTSA claims are dismissed without prejudice.

    C.    <u>Claim Three: False Advertising and False Designation of Origin Under the Lanham Act</u>

Plaintiff alleges a Lanham Act claim under two theories: false designation of origin and false advertising. FAC ¶¶ 47-51. Defendant moves to dismiss this claim, arguing that Plaintiff's false designation of origin theory is precluded by the Supreme Court's decision in *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23 (2003), and Plaintiff's false advertising claim fails to allege actionable, false statements of fact. Def.'s Mot. 14-20. The Court agrees with Defendant.

To establish a false designation of origin theory under 15 U.S.C. § 1125(a)(1)(A), "the plaintiff must show that the defendant (1) uses in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services."

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-CV-06012-SI, 2024 WL 1772833, at *12 (N.D. Cal. Apr. 23, 2024) (citation modified). Similarly, to establish a false advertising theory under 15 U.S.C. § 1125(a)(1)(B), the plaintiff must show that:

> (1) a statement made in a commercial advertisement or promotion is false or misleading; (2) that it actually deceives or has the tendency to deceive a substantial segment of its audience; (3) that it's likely to influence purchasing decisions and (4) that the plaintiff has been or is likely to be injured by the false advertisement."

*Id.* (citation omitted).

As a preliminary matter, the Court joins other district courts in the Ninth Circuit in concluding that Rule 9(b)'s heightened pleading standard applies to Plaintiff's Lanham Act claim because it "is predicated on the theory that [Defendant] engaged in a knowing and intentional misrepresentation . . . ." *OD's on Fin., LLC v. Mena*, No. 25-CV-03027-SI, 2025 WL 2021881, at *2 (N.D. Cal. July 18, 2025) (quoting *Yelp, Inc. v. ReviewVio, Inc.*, No. C 23-06508 WHA, 2024 WL 2883668, at *2 (N.D. Cal. June 6, 2024)). Accordingly, Plaintiff's allegations "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation modified). Such specificity "may be relaxed as to matters within the opposing party's knowledge," however, the fraud allegations must still be "accompanied by a statement of the facts on which the belief is founded." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Starting with Plaintiff's false designation of origin theory, the Court agrees with Defendant that *Dastar Corp.* precludes this theory of Plaintiff's Lanham Act claim. In *Dastar Corp.*, the Supreme Court concluded that "the phrase 'origin of goods' in the Lanham Act . . . refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. "Thus, a reverse passing off claim cannot be brought to prevent the copying of intellectual property." *OTR Wheel*

13 – OPINION & ORDER

*Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018) (explaining that "[r]everse passing off" occurs when "[t]he producer misrepresents someone else's goods or services as his own" (citation omitted)). "Copying is dealt with through the copyright and patent laws, not through trademark law." *Id.* In *Beijing Meishe Network Tech. Co.*, the district court dismissed the plaintiff's false designation of origin theory for this reason. 2024 WL 1772833, at *14. The court reasoned that the plaintiff's theory was not cognizable because it alleged "that [the] defendants incorporated its source code into their TikTok app (ie. [sic] copied the source code) and passed the TikTok app off as developed from their own source code." *Id.*

Here, similarly, Plaintiff's false designation of origin theory alleges that Defendant "accessed and used" Plaintiff's "trade secret software system and related database . . . to build and launch Workbench[,]" FAC ¶¶ 4-5, i.e., Defendant incorporated Plaintiff's Genesis Foods system into Workbench and passed it off as developed from Defendant's own software system and related database. Under *Dastar Corp.*, such allegations are not cognizable. Accordingly, Plaintiff's false designation of origin theory for a Lanham Act claim is dismissed without prejudice.[1]

Turning to Plaintiff's false advertisement theory, the first element of this theory is a false statement of fact by the defendant in a commercial advertisement about its own or another's product. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014), *as amended* (Mar. 11, 2014). Only factual statements that are "specific and measurable [and] capable of being proved false or of being reasonably interpreted as a statement of objective fact" are actionable. *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 1001 (9th Cir. 2024) (citation

---

[1] The Court notes that amendment of Plaintiff's false designation of origin theory is likely futile; however, because Plaintiff's other claims are dismissed without prejudice, the Court also dismisses this theory of a Lanham Act claim without prejudice.

14 – OPINION & ORDER

modified). Here, the Court concludes that all the allegedly false statements listed in paragraph 26 of Plaintiff's First Amended Complaint, *see* FAC ¶ 26, are "mere puffery" instead of actionable statements—they are not factual and cannot objectively be proven wrong, *Oracle Int'l Corp.*, 123 F.4th at 1001. Accordingly, Plaintiff's false advertisement theory for a Lanham Act claim is dismissed without prejudice.

      D.      <u>Claim Five: Unlawful Trade Practices Under the Oregon Unlawful Trade Practices Act</u>

Plaintiff alleges an unlawful trade practice under the UTPA. FAC ¶¶ 63-67. Defendant moves to dismiss this claim arguing that Plaintiff's allegations fail to satisfy Rule 9(b)'s heightened pleading standard. Def.'s Mot. 22-24. The Court agrees with Defendant.

To state a UTPA claim, a plaintiff must plead "(1) a violation of ORS 646.608(1); (2) causation; (3) damages; and (4) willfulness by the defendant." *Stafford v. Taffet*, No. 1:24-CV-01612-AA, 2025 WL 1736831, at *5 (D. Or. June 23, 2025). "Pleading an ascertainable loss of money or property is an essential element of a private UTPA claim." *Id.* (citation omitted). If a UTPA claim "sounds in fraud," the heightened pleading standard applies. *Latham v. PWCC Marketplace, LLC*, No. 3:21-CV-01381-MO, 2022 WL 226807, at *2 (D. Or. Jan. 25, 2022). To determine whether a claim sounds in fraud, "federal courts look to the elements of fraud under state law." *Id.*

First, the Court finds that Rule 9(b)'s heightened pleading standard applies to Plaintiff's UTPA claims. Plaintiff alleges fraud as defined by Oregon law. *Compare* FAC ¶¶ 23-28, *with Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 351-52, 258 P.3d 1199, 1209 (2011) (defining Oregon common-law fraud). And Plaintiff does not dispute that the heightened pleading standard applies. *See* Pl.'s Opp'n 19-21 (arguing under Rule 9(b)'s heightened pleading standard).

15 – OPINION & ORDER

Second, Plaintiff alleges that Defendant violated "at least sections 646.608(1)(a), (b), and (u) of the Oregon Revised Statutes." FAC ¶ 64. Defendant challenges Plaintiff's 646.608(1)(u) ("sub-(u)") claim because Plaintiff failed to identify an administrative rule that was violated in its First Amended Complaint as required by ORS 646.608(4). Def.'s Mot. 22. In response, Plaintiff agrees "to dismiss without prejudice its sub-(u) claim at this time." Pl.'s Opp'n 19 n.12.

Plaintiff's two remaining UTPA claims are based on subsections (a) and (b) of ORS 646.608(1):

> A person engages in an unlawful practice if in the course of the person's business, vocation, or occupation the person does any of the following:
>
> > (a) Passes off real estate, goods or services as the real estate, goods or services of another [or]
> >
> > (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services.

The Court concludes that Plaintiff has not adequately pleaded a violation of either subsection under Rule 9(b)'s standard. Plaintiff alleges on "information and belief" that Defendant "essentially duplicated at least substantial portions of Genesis foods," FAC ¶ 25, and that Defendant's "false and misleading representations and omissions" have a "tendency to confuse and deceive . . . consumers across the country . . . ," FAC ¶ 65. However, Plaintiff's only factual support for this is Becki Holmes's statements about Defendant's potential to compete with Plaintiff and her request for confirmation that the license agreement allows Defendant to export Plaintiff's data. Pl.'s Opp'n 20; FAC ¶¶ 23-24. Those statements do not meet Rule 9(b)'s requirement to plead the "who, what, when, where, and how" of Plaintiff's claim that Defendant fraudulently copied Plaintiff's product and sold it as Defendant's own. See Kearns, 567 F.3d at 1126 (affirming the district court's dismissal of the plaintiff's complaint because the plaintiff "failed to plead his averments of fraud with particularity"). Additionally, Plaintiff's allegations

16 – OPINION & ORDER

are contradictory because Plaintiff claims that Defendant "secretly accessed" the Workbench materials but also that it had a license agreement to access the materials. FAC ¶ 5. It is unclear to the Court how an allegation that Defendant exported Plaintiff's data can support a fraud claim if Defendant's license allowed it to export data. Accordingly, the Court concludes Plaintiff has not pleaded the first element of its UTPA claim. This claim is dismissed without prejudice.

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss [28] and DISMISSES Plaintiff's First Amended Complaint [18] without prejudice. Plaintiff is granted leave to file a Third Amended Complaint within 30 days of this Opinion and Order.

IT IS SO ORDERED.

DATED this 22nd day of September, 2025.

*Amy M. Baggio*
―――――――――――――――
AMY M. BAGGIO
United States District Judge