Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| **ESHA RESEARCH, LLC., now known as TRUSTWELL,**<br><br>Plaintiff,<br><br>v.<br><br>**RLH ASSETS, LLC, doing business as FOODWIT, an Oregon limited liability company,**<br><br>Defendant. | Civil No. 3:25-cv-00880-AB<br><br>**PLAINTIFF TRUSTWELL'S OPPOSITION TO DEFENDANT FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**[ORAL ARGUMENT REQUESTED]** |

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 2

ARGUMENT ....................................................................................................... 4

I.    FOODWIT'S RULE 12(B)(1) JURISDICTIONAL CHALLENGE MUST BE DENIED FOR MULTIPLE, INDEPENDENTLY DISPOSITIVE REASONS. ................................................................................................... 4

    A.    Foodwit's Jurisdictional Challenge Is Procedurally Impermissible. ......... 4

    B.    Foodwit's Jurisdictional Challenge Is Also Barred By New And Controlling Ninth Circuit Authority. ...................................................... 5

    C.    This Court Will Continue To Have Subject Matter Jurisdiction Over At Least Trustwell's DTSA Claim With Respect To Its Compilation Database Trade Secret In Any Event. ................................. 7

        1.    Trustwell's Database Is A Classic Compilation Trade Secret. ................................................................................................ 7

        2.    This Court Already Held That Trustwell Sufficiently Identified Its Compilation Database Trade Secret. ........................ 9

    D.    Foodwit Fails To Demonstrate Public Disclosure Of Trustwell's Genesis Foods-Related Trade Secrets. ................................................... 9

    E.    This Court Also Will Continue To Have Subject Matter Jurisdiction Over Trustwell's Lanham Act Claims. ............................... 12

II.    FOODWIT'S RECYCLED RULE 12(B)(6) ARGUMENTS SIMILARLY FAIL. ................................................................................................... 13

    A.    TRUSTWELL SUFFICIENTLY PLEADS TRADE SECRET MISAPPROPRIATION. ......................................................................... 14

        1.    Trustwell Sufficiently Alleges The Trade Secrets At Issue. ......... 14

        2.    There Is No Dispute That Trustwell Adequately Pleads Secrecy. ....................................................................................... 16

        3.    Trustwell Plainly Alleges Misappropriation. ............................... 16

    B.    TRUSTWELL SUFFICIENTLY PLEADS BREACH OF CONTRACT. ....................................................................................... 18

    C.    TRUSTWELL SUFFICIENTLY PLEADS TWO SEPARATE LANHAM ACT CLAIMS. .................................................................... 19

        1.    *Dastar* Does Not Bar Either Lanham Act Claim Here. .............. 20

        2.    Trustwell Sufficiently Pleads The Elements Of Its Lanham Act Claims. ................................................................................. 22

**TABLE OF CONTENTS**
**(continued)**

Page

        i.     Trustwell Sufficiently Alleges Actionable, False
             Statements Of Fact. .......................................................... 23

        ii.    Trustwell Sufficiently Alleges Reliance. ......................... 24

        iii.   Trustwell Sufficiently Alleges Deception. ....................... 25

        iv.   Commercial Injury Is Presumed. ..................................... 25

   D.    TRUSTWELL SUFFICIENTLY PLEADS UTPA VIOLATIONS
        UNDER SECTIONS 646.608(1)(A) & (1)(B). ...................................... 26

      1.    Trustwell Sufficiently Alleges Violations Of Section
           646.608(1). ........................................................................ 26

      2.    Trustwell Sufficiently Alleges Causation. .................................. 28

      3.    Trustwell Sufficiently Alleges Damages. ................................... 28

      4.    Trustwell Sufficiently Alleges Willfulness. ................................ 28

   E.    TO THE EXTENT THE COURT FINDS ANY OF
        TRUSTWELL'S ALLEGATIONS INSUFFICIENT, LEAVE TO
        AMEND SHOULD BE GRANTED. ....................................................... 29

CONCLUSION ...................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) ................................................5

*Autodesk, Inc. v. ZWCAD Software Co.*,
   No. 14-cv-01409, 2015 WL 2265479 (N.D. Cal. May 13, 2015)...........................................14

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
   No. 23-CV-06012-SI, 2024 WL 1772833 (N.D. Cal. Apr. 23, 2024) ...............................22, 23

*Bell v. Hood*,
   327 U.S. 678 (1946)........................................................................4, 5

*Berg v. Unitus Cmty. Credit Union*,
   No. 14-CV-00135-AC, 2014 WL 4674591 (D. Or. Sept. 17, 2014) ...................................4, 13

*Bowen v. Energizer Holdings, Inc.*,
   118 F.4th 1134 (9th Cir. 2024) ................................................12

*Catalinbread LLC v. Gee*,
   No. 18-cv-01795-HZ, 2019 WL 1586756 (D. Or. Apr. 12, 2019) ....................................17, 18

*Clark v. Eddie Bauer LLC*,
   371 Or. 177 (2023)........................................................................27

*Classic Media, Inc. v. Mewborn*,
   532 F.3d 978 (9th Cir. 2008) ................................................20

*Columbia Sportswear Co. v. Ferreira*,
   No. 23-cv-000594-AB, 2025 WL 1520299 (D. Or. May 28, 2025).........................................8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)........................................................................20, 22

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ................................................29

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

*E.I. Du Pont de Nemours & Co. v. Heraeus Precious Metals N. Am.*
    *Conshohocken LLC*,
    No. 12-CV-01104-HU, 2013 WL 2468257 (D. Or. June 7, 2013)..........................................25

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    Case No. 24-cv-01586-AB..................................................................................................9, 15

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-cv-1586-AB, Dkt. No. 39 (D. Or. May 8, 2025) ...................................................1, 2, 3

*Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*,
    681 F. Supp. 2d 694 (S.D. W. Va. 2009) ...............................................................................18

*Farhang v. Indian Inst. of Tech., Kharagpur*,
    No. C-08-02658-RMW, 2010 WL 3504897 (N.D. Cal. Sept. 7, 2010)..................................19

*Fauley v. Washington Mut. Bank FA*,
    No. 13-581, 2014 WL 1317852 (D. Or. Mar. 21, 2014).........................................................28

*Feitler v. Animation Celection, Inc.*,
    120 Or. App. 702 (Or. Ct. App. 2000)...................................................................................28

*FLIR Sys., Inc. v. Sierra Media, Inc.*,
    903 F. Supp. 2d 1120 (D. Or. 2012) ................................................................................25, 26

*Gallagher v. Capella Educ. Co.*,
    No. 19-1342, 2019 WL 8333532 (D. Or. Dec. 23, 2019).......................................................18

*Garfias v. Portland Spray Works, Inc.*,
    No. 20-cv-00873-IM, 2021 WL 27456 (D. Or. Jan. 3, 2021).................................................15

*Gregg v. Univ. of Portland*,
    No. 22-1680, 2023 WL 11832321 (D. Or. Mar. 16, 2023)......................................................18

*Huskey v. Oregon Dep't of Corr.*,
    373 Or. 270 (2025)..................................................................................................................18

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
    978 F.3d 653 (9th Cir. Oct. 15, 2020).............................................................................6, 7, 14

*Kearney v. Equilon Enters., LLC*,
    65 F. Supp. 3d 1033 (D. Or. 2014) .........................................................................................27

*Knisely v. Nat'l Better Living Ass'n, Inc.*,
    No. 14-15, 2014 WL 4084517 (N.D. W. Va. Aug. 19, 2014) .................................18

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .....................................................................5, 12, 13

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (en banc) ...........................................................29

*Love v. United States*,
    915 F.2d 1242 (9th Cir. 1989), abrogated by *DaVinci Aircraft, Inc. v. United*
    *States*, 926 F.3d 1117 (9th Cir. 2019) ...............................................................14

*Mattel, Inc. v. MGA Entm't, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................8

*Mendoza v. Lithia Motors, Inc.*,
    No. 16-cv-01264-AA, 2018 WL 1513650 (D. Or. Mar. 27, 2018) .........................28

*Navarro v. Block*,
    250 F.3d 729, 732 (9th Cir. 2001) .....................................................................13

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ....................................................................23, 27, 29

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ......................................................................23, 24

*OTR Wheel Eng'g Inc. v. W. Worldwide Servs., Inc.*,
    897 F.3d 1008 (9th Cir. 2018) ...........................................................................21

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
    149 F.4th 1081 (9th Cir. 2025) ........................................................................6, 7

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ....................................................................4, 5, 13

*Sanas.AI Inc. v. Krisp Techs., Inc.*,
    No. 25-cv-05666-RS, 2025 WL 3443215 (N.D. Cal. Dec. 1, 2025) .......................16

*Schneider v. Ford Motor Co.*,
    No. 18-CV-00367-RGK-AS, 2018 WL 5213280 (C.D. Cal. Apr. 13, 2018).........................24

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS
SAC**

*Scott v. Western Int. Sales, Inc.*,
  267 Or. 512 (1973)................................................................................................28

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ...............................................................................27

*Sennco Sols., Inc. v. Mobile Techs., Inc.*,
  No. 20-cv-1426-JR, 2020 WL 8836070 (D. Or. Dec. 21, 2020) ......................15, 19

*Sennco Sols., Inc. v. Mobile Techs., Inc.*,
  No. 20-cv-1426-JR, 2021 WL 463436 (D. Or. Feb. 9, 2021)....................14, 15, 16

*SKEDKO, Inc. v. ARC Prods., LLC*,
  No. 13-696, 2014 WL 585379 (D. Or. Feb. 13, 2014) ....................................23, 24

*Slep-Tone Entmt. Corp. v. Sellis Enters., Inc.*,
  87 F. Supp. 3d 897 (N.D. Ill. 2015) ......................................................................22

*Slep-Tone Entmt. Corp. v. Wired for Sound Karaoke and DJ Servs, LLC*,
  845 F.3d 1246 (9th Cir. 2017) ..............................................................................21

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ........................................................................25, 26

*Stahl L. Firm v. Judicate W.*,
  No. C13-1668 TEH, 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013)......................17

*State ex rel Rosenblum v. Living Essentials, LLC*,
  371 Or. 23 (2023)..................................................................................................28

*Sun Valley Gas., Inc. v. Ernst Enters.*,
  711 F.2d 138 (9th Cir. 1983) ..................................................................................4

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)...................................................................................25

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
  653 F.3d 820 (9th Cir. 2011) .................................................................................26

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016) .................................................................................8

*Valmarc Corp. v. Nike, Inc.*,
  No. 21-CV-01556-IM, 2022 WL 2315071 (D. Or. June 28, 2022)........................14

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...........................................................................27

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
   80 F. Supp. 3d 1152 (D. Or. 2015) ....................................................................16

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992) ...........................................................................21

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
   758 F.3d 1069 (9th Cir. 2014) .....................................................................23, 24

*Yuga Labs, Inc. v. Ripps*,
   144 F.4th 1137 (9th Cir. 2025) ..........................................................................21

STATUTES

15 U.S.C. § 1125 .......................................................................................................20

18 U.S.C. § 1839 ...................................................................................7, 14, 16, 17

Fed. R. Civ. P. 9 ............................................................................................ passim

Fed. R. Civ. P. 12 .......................................................................................... passim

Or. Rev. Stat. § 646.461 ..................................................................................7, 16, 17

Or. Rev. Stat. § 646.608 ...........................................................................................26

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell"), hereby opposes Defendant RLH Assets, LLC, doing business as Foodwit's ("Foodwit"), motion to dismiss Trustwell's second amended complaint (the "Mot.," Dkt. 47).

## <u>INTRODUCTION</u>

This is now the second time Foodwit has attempted to escape the consequences of its blatant theft and misappropriation. In response to the Court's order granting Foodwit's first motion to dismiss without prejudice, Trustwell included numerous additional, factual allegations in its second amended complaint (the "SAC," Dkt. 46) to supplement its claims. Foodwit now recycles its same Rule 12(b)(6) arguments here, essentially ignoring the supplemented allegations.

No doubt recognizing the tired nature of those arguments, this time Foodwit also includes a jurisdictional challenge under Rule 12(b)(1), arguing the Court lacks subject matter jurisdiction over this entire action because Trustwell's Defend Trade Secrets Act ("DTSA") and Lanham Act claims should be dismissed on the merits. Foodwit's Rule 12(b)(1) challenge fails for at least five independently dispositive reasons: 1) it is procedurally impermissible; 2) it contradicts new and controlling Ninth Circuit authority; 3) it ignores that the Court will retain jurisdiction over *at least* Trustwell's DTSA claim with respect to its compilation database trade secret in any event; 4) the extrinsic evidence Foodwit offers in response to Trustwell's DTSA claim fails to demonstrate public disclosure of any actual trade secrets; and 5) Foodwit fails to offer any extrinsic evidence whatsoever in response to Trustwell's Lanham Act claims, meaning that portion of the jurisdictional challenge must be addressed as a Rule 12(b)(6) argument, which fails for the reasons below.

With respect to Foodwit's Rule 12(b)(6) arguments, the bolstered allegations in the SAC plainly allege each element of each claim asserted by Trustwell. This is particularly true in light of the numerous new facts alleged by Trustwell, including the following:

- Trustwell provides numerous additional details regarding the trade secrets at issue, relating to its Genesis Foods software platform and its master food and nutrition database (the "Database"), which this Court previously held to be sufficiently

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

identified as a compilation trade secret.  SAC ¶¶ 20-21; *ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-cv-1586-AB, Dkt. No. 39 (D. Or. May 8, 2025). With respect to Genesis Foods, the SAC now identifies eight specific categories of trade secrets relating to the unique and proprietary features, functionalities, formulas, designs, and configurations of Genesis Foods.  *Id*.

- Trustwell provides numerous additional details regarding Foodwit's scheme to copy Genesis Foods and pass it off as its own creation, including additional representations by Foodwit's founder and majority owner, Becki Holmes, as well as the impossible development timeline for Foodwit's copycat product, Workbench.  *See* SAC ¶ 28.

- Trustwell alleges new and specific, factual misrepresentations that Foodwit continues to publish about having legitimately "built" Workbench from scratch. SAC ¶¶ 29-30.

- Trustwell alleges additional and specific ways in which Foodwit breached its limited-use license agreement with Trustwell, including Foodwit's ongoing failure to return certain materials upon demand.  SAC ¶¶ 31, 36.

The supplemented allegations in the SAC are more than sufficient to support Trustwell's claims.  For all of these reasons, as explained more fully below, Foodwit's motion to dismiss should be denied in its entirety and this case should finally move forward.

## BACKGROUND

Trustwell is a leading SaaS provider in the food and supplements industries and has developed its Genesis Foods software platform and embedded Database over several decades of investment in research and development.  In 2024, Trustwell launched the next generation of Genesis Foods, a state-of-the-art platform for nutrition analysis, formulation, labeling, and regulatory compliance across multiple jurisdictions, supported by its proprietary and compilation Database that includes up to 172 data fields for more than 90,000 brand name and generic foods and ingredients.  SAC ¶¶ 3–4, 19–20.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

In August 2017, Foodwit—then a startup—approached Trustwell to request a limited-use license agreement to access and use Genesis Foods solely for Foodwit's own internal business purposes. SAC ¶ 5. The parties renewed the license agreement annually, with Foodwit paying annual licensing fees to Trustwell, until it expired in August 2024. SAC ¶¶ 24, 27. During that time, Foodwit described itself as a daily "super user" of Genesis Foods, whose business was dependent on Genesis Foods. SAC ¶¶ 26, 28.

In 2022 and 2023, during discussions with Trustwell's parent company regarding a potential acquisition of or investment in Foodwit, Ms. Holmes stated that Foodwit was dependent on Genesis Foods, that she believed there were no viable competitors to Genesis Foods in the market due to its unique and powerful regulatory tools, and that she had unique insight into what was "working / not working" with the platform. SAC ¶ 26. Ms. Holmes even boasted that if Foodwit replicated Genesis Foods, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach. *Id*. Trustwell's parent company ultimately declined to acquire or invest in Foodwit, which caused Ms. Holmes and Foodwit to resort to misappropriating Genesis Foods and passing it off as their own new product. *Id*.

Foodwit also exported a substantial volume of confidential and proprietary data from Genesis Foods. SAC ¶ 27. However, Foodwit did not export the data for its own internal business purposes, the only authorized purpose for exporting such data under Foodwit's license agreement. *Id*. Rather, Foodwit did so to copy the Genesis Foods platform and Database and repackage them as its own product. *Id*. at 27-28. Such conduct was expressly prohibited by Foodwit's license agreement. *Id*. at 34. Indeed, less than a year after Ms. Holmes admitted that no other viable alternative to Gensis Foods existed, Foodwit unveiled an identical product—Workbench—that it claims to have "built" from scratch. *Id*. at 28. A one-year development timeline is simply impossible for such a complex platform, particularly for a startup with limited resources, given that it took Trustwell decades to develop the current version of Genesis Foods.

Foodwit publicly proclaims that it "built" Workbench, honestly and legitimately, "from the ground up": "We built the food compliance platform we wish existed years ago;" "We built the

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

compliance software we wish we had." SAC ¶¶ 29-30. It sells Workbench across the country to the same types of customers that use Genesis Foods, and in fact some of Trustwell's customers now utilize Workbench. SAC ¶¶ 33, 43, 47, 56–58, 64, 74–75.

After attempting for several months to resolve this dispute informally, Trustwell had no choice but to file suit. SAC ¶¶ 35-37. Foodwit moved to dismiss the first amended complaint, which motion this Court granted with leave to amend on September 29, 2025. Dkt. No. 45. In response, Trustwell filed its SAC. Dkt. No. 46. Trustwell's bolstered allegations are more than sufficient to supports its claims. Nothing more is required at the pleading stage. This case should now move forward.

## ARGUMENT

### I. FOODWIT'S RULE 12(B)(1) JURISDICTIONAL CHALLENGE MUST BE DENIED FOR MULTIPLE, INDEPENDENTLY DISPOSITIVE REASONS.

"A Rule 12(b)(1) jurisdictional attack may be either facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. Facial attacks are analyzed like Rule 12(b)(6) motions in that all allegations are taken as true and all reasonable inferences are drawn in favor of the plaintiff. *Berg v. Unitus Cmty. Credit Union*, No. 14-CV-00135-AC, 2014 WL 4674591, at *5 (D. Or. Sept. 17, 2014). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," by submitting affidavits or other extrinsic evidence. *Id*. at *4. Foodwit makes both a factual and facial attack here. The jurisdictional challenge fails for at least the five independently dispositive reasons below.

#### A. Foodwit's Jurisdictional Challenge Is Procedurally Impermissible.

"Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional and must satisfy the requirements specified in *Bell v. Hood*, 327 U.S. 678 (1946)." *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983). The U.S. Supreme Court determined that jurisdictional dismissals are warranted only "where the alleged claim under the

Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-83. Further, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

Foodwit does not, because it cannot, argue that Trustwell's DTSA and Lanham Act claims are wholly frivolous. Instead, Foodwit argues that the Court lacks subject matter jurisdiction over Trustwell's DTSA claim because Genesis Foods and the Database do not qualify for trade secret protection, and the DTSA claim therefore must be dismissed. Foodwit also challenges the Court's jurisdiction over Trustwell's Lanham Act claims, baldly arguing that it is simply "impossible" for Foodwit to have copied Genesis Foods. Both arguments, however, go to the merits of Trustwell's claims. As the Ninth Circuit made clear, it would constitute reversible error for this Court to dismiss Trustwell's "complaint under Rule 12(b)(1) because the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Safe Air for Everyone*, 373 F.3d at 1040. Thus, as the Ninth Circuit has repeatedly held, dismissal under Rule 12(b)(1) is not appropriate here. *Id.*; *see also Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014) ("[A] court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim); *Augustine*, 704 F.2d at 1077. The jurisdictional inquiry should end there.

### B. Foodwit's Jurisdictional Challenge Is Also Barred By New And Controlling Ninth Circuit Authority.

Foodwit's jurisdictional challenge also contradicts the holding of *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc., et al.*, which the Ninth Circuit issued just four months ago. 149 F.4th 1081 (9th Cir. 2025). *Quintara* involved trade secret misappropriation claims under the DTSA as

well as the California analog.  In that case, after successfully moving to compel a more particularized trade secret identification, the defendant moved to strike several of the alleged trade secrets under Rule 12(f) for lack of particularity.  The district court granted the motion to strike, "effectively dismissing Quintara's misappropriation claim for those trade secrets." *Id*. at 1085. On appeal, the Ninth Circuit held that the district could abused its discretion in dismissing the alleged trade secrets at such an early stage of the litigation. *Id*. at 1091.

The Ninth Circuit began by noting that "the federal DTSA does not require a plaintiff to identify with particularity its alleged trade secrets from the start." *Id*. at 1085.  The appellate court observed that "[a] DTSA trade-secret claim will rarely be dismissible [at the pleading stage]… early in the litigation and before an opportunity for discovery that would allow the parties to refine and clarify the identification of the alleged trade secrets at issue." *Id*. at 1091.

The Ninth Circuit referred to its 2020 opinion in *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. Oct. 15, 2020), in which it held that, at the pleading stage, "particularly where no discovery whatsoever had occurred, it is not fatal to [the plaintiff's] claim that its hedging language left open the possibility of expanding its [trade secret] identifications later." *Quintara*, 149 F.4th at 1087 (citing *InteliClear*, 978 F.3d at 659.)  In *InteliClear*, the Ninth Circuit noted that "[r]efining trade secret identifications through discovery makes good sense … plaintiffs in trade secret actions may have commercially valid reasons to avoid being overly specific at the outset in defining their intellectual property."  978 F.3d at 662.  As a result, the Ninth Circuit held in *Quintara* that "the conventional order of pleadings, initial disclosures, and first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim. Discovery in a trade-secret case, then, requires an 'iterative process where requests between parties led to a refined and sufficiently particularized trade secret identification.'" *Quintara*, 149 F.4th at 1088 (quoting *InteliClear*, 978 F.3d at 662).

Ultimately, the Ninth Circuit made clear that "identification of a trade secret is a question of fact, and a district court may grant summary judgment only if there is no genuine dispute that a plaintiff could identify a trade secret with 'sufficient particularity.'" *Quintara*, 149 F.4th at 1088

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

(citing *InteliClear*, 978 F.3d at 657-59, 663-64).  As the Ninth Circuit observed, rarely, if ever, does that situation arise at the pleading stage, or at any point before discovery is complete.  *Id.* at 1091.  Foodwit's Rule 12(b)(1) motion ignores this new and controlling authority, and seeks a merits-based dismissal of Trustwell's DTSA claim, styled as a jurisdictional challenge, at the pleading stage and before discovery has even commenced.  That is squarely barred by *Quintara*.

### C.    This Court Will Continue To Have Subject Matter Jurisdiction Over At Least Trustwell's DTSA Claim With Respect To Its Compilation Database Trade Secret In Any Event.

Even if this Court were to consider Foodwit's jurisdictional challenge, which it should not, Trustwell's DTSA claim necessarily would survive anyway for the simple reason that Foodwit concedes the compilation Database trade secret has not been publicly disclosed.

### 1.    Trustwell's Database Is A Classic Compilation Trade Secret.

Trustwell's Database constitutes a classic compilation trade secret under both federal and state law.[1]  It is a "master food and nutrition database [that] includes, among other things, comprehensive and continuously updated nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,000 brand name and generic foods and ingredients."  SAC ¶ 20.  It is comprised of "a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available, as well as a particular selection of data from vetted and reliable external sources like governmental agencies."  *Id.*  Beyond the SAC, Trustwell also provided Foodwit with four pages of additional, particularized information in its Trade Secret

---

[1] Under the Oregon Trade Secrets Act ("OTSA"), a "trade secret" is defined as "information. . .that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Or. Rev. Stat. § 646.461(4).  Under the DTSA, a "trade secret" is similarly defined as information that "the owner thereof has taken reasonable measures to keep secret; and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or information." 18 U.S.C. § 1839(3).  The slight definitional differences are not material and, as Foodwit acknowledges, DTSA and OTSA claims are generally "evaluate[d] … together."  *See* Mot. at 21.

Identification describing the specific steps in the process by which Trustwell created the compilation Database.

Foodwit argues that the SAC and Trade Secret Identification are insufficient because Trustwell has not identified which of the data is public and which is not. Mot. at 9. Setting aside the practical impossibility for a database that contains millions of individual data elements, element-by-element identification is simply not required under the law. That the Database includes confidential and proprietary information as well as a particular selection of certain public information does not preclude trade secret status or protection. The Ninth Circuit and courts within this District have repeatedly recognized that a database, like Trustwell's, consisting of "an amalgam of public and proprietary source data" that forms "a massive confidential compilation of data, the product of years of effort and expense" is protectable as a trade secret. *See, e.g., United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *see also Columbia Sportswear Co. v. Ferreira*, No. 23-cv-000594-AB, 2025 WL 1520299, at *8 (D. Or. May 28, 2025) ("[T]he public nature of some of the documents' contents does not necessarily defeat [plaintiff's] claim for trade secret protection") In fact, "[i]t does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, ***so long as the combination of all such information is not generally known***." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 962 (C.D. Cal. 2011) (emphasis added). Foodwit does not even attempt to argue that the compilation of information within the Database is not secret. As a result, this Court necessarily will retain jurisdiction over at least the Database portion of Trustwell's DTSA claim in any event. Accordingly, Foodwit's jurisdictional challenge necessarily fails.[2]

---

[2] Foodwit halfheartedly argues that Trustwell's Database is not a trade secret because Trustwell "has failed to specify the scope of its trade secret along another dimension: time." Mot. at 11. That is simply not true. The relevant time period is clear: Foodwit licensed access to the Database (as embedded within Genesis Foods) from 2017 until 2024. SAC ¶ 13. To the extent Foodwit has legitimate questions about the scope of the Database within that time period, *Quintara* and *InteliClear* make clear that the proper forum for such questions—through iterative refinement of trade secret definitions—is discovery.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

2.    **This Court Already Held That Trustwell Sufficiently Identified Its Compilation Database Trade Secret.**

This is not the first time this Court has considered whether Trustwell's Database has been sufficiently identified as a compilation trade secret.  In *ESHA Research, Inc. v. Cronometer Software, Inc.*, Case No. 24-cv-01586-AB, the Court held that, in order to identify the compilation database trade secret with sufficient particularity, Trustwell needed to "identify 'the steps in the process and explain[] how those steps make the method or process unique.'" *Cronometer*, Dkt. 36. Trustwell did exactly that, and the Court then reviewed the identification and found it to be sufficient. *Id*. Dkt. 39.  Trustwell provided to Foodwit the very same identification of its Database trade secret, including the specific steps in the process by which Trustwell created the compilation dataset. *Id*. Dkt. 36.  Foodwit's argument that Trustwell has not sufficiently alleged or identified its compilation Database trade secret is without merit.

D.    **Foodwit Fails To Demonstrate Public Disclosure Of Trustwell's Genesis Foods-Related Trade Secrets.**

While claiming it "remains not entirely clear how [Trustwell] slices and dices" the trade secrets at issue, Foodwit nevertheless argues that each and every Genesis Foods-related trade secret has been "long since disclosed to the public."[3]  Mot. at 6.  Given this purported public disclosure, Foodwit argues that none of the Genesis Foods-related trade secrets qualify for trade secret protection and, thus, this Court lacks subject matter jurisdiction over Trustwell's DTSA claim.[4] Mot. at 15-16.  As an initial matter, Foodwit's evident understanding of the trade secret features and functionalities at issue, and its ability to track some of those features and functionalities to external sources, substantially undercuts Foodwit's simultaneous argument that the trade secrets are too generic and not sufficiently identified.  *See* Mot. at 21.

---

[3] As noted above, Foodwit does not argue that Trustwell's Database has been publicly disclosed.

[4] Foodwit also argues that Trustwell lacks Article III standing to assert its DTSA claim.  Mot. at 16.  But as this Court already ruled, "The Court concludes that these allegations are sufficient to plead an injury-in-fact to satisfy constitutional standing."  Order dated Sept. 22, 2025, Dkt. 45, at 6.  Foodwit cannot resurrect an argument the Court already rejected.

Page 9        **PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

Nevertheless, as support for its extreme position that all Genesis Foods-related trade secrets have been publicly disclosed, Foodwit offers the declaration of Matthew S. Warren (the "Warren Declaration," Dkt. 48). The Warren Declaration contains 945 paragraphs and 176 pages, and attaches 150 exhibits consisting of more than 600 additional pages, all purporting to demonstrate that Trustwell "disclosed the same feature[s] in its public documentation available on the Internet" that are listed in Trustwell's Trade Secret Identification, which Trustwell served separately in this action. Mot. at 1; Warren Declaration, Ex. 1. Foodwit's use of the word "feature" is significant— and is no accident. The *existence* of a given feature or functionality in a product is often not a secret, but the confidential and underlying processes or methodologies that enable that feature or functionality constitute classic trade secrets.

As explained in the supporting declaration of Todd Dolinsky (the "Dolinsky Declaration"),[5] filed concurrently herewith, the entire Warren Declaration and all 600+ pages of exhibits refer to public user manuals for various versions of Genesis Foods that have been posted online over the years. Dolinsky Declaration ¶ 10. As Mr. Dolinsky explains:

> The public user manuals for the Genesis Foods system that are referenced in the Warren Declaration and attached exhibits describe the existence of some of the features and functionalities listed in [Trustwell's] Trade Secret Identification. Critically, however, the descriptions in the public user manuals do not disclose the specific, underlying processes and methodologies that constitute the actual trade secret information relating to each of the respective features and functionalities. In other words, publicly describing the existence of a given feature or functionality does not thereby disclose the specific, underlying process or methodology that

---

[5] Todd Dolinsky is Trustwell's Chief Product Officer.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

enables that feature or functionality and makes it unique and valuable.

*Id*. ¶ 11.

Foodwit concedes as much by arguing only that the *existence* of certain features is disclosed in Trustwell's "public documentation available on the Internet." *See* Mot. at 1. Nowhere in the Warren Declaration or anywhere else does Foodwit argue that the public user manuals somehow disclose the underlying processes and methodologies that enable those features and functionalities, and which make those features and functionalities unique and valuable. Nor could Foodwit.

Mr. Dolinsky walks through a number of examples in his declaration "where nothing more than the existence of a given feature or functionality is disclosed [in the Warren Declaration and attached exhibits], and certainly nothing relating to the underlying process or methodology" that enables that feature or functionality. Dolinsky Declaration ¶¶ 14-19. As Mr. Dolinsky points out, "[h]ad those user manuals actually disclosed the trade secrets that enable those features and functionalities and make Genesis Foods unique and valuable, customers and competitors, including Foodwit, surely would have recreated or reverse engineered the system long ago to create competing systems and avoid having to pay [Trustwell] substantial licensing fees." *Id*. ¶ 19. Of course, Foodwit paid licensing fees to Trustwell every year from 2017 until 2024 (when it launched Workbench), to access and use Genesis Foods. SAC ¶ 13. That Foodwit resorted to misappropriation in order to replicate Genesis Foods plainly demonstrates that Foodwit was unable to recreate or reverse engineer Genesis Foods through the user manuals featured in the Warren Declaration. In other words, the public user manuals do not reveal any actual trade secret information.[6]

---

[6] Trustwell anticipates that Foodwit will argue Trustwell's Trade Secret Identification is not sufficient, at least as it relates to Genesis Foods. While that is an issue for discovery, and has no relevance or application to the instant pleading challenge, that is also reflective of the iterative process of refining trade secret definitions that has been repeatedly and expressly endorsed and upheld by the Ninth Circuit, including in *Quintara* and *InteliClear*.

Mr. Dolinsky concludes, "[i]n sum, the Warren Declaration and attached exhibits demonstrate only that Trustwell … has proudly advertised the features and functionalities of its system over the years."  Dolinsky Declaration ¶ 19.  While the sheer volume of the Warren Declaration and attached exhibits may be impressive, it simply misses the mark substantively because it does not demonstrate public disclosure of any actual trade secrets.

Moreover, "when a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court 'must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim.'" *Bowen v. Energizer Holdings, Inc*., 118 F.4th 1134, 1144 (9th Cir. 2024) (quoting *Leite*, 749 F.3d at 1122).  Accordingly, even if the Court were to consider Foodwit's Rule 12(b)(1) motion in the first instance, which it should not, it must leave to the jury these material factual disputes regarding the trade secret status of Trustwell's Genesis Foods-related trade secrets because they are inextricably intertwined with the elements and merits of Trustwell's DTSA claim.  *See id.*  Foodwit's jurisdictional challenge should therefore be dismissed.[7]

### E.    This Court Also Will Continue To Have Subject Matter Jurisdiction Over Trustwell's Lanham Act Claims.

Foodwit separately argues that the Court lacks subject matter jurisdiction over Trustwell's Lanham Act claims because, as Foodwit asserts, the allegations are "made up."  Mot. at 16.  It is well settled, however, that "[w]hen a defendant challenges a complaint on its face, the court assumes plaintiff's allegations to be true and draws all reasonable inferences in plaintiff's favor." *Berg*, 2014 WL 4674591, at *5.  In other words, each allegation Foodwit claims to be "made up" or "impossible" must be construed in Trustwell's favor.

---

[7] Foodwit argues that Trustwell's contract claim rises and falls with its DTSA claim.  Mot. at 16.  That also is not true.  Trustwell's contract claim does not depend on a finding that Foodwit misappropriated Trustwell's trade secrets.  For example, Trustwell alleges that Foodwit breached its limited-use licensing agreement by failing to return upon demand all confidential information received from Trustwell, as well as everything based on or derived from such information.  SAC ¶¶ 14-18, 42.  That has nothing to do with Trustwell's DTSA claim.

In an effort to sidestep this fatal flaw in its argument, Foodwit claims it "disputes their truth under 12(b)(1)." Mot. at 17. By attempting to challenge factually the Court's subject matter jurisdiction over Trustwell's Lanham Act claims, Foodwit essentially asks this Court to "not presume the truthfulness of the plaintiff's allegations." *See Berg*, 2014 WL 4674591, at *5. But to make a factual challenge, Foodwit was required to submit extrinsic evidence to support its challenge. *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039). Because Foodwit fails to offer any such extrinsic evidence here, if the Court were to consider the jurisdictional challenge at all (which it should not),[8] it must "resolve[ ] a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting [Trustwell's] allegations as true and drawing all reasonable inferences in [Trustwell's] favor, [to determine] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121. As set forth below, Foodwit's recycled Rule 12(b)(6) arguments fail because the SAC's supplemented allegations plainly state claims under the Lanham Act for false advertising and for false designation of origin.

## II.    FOODWIT'S RECYCLED RULE 12(B)(6) ARGUMENTS SIMILARLY FAIL.

Notwithstanding the numerous additional allegations in the SAC, Foodwit resurrects all of the arguments from its original motion to dismiss. A Rule 12(b)(6) motion may be granted only where there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), abrogated

---

[8] As with Foodwit's jurisdictional challenge to Trustwell's DTSA claim, this jurisdictional challenge also should be summarily rejected because "the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *See Safe Air for Everyone*, 373 F.3d at 1040.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

by *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  As set forth below, Trustwell adequately pleads each of its claims here.

### A. TRUSTWELL SUFFICIENTLY PLEADS TRADE SECRET MISAPPROPRIATION.

To state a claim for misappropriation under the DTSA, a plaintiff must allege "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."  *InteliClear*, 978 F.3d at 657-58; 18 U.S.C. § 1839(5).  Under the OTSA, a plaintiff must similarly allege that: "(1) the subject of the claim qualifies as a statutory trade secret; (2) plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation."  *Valmarc Corp. v. Nike, Inc.*, No. 21-CV-01556-IM, 2022 WL 2315071, at *2 (D. Or. June 28, 2022).  Because of the similar standards, as Foodwit acknowledges, DTSA and OTSA claims are typically "evaluate[d] … together."  *See* Mot. at 21.

### 1. Trustwell Sufficiently Alleges The Trade Secrets At Issue.

"A plaintiff need not 'spell out the details of the trade secret to survive a motion to dismiss." *Sennco Sols., Inc. v. Mobile Techs., Inc.*, No. 20-cv-1426-JR, 2021 WL 463436, at *2 (D. Or. Feb. 9, 2021) (citations and quotations omitted).  Indeed, to satisfy the first element at the pleading stage, a trade secret plaintiff need only provide "a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Sennco Sols., Inc. v. Mobile Techs., Inc.*, No. 20-cv-1426-JR, 2020 WL 8836070, at *2 (D. Or. Dec. 21, 2020) (citations and quotations omitted).  "It is enough for a plaintiff to limit[] the categories of the information allegedly misappropriated by [a defendant] to particular subjects. *Sennco,* 2021 WL 463436, at *2.  Trustwell more than satisfies this burden.

Trustwell alleges two types of trade secrets here: (1) Trustwell's Genesis Foods software platform, and (2) Trustwell's master Database, which is embedded in the platform.  As discussed above, there can be no question that Trustwell has adequately pled the existence of a trade secret

as to the Database.  After all, this Court already found Trustwell's identification of the compilation Database trade secret to be sufficient in *Cronometer*.  Case No. 24-cv-01586-AB, Dkt. 39.  Trustwell has likewise pled the first element of its trade secret claim as to Genesis Foods.  In the SAC, Trustwell describes eight specific trade secret categories, ranging from "Proprietary configuration options, including the ability to define unique and proprietary nutrient, ingredient, and recipe categories and attributes," to "[t]he ability to analyze and generate reports regarding nutrients, ingredients, and recipes using proprietary formulas, configurations, categories, and attributes."  SAC ¶ 21.  Nothing more is necessary at the pleading stage.

As it did in its original motion to dismiss, Foodwit again argues that Trustwell's trade secret allegations are insufficient, generic descriptions.  But the law does not require precision at the pleading stage.  For example, in *Garfias v. Portland Spray Works, Inc.*, the court found that trade secret allegations of "defendant's list of customers and certain prospective customers" and "bid sheets/proposal forms of defendant" were sufficiently specific to survive a motion to dismiss as to the first element.  No. 20-cv-00873-IM, 2021 WL 27456, at *5 (D. Or. Jan. 3, 2021); *see also Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152 (D. Or. 2015) (allegations of "detailed architectural drawings and ... diagrams that depicted on a step-by-step basis" and "direct customer notification" systems held to be sufficiently specific; *Autodesk, Inc. v. ZWCAD Software Co.*, 14-cv-01409, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (finding sufficient particularity where plaintiff pled trade secrets as "portions of [source] code that underlie the commands, interfaces and program files associated with the dozens of specific features.").

Moreover, as noted above, Trustwell obviously identified the trade secret features and functionalities with sufficient particularly to enable Foodwit to track some of those features and functionalities to Trustwell's public user manuals that have been posted online over the years.  Spending 800+ pages purporting to demonstrate that each of the trade secrets has been publicly disclosed calls into question the veracity of Foodwit's assertion here that the descriptions are too generic.  Regardless, Trustwell's allegations far exceed the level of detail that courts in this District have repeatedly found to be sufficient.  *See id*.  Nothing more is required at this stage.  *See Sennco*

*Sols. Inc.*, 2021 WL 43436, at \*2; *see also Sanas.AI Inc. v. Krisp Techs., Inc.*, No. 25-cv-05666-RS, 2025 WL 3443215, at \*6 (N.D. Cal. Dec. 1, 2025) (finding trade secret allegations of "customer requirements, intensive market research, results of in-field deployments, performance metrics related to CPU utilization for particular hardware configurations, and latency with different call center plaforms" sufficient to survive a motion to dismiss: "The appropriate mechanism for Krisp to obtain greater specificity … [is] through disclosures, interrogatories, meet and confer negotiations, or such other facets of the discovery process as may be warranted.").

### 2.    There Is No Dispute That Trustwell Adequately Pleads Secrecy.

Under both the DTSA and the OTSA, the owner of the trade secrets must take reasonable measures to keep such information secret.  18 U.S.C. § 1839(3); Or. Rev. Stat. § 646.461(4).  Trustwell specifically alleges the steps it takes to keep Genesis Foods and the Database secret, including that it (1) provides customers access to Genesis Foods and the Database only pursuant to limited-use license agreements similar to that at issue here, (2) employs electronic and physical security measures, like password protections and secured facilities, and (3) requires employees to sign confidentiality agreements and restricts access to its trade secrets.  SAC ¶ 25.  Courts in this District have repeatedly held similar allegations to be sufficient, and Foodwit does not argue otherwise.  *Vesta*, 80 F. Supp. 3d at 1166 (holding secrecy element satisfied where complaint alleged "the use of the NDAs; maintaining locked facilities, computers, and networks; requiring Sign-in NDAs; and enforcing access and badge policies").

### 3.    Trustwell Plainly Alleges Misappropriation.

Misappropriation comes in three basic forms: unauthorized access, use, and disclosure.  18 U.S.C. § 1839(5); Or. Rev. Stat. § 646.461(2).  This "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means."  Or. Rev. Stat. § 646.461(1); 18 U.S.C. § 1839(6)(A).  The SAC details Foodwit's scheme to gain access to Genesis Foods and the Database through false pretenses (i.e., that Foodwit would use the materials solely for its own internal business purposes), and then misappropriate them to create a competing product and repackage it as "Workbench," in direct violation of the

terms, conditions, and protections of its limited-use license agreement. SAC ¶¶ 14-17, 26-28, 13, 33-34. To do so, Foodwit exported a substantial volume of proprietary data for that purpose, despite being expressly prohibited from exporting data or using the materials for or in connection with any competing products. SAC ¶ 27.

Foodwit nevertheless argues the Court should simply ignore these allegations as nothing more than legal conclusions. It cites just one case for this proposition, *Stahl L. Firm v. Judicate W.* Mot. at 22. *Stahl*, however, stands for the unremarkable position that a court need not accept as true bare legal conclusions. No. C13-1668 TEH, 2013 WL 6200245, at *7 (N.D. Cal. Nov. 27, 2013). Unlike Trustwell, the plaintiff in *Stahl* failed to allege any facts "supporting his legal assertions in his brief that he has or will experience 'a direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its' services." *Id*. Instead, plaintiff's complaint was a mere "formulaic recitation of the elements of [Lanham Act false advertising]." *Id*. That is clearly not the case here.

The SAC includes detailed, factual allegations setting forth exactly how Foodwit misappropriated Trustwell's trade secrets. This District, in *Catalinbread LLC v. Gee*, found nearly identical allegations to be sufficient. No. 18-cv-01795-HZ, 2019 WL 1586756, at *7 (D. Or. Apr. 12, 2019). The plaintiff in *Catalinbread* alleged that "defendants 'escalated their efforts to pull as much proprietary and secret information' as they could from plaintiff's computers[,] designed a competing line of products built off plaintiff's information and property[, and] copied and deleted plaintiff's trade secrets and retained some of plaintiff's physical prototypes." *Id*. The court took "these factual allegations as true, as well as all reasonable inferences that may be drawn from such allegations," and found them to be adequate to state a claim for trade secret misappropriation. *Id*. The same analysis—and result—should apply here.

Because Trustwell adequately pleads the elements of a trade secret claim under both federal and state law, Foodwit's motion to dismiss should be denied as to both the DTSA and OTSA claims.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

**B.      TRUSTWELL SUFFICIENTLY PLEADS BREACH OF CONTRACT.**

Trustwell plainly alleges that Foodwit breached its limited-use license agreement in multiple ways.  Under Oregon law, "to state a claim for breach of contract, a plaintiff must, at a minimum, plead facts with sufficient particularity as to allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 275-76 (2025).  Foodwit does not dispute that Trustwell alleges the existence of a contract—the limited-use license agreement.  *See* SAC ¶ 13.  Nor can there be a dispute about the terms of the license agreement—which are block-quoted in the SAC—that Trustwell alleges Foodwit breached.  *See* SAC ¶¶ 14-17.  Foodwit's motion challenges only the sufficiency of Trustwell's allegations as to the element of breach.  Foodwit's argument lacks merit.

To plead a breach, Trustwell need only allege "an identifiable contractual promise that the defendant failed to honor."  *Gregg v. Univ. of Portland*, No. 22-1680, 2023 WL 11832321, at *4 (D. Or. Mar. 16, 2023) (quoting *Gallagher v. Capella Educ. Co.*, No. 19-1342, 2019 WL 8333532, *5 (D. Or. Dec. 23, 2019)).  Trustwell does that, multiple times.  Trustwell alleges breaches of at least five separate provisions of the license agreement.  SAC ¶¶ 14-18, 34.  Trustwell also alleges "'the facts and circumstances which entitle[s] [it] to damages.'"  *See Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 14-15, 2014 WL 4084517, at *15 (N.D. W. Va. Aug. 19, 2014) (alteration in original) (quoting *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009)); SAC ¶ 5-7, 14-18, 27-29, 32-34.  Nothing more is required.

Foodwit argues that Trustwell's breach of contract claim is duplicative of its trade secret claims and thus fails for the same reasons.  Setting aside the fact that Trustwell's misappropriation claim is sufficiently pled, it is simply not true that the breach claim is duplicative.  Trustwell's breach claim is separate and independent.  The SAC details numerous ways in which Foodwit breached the license agreement beyond merely "commercializing Trustwell's Trade Secrets" and "otherwise leveraging them to build and launch competing products."  Mot. at 23.  For example, Trustwell alleges that Foodwit's use of Genesis Foods (including the Database) constitutes a breach of at least Sections 3, 6, 8, and 12 of the license agreement.  *See, e.g., id.* ¶ 14 (Section 3

prohibiting Foodwit from using the Licensed Software for any purpose outside internal business use, including "as part of its own commercially licensed products or services," converting, modifying, or otherwise reverse compiling the Licensed Software, and "collect[ing], directly or indirectly, the data from the nutritional database embedded within the Licensed Software"); *id.* ¶ 15 (Section 6 confirming Trustwell's sole ownership of the Licensed Software, including the embedded Database and all customized and derivative works); *id.* ¶ 16 (Section 8 requiring "commercially reasonable efforts to protect the Licensed Software from unauthorized use, reproduction, publication, or distribution"); *id.* ¶ 17 (Section 12 requiring confidentiality, and limiting use to the scope of the License Agreement). Trustwell further alleges that Foodwit breached the license agreement through its continuing refusal to return Trustwell's confidential information "and all notes, records, documentation, models, software, databases and other items or materials containing such information" upon demand. *Id.* ¶ 17 (Section 12). Each of these breaches is separate from and independent of Foodwit's misappropriation claim, and constitutes an independently actionable claim for breach of contract.

Simply put, Trustwell's breach of contract allegations are more than sufficient to survive Foodwit's motion to dismiss. *See, e.g., Sennco*, 2020 WL 8836070 (denying motion to dismiss as to breach of contract claim where plaintiff alleged how the confidential information taken by defendant "falls within the scope of the parties' 2005 and 2008 NDAs, which were in full force and effect at the time of defendant's disclosure via the 2013 Freedom Micro"); *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658-RMW, 2010 WL 3504897, *2 (N.D. Cal. Sept. 7, 2010) (allegations that defendants disclosed confidential information during a presentation to a technical committee in violation of the terms of the parties' NDA were sufficient to state a claim for breach of contract).

### C. TRUSTWELL SUFFICIENTLY PLEADS TWO SEPARATE LANHAM ACT CLAIMS.

Foodwit first argues that both of Trustwell's Lanham Act claims are barred by the U.S. Supreme Court's ruling in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

Foodwit also argues that Trustwell fails to plead facts sufficient to state a claim either for false advertising or for false designation of origin. As set forth below, both arguments fail.

### 1.    *Dastar* Does Not Bar Either Lanham Act Claim Here.

Foodwit spills considerable ink arguing that both of Trustwell's Lanham Act claims are precluded by *Dastar*. Foodwit misconstrues *Dastar* and its application.

To begin, courts have been very clear that *Dastar* does not apply to false advertising claims. In fact, the U.S. Supreme Court expressly recognized that a false advertising claim could be asserted under *Dastar*. 539 U.S., at 38 ("If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action … [under] § 43(a)(1)(B)" for false advertising); *see also Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) ("The Supreme Court's decision in *Dastar* was limited to the first prong of § 43(a)(1), 15 U.S.C. § 1125(a)(1), which concerns false designation of origin.")

Presumably recognizing this, Foodwit argues that Trustwell's false advertising claim is nothing more than a designation of origin claim in disguise and, for that reason, *Dastar* applies. Mot. at 25. To be clear, Trustwell's Lanham Act claims are separate and distinct, and both are cognizable here. Trustwell's false advertising claim is based on the demonstrably and objectively false marketing and advertising statements published on Foodwit's website and elsewhere that Foodwit legitimately and honestly built Workbench from scratch, rather than having simply copied Genesis Foods. SAC ¶¶ 29-30. Trustwell specifically alleges several such misrepresentations, including that "Foodwit publicly markets and advertises Workbench. . .[including] through the following representations":[9]

---

[9] Foodwit published these misrepresentations on its website and elsewhere after Trustwell filed its initial complaint in this action, and the misrepresentations remain on Foodwit's website as of the date of filing.

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

- "What makes Foodwit Workbench different isn't just the tech, it's who built it. We're not a generic SaaS company. We're food scientists, regulatory consultants, and engineers who saw a broken system and chose to rebuild it from the ground up."

- "[Workbench] isn't just a software launch. It's a shift. We built the food compliance platform we wish existed years ago."

- "Meet Foodwit Workbench … We built the compliance software we wish we had."

*Id*. ¶ 29.

Trustwell's false designation of origin claim is based on the demonstrably and objectively false notion that Foodwit is the legitimate creator or "origin" of Workbench, which Foodwit has perpetuated, and continues to perpetuate, through its marketing and advertising. SAC ¶ 32. These theories are neither duplicative nor mutually exclusive, and both may be asserted together. *Waits v. Frito-Lay, Inc*., 978 F.2d 1093, 1108-1109 (9th Cir. 1992). But, even if the Court were to treat both Lanham Act claims as one and the same, which it should not, Foodwit's motion still should be denied because *Dastar* simply does not apply to the facts here.[10]

The defendant in *Dastar* created a video series called "World War II Campaigns in Europe," based on a previously produced television series called "Crusade in Europe." *Dastar*, 539 U.S. at 25-26. The defendant bought a copy of the television series and then made substantial edits to the footage, including adding new footage, to create its own video series. *Id*. at 26-27. The plaintiff brought a claim under § 43(a) of the Lanham Act on the theory that defendant's sale

---

[10] Foodwit cites *OTR Wheel Eng'g Inc. v. W. Worldwide Servs., Inc*., 897 F.3d 1008, 1016 (9th Cir. 2018) for the proposition that a false designation of origin claim "cannot be brought to prevent the copying of intellectual property." Mot. at 24. Foodwit's reliance on *OTR* is misplaced. In *OTR*, the Ninth Circuit *affirmed* a jury verdict finding the defendant liable for false designation of origin because of evidence that the defendant did, in fact, pass off the plaintiff's product as its own. *Id*. at 1016. The court in *OTR* noted that *Dastar* precludes a claim for false designation of origin only where the claim deals with an "idea" or "concept" rather than an actual product. *Id*. *See also Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1158 (9th Cir. 2025) ("[T]he Supreme Court [in *Dastar*] did not adopt a bright-line rule delineating tangible and intangible goods. Rather, it recognized a distinction between the tangible good and the intangible aspects *of that same good*." (emphasis in original).); *Slep-Tone Entmt. Corp. v. Wired for Sound Karaoke and DJ Servs, LLC*, 845 F.3d 1246, 1249-50 (9th Cir. 2017) (clarifying that "the tangible product sold in the marketplace" is protected by the Lanham Act while "the creative content of that product" is not).

of its series without proper credit to the plaintiff constituted false designation of origin. *Id*. at 27. Critically, the defendant's video series was not an exact copy of plaintiff's video series. Referencing the rather substantial differences, the U.S. Supreme Court held that because "origin" refers "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods," plaintiff could not assert a claim under the Lanham Act. *Id*. at 37. Importantly, however, the Supreme Court held that had the defendant copied plaintiff's video series entirely, without alteration—as Trustwell alleges Foodwit has done here—"that claim would undoubtedly be sustained." *Id*. at 31.

Numerous other courts have applied this principle in similar cases, holding that allegations of copying without alteration are sufficient to plead a claim for false designation of origin. *See, e.g., Slep-Tone Entmt. Corp. v. Sellis Enters., Inc.*, 87 F. Supp. 3d 897, 905 (N.D. Ill. 2015) ("Because the producer of the new good (karaoke jockeys) and the markholder of the mark on the goods (Slep–Tone) do not match, the alleged use of SlepTone's mark on the copied tracks is a false designation of origin covered by the Lanham Act.") The same analysis applies here.

### 2.    Trustwell Sufficiently Pleads The Elements Of Its Lanham Act Claims.

Foodwit next argues that (1) the misrepresentations at issue are mere puffery; and (2) Trustwell's allegations fail to satisfy Rule 9. Both arguments fail for the reasons below.

With respect to its false designation of origin claim, Trustwell "must show that the defendant (1) uses in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-CV-06012-SI, 2024 WL 1772833, at *12 (N.D. Cal. Apr. 23, 2024) (citation modified). With respect to its false advertising claim, Trustwell must allege "(1) a statement made in a commercial advertisement or promotion is false or misleading; (2) that it actually deceives or has the tendency to deceive a substantial segment of its audience; (3) that it's likely to influence purchasing decisions; and (4) that the plaintiff has been or is likely to be injured by the false advertisement." *Id.*

Foodwit argues that Trustwell's allegations do not satisfy the heightened pleadings requirements of Rule 9(b). Mot. at 27. But Rule 9(b) just requires that Trustwell's allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* (citations omitted). In other words, "the who, what, when, where, and how of the misconduct charged." *SKEDKO, Inc. v. ARC Prods., LLC*, No. 13-696, 2014 WL 585379, at *1 (D. Or. Feb. 13, 2014). Trustwell adequately pleads both claims, even under Rule 9(b).

### i.    Trustwell Sufficiently Alleges Actionable, False Statements Of Fact.

Trustwell alleges that Foodwit's repeated misrepresentations that it "built" Workbench from scratch constitute "a false statement of fact by the defendant in a commercial advertisement about its own or another's product," as required to state a claim for false advertising. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014). To be actionable, a statement must be quantifiable, meaning "that [it] makes a claim as to the specific or absolute characteristics of a product." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). For example, the Ninth Circuit found that factual statements like "[defendant] would deliver 95% up-time service in their. . .contracts" are sufficient to "survive 12(b)(6) scrutiny." *Id.* That is because "the question of whether [defendant] does or does not actually "deliver 95% up-time service in their IKON Contracts"—as well as the question of whether it actually had a 95% rate of up-time service at the time that [defendant] made that statement—are factual questions" that can be proven false or misleading. *Id.* The same is true here. Whether Foodwit actually and legitimately "built" Workbench from scratch can be proven false: if Foodwit merely copied Genesis Foods, as Trustwell alleges, it obviously did not build Workbench from scratch.

Page 23    **PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

Foodwit's authority does not compel a different result. Foodwit cites two cases interpreting California's unfair competition law (not the Lanham Act) where the court found the phrases "built to withstand reasonable shock" and "Built Ford Tough" to be mere puffery because they constitute the defendants' opinion about the quality of their goods. Mot. at 26; *see Schneider v. Ford Motor Co.*, No. 18-CV-00367-RGK-AS, 2018 WL 5213280, at *4 (C.D. Cal. Apr. 13, 2018). Trustwell, on the other hand, does not allege statements of opinion or otherwise subjective claims. Rather, Trustwell's false advertising claim is premised on the foundational and factual representation that Foodwit—legitimately, through its own honest, hard work—"built" the Workbench platform from scratch. To the extent Foodwit merely repackaged and sold Genesis Foods as Workbench, as Trustwell alleges, Foodwit's statements are demonstrably and objectively false.

### ii.    Trustwell Sufficiently Alleges Reliance.

Trustwell alleges that the identified misrepresentations, which continue to be publicized on Foodwit's website and elsewhere, tend to deceive consumers in the food and nutrition industry, which make up a "substantial segment of [Foodwit's] audience." *See* SAC ¶ 58; *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014). And Trustwell specifically alleges that certain of its customers now utilize Workbench, thereby diverting business and demonstrating actual consumer reliance. SAC ¶ 58. Through these allegations, Trustwell has sufficiently alleged the "who, what, when, and how" of the deception. *See SKEDKO, Inc.*, 2014 WL 585379, at *1. To the extent Workbench is nothing more than a repackaged copy of Genesis Foods, it is nonsense to suggest that consumers would not be deceived by Foodwit's objectively false representations.[11]

Moreover, where the representations are either literally or facially false, causation and damages are presumed. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir.

---

[11] Foodwit half-heartedly argues that Trustwell does not identify the specific customers that now utilize Workbench. Mot. at 28. Foodwit cites no authority for the proposition that Trustwell must do so—because no such requirement exists. Trustwell's allegation that certain of its customers utilize Workbench is a *factual* allegation, not pled on information and belief. Nothing more is required.

1997); *see also FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1149-50 (D. Or. 2012) ("When an advertisement is shown to be literally or facially false, consumer deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public.") (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). So, although Trustwell sufficiently alleges consumer reliance, it is not required to do so.

### iii.    Trustwell Sufficiently Alleges Deception.

Foodwit baldly argues that its statements are "extremely unlikely to induce consumer reliance." Mot. at 28. Foodwit cites no authority for its position. And again, to the extent Workbench is merely a repackaged copy of Genesis Foods, it is absurd to suggest that Foodwit's statements would not be material to consumers. Trustwell alleges that Foodwit's statements are likely to and did deceive consumers. SAC ¶¶ 58, 74. And Trustwell's factual allegation that certain of its customers now utilize Workbench demonstrates actual, material consumer deception.

Again, while causation and damages are presumed here, *see Southland Sod Farms*, 108 F.3d at 1146; *FLIR Sys., Inc.* 903 F. Supp. 2d at 1149-50, these allegations, taken together, are more than sufficient on their own to plead the elements of Trustwell's Lanham Act claims. S*ee E.I. Du Pont de Nemours & Co. v. Heraeus Precious Metals N. Am. Conshohocken LLC*, No. 12-CV-01104-HU, 2013 WL 2468257, at *7 (D. Or. June 7, 2013) (allegations of false representations about products made in press release distributed widely to defendant's customers sufficient to satisfy Rule 9(b) with respect to defendant's Lanham Act claim).

### iv.    Commercial Injury Is Presumed.

"[W]hen defendant and plaintiff are direct competitors," commercial injury is presumed under the Lanham Act. *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 826-27 (9th Cir. 2011); *see also Southland Sod Farms*, 108 F.3d at 1146; and *FLIR Sys., Inc.*, 903 F. Supp. 2d at 1149-50. In its ruling on Foodwit's first motion to dismiss, the Court recognized that Trustwell and Foodwit are indeed competitors. Order dated Sept. 22, 2025, Dkt. 45, at 3. Once again,

although Trustwell sufficiently alleges damages through concrete, ongoing diversion of business, SAC ¶ 58, this presumption of commercial injury means it is not required to do so.

### D.    TRUSTWELL SUFFICIENTLY PLEADS UTPA VIOLATIONS UNDER SECTIONS 646.608(1)(A) & (1)(B).

As Foodwit acknowledges, the elements of a UTPA claim are (1) a violation of Section 646.608(1); (2) causation; (3) damages; and (4) willfulness. *See* Mot. at 29.  Trustwell sufficiently alleges each of these elements.

#### 1.    Trustwell Sufficiently Alleges Violations Of Section 646.608(1).

A party violates 646.608(1)(a) when it "[p]asses off real estate, goods or services as the real estate, goods, or services of another," and 646.608(1)(b) when it "[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods, or services."  Trustwell sufficiently alleges violations of both sections.  Specifically, "Foodwit falsely and deceptively marketed, and continues to falsely and deceptively market, Trustwell's crown-jewel Trade Secrets *as Foodwit's own creation, the result of Foodwit's own honest, hard work*."  SAC ¶ 34 (emphasis added).  Trustwell further alleges that "Foodwit's false and misleading misrepresentations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country . . . who would not seek to purchase or license Workbench if they knew the truth." *Id.* at ¶ 74.  And Trustwell alleges that certain of its customers now utilize Workbench, thereby diverting business and demonstrating actual consumer reliance, deception, and injury.  SAC ¶ 74.

Trustwell supports these allegations with facts that plainly state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1043 (D. Or. 2014) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  Once again, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that defendant can prepare an adequate answer from the allegations." *Neubronner* 6 F.3d at 672 (citation and internal quotations omitted).  Indeed, the Ninth Circuit "has interpreted Rule 9(b) to require that 'allegations of fraud are specific enough to give

defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* at 671 (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). Trustwell plainly meets this standard.

Ms. Holmes expressly acknowledged in 2022 and 2023 that "Foodwit did not believe there were viable competitors to Genesis Foods in the market at that time." SAC ¶¶ 26, 28. In an effort to induce Trustwell's parent company to acquire or at least invest in Foodwit, Ms. Holmes even boasted that Genesis Foods would be a more commercially successful product if Foodwit replicated it because of Foodwit's purportedly greater industry reach. *Id.* When Trustwell's parent company declined to acquire or invest in Foodwit, Ms. Holmes and Foodwit decided to take matters into their own hands and simply repackage Genesis Foods as Foodwit's own creation. *Id.* Just one year later—an impossible timeline for legitimate development from scratch of such a complex system, particularly for a startup with limited resources—Foodwit announced the launch of Workbench. *Id.* at 28. It now markets and advertises Workbench as a new and "different" software platform that was "rebuil[t] from the ground up," despite it being nothing more than a copy of Genesis Foods. *Id.* at 29. These detailed allegations satisfy Rule 9(b).

Foodwit next argues that Trustwell's UTPA claim fails because it does not "allege passing off or confusion based on ambiguity in the identity of the provider of goods or services." Mot. at 31. As a preliminary matter, Foodwit cites no authority for the proposition that Section 646.608(1) is so limited. To the contrary, as the Oregon Supreme Court has long held, the UTPA "is to be interpreted liberally." *Clark v. Eddie Bauer LLC*, 371 Or. 177, 186 (2023). And the one case on which Foodwit relies, *Mendoza v. Lithia Motors, Inc.*, merely acknowledges that subsections (a)-(c) "require transparency regarding, *among other things*, the identity of service providers." No. 16-cv-01264-AA, 2018 WL 1513650, at *5 (D. Or. Mar. 27, 2018) (emphasis added). More to the point, Foodwit's argument that "allegedly false statements about one's own product do not violate § 646.608(1)(a) or (b)," Mot. at 31, is incorrect as a matter of law. The Oregon Supreme Court recently acknowledged that a company can violate the UTPA through false and misleading

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS SAC**

statements about its own energy beverage.  *See State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or. 23 (2023).  Trustwell plainly establishes the first element.

### 2.    Trustwell Sufficiently Alleges Causation.

As discussed above, Trustwell's allegations establish a factual basis and support "a causal link between [Trustwell's] loss and [Foodwit's] actions."  *See Fauley v. Washington Mut. Bank FA*, No. 13-581, 2014 WL 1317852, at *4 (D. Or. Mar. 21, 2014).  Trustwell specifically alleges that because certain of its customers now utilize Workbench, business has thereby been diverted from Trustwell to Foodwit.  SAC ¶ 74.  Ms. Holmes subtly threatened Trustwell's parent company with that exact outcome by boasting that Foodwit could replicate Genesis Foods to even greater commercial success.  SAC ¶ 26.  Before its final renewal of its license agreement (and before it launched Workbench), Ms. Holmes even made a point to confirm that Foodwit would be able to export a substantial volume of data from Genesis Foods, demonstrating her intent to copy the platform and the embedded Database.  *Id.* at ¶ 27.  Through Trustwell's allegations regarding Foodwit's scheme to unlawfully replicate the Genesis Foods system, as well as its false and deceptive marketing of the product as if Foodwit legitimately and independently developed it, Trustwell has established a causal link between its lost business and Foodwit's misconduct.

### 3.    Trustwell Sufficiently Alleges Damages.

"'Ascertainable loss' under the UTPA is amorphous.  Any loss will satisfy that requirement so long as it is 'capable of being discovered, observed, or established.'"  *Feitler v. Animation Celection, Inc.*, 120 Or. App. 702, 712 (Or. Ct. App. 2000) (quoting *Scott v. Western Int. Sales, Inc.*, 267 Or. 512, 515 (1973)).  By alleging that certain of its customers now utilize Workbench, thereby diverting business from Trustwell to Foodwit, Trustwell sufficiently alleges damages.

### 4.    Trustwell Sufficiently Alleges Willfulness.

As discussed, above, Rule 9(b) simply requires enough detail about the fraudulent activity to enable the defendant to prepare an answer to the allegations.  *Neubronner*, 6 F.3d at 672.  Moreover, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge.  In such

situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Id.* Trustwell sufficiently alleges willfulness, particularly in light of Ms. Holmes' boasts regarding Foodwit's ability to replicate Genesis Foods to even greater commercial success, demonstrating an intent to copy Genesis Foods and repackage it as Foodwit's own, legitimate creation, which Foodwit now markets as "different ... tech." SAC ¶¶ 26-29. This is particularly true given the impossible development timeline—just one year between Ms. Holmes' admission that there were no viable competitors to Genesis Foods and Foodwit's launch of an identical platform— particularly for a startup with limited resources. SAC ¶¶ 26-29. Foodwit knew it lacked the time and resources necessary to legitimately develop a competitive product from scratch, so it resorted to the quickest alternative: theft. Under the relaxed pleading standard, because Trustwell cannot know Foodwit's or Ms. Holmes' actual state of mind without discovery, these allegations are more than sufficient at the pleading stage.

### E.    TO THE EXTENT THE COURT FINDS ANY OF TRUSTWELL'S ALLEGATIONS INSUFFICIENT, LEAVE TO AMEND SHOULD BE GRANTED.

"[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citation omitted). This policy must be applied with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Thus, to the extent this Court is inclined to find any portion of Trustwell's allegations insufficient, Trustwell requests leave to amend.

### CONCLUSION

For all of the reasons above, Trustwell respectfully requests that the Court deny Foodwit's motion to dismiss in its entirety. To the extent the Court finds any of Trustwell's allegations insufficient, Trustwell respectfully requests leave to amend.

Dated:  December 10, 2025                Respectfully submitted,

                                        **JONES DAY**

                                        _s/ Cary D. Sullivan_
                                        Cary D. Sullivan (*admitted Pro Hac Vice*)
                                        Email: carysullivan@jonesday.com

                                        **DUNN CARNEY**
                                        Brian R. Talcott, OSB 965371
                                        Email:  btalcott@dunncarney.com

                                        *Attorneys for Plaintiff*

**PLAINTIFF TRUSTWELL'S OPPOSITION TO MOTION TO DISMISS
SAC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of December, 2025, I caused to be served the

foregoing **PLAINTIFF TRUSTWELL'S OPPOSITION TO DEFENDANT FOODWIT'S**

**MOTION TO DISMISS SECOND AMENDED COMPLAINT** on the following party via the

following method(s):

P. Andrew McStay, Jr.
Email: andymcstay@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
Telephone: +1 (503) 241-2300
Facsimile: +1 (503) 778-5299

*Attorneys for Defendant*
*RLH Assets, LLC d/b/a Foodwit*

by:
☐    U.S. Postal Service, ordinary first class mail
☒    electronic service
☐    other (specify)  Email

**JONES DAY**

  *s/ Cary D. Sullivan*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email:  btalcott@dunncarney.com