Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| **ESHA RESEARCH, LLC., now known as TRUSTWELL,**<br><br>Plaintiff,<br><br>v.<br><br>**RLH ASSETS, LLC, doing business as FOODWIT, an Oregon limited liability company,**<br><br>Defendant. | Civil No. 3:25-cv-00880-AB<br><br>**PLAINTIFF TRUSTWELL'S REPLY IN SUPPORT OF ITS RESPONSE TO FOODWIT'S (FIRST) REQUEST TO UNSEAL DOCUMENTS** |

Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell"), hereby submits its reply to Defendant RLH Assets, LLC, doing business as Foodwit's ("Foodwit"), opposition to Trustwell's motion to seal documents (Dkt. 61), pursuant to the Protective Order in this action (Dkt. 44), in response to Foodwit's first request to unseal documents.

## ARGUMENT

Foodwit's opposition collapses under the weight of its own misstatements, omissions, and gamesmanship. The Protective Order sets out a clear and orderly process for handling an opponent's confidential materials, and Trustwell followed it to the letter—Foodwit did not. Foodwit's central premise that Trustwell "violated" the Protective Order and was required to file simultaneous redacted versions is simply wrong. There is no such requirement, and Foodwit concedes as much. Instead of complying with the protocol the Protective Order actually requires—meeting and conferring to assess potential redaction before submission to the Court—Foodwit simply skipped that step and then cried foul. Its failure to meet and confer is not a technicality; it is the predicate the Protective Order requires before saddling the Court with sealing disputes and a telling admission that Foodwit prefers rhetoric to process.

The opposition also exposes Foodwit's true objective: to publicize Trustwell's trade secrets to "potential Foodwit customers or potential [Trustwell] competitors" so the market can see "Foodwit's side of the story." That is not transparency. It is a bid for competitive leverage through litigation. Courts throughout this District and the Ninth Circuit have long recognized that preventing the release of trade secrets is a compelling reason to seal, precisely to stop the kind of market harm Foodwit seeks to manufacture here. Foodwit's say-so that disclosure would cause no harm cannot overcome that standard, particularly where Trustwell has already documented the concrete risk: competitors would receive a distilled roadmap to the most valuable features and functionalities of the Genesis Foods platform and to the specific steps underlying Trustwell's master compilation database.

Nor does Foodwit's "everything is public" refrain withstand scrutiny. The law draws a clear line between scattered, piecemeal references and a curated compilation that itself confers

competitive value. And Trustwell's 19-page Trade Secret Identification (*see* Dkt. 48) falls squarely on the protected side of that line. Foodwit ignores this distinction and the record. The Court has already ruled that Trustwell's particularized description of its compilation database constitutes a sufficient trade secret identification, which confirms the propriety of sealing the very disclosures Foodwit wants to publicly broadcast. Meanwhile, Foodwit's pictures-of-a-puzzle approach—brandishing hundreds of pages of website printouts to claim public disclosure—does not somehow transform Trustwell's closely-guarded trade secrets into public information.

The opposition's remaining arguments fare no better. Foodwit's complaint about ECF labels is a sideshow. For its motion to seal, Trustwell used the docketing category that links a response to a request in the Court's ECF system—routine and immaterial to the merits of the sealing motion. And Foodwit's attempt to recast this as a fight about "access" rings hollow. It has already filed nearly 1,000 pages of moving papers and now more than 1,300 pages of reply materials without any barrier to litigating its defenses, only now to demand public disclosure to score commercial points. Foodwit offers no credible response to these defects, no engagement with the meet-and-confer prerequisite, and no authority that erases the Ninth Circuit's sealing framework for trade secrets. The Court should reject Foodwit's invitation to weaponize public access against the very interests the law protects and grant Trustwell's requested sealing.

## I. TRUSTWELL COMPLIED WITH THE PROTECTIVE ORDER.

Foodwit's principal opposition that Trustwell "violated" the Protective Order is flatly incorrect—and Foodwit knows it. *See* Opposition, Dkt. 61, at 3. Section 4 of the Protective Order sets out the mechanics for designating and filing materials that contain confidential or attorneys-eyes-only ("AEO") information, including the specific procedure non-designating parties like Foodwit must follow when they file or reference confidential material. *See* Dkt. 44, ¶ 4. After Foodwit filed its Request to Unseal (Dkt. 50), Trustwell did exactly what Section 4 mandates: it moved to maintain the sealing, while offering to redact the materials as an alternative. *See* Dkt. 56 at 6. Foodwit's "simultaneous redactions" gripe is invented. *See* Opp. at 4-5. Foodwit even admits that no such requirement exists without the entry of a new Court order. *Id.*

Instead, Section 11 of the Protocol sets forth the correct protocol where Foodwit disagrees with Trustwell's confidentiality designations. Section 11 requires the challenging party to meet and confer to "assess whether redaction is a viable alternative to complete non-disclosure." *See* Dkt. 44, ¶ 11. Foodwit conveniently neglects to mention that it never sought to meet and confer with Trustwell about its confidentiality designations, let alone on the discrete topic of redactions, before brazenly accusing Trustwell of "manipulat[ing] . . . the Court's procedures." *See* Dkt. 61. Where Foodwit charges manipulation, the record shows the opposite: Trustwell followed the Protective Order while Foodwit tried to weaponize public access for competitive advantage.

And Foodwit's original Request confirms why its filings were sealed. The filings quoted and relied upon materials designated as AEO by Trustwell, triggering the Protective Order's filing-under-seal protocol for non-designating parties under Section 4. *See* Dkt. 50 at 2; Dkt. 44, ¶ 4. The orderly next step under Section 4 is exactly what occurred. Trustwell moved to maintain sealing while the Court adjudicates these issues. *See* Dkt. 56.[1] Now, Foodwit rationalizes unbridled disclosure of Trustwell's trade secrets on a false premise despite its own failure to meet and confer. The Court should not reward such double-dealing.

## II. FOODWIT'S REQUEST IS UNNECESSARY AND PREJUDICIAL.

Foodwit's Request is a solution in search of a problem—both excessive and prejudicial to Trustwell. Foodwit's own filings prove there is no prejudice to litigating with sealing in place. Foodwit prepared roughly 1,000 pages of moving papers without any impairment, including 800 pages of extrinsic evidence—the 176-page Declaration of Matthew S. Warren ("Warren Declaration," Dkt. 48) plus 600+ pages of exhibits—without the sealed information being

---

[1] Foodwit accuses Trustwell of purposely selecting "Response" as the document category in the Court's ECF filing system instead of "Motion" in order to block a response from Foodwit. *See* Opp. at 2. This accusation is unsupported and, frankly, not worthy of counsel. Trustwell's selection of the "Response" category is the only manner in which the Court's ECF system permits the electronic linkage of Trustwell's "Response" to Foodwit's "Request," which is the standard procedure when parties file motions and responses to facilitate the Court's review.

disclosed publicly. The same is true for Foodwit's reply papers, which include the 1,234-page Declaration of Rebecca Holmes (Dkt. 63) rife with new and additional opinions and exhibits from a lay witness (which Trustwell is concurrently moving to strike). *See* Dkts. 60-63. Plainly, there is no prejudice to Foodwit's ability to litigate here.

Moreover, Foodwit admits that it seeks disclosure of Trustwell's trade secrets to "potential Foodwit customers or potential [Trustwell] competitors" so that the public may see "Foodwit's side of the story." Opp. at 1, 4.[2] That is a public relations gambit, not a legal necessity. Competitors would have unfettered access to a roadmap of Trustwell's most valuable products, and the most valuable features and functionalities of those products, enabling them to reverse engineer or at least tailor their products more effectively to compete with Genesis Foods. *See* Dolinsky Decl., Dkt. 56-1, ¶¶ 8, 13. Trustwell has already been irreparably harmed by Foodwit's ongoing misappropriation of the trade secrets it now seeks to make public, including through Foodwit's copycat Workbench product. *See* Second Am. Compl., Dkt. 46, ¶ 43. Simply put, Foodwit's opposition confirms that its Request is nothing more than an effort by Foodwit to compound and cause additional commercial injury to Trustwell.

Importantly and in addition, Foodwit cannot rebut the fact that "the release of trade secrets" is "a compelling reason to seal court records," *Empower Clinic Servs., LLC v. Legitscript LLC*, No. 25-cv-00514-AB, 2025 WL 1099105, at * 1 (D. Or. Apr. 11, 2025) (quoting *Kamakana v. City and Cnty. Of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)). That is why courts throughout the Ninth Circuit regularly grant sealing requests where 'public disclosure of t[he designated] information would competitively harm' [the] business' of the designating party like Trustwell. Foodwit's conclusory say-so does not trump that precedent. *See* Trustwell's Motion, Dkt. 56, at 3-4 (collecting cases). Foodwit's bid is far outweighed by the irreparable harm to Trustwell's

---

[2] Moreover, as Trustwell pointed out in its motion, forced disclosure would enable Foodwit to argue that trade secret status and protection has thereby been destroyed. *See* Dkt. 56 at 2-3.

business and competitive standing in the industry that would result from disclosure. *See* Dolinsky Decl., Dkt. 56-1, at ¶ 9.

### III. COMPELLING REASONS EXIST TO SEAL TRUSTWELL'S TRADE SECRETS.

Nothing in Foodwit's opposition disturbs the fundamental principle that courts seal materials that, if disclosed, would cause competitive harm or reveal trade secrets. *See* Trustwell's Motion, Dkt. 56, at 3-5 (citing cases). Trustwell's opposition materials, including the Dolinsky Declaration, fit squarely within this body of law. *See id.*; Dkt. 56-1. Foodwit's everything-is-public refrain is a strawman that collapses on contact with the record and the law. As discussed above, Trustwell's 19-page Trade Secret Identification (which is quoted liberally in Foodwit's Motion to Dismiss and the accompanying Warren Declaration) describes the trade secret features and functionalities of Trustwell's Genesis Foods software platform, and describes the specific steps in the process by which Trustwell creates its master food and nutrition database, which is a classic compilation trade secret. *See* Dolinsky Decl. ¶¶ 8, 13.

Foodwit's suggestion that "nothing in [Trustwell's] asserted trade secret disclosure is actually secret" ignores the dispositive distinction between scattered public references and a distilled, curated roadmap of the most valuable features and functionalities—precisely the kind of compilation that has independent competitive value and is protected under the law. *See Empower*, 2025 WL 1099105, at * 1 (citing *Apple Inc. v. Samsung Elecs., Co.*, 727 F.3d 1214, 1222 (Fed. Cir. 2013)).

While the *existence* of various Genesis Foods features and functionalities has been publicly disclosed in user manuals and related materials that have been posted online over the years, none of those materials provides or contains a specifically distilled list of the most unique and valuable features and functionalities of Genesis Foods. Dolinsky Decl., Dkt. 56-1, ¶¶ 9, 13. And no portion of Trustwell's Trade Secret Identification relating to its master food and nutrition database has been publicly disclosed. *Id.* ¶ 7. This is not mere "conjecture," as Foodwit argues (*see* Opp. at 8), because this Court already ruled that Trustwell's particularized description of its compilation

database is a sufficient trade secret identification.  *ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-cv-1586-AB, Dkt. No. 39 (D. Or.  May 8, 2025).

At bottom, the Protective Order acknowledges the presumption of access while preserving sealing where compelling reasons exist to protect Trustwell's trade secrets, and it anticipates the use of sealing to protect such materials.  *See* Dkt. 44, ¶ 4.  Trustwell easily satisfied that standard.  Because Foodwit offers only conjecture and rhetoric in response, the Court should grant Trustwell's motion to seal.  *See* Dkt. 56.

## CONCLUSION

For all of these reasons, Trustwell respectfully reasserts its request that the Court order that 1) Trustwell's Trade Secret Identification (Dkt. 48-1) remain sealed; and 2) those portions of Foodwit's Motion to Dismiss (Dkt. 47) and the Warren Declaration (Dkt. 48) that quote or discuss the contents of Trustwell's Trade Secret Identification also remain sealed.  Trustwell can provide the Court with proposed redactions to those materials if that would be helpful.

Dated:  January 26, 2026

Respectfully submitted,

**JONES DAY**

 *s/ Cary D. Sullivan*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email:  carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email:  btalcott@dunncarney.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of January, 2026, I caused to be served the foregoing **PLAINTIFF TRUSTWELL'S REPLY IN SUPPORT OF ITS RESPONSE TO FOODWIT'S (FIRST) REQUEST TO UNSEAL DOCUMENTS** on the following party via the following method(s):

P. Andrew McStay, Jr.
Email: andymcstay@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
Telephone: +1 (503) 241-2300
Facsimile: +1 (503) 778-5299

*Attorneys for Defendant
RLH Assets, LLC d/b/a Foodwit*

by:
☐ U.S. Postal Service, ordinary first class mail
☒ electronic service
☐ other (specify)  Email

**JONES DAY**

  *s/ Cary D. Sullivan*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email:  carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email:  btalcott@dunncarney.com

*Attorneys for Plaintiff*