IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ESHA RESEARCH, LLC,
now known as Trustwell,

        Plaintiff,

    v.

RLH ASSETS, LLC,
doing business as Foodwit,

        Defendant.

Case No. 3:25-cv-00880-AB

OPINION & ORDER

Brian R. Talcott
Dunn Carney LLP
851 SW Sixth Avenue Suite 1500
Portland, OR 97204-1357

Kenneth Laurence Dorsney
Cortlan S. Hitch
Morris James LLP
500 Delaware Avenue Suite 1500
Wilmington, DE 19899-2306

1 – OPINION & ORDER

Cary Sullivan
Jones Day
3161 Michelson Drive Suite 800
Irvine, CA 92612-4408

      Attorneys for Plaintiff

P. Andrew McStay, Jr.
Davis Wright Tremaine, LLP
560 SW 10th Avenue Suite 700
Portland, OR 97205

Erika Warren
Matthew S. Warren
Warren LLP
2261 Market Street, No. 606
San Francisco, CA 94114

      Attorneys for Defendant

**BAGGIO, District Judge:**

Plaintiff ESHA Research, LLC brings this case against Defendant RLH Assets, LLC. Plaintiff alleges five claims for relief: (1) breach of contract; (2) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"); (3) false advertising and false designation of origin under the Lanham Act; (4) misappropriation of trade secrets under the Oregon Uniform Trade Secrets Act ("OUTSA"); and unlawful trade practices under the Oregon Unlawful Trade Practices Act ("UTPA"). Second Am. Compl. ("SAC") ¶¶ 40–76, ECF No. 46.

Defendant moves to dismiss Plaintiff's Second Amended Complaint. Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 47. For the following reasons, the Court grants in part and denies in part Defendant's Motion.

///

///

///

2 – OPINION & ORDER

## BACKGROUND

This case concerns the alleged theft of Plaintiff's software system—Genesis Foods. SAC ¶ 2. Genesis Foods is a software system that, "among other things, automates processes for food and supplement formulation, labeling calculations, and regulatory compliance . . . ." *Id.* Genesis Foods was first introduced to customers in 1991. SAC ¶ 19. At that time, Genesis Foods enabled "companies to formulate foods virtually, create government-compliant nutrition panels and labels, and analyze the nutritional content of recipes . . . ." *Id.* Since 1991, Plaintiff has "continually updated and improved" Genesis Foods. *Id.* And in 2024, Plaintiff "launched the next generation of Genesis Foods, providing a state-of-the-art, all-in-one platform for nutrition analysis, food and supplement formulation, recipe development, labeling, and regulatory compliance, including U.S., Mexico, Canada, Australia, New Zealand, and European Union food labeling requirements and guidelines." *Id.*

Genesis Foods is backed by a "master food and nutrition database that is embedded in the Genesis Foods system"—(the "Database"). SAC ¶ 20. The Database "includes, among other things, comprehensive and continuously updated nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,000 brand name and generic foods and ingredients." *Id.* The Database "includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available, as well as a particular selection of data from vetted and reliable external sources like governmental agencies." *Id.*

Plaintiff asserts that the Genesis Foods software system and the Database are its trade secrets ("Trade Secrets"). *Id.* Plaintiff asserts that the Database is a "compilation trade secret" and that Genesis Foods "includes numerous unique and proprietary features, functionalities,

3 – OPINION & ORDER

formulas, designs, and configurations, including [various] types of trade secrets . . . ." SAC ¶¶ 20–21; *see also* SAC ¶¶ 21(a)–(h) (listing the types of trade secrets associated with Genesis Foods).

Plaintiff "derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means." SAC ¶ 24. Plaintiff licenses "access to and use of its Trade Secrets," representing "a substantial portion of [Plaintiff's] business." *Id.* Plaintiff also "takes reasonable steps to protect the secrecy of its Trade Secrets." SAC ¶ 25. Plaintiff utilizes confidentiality provisions in its licensing agreements, electronic and physical security measures, confidentiality agreements with its employees, and regular instruction of its employees of the confidential nature of its Trade Secrets, "which must be protected at all times from disclosure to third parties." *Id.*

In 2017, Defendant approached Plaintiff seeking a license to access and use Genesis Foods. SAC ¶ 13. The parties executed a limited-use license agreement (the "License Agreement"). *Id.* The License Agreement was renewed annually until it expired on August 29, 2024. *Id.* Defendant paid annual licensing fees to Plaintiff from 2017 through 2024. *Id.* Plaintiff alleges, however, that before the License Agreement expired, Defendant unlawfully "accessed, used, and disclosed" Plaintiff's Trade Secrets "to design and build Workbench," a competing product. SAC ¶ 27. Plaintiff alleges that although it has not inspected the entire Workbench platform, the portions it has viewed appear to copy Genesis Foods.[1] SAC ¶ 33. Plaintiff thus believes that Workbench is a complete copy of Genesis Foods. *Id.*

---

[1] Plaintiff alleges that Defendant has refused to let Plaintiff inspect the Workbench platform. SAC ¶ 33.

4 – OPINION & ORDER

Plaintiff alleges several facts to support its allegations. For example, in 2022 and 2023, during investment or acquisition discussions between Plaintiff's parent company and Defendant, Defendant's founder and majority owner, Becki Holmes, revealed that Defendant "was a 'super user' of Genesis Foods, utilizing it on a daily basis." SAC ¶ 26. Ms. Holmes also mentioned that there were no viable competitors to Genesis Foods and that "because of her extensive experience with Genesis Foods, she had unique insight into what 'is working/not working' with the platform." *Id.* Ms. Holmes further claimed that Defendant had greater industry reach than Plaintiff, suggesting that if Defendant replicated Genesis Foods, "it would become a more commercially successful product . . . ." *Id.* Ultimately, Plaintiff's parent company did not invest in or acquire Defendant. *Id.* Plaintiff alleges that this rejection "prompted Ms. Holmes and [Defendant] to copy Genesis Foods and pass it off as its own creation." *Id.*

Plaintiff alleges several other facts. For example, in 2023, Defendant received a confidential presentation regarding the 2024 updates to Genesis Foods. SAC ¶ 19. Plaintiff also alleges that to be qualified for certain employment positions with Defendant, individuals must be proficient in Genesis Foods. SAC ¶ 26. Plaintiff further alleges that before Defendant renewed the License Agreement for the last time, Ms. Holmes made sure that "API/Import/Export functionality [would be] included." SAC ¶ 27. Overall, Plaintiff alleges that the only way Defendant could have built a competing product to Genesis Foods, from scratch and within one year, was to misappropriate Plaintiff's Trade Secrets—particularly given that Genesis Foods "represents more than three decades of substantial and continuous investment in research and development." SAC ¶ 28.

As a result of Defendant's alleged conduct, Plaintiff brought this action. Plaintiff alleges Defendant breached and continues to breach multiple provisions of the License Agreement,

5 – OPINION & ORDER

Defendant has misappropriated Plaintiff's Trade Secrets, Defendant makes false and misleading statements and fails to disclose material information about the origin of Workbench, and Defendant has engaged in unlawful trade practices. *See* SAC ¶¶ 40–76.

**STANDARDS**

I.      **Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) attacks "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack . . . , the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

II.     **Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

6 – OPINION & ORDER

the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id.* at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.   Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

///

///

7 – OPINION & ORDER

**DISCUSSION**

Defendant moves to dismiss Plaintiff's Second Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *See* Def.'s Mot. The Court grants in part and denies in part Defendant's Motion. Specifically, the Court denies Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(1). The Court further denies Defendant's Motion to Dismiss Plaintiff's false designation of origin claim under the Lanham Act, DTSA claim, OUTSA claim, and breach of contract claim under Rule 12(b)(6). The Court, however, grants Defendant's Motion to Dismiss Plaintiff's false advertising claim under the Lanham Act and UTPA claim.

**I.    Threshold Matters**

As a threshold matter, Defendant requests that the Court incorporate by reference and take judicial notice of certain documents. Def.'s Mot. 19–21.

A.    Incorporation by Reference

When ruling on a Rule 12(b)(6) motion, a court may consider certain documents that are not attached to the complaint as part of the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[I]ncorporation-by-reference . . . treats certain documents as though they are part of the complaint itself."). This "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. A court, however, may not consider documents which "merely create[] a defense to the well-pled allegations in the complaint[;]" "[o]therwise, defendants could use the doctrine to insert their own version of events into the

8 – OPINION & ORDER

complaint to defeat otherwise cognizable claims." *Id.* Moreover, "'the mere mention of the existence of a document is insufficient to incorporate the contents of a document' . . . ." *Id.* (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Defendant requests that the Court incorporate by reference five documents: (1) Plaintiff's response to Defendant's first interrogatory requesting Plaintiff to identify its Trade Secrets, Warren Decl. Ex. 1, ECF No. 48-1; (2) a September 10, 2025 letter from Defendant to Plaintiff requesting an explanation of Plaintiff's Trade Secrets, Warren Decl. Ex. 2, ECF No. 48-2; (3) Plaintiff's response to Defendant's September 10, 2025 letter, Warren Decl. Ex. 3, ECF No. 48-3; (4) an additional September 22, 2025 letter from Defendant to Plaintiff requesting an explanation of Plaintiff's Trade Secrets, Warren Decl. Ex. 4, ECF No. 48-4; and (5) the License Agreement, Warren Decl. Ex. 6 ("License Agreement"), ECF No. 48-6. Def.'s Mot. 20. The Court incorporates by reference only the License Agreement.

As to the first four documents, Warren Decl. Exs. 1–4, the Court finds that incorporation by reference is improper because the documents "merely create[] a defense to the well-pled allegations in" Plaintiff's Second Amended Complaint. *Khoja*, 899 F.3d at 1002. The documents—which are discovery materials—support Defendant's argument that Plaintiff "has no trade secrets to assert." Def.'s Mot. 21. Considering them at the pleading stage, therefore, necessarily converts Defendant's Motion to Dismiss into a summary judgment motion. *See* Fed. R. Civ. P. 12(d); *see, e.g.*, *Dae Sung Hi Tech Co. v. D&B Sales, Inc.*, No. 2:22-cv-00030-ART-BNW, 2025 WL 562872, at *6 (D. Nev. Feb. 18, 2025) (declining to incorporate by reference responses to interrogatories because they were proffered as a defense to the allegations in the complaint and because "their consideration would convert the motion into a motion for summary judgment"). Accordingly, even though Plaintiff's Second Amended Complaint mentions its

9 – OPINION & ORDER

response to Defendant's first interrogatory, *see* SAC ¶ 23, the Court finds that incorporation by reference of this document, in addition to the other three documents, would be improper, *see Khoja*, 899 F.3d at 1002 ("[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document . . . ." (internal quotation marks omitted)).

As to the License Agreement, Warren Decl. Ex. 6, the Court finds that incorporation by reference is proper because Plaintiff refers extensively to it, *see, e.g.*, SAC ¶¶ 14–18, and because it forms the basis of Plaintiff's breach of contract claim, *see* SAC ¶¶ 40–43. *Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

B.      Judicial Notice

Under Federal Rule of Evidence 201, a court "may judicially notice a fact that is not subject to reasonable dispute" if it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendant requests that the Court take judicial notice of documents Defendant has identified as available on the Internet Archive, specifically all documents attached to the Warren Declaration other than those Defendant seeks to incorporate by reference. Def.'s Mot. 20–21. Defendant argues that these documents—which were gathered from Plaintiff's public documentation—demonstrate that Plaintiff's purported Trade Secrets are publicly disclosed and therefore not a trade secret. *Id.*; *see also id.* at 7 ("Since all the information in [Plaintiff's] asserted trade secret (or secrets) regarding its 'Genesis Foods software system,' is already public in [Plaintiff's] own documentation, nothing [Plaintiff] disclosed can be a cognizable trade

10 – OPINION & ORDER

secret."). Plaintiff, however, identifies that the documents Defendant requests this Court to judicially notice span "user manuals for various versions of Genesis Foods that have been posted online over the years." Pl.'s Opp'n Def.'s Mot. ("Pl.'s Resp.") 10, ECF No. 56. Because these documents span multiple versions of the Genesis Foods platform, the Court finds that the accuracy of these documents—as applied to Plaintiff's *current* Trade Secrets—can "reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, the Court declines to judicially notice the facts contained in these documents.

## II.    Standing

Defendant moves to dismiss Plaintiff's Second Amended Complaint for lack of standing under Rule 12(b)(1) because Plaintiff has no trade secrets and thus no injury-in-fact.[2] Def.'s Mot. 15–16; Def.'s Reply 12, ECF No. 60. Plaintiff responds, in relevant part, that Defendant's argument is improper under Ninth Circuit authority. Pl.'s Resp. 5–7. The Court agrees with Plaintiff.

"[W]hether a . . . plaintiff has identified information that is sufficiently particular to constitute a trade secret . . . is a question of fact [and] usually a matter for summary judgment or trial." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025). At the pleading stage, therefore, "'[a] plaintiff need not spell out the details of the trade secret' . . . ." *Sennco Sols., Inc. v. Mobile Techs., Inc.*, No. 3:20-cv-1426-JR, 2021 WL 463436, at *2 (D. Or. Feb. 9, 2021) (quoting *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)). Rather, it is during discovery that "requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020).

---

[2] Defendant's Rule 12(b)(1) Motion is factual. Def.'s Mot. 16.

11 – OPINION & ORDER

Here, after receiving Plaintiff's response to Defendant's first interrogatory requesting Plaintiff to identify its Trade Secrets, *see* Warren Decl. Ex. 1, Defendant now asks this Court to resolve, on the merits, whether Plaintiff has sufficiently identified its trade secrets, Def.'s Mot. 5–15. Defendant brings this merits-based argument via a standing analysis: "With no trade secrets, [Plaintiff] has no 'de facto' trade secret injury and thus no standing . . . ." *Id.* at 16 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).[3] Defendant's argument, however, is premature.[4]

In *InteliClear*, the Ninth Circuit considered whether the district court erred in granting summary judgment to the defendant on the plaintiff's trade secret claims and denying the plaintiff's motion to defer the district court's ruling until after discovery. 978 F.3d at 657. At the time both motions were filed, no discovery had occurred. *See id.* The Ninth Circuit reversed the district court on both motions. *See id.* at 664 ("[W]e hold that genuine disputes of material fact remain as to whether [the plaintiff] demonstrated that it possessed protectable trade secrets and that the district court abused its discretion in denying discovery under Rule 56(d)."). The court reasoned that because no discovery had occurred, granting summary judgment was "precipitous, premature and did not fairly permit development of the issues for resolution . . . ." *Id.* at 663. The court explained that in trade secret cases, "whether a plaintiff's trade secrets are described with 'sufficient particularity' typically arise[s] in the battleground of discovery." *Id.* at 662. Indeed,

---

[3] Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338. Standing consists of three elements: "[t]he plaintiff must have (1) suffered an *injury in fact*, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (emphasis added). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340 (quoting Black's Law Dictionary 479 (9th ed. 2009)).

[4] The Court resolves Defendant's argument assuming, but not deciding, that a lack of trade secrets supports a lack of standing.

"discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *Id.*; *see also id.* ("Refining trade secret identifications through discovery makes good sense. The process acknowledges the inherent tension between a party's desire to protect legitimate intellectual property claims and the need for intellectual property law to prevent unnecessary obstacles to useful competition.").

Similarly, in *Quintara*, the Ninth Circuit considered whether the district court abused its discretion when it effectively dismissed nine of the plaintiff's purported trade secrets as a discovery sanction at the outset of discovery. 149 F.4th at 1089. The Ninth Circuit held that the district court did abuse its discretion. *Id.* Like the *InteliClear* court, the *Quintara* court reasoned that "[t]he district court's dismissal . . . came early in the litigation and before an opportunity for discovery that would allow the parties to refine and clarify the identification of the alleged trade secrets at issue." *Id.* at 1091. The court explained that in trade secret cases, "the conventional order of pleadings, initial disclosures, and first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim." *Id.* at 1088. Therefore, additional discovery may be needed whereby "requests between parties lead to a refined and sufficiently particularized trade secret identification." *Id.* (quoting *InteliClear*, 978 F.3d at 662). For these reasons, the court held that whether a trade secret is sufficiently identified "should be resolved on summary judgment or at trial." *Id.* at 1091.

The through line from *InteliClear* and *Quintara* is that in trade secret cases, discovery is necessary for trade secret identification because it "allow[s] the parties to refine and clarify the identification of the alleged trade secrets at issue." *Id.* Thus, "[w]hether a trade secret is identified with 'sufficient particularity' is a question of fact." *Id.* at 1087. Considering this principle, the Court declines to resolve whether Plaintiff identifies its Trade Secrets with

13 – OPINION & ORDER

sufficient particularity at this early pleading stage. Instead, the Court will evaluate whether Plaintiff adequately *alleges* its Trade Secrets under Rule 12(b)(6). *See* Discussion *infra*, Section IV.[5]

Defendant argues that *Quintara* does "not change the requirement that [Plaintiff] show a quantum of injury in fact." Def.'s Reply 16–17. But Defendant's argument also does not change the central premise from *InteliClear* and *Quintara*: "[W]hether a . . . plaintiff has identified information that is sufficiently particular to constitute a trade secret—information that is kept secret and derives value from not being generally known—is a question of fact." *Quintara*, 149 F.4th at 1085. Here, because Defendant's Motion arises at the pleading stage and before discovery has progressed—let alone ordered by the Court—the Court finds it premature to resolve the merits of Plaintiff's trade secret identification. *See InteliClear*, 978 F.3d at 663–64 (finding grant of summary judgment "was precipitous, premature and did not fairly permit development of the issues for resolution, because the nonmoving party [did] not ha[ve] the opportunity to discover information that [was] essential to its opposition" (internal quotation marks omitted)). Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for lack of standing under Rule 12(b)(1).

## III.    Lanham Act

"The Lanham Act prohibits conduct that would confuse consumers as to the origin, sponsorship, or approval of goods or services." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1013 (9th Cir. 2018). 15 U.S.C. § 1125(a) specifically creates "a federal

---

[5] The Court notes that although some discovery on the identification of Plaintiff's Trade Secrets has occurred, *see* Warren Decl. Exs. 1–3, such limited discovery is insufficient to justify a ruling on the merits of Plaintiff's Trade Secrets at this early stage, *see Quintara*, 149 F.4th at 1088 ("[T]he conventional order of pleadings, initial disclosures, and first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim.").

remedy against a person who use[s] in commerce either a false designation of origin, or any false description or representation in connection with any goods or services." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (internal quotation marks omitted).

Under a false designation of origin claim, a person is prohibited "from using 'in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods.'" *OTR Wheel Eng'g*, 897 F.3d at 1016 (quoting 15 U.S.C. § 1125(a)(1)(A)). The "origin" of goods supports a passing off and reverse passing off claim. *See id.* In a passing off claim, "a producer misrepresents his own goods or services as someone else's."[6] *Dastar*, 539 U.S. at 27 n.1. By contrast, in a reverse passing off claim, a "producer misrepresents someone else's goods or services as his own."[7] *Id.*

Under a false advertising claim, a person is prohibited from using "in commerce any word, term, name, . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising . . . , misrepresents the nature, characteristics, qualities, or geographic origin of his or her . . . goods [or] services . . . ." 15 U.S.C. § 1125(a)(1)(B).

Here, Plaintiff alleges a false designation of origin and false advertising claim. SAC ¶¶ 55–60. Defendant moves to dismiss Plaintiff's false designation of origin claim for lack of subject-matter jurisdiction under Rule 12(b)(1),[8] Def.'s Mot. 16–18; Def.'s Reply 12–14, and Plaintiff's false designation of origin and false advertising claims for failure to state a claim under Rule 12(b)(6), Def.'s Mot. 23–29; Def.'s Reply 23–27.

---

[6] For example, if Coca-Cola were to pass its product off as Pepsi-Cola. *See Dastar*, 539 U.S. at 32.

[7] For example, if Coca-Cola were to pass off Pepsi-Cola as its own product. *See id.*

[8] Defendant's Rule 12(b)(1) Motion is factual. Def.'s Reply 13.

15 – OPINION & ORDER

A.      Rule 12(b)(1)

Defendant moves to dismiss Plaintiff's false designation of origin claim for lack of standing. Def.'s Mot. 16–18; Def.'s Reply 12–14. Defendant disputes the truth of Plaintiff's allegations—specifically Plaintiff's allegation that Defendant "appears to have copied the entirety of Genesis Foods . . . ." SAC ¶ 57; *see also* Def.'s Mot. 16–18; Def.'s Reply 12–14. Thus, Defendant argues Plaintiff "cannot allege a 'de facto' injury under the Lanham Act." Def.'s Mot. 18 (quoting *Spokeo*, 578 U.S. at 340). To understand Defendant's argument, the Court briefly summarizes the Supreme Court's holding in *Dastar*.

In *Dastar*, the Supreme Court evaluated the meaning of "'origin' of 'goods'" under 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act. 539 U.S. at 31. There, the defendant took a creative work from the public domain—videotapes of a television series—copied it, made modifications to it, and produced its own videotapes. *See id.* The plaintiff brought a reverse passing off claim under 15 U.S.C. § 1125(a)(1)(A). At the outset, the Court acknowledged that if the defendant had merely purchased the videotapes and repackaged them as its own, the claim "would undoubtedly be sustained . . . ." *Id.* The Court, however, held that because the defendant was the creator of the new videotapes, the claim could not stand because the defendant was the "origin" of that product—i.e., "the producer of the tangible product sold in the marketplace . . . ." *Id.* at 31. The Court explained that the phrase "origin of goods" is limited "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.

Here, because Plaintiff alleges that Defendant "appears to have copied the entirety of Genesis Foods," SAC ¶ 57, Plaintiff asserts that it may maintain its false designation of origin claim, *see id.* ("As the U.S. Supreme Court made clear, copying the entirety of one product

16 – OPINION & ORDER

without authorization and selling it under a different name constitutes a clear violation of the Lanham Act." (citing *Dastar*, 539 U.S. at 31)); *see also* Pl.'s Resp. 22. Defendant disputes the truth of Plaintiff's allegation in two ways. Def.'s Mot. 16–18. First, Defendant argues that Plaintiff's allegation is false because Plaintiff has admitted it does not know whether Workbench is an identical copy of Genesis Foods. Def.'s Mot. 17–18 (citing Oral Arg. Tr. 21:20–22:2, ECF No. 41). Second, Defendant argues that Plaintiff's allegation is false because under the terms of the License Agreement it was impossible for Defendant to repackage Genesis Foods as its own. Def.'s Mot. 18 (citing License Agreement 2–3 and arguing that Defendant "received at most 'object code copies' and never possessed the source code"). The Court disagrees with Defendant's arguments.

First, the fact that Plaintiff admitted it does not know whether Workbench is an exact copy of Genesis Foods does not render Plaintiff's allegations false. To be sure, Plaintiff does not allege it has viewed the entirety of Workbench. *See* SAC ¶ 33 ("[Plaintiff] has not been able to review the entirety of the Workbench platform to date."). Plaintiff instead alleges that, based on the portions of Workbench that Plaintiff has seen, Workbench *appears* to be a copy of Genesis Foods. *See id.* ("[I]t is [Plaintiff's] informed belief that the entirety of the Workbench platform is a copy of Genesis Foods."); SAC ¶ 57 ("[Defendant] *appears* to have copied the entirety of Genesis Foods . . . ." (emphasis added)). Accordingly, the Court finds the fact that Plaintiff admitted it does not know whether Workbench is an identical copy to Genesis Foods does not undermine Plaintiff's allegations and thus Plaintiff's standing.

Second, whether the License Agreement made it possible for Defendant to repackage Genesis Foods as its own is a question dependent on the resolution of factual issues going to the merits of Plaintiff's claims. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)

17 – OPINION & ORDER

("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial."). Specifically, this question depends on the extent of Defendant's license to use and access Genesis Foods as well as an interpretation of the License Agreement, which, at this time, the Court cannot conclude precluded Defendant from repackaging Genesis Foods; it is unclear to the Court what an object code copy conveys. *See Adair Homes, Inc. v. Dunn Carney Allen Higgins & Tongue, LLP*, 262 Or. App. 273, 278, 325 P.3d 49 (2014) ("If a contract is ambiguous, and there is relevant competing extrinsic evidence to resolve the ambiguity, ascertaining the meaning of the contract involves a question of fact . . . .").

For these reasons, the Court denies Defendant's Motion to Dismiss Plaintiff's false designation of origin claim for lack of standing.[9]

B.      Rule 12(b)(6)

Defendant moves to dismiss Plaintiff's false designation of origin and false advertising claims for failure to state a claim. Def.'s Mot. 23–29; Def.'s Reply 23–27. Defendant argues, among other things, that *Dastar* precludes Plaintiff's claims and Plaintiff's allegations do not satisfy Rule 9(b)'s heightened pleading standard. Def.'s Mot. 23–25, 27–29; Def.'s Reply 23–25, 26–27. The Court addresses each argument in turn.

i.      *Dastar*

As stated, *Dastar* limits reverse passing off false designation of origin claims "to the producer of the tangible goods that are offered for sale, and not to the author of any idea,

---

[9] Like the earlier standing analysis, *see* Discussion *supra*, Section II, the Court resolves this standing argument assuming, but not deciding, that an inability to repackage Genesis Foods supports a lack of standing on Plaintiff's false designation of origin claim.

18 – OPINION & ORDER

concept, or communication embodied in those goods." 539 U.S. at 37. Thus, if Coca-Cola passes off Pepsi-Cola as its own product, Pepsi-Cola may maintain a false designation of origin claim against Coca-Cola. *See id.* at 32. However, if the person who came up with the idea for, or designed, Coca-Cola tries to sue Coca-Cola for false designation of origin, such claim is prohibited. *See id.*

Here, among other things, Defendant argues that Plaintiff's false advertising claim is a false designation of origin claim in disguise. Def.'s Mot. 25; Def.'s Reply 25. Defendant further argues that Plaintiff's false designation of origin claim is precluded under *Dastar*. Def.'s Mot. 23–24; Def.'s Reply 23–24. The Court agrees that Plaintiff's false advertising claim is a false designation of origin claim in disguise; however, the Court disagrees that *Dastar* precludes Plaintiff's false designation of origin claim. Accordingly, the Court only dismisses Plaintiff's false advertising claim.

In *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226 (3d Cir. 2017), the Third Circuit held that the plaintiff's false advertising claim failed because it was essentially a false designation of origin claim in disguise. There, the plaintiff argued that the defendant's "PARK'S FINEST" brand falsely implied that the defendant's product was one of the plaintiff's products. *Id.* at 227. The court held that such a claim necessarily depended on the purported false association between the defendant's "PARK'S FINEST brand and the PARKS mark." *Id.* Thus, the court reasoned that the plaintiff's false advertising claim rose and fell with the plaintiff's false association claim. *Id.* Here, similarly, Plaintiff's false advertising claim rises and falls with Plaintiff's false designation of origin claim. Indeed, Plaintiff's false advertising claim "is based on the demonstrably and objectively false marketing and advertising statements published on [Defendant's] website and elsewhere that [Defendant] legitimately and honestly built Workbench

19 – OPINION & ORDER

from scratch, rather than having simply copied Genesis Foods." Pl.'s Resp. 20. In essence, Plaintiff argues that Defendant misrepresents Genesis Foods as its own platform—Workbench. *See, e.g.*, SAC ¶ 30 ("Each of [Defendant's] representations is also a statement of fact—*i.e., that [Defendant] 'built' Workbench*—and thus can objectively be proven wrong."). This is precisely a reverse passing off claim. *See Dastar*, 539 U.S. at 27 n.1 (explaining that in a reverse passing off claim, "[t]he producer misrepresents someone else's goods or services as his own"). Accordingly, the Court finds that Plaintiff's false advertising claim is a false designation of origin claim in disguise and dismisses it.

Having found that Plaintiff's false advertising claim is merely a false designation of origin claim in disguise, the Court addresses whether Plaintiff's false designation of origin claim is precluded under *Dastar*. The Court finds it is not. Indeed, Plaintiff does not allege that Defendant "took [Genesis Foods from] the public domain . . . copied it, made modifications . . . , and produced its very own [platform]." *Id.* at 31. Rather, Plaintiff alleges "the entirety of the Workbench platform is a copy of Genesis Foods." SAC ¶ 33. Accepting this allegation true, the Court finds Plaintiff's claim avoids *Dastar*. *See* 539 U.S. at 31 (finding that if the defendant "merely repackaged" the plaintiff's videotapes as its own, that would sustain a reverse passing off claim); *see also Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074, 1106–07 (S.D. Cal. 2023) (granting summary judgment to the defendants where the defendants copied the plaintiffs' software code into a new file, removed portions of that code, and then offered it as a product to clients).

///

///

///

20 – OPINION & ORDER

ii.    Rule 9(b)

As stated, under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

Here, Defendant argues that Plaintiff's Lanham Act claim fails under Rule 9(b). Def.'s Mot. 27–29; Def.'s Reply 26–27. Plaintiff argues that it adequately pleads its Lanham Act claim under Rule 9(b). Pl.'s Resp. 23. The Court agrees with Plaintiff.[10]

First, Plaintiff alleges the who of the misconduct: Defendant RLH Assets, LLC, doing business as Foodwit. *See* SAC ¶¶ 1,56. Second, Plaintiff alleges the what of the misconduct: Defendant makes false and misleading representations "about the origin . . . of Workbench . . . ." *Id.* Third, Plaintiff alleges the when of the misconduct: sometime in 2024 after Plaintiff launched the next generation of Genesis Foods but before Defendant's License Agreement expired on August 29, 2024. *See* SAC ¶¶ 13, 27. Fourth, Plaintiff alleges the where of the misconduct: through Workbench and on Defendant's website. *See* SAC ¶¶ 29, 34. Last, Plaintiff alleges the how of the misconduct: Defendant "accessed, used, and disclosed the new Genesis Foods system to design and build Workbench," and then publicly marketed and advertised Workbench as its own creation. *See* SAC ¶¶ 27, 29.

In addition to alleging the who, what, when, where, and how of Defendant's misconduct, Plaintiff provides other details. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). For example, Plaintiff alleges that in 2022 and 2023,

---

[10] Because Plaintiff does not dispute that Rule 9(b) applies to its Lanham Act claims, the Court does not address this. *See* Pl.'s Resp. 23.

21 – OPINION & ORDER

Defendant engaged in investment or acquisition discussions with Plaintiff's parent company. SAC ¶ 26. During those discussions, Defendant's founder and majority owner, Ms. Holmes, made multiple statements regarding Genesis Foods, including that Defendant was a "super user" of the software; that there were no viable competitors to Genesis Foods; that because of her experience with Genesis Foods, she had unique insight into the platform; and that Defendant had greater industry reach than Plaintiff. *Id.* It was also revealed that one of the required qualifications for certain positions with Defendant was proficiency in Genesis Foods. *Id.* Plaintiff also alleges that in 2023, Defendant received a confidential presentation regarding the 2024 updates to Genesis Foods. SAC ¶ 19. In addition, given the substantial and continuous development of Genesis Foods for over three decades, Plaintiff alleges that creating Workbench from scratch in one year and without significant resources was an impossibility. SAC ¶ 28.

In sum, the Court finds that Plaintiff's "allegations of fraud are specific enough to give [Defendant] notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that they have done anything wrong." *Neubronner*, 6 F.3d at 671 (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985)). In addition, to the extent Plaintiff relies on information and belief to conclude that Defendant repackaged Genesis Foods, *see, e.g.*, SAC ¶ 32, the Court finds that Plaintiff's allegations are appropriate given that such information is within Defendant's knowledge and Plaintiff states the factual basis for its belief, *see Neubronner*, 6 F.3d at 672 (explaining that a plaintiff may plead on information and belief if "the facts constituting the circumstances of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him[,]" and the plaintiff "who makes allegations on information and belief . . . state[s] the factual basis for the belief").

22 – OPINION & ORDER

For these reasons, the Court denies Defendant's Motion to Dismiss Plaintiff's false designation of origin claim for failure to state a claim.

## IV.     Misappropriation of Trade Secrets

To state a claim for misappropriation of a trade secret under the DTSA and OUTSA, a plaintiff must allege "(1) that the plaintiff possessed a trade secret[;] (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear*, 978 F.3d at 657–58; *see also Columbia Sportswear Co. v. Ferreira*, 809 F. Supp. 3d 1163, 1176 (D. Or. 2025) ("Because the DTSA and OUTSA are similar, many courts . . . evaluate them together.").

Defendant moves to dismiss Plaintiff's DTSA and OUTSA claims for failure to state a claim under Rule 12(b)(6) because Plaintiff does not allege it possesses a trade secret or misappropriation. Def.'s Mot. 21–23; Def.'s Reply 17–22.

### A.     Trade Secret Identification

At the pleading stage, "[a] plaintiff need not spell out the details of the trade secret . . . ." *Sennco Sols., Inc.*, 2021 WL 463436, at *2 (internal quotation marks omitted). Rather, a plaintiff need only "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* (quoting *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)). That said, "allegations that set out 'purported trade secrets in broad, categorical terms' that are merely 'descriptive of the types of information that generally *may* qualify as protectable trade secrets' are insufficient to state a claim." *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020) (quoting *Vendavo,*

23 – OPINION & ORDER

*Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *3–4 (N.D. Cal. Mar. 23, 2018)).

Under the DTSA, a trade secret includes: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing . . . ." 18 U.S.C. § 1839(3). Similarly, under the OUTSA, a trade secret includes "information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process . . . ." Or. Rev. Stat. § ("ORS") 646.461(4).

Here, Plaintiff asserts two trade secrets: (1) the Genesis Foods software system and (2) the Database. SAC ¶ 20. The Court finds that Plaintiff's allegations sufficiently identify its Trade Secrets at the pleading stage.

i.    Genesis Foods

First, as to Genesis Foods, Plaintiff alleges it "is a cutting-edge software platform that includes numerous unique and proprietary features, functionalities, formulas, designs, and configurations . . . ." SAC ¶ 21. Plaintiff further alleges the types of trade secrets associated with Genesis Foods:

> a. Proprietary configuration options, including the ability to define unique and proprietary nutrient, ingredient, and recipe categories and attributes.
>
> b. Proprietary and prebuilt sets of nutrients.
>
> c. The ability to generate additional ingredients using proprietary categories and attributes.
>
> d. The ability to generate recipes using proprietary categories and attributes.

24 – OPINION & ORDER

e. Automatic calculation of and alerts for nutrients and ingredients using proprietary formulas and configurations.

f. The ability to create nutritional labels using proprietary formulas and configurations, including to comply with various governmental regulations and requirements.

g. The ability to analyze and generate reports regarding nutrients, ingredients, and recipes using proprietary formulas, configurations, categories, and attributes.

h. The ability to import and export database files using a proprietary design and configuration.

SAC ¶¶ 21(a)–(h). Plaintiff argues that these "eight specific trade secret categories" are sufficient at the pleading stage. Pl.'s Resp. 15. The Court agrees.

Here, Plaintiff's allegations suggest that Genesis Foods, as a Trade Secret, contains at least technical information that is separate "from matters of general knowledge in the trade or of special persons who are skilled in the trade . . . ." *Sennco Sols., Inc.*, 2021 WL 463436, at *2 (citation omitted). Such technical information includes formulas, designs, processes, and programs. Moreover, Plaintiff's allegations permit Defendant "to ascertain at least the boundaries within which [Genesis Foods] lies." *Id.* (citation omitted). For these reasons, the Court finds that Plaintiff adequately identifies its Genesis Foods trade secret. *See id.* ("[I]t is enough for a plaintiff to limit the categories of information allegedly misappropriated by a defendant to particular subjects." (citation modified) (quoting *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1049 (N.D. Cal. 2020)).

### ii.    The Database

Second, as to the Database, Plaintiff alleges that it "includes, among other things, comprehensive and continuously updated nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,000 brand name and generic foods and ingredients." SAC ¶ 20. Plaintiff further

25 – OPINION & ORDER

alleges that the Database "includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available, as well as a particular selection of data from vetted and reliable external sources like governmental agencies." *Id.* Plaintiff thus argues that its Database is a compilation trade secret. Pl.'s Resp. 7–9. The Court agrees.

"A compilation of generally available or publicly known information may be a trade secret when the compilation itself is not generally known or readily ascertainable." *Barrett Bus. Servs., Inc. v. Colmenero*, No. 24-4474, 2025 WL 2048985, at *1 (9th Cir. July 22, 2025). "Evidence that a plaintiff spends a 'considerable amount of money and effort in developing the compilation' supports that the compilation may not be readily ascertainable." *Id.* (quoting *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1188 (9th Cir. 2018)).

Here, Plaintiff's Database is a compilation of information that has been "developed through decades of investment in research and development . . . ." SAC ¶ 4. The Database further contains "data and other features that are not publicly available . . . ." SAC ¶ 20. Indeed, licensing access to and use of the Database "represents a substantial portion of [Plaintiff's] businsess." SAC ¶ 24. Overall, the Database, in combination with Genesis Foods, "is widely recognized as the gold-standard for food and nutrition research and development and regulatory compliance." SAC ¶ 4. The Court finds these allegations demonstrate that Plaintiff's Database "is not generally known or readily ascertainable" and is the result of "a considerable amount of money and effort . . . ." *Barrett Bus. Servs.*, 2025 WL 2048985, at *1 (internal quotation marks omitted). Plaintiff adequately alleges the Database is a compilation trade secret.

///

///

26 – OPINION & ORDER

B.     Misappropriation

Misappropriation of a trade secret occurs when a person "acquire[s], use[s], or disclose[s] a trade secret with knowledge or reason to know that the trade secret was obtained through improper means." *AssuredPartners of Oregon, LLC v. Reese*, No. 6:22-cv-00673-MC, 2022 WL 18024957, at *2 (D. Or. Dec. 30, 2022) (citing 18 U.S.C. § 1839(5) and ORS 646.461(2)). Improper means includes theft. 18 U.S.C. § 1839(6); ORS 646.461(1). Allegations of misappropriation must be connected to a defendant's actions. *Kinship Partners, Inc. v. Embark Veterinary, Inc.*, No. 3:21-CV-01631-HZ, 2022 WL 72123, at *5 (D. Or. Jan. 3, 2022).

Here, Plaintiff argues that it sufficiently alleges misappropriation. Pl.'s Resp. 16–17. The Court agrees. Plaintiff alleges that Defendant acquired and used Plaintiff's Trade Secrets through improper means—in this case theft for the purposes of creating a competing product called Workbench. *See* SAC ¶ 2. For example, Plaintiff alleges that Defendant gained access to Plaintiff's Trade Secrets through the terms and conditions of the License Agreement. SAC ¶ 27. Plaintiff further alleges that although Defendant was permitted to export data from Genesis Foods for Defendant's "own internal business use[,]" Defendant instead exported data "for purposes of commercializing or otherwise leveraging the data in connection with competing products[,]" a prohibited use. *Id.* In sum, Plaintiff's allegations plausibly suggest that Defendant acquired and used Plaintiff's Trade Secrets with knowledge that they were obtained through improper means. *See Reese*, 2022 WL 18024957, at * 2.

\*\*\*

Because Plaintiff alleges it possesses Trade Secrets and that Defendant misappropriated Plaintiff's Trade Secrets, the Court declines to dismiss Plaintiff's DTSA and OUTSA claims for failure to state a claim.

27 – OPINION & ORDER

## V.    Breach of Contract

"[T]o state a claim for breach of contract, a plaintiff must [allege] the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 275, 564 P.3d 142 (2025).

Defendant moves to dismiss Plaintiff's breach of contract claim for failure to state a claim under Rule 12(b)(6). Def.'s Mot. 23; Def.'s Reply 22–23. Defendant argues that because Plaintiff has no trade secrets, it cannot allege breach. Def.'s Mot. 23; Def.'s Reply 22–23. Having found that Plaintiff adequately alleges its Trade Secrets, however, *see* Discussion *supra*, Section IV, the Court disagrees with Defendant. And because Defendant raises no other arguments in its Motion, *see* Def.'s Mot. 23, the Court declines to dismiss Plaintiff's breach of contract claim.

## VI.    UTPA

To state an unlawful trade practice claim under ORS 646.638, a plaintiff must allege "that (1) the defendant committed an unlawful trade practice enumerated in ORS 646.608; (2) the plaintiff suffered an ascertainable loss of money or property; and (3) the plaintiff's loss was caused by the defendant's unlawful trade practice." *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 348–49, 567 P.3d 413 (2025). A defendant's commission of an unlawful trade practice must be willful. *Id.* at 348.

Defendant moves to dismiss Plaintiff's UTPA claim for failure to state a claim under Rule 12(b)(6). Def.'s Mot. 29–34; Def.'s Reply 27–31. Defendant argues, in relevant part, that Plaintiff's UTPA claim should be dismissed because Plaintiff is not a consumer. *See* Def.'s Reply 27 ("[Plaintiff] is not a consumer [and] does not allege that it is a consumer . . . ."). The Court agrees with Defendant.

28 – OPINION & ORDER

"The UTPA is a comprehensive statute that protects *consumers* from unlawful trade practices." *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or. 23, 25, 529 P.3d 939 (2023); *see also Pearson v. Philip Morris, Inc.*, 358 Or. 88, 115, 361 P.3d 3 (2015) ("Oregon's UTPA, like those of many other jurisdictions, was enacted as a comprehensive statute for the protection of *consumers* from unlawful trade practices." (emphasis added)). Thus, "the UTPA provides a cause of action *only for consumers*." *CollegeNet, Inc. v. Embark.Com, Inc.*, 230 F. Supp. 2d 1167, 1174 (D. Or. 2001) (emphasis added); *see also Schoene v. Christensen*, No. 3:23-cv-00693-AN, 2024 WL 1052681, at *6 (D. Or. Mar. 11, 2024) (collecting cases and holding that "only consumers may bring suit under the UTPA"), *aff'd*, No. 24-2317, 2026 WL 120829 (9th Cir. Jan. 16, 2026).

Here, Plaintiff alleges that Defendant's "false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, *consumers across the country* (i.e., the intended audience), who would not seek to purchase or license Workbench if they knew the truth . . . ." SAC ¶ 74 (emphasis added). Notably missing from Plaintiff's allegations, however, is that Plaintiff purchased or licensed Workbench, thus making it itself a consumer. The Court finds this omission fatal to Plaintiff's UTPA claim. *See, e.g.*, *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 22 F. Supp. 3d 1126, 1136–37 (D. Or. 2014) (dismissing the plaintiff's UTPA claim because the plaintiff did not allege it purchased any products from the defendant and thus was not a consumer) Accordingly, the Court dismisses Plaintiff's UTPA claim.

///

///

///

29 – OPINION & ORDER

**CONCLUSION**

The Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss for Failure to State a Claim [47]. Accordingly, the Court dismisses Plaintiff's false advertising claim under the Lanham Act and UTPA claim. The Court further DENIES Plaintiff's request for leave to amend because amendment would be futile. *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) ("[L]eave may be denied if amendment of the complaint would be futile."). Defendant is directed to file an Answer to Plaintiff's Second Amended Complaint within fourteen (14) days.

IT IS SO ORDERED.

DATED this 24th day of April, 2026.

AMY M. BAGGIO
United States District Judge

30 – OPINION & ORDER