P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenllp.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, LLC, an Oregon limited liability company,<br><br>                              Plaintiff,<br><br>          v.<br><br>RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br><br>                              Defendant. | Case No. 3:25-cv-00880-AB<br><br>**FOODWIT'S MOTION FOR PHASED DISCOVERY UNDER *QUINTARA*** |

**INTRODUCTION**

For almost two years, ESHA has demanded access to Foodwit's software by claiming Foodwit stole ESHA's trade secrets.  For almost two years, Foodwit has asked ESHA to identify what trade secrets Foodwit allegedly stole.  ESHA has done everything in its power to avoid revealing what alleged trade secrets it is hunting for in Foodwit's software.  Instead ESHA seeks discovery into all aspects of Foodwit's software, with free rein to craft asserted trade secrets based on what it finds.  In *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025), the Ninth Circuit reaffirmed this Court's discretion to prevent such misuse of discovery, and provided a list of discovery orders the Court could use to do so.  Foodwit's motion asks the Court to implement specific orders from the Ninth Circuit's list.  In exercising its *Quintara* discretion, the Court should consider ESHA's history of failed trade secret disclosure as well as the parties' status as direct competitors, and order phased discovery that would ensure ESHA has viable trade secrets to protect.

**BACKGROUND**

A.    **Courts Have Long Phased Trade Secrets Discovery to Protect From Fishing Expeditions and to Prevent Plaintiffs From Claiming as Secret Whatever They Find**

"Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff.  A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-4519, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014).  For this reason, when plaintiffs assert claims of trade secret misappropriation, courts consider whether a plaintiff "has identified its trade secrets with sufficient particularity for

Defendants to be obligated to respond to Plaintiff's discovery requests." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1150 (D. Or. 2015).  This "requirement also prevents a 'fishing expedition' into Defendants' trade secrets, and denies Plaintiff the opportunity to craft a trade secret claim to fit the evidence from the Defendants." *Id.* at 1153-54 (collecting cases) (citations omitted).  "Finally, the requirement prevents 'needless exposure of the defendant's trade secrets,' and allows well-investigated claims to proceed while discouraging meritless trade secret claims." *Id.* at 1154 (collecting cases) (citations omitted).  Although the "Court's analysis in each case is fact-intensive and the outcome is fact-specific," *id.* at 1150, courts have continued to apply the same policy, through the same analysis, to the cases before them.  *See, e.g.*, *Biological Dynamics, Inc. v. Exokeryx, Inc.*, No. 23-1664, 2025 WL 4672288, at *7 (S.D. Cal. Mar. 28, 2025) (phasing discovery where requiring defendant "to provide discovery into its own research and development around the technology at issue before Plaintiff has adequately defined the boundaries of its claimed rights would put Defendant at an unfair disadvantage"); *Carlisle Interconnect Techs. Inc. v. Foresight Finishing LLC*, No. 22-717, 2023 WL 2528324, at *5 (D. Ariz. Mar. 15, 2023) (denying plaintiff's "request for discovery of documents related to and an inspection of Defendant's Foresight Machine" because plaintiff "failed to identify the trade secrets at issue in this case with reasonable particularity").

**B.    In *Quintara*, the Ninth Circuit Reaffirmed the District Courts' Ability to Apply This Analysis to Trade Secret Litigation**

In *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025), the Ninth Circuit reaffirmed this Court's ability, and emphasized its discretion, to supervise trade secret discovery using the same analysis and underlying policy, although through a different procedural mechanism than the trial court had taken.  In *Quintara*, the district court found

plaintiff Quintara's trade secret disclosure insufficient, because Quintara only described "a *category* of information that may be protectable as trade secret," but "does not actually disclose, with any specificity, the underlying trade secret itself." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, No. 20-4808, 2021 WL 965349, at *3 (N.D. Cal. Mar. 13, 2021) (emphasis in original), *rev'd*, 149 F.4th 1081 (9th Cir. 2025). The district court thus granted defendant's "motion to strike Quintara's trade-secret Disclosure on all but two of the trade secrets." *Quintara*, 149 F.4th at 1089. Quintara appealed and the Ninth Circuit reversed, finding that whether "a trade secret is identified with 'sufficient particularity,' is a question of fact," and therefore that the district court abused its discretion when it "struck Quintara's trade secrets as a discovery sanction." *Id.* at 1087-89. But *Quintara* did not throw the baby out with the bathwater: it recognized that "discovery involving trade secrets presents a 'delicate problem,'" namely, how to "'secure the right of one litigant to get relevant and necessary evidence and to protect the other litigant from disclosing secrets which are not relevant and necessary.'" 149 F.4th at 1088 (quoting *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 328 (9th Cir. 1961)). As a result, *Quintara* recognized, "the conventional order of pleadings, initial disclosures, and first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim," and that the "Federal Rules of Civil Procedure equip a district court to manage this 'delicate problem' with broad Rule 16 pretrial management powers, and more specific authority to order that trade secrets 'be revealed only in a specified way.'" *Quintara*, 149 F.4th at 1088 (quoting *Hartley*, 287 F.2d at 328; Fed. R. Civ. P. 26(c)(1)(G)). *Quintara* even provided helpful examples of how district courts can exercise this broad discretion after its ruling:

Page 3 – FOODWIT'S MOTION FOR PHASED DISCOVERY UNDER *QUINTARA*

For example, the district court could have granted a protective order limiting discovery to whether Quintara had identified its trade secrets with "sufficient particularity" before permitting additional discovery.  After an opportunity for discovery on the identification of the trade secrets, the court could have invited a motion for summary judgment, and absent a genuine fact dispute as to whether trade secrets were sufficiently particularized, it could have granted summary judgment as to those trade secrets.  Or if, after discovery and an opportunity to clarify the level of particularity required for its claim to move forward, Quintara still refused to supplement its trade-secret identification, the district court could have excluded evidence of any added specifications from consideration on summary judgment or at trial.

*Id.* at 1091 (collecting cases) (citations omitted).  In the short time since *Quintara*, district courts in the Ninth Circuit have noted the discretion it provides and employed it to manage their cases. *See, e.g.*, *Nicholls v. Tapis Corp.*, No. 25-870, 2026 U.S. Dist. LEXIS 101783, at *9-10 (C.D. Cal. May 6, 2026) (noting that *Quintara* allows district courts "discretion to require the disclosure of trade secrets before allowing trade secret related discovery to proceed" and doing so); *Access Optical Networks v. Seagate Tech. LLC*, No. 24-3745, 2025 WL 2696493, at *2 (N.D. Cal. Sept. 22, 2025) (noting that *Quintara* allows district courts "broad Rule 16 pretrial management powers" and using those powers to order disclosure of trade secrets and postpone related discovery).

**C.      In This Action, ESHA Claims to Have "Crown Jewel" Trade Secrets and Claims It Provided Them to Foodwit, Only to Have Its Claims Collapse Under Scrutiny**

This action explains why courts regulate discovery to prevent plaintiffs from claiming as trade secrets whatever discovery yields.  Plaintiff ESHA Research, LLC ("ESHA") first contacted defendant RLH Assets, LLC ("Foodwit") in August 2024, claiming misappropriation of its "crown jewels."  *Foodwit v. ESHA*, No. 25-656, Docket No. 1-2 at 28 (D. Or. Apr. 22, 2025); *see id.* at 17-44; *see ESHA v. Foodwit*, No. 25-880, Docket No. 28 at 28-30; *ESHA v. Foodwit*, Docket No. 47 at 34-35.  Foodwit repeatedly responded that it had stolen nothing, and asked

ESHA to identify what it thought Foodwit had stolen. *See id.* ESHA repeatedly refused to do so, insisting instead that it must review Foodwit's Workbench product *before* revealing its asserted trade secrets. *Foodwit v. ESHA*, Docket No. 1-3 at 2; *see ESHA v. Foodwit*, Docket No. 28 at 28-30; *ESHA v. Foodwit*, Docket No. 47 at 34-35. Not born yesterday, Foodwit declined, and ESHA eventually filed this action. *ESHA v. Foodwit*, Docket No. 1. Once in litigation, ESHA did everything it could to avoid disclosing its asserted trade secrets. For more than six months, ESHA refused even to answer this question. *Id.*, Docket No. 47 at 34. Finally, on September 9, 2025, ESHA claimed to identify its trade secrets—but, as Foodwit quickly showed, ESHA's disclosure of asserted trade secrets included no trade secrets, but only publicly available information. *See id.* at 5-15; *id.*, Docket No. 48; *id.*, Docket No. 60 at 3-11. Tellingly, ESHA contested none of this, admitting that its September 9 disclosure was a sham, and intentionally so: ESHA's declarant averred that its September 9 disclosure was merely a list of "features and functionalities" that did not disclose the "specific, underlying processes and methodologies that constitute the actual trade secret information relating to each of the respective features and functionalities," which ESHA promised—again—to disclose "later in the course of this lawsuit." *Id.*, Docket No. 56-1 ¶¶ 9, 11. ESHA's declarant then made a new claim, averring that "ESHA Codes are proprietary codes created by Trustwell to assist with identifying and searching certain items or components within Genesis Foods," and that these "codes are a trade secret and remain confidential." *Id.* ¶ 16. Foodwit promptly found the "ESHA Codes" available to the public, on ESHA's own website. *Id.*, Docket No. 63 ¶¶ 13-14; *id.*, Docket No. 63-3.

As of this filing, ESHA still has not provided its asserted trade secrets, or even provided a schedule for providing its asserted trade secrets. ESHA has, however, sought a "platform inspection" of Foodwit's Workbench product—the same inspection it sought in August 2024, and

Page 5 – FOODWIT'S MOTION FOR PHASED DISCOVERY UNDER *QUINTARA*

the same opportunity to claim as ESHA's trade secret whatever it finds in Foodwit's product. Seeking to protect itself from this misuse of discovery, Foodwit brought this motion.

## ARGUMENT

**I.      The Court Should Exercise Its *Quintara* Discretion to Stage Discovery**

On the facts of this case, the Court should exercise its *Quintara* discretion to stage discovery, ensuring that ESHA cannot engage in a fishing expedition, or discover Foodwit's own trade secrets, until it shows it has trade secrets of its own. The facts are compelling: ESHA has repeatedly claimed that Foodwit stole its "crown jewels" trade secrets, but has repeatedly failed to identify any actual secrets. *Supra* § C. ESHA first delayed disclosure of its trade secrets as long as it possibly could, unlike most trade secret plaintiffs that are eager to disclose their claimed trade secrets in order to vindicate them. *Id.* When it could drag its feet no longer, ESHA eventually claimed to identify its trade secrets in detail, but provided only its sham disclosure of September 9. *Id.* When Foodwit showed that everything ESHA disclosed on September 9 was already public, primarily on ESHA's own website, ESHA did not defend its sham disclosure, but admitted it contained no trade secrets, promised to identify them later, and identified one new asserted trade secret which Foodwit immediately found on ESHA's website. *Id.* Finally, ESHA claims a trade-secret compilation database, but has failed to produce the database or anything about it beyond the most generic of descriptions, making it impossible for Foodwit to test ESHA's claim, while still demanding access to Foodwit's database. *Id.*

These facts cry out for *Quintara* discretion. The Court cannot know whether ESHA has any trade secrets, but any observer of this litigation can see that ESHA has consistently behaved exactly as it would behave if it had no trade secrets to assert. Perhaps there is another explanation for ESHA's litigation conduct, and perhaps not. There is only one way to find out: a

Page 6 – FOODWIT'S MOTION FOR PHASED DISCOVERY UNDER *QUINTARA*

phased discovery process under *Quintara*.  Foodwit thus respectfully requests the Court exercise its *Quintara* discretion to set a deadline for ESHA to identify its asserted trade secrets, including production and identification of any Rule 33(d) materials such as any database that ESHA claims as a compilation secret, and bar ESHA from presenting any later-disclosed "evidence of any added specifications . . . on summary judgment or at trial." *Quintara*, 149 F.4th at 1091. Foodwit originally suggested May 15 for this deadline, but that date will pass before ESHA provides its responsive brief.  But this date should be soon; ESHA has claimed for almost two years to know what its trade secrets are, *supra* § C, and its declarant has sworn the same. *ESHA v. Foodwit*, Docket No. 56-1 ¶ 11.  So there is nothing left for ESHA to do beyond writing down what it already knows and exporting any database it claims, both of which should not take long.

Once ESHA finally provides its trade secrets, the Court should allow limited discovery regarding whether ESHA has identified its trade secrets with sufficient particularity, with all discovery responses due in 14 days, and should invite summary judgment motions regarding the particularity of ESHA's claimed trade secrets at the close of this period.  Although the Court has discretion to define the length of this period, Foodwit suggests it should be at least five months long.  Although Foodwit would prefer to resolve this issue much more quickly, given ESHA's tactics of obstruction and delay in this action, *see supra* § C, Foodwit does not expect to receive meaningful discovery from ESHA without further intervention from the Court.  With a 14-day discovery response time and this Court's prompt procedures regarding discovery disputes, *see ESHA v. Foodwit*, Docket No. 75 at 4-5, five months should be enough time to test ESHA's claimed secrets.  By exercising its *Quintara* discretion in this manner, the Court can ensure that ESHA will receive discovery appropriate to its trade secrets, but will have no opportunity to "mold its cause of action around the discovery it receives." *Vesta*, 147 F. Supp. 3d at 1154

(quoting *Switch Comnc'ns Grp. v. Ballard*, No. 11-285, 2012 WL 2342929, at \*4 (D. Nev. June 19, 2012)).

Foodwit's requests are not exotic.  They spring directly from *Quintara*'s specific list of actions that are both available to this Court under its "broad Rule 16 pretrial management powers" and follow *Quintara*'s holding that the "fact question of 'reasonable particularity' . . . should be resolved on summary judgment or at trial."  *Quintara*, 149 F.4th at 1088, 1091 (quoting *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658-59 (9th Cir. 2020)); *see supra* § B.  The Court should exercise its *Quintara* discretion to grant Foodwit's requests.

## II.    ESHA's One-Page Submission Confirms That the Court Should Grant This Motion

In its one-page submission under the Court's Civil Case Management Order, *ESHA v. Foodwit*, Docket No. 75, ESHA makes several arguments against Foodwit's motion, but those arguments serve to confirm that the Court should grant this motion.  ESHA primarily claims that this Court's order on Foodwit's motion to dismiss, *id.*, Docket No. 74, both controls resolution here and requires denial of Foodwit's motion.  But that is not so:  on Foodwit's motion to dismiss and under Rule 12, the Court found that it could not consider any of the issues raised by this motion, including ESHA's repeated delays and its sham disclosure on September 9.  *Id.* at 8-11.  But on this motion, using its "broad Rule 16 pretrial management powers," the Court can and should consider all of these things in crafting a discovery order.  *Quintara*, 149 F.4th at 1088; *see supra* §§ B, C.

ESHA cites two cases, neither of which supports its view.  ESHA cites *Comnure, Inc. v. Canopy Works, Inc.*, No. 24-2592, 2025 WL 1150695, at \*6 (N.D. Cal. Apr. 18, 2025), as "denying stay of discovery even where trade secrets [were] not sufficiently identified."  But *Comnure* required the trade secrets claimant "to promptly amend its trade secrets disclosure to

addressed [sic] the deficiencies noted above and to eliminate 'catch-all' language," thus ensuring resolution of those issues before any further discovery. 2025 WL 1150695, at *6. ESHA also cites *Redfin Corp. v. iPayOne.com, LLC*, No. 17-1217, 2018 WL 1397482, at *2 (W.D. Wash. Mar. 20, 2018), but *Redfin* supports Foodwit. There, the court found that the trade secrets claimant had "identified the alleged misappropriated trade secrets with 'reasonable particularity,'" based on the facts of that case, and thus allowed discovery to proceed. *Id.* On the facts of *this* case, ESHA has not "identified the alleged misappropriated trade secrets with 'reasonable particularity,'" and *Redfin* counsels against discovery. *Id.*

ESHA briefly mentions its "non-trade secret claims," but fails to mention that discovery into those claims would simply be another way for ESHA to "take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience*, 2014 WL 852477, at *5. The Court should not blockade the front door but leave the back door unlocked.

Finally, ESHA claims that granting Foodwit's motion would be a "waste of time and resources." But if ESHA had wanted to avoid such a waste, it could and would have disclosed its actual trade secrets promptly upon service of its complaint, instead of delaying for as long as it could, providing a sham disclosure on September 9, and vaguely promising to provide a real disclosure at some unspecified time in the future. ESHA is the source of any delay.

## CONCLUSION

For all the foregoing reasons, the Court should set a deadline for ESHA to identify its asserted trade secrets, including production and identification of any Rule 33(d) materials such as any database that ESHA claims as a compilation secret, and should bar ESHA from presenting any later-disclosed "evidence of any added specifications . . . on summary judgment or at trial."

Page 9 – FOODWIT'S MOTION FOR PHASED DISCOVERY UNDER *QUINTARA*

*Quintara*, 149 F.4th at 1091.  Once ESHA provides its trade secrets, the Court should allow limited discovery regarding whether ESHA has identified its trade secrets with sufficient particularity, with all discovery responses due in 14 days, and should invite summary judgment motions regarding the particularity of ESHA's claimed trade secrets at the close of a defined period five months following ESHA's required disclosure.

Date:  May 14, 2025

Respectfully submitted,

*/s/ P. Andrew McStay, Jr.*
P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 778-5302
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenllp.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*