P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, LLC, an Oregon limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br><br>Defendant. | Case No. 3:25-cv-00880-AB<br><br>**FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**AUTHORIZED TO BE FILED UNDER SEAL BY PROTECTIVE ORDER (DOCKET NO. 44)**<br><br>**REQUEST FOR ORAL ARGUMENT** |

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

LOCAL RULE 7-1(A) CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.    The Court Grants Foodwit's Motion to Dismiss the First Amended Complaint . . . . . . . 3

B.    While Foodwit's Motion is Pending, ESHA Provides Its Asserted Trade Secrets . . . . . . 3

C.    ESHA's Second Amended Complaint Rests Entirely on Its Asserted Trade Secrets . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    ESHA's Assertion of Trade Secrets Confirms That It Has No Trade Secrets to Assert . . . 5

    A.    ESHA's Asserted System Secret (or Secrets) Is Just a List of Publicly Known Features, Including Less Information Than ESHA's Public Documentation, Which Cannot Be a Trade Secret . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    ESHA's Asserted Database Secret Provides Nothing That Is Unique or Valuable, and Thus Further Confirms That ESHA Has No Trade Secrets . . . . . . . 8

        1.    ESHA Does Not Specify the Boundaries of its Asserted Trade Secret. . . . 9

        2.    ESHA Does Not Specify Any Value to Its Asserted Trade Secret . . . . . . 12

II.    ESHA Has Suffered No Injury and Thus Lacks Standing to Pursue Its Claims . . . . . . . . 15

    A.    ESHA Has No Trade Secrets and Thus No Standing to Assert Trade Secrets . . . 16

    B.    Without Trade Secrets, ESHA Has No Standing to Assert Its Other Claims . . . . 16

    C.    ESHA Has No Standing to Assert Its Lanham Act Claims . . . . . . . . . . . . . . . . . 16

III.    ESHA Has Failed to Plead a Claim on Which the Court Can Grant Relief . . . . . . . . . . . 19

    A.    The Court Should Dismiss ESHA's Trade Secrets Claims . . . . . . . . . . . . . . . . . . 21

    B.    The Court Should Dismiss ESHA's Contract Claim . . . . . . . . . . . . . . . . . . . . . . 23

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

C.  The Court Should Dismiss ESHA's Lanham Act Claim . . . . . . . . . . . . . . . . . . . 23

1.  *Dastar* Precludes This Claim in Its Entirety . . . . . . . . . . . . . . . . . . . . . . .23

2.  ESHA Cannot Build a Lanham Act Claim on "Built" . . . . . . . . . . . . . . . 26

3.  ESHA's Lanham Act Claim Fails Under Rule 9(b) . . . . . . . . . . . . . . . . 27

D.  The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim . . . . . .29

1.  ESHA Fails to Allege an UTPA Violation . . . . . . . . . . . . . . . . . . . . . . . . 30

2.  ESHA Fails to Allege Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

3.  ESHA Fails to Allege Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

4.  ESHA Fails to Allege Willfulness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

IV.  The Court Should Deny Leave to Further Amend the Second Amended Complaint . . . .34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

# TABLE OF AUTHORITIES

*Cases*                                                                 **Pages**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 23, 29, 33

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
   No. 23-6012, 2024 WL 1772833 (N.D. Cal. Apr. 23, 2024) . . . . . . . . . . . . . . . . . . . .27-28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Benko v. Quality Loan Serv. Corp.*,
   789 F.3d 1111 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*BioD, LLC v. Amnio Tech., LLC*,
   No. 13-1670, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014) . . . . . . . . . . . . . . . . . . . . . 12

*Burtness v. Legacy Health*,
   No. 24-1256, 2024 WL 5168364 (D. Or. Dec. 18, 2024) . . . . . . . . . . . . . . . . . 29, 33-34

*Butters v. Travelers Indemnity Co.*,
   No. 22-726, 2023 WL 2988763 (D. Or. Jan. 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . 34

*Casillas v. Madison Ave. Assocs., Inc.*,
   926 F.3d 329 (7th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Ctr. for Biological Diversity v. United States Forest Serv.*,
   80 F.4th 943 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*,
   No. 19-2009, 2022 WL 2704506 (E.D.N.Y. July 12, 2022) . . . . . . . . . . . . . . . . . . . . .25

*Colquitt v. Mfrs. & Traders Tr. Co.*,
   144 F. Supp. 3d 1219 (D. Or. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32-33

*Columbia Sportswear Co. v. Ferreira*,
   No. 23-594, 2025 WL 1520299 (D. Or. May 28, 2025) . . . . . . . . . . . . . . . . . . . . . . .21

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 24-26, 28, 35

*DCD Programs, LTD. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

*Ebeid ex rel. U.S. v. Lungwitz,*
      616 F.3d 993 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.,*
      681 F. Supp. 2d 694 (S.D.W. Va. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Fauley v. Washington Mut. Bank FA,*
      No. 13-581, 2014 WL 1217852 (D. Or. Mar. 21, 2014) . . . . . . . . . . . . . . . . . . . . .33

*First Call Int'l, Inc. v. S&B Global, Inc.,*
      No. 23-10016, 2024 WL 4404429 (C.D. Cal. July 5, 2024) . . . . . . . . . . . . . . . . . . .23

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.,*
      No. 19-5611, 2020 WL 513287 (N.D. Cal. Jan. 31, 2020) . . . . . . . . . . . . . . . . . . . .21

*Fleshman v. Wells Fargo Bank, N.A.,*
      27 F. Supp. 3d 1127 (D. Or. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

*Galbraith v. Cnty. of Santa Clara,*
      307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Genasys Inc. v. Vector Acoustics, LLC,*
      638 F. Supp. 3d 1135 (S.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 12, 14

*Herrington v. Bristol,*
      No. 16-680, 2019 WL 7598855 (D. Or. July 29, 2019),
      *R. & R. adopted*, 2020 WL 265192 (D. Or. Jan. 17, 2020) . . . . . . . . . . . . . . . . . . .10

*InteliClear, LLC v. ETC Glob. Holdings, Inc.,*
      978 F.3d 653 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Intellectual Ventures I LLC v. Cap. One Fin. Corp.,*
      850 F.3d 1332 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*JPMorgan Chase Bank, NA v. Argus Info. & Advisory Servs., Inc.,*
      765 F. Supp. 3d 367 (D. Del. Feb. 5, 2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kearney v. Equilon Enters., LLC,*
      65 F. Supp. 3d 1033 (D. Or. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-33

*Kearns v. Ford Motor Co.,*
      567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Khoja v. Orexigen Therapeutics, Inc.,*
      899 F.3d 988 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

*Knisely v. Nat'l Better Living Ass'n, Inc.*,
   No. 14-15, 2014 WL 4084517 (N.D.W. Va. Aug. 19, 2014) . . . . . . . . . . . . . . . . . . . . . . . 23

*Knit Pearl, LLC v. Shibui, LLC*,
   No. 05-845, 2006 WL 8458984 (D. Or. Oct. 17, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Kuklok v. U.S. Dep't of Veterans Affairs*,
   No. 21-15105, 2022 WL 256361 (9th Cir. Jan. 26, 2022) . . . . . . . . . . . . . . . . . . . . . . . 34

*Latham v. PWCC Marketplace, LLC*,
   No. 21-1381, 2022 WL 226807 (D. Or. Jan. 25, 2022) . . . . . . . . . . . . . . . . . . . . . . . . .29-31

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Leighton v. Three Rivers Sch. Dist.*,
   No. 12-1275, 2014 WL 6063638 (D. Or. Nov. 12, 2014) . . . . . . . . . . . . . . . . . . . . . . . .34

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
   729 F. App'x 528 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*MAO-MSO Recovery II, LLC v. Mercury Gen.*,
   No. 21-56395, 2023 WL 1793469 (9th Cir. Feb. 7, 2023) . . . . . . . . . . . . . . . . . . . . . . . 15

*Medlin v. PeaceHealth*,
   No. 23-12, 2024 WL 712692 (D. Or. Feb. 21, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mendoza v. Lithia Motors, Inc.*,
   No. 16-1264, 2018 WL 1513650 (D. Or. Mar. 27, 2018) . . . . . . . . . . . . . . . . . . . . . . . 31-32

*Navigation Holdings, LLC v. Molavi*,
   445 F. Supp. 3d 69 (N.D. Cal. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30, 33

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26, 29

*OD's on Fin., LLC v. Mena*,
   No. 253027, 2025 WL 2021881 (N.D. Cal. July 18, 2025) . . . . . . . . . . . . . . . . . . . . . . 27

*Oracle Int'l Corp. v. Rimini St., Inc.*,
   123 F.4th 986 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
 897 F.3d 1008 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

*Parks LLC v. Tyson Foods, Inc.*,
 863 F.3d 220 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pooler v. City of Portland*,
 No. 24-1715, 2025 WL 1664345 (D. Or. June 12, 2025) . . . . . . . . . . . . . . . . . . . 20

*Pride v. Correa*,
 719 F.3d 1130 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Puri v. Khalsa*,
 674 F. App'x 679 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rathgeber v. James Hemenway, Inc.*,
 69 P.3d 710, 715 (Or. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Red Rock Sourcing LLC v. JGX LLC*,
 No. 21-1054, 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) . . . . . . . . . . . . . . . . . 25

*RV Savvy Prods., Inc. v. RV Masters, LLC*,
 No. 19-184, 2019 WL 5858192 (D. Or. July 19, 2019),
 *R. & R. adopted*, 2019 WL 5541246 (D. Or. Oct. 25, 2019) . . . . . . . . . . . . . . . . 20-21

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Salu v. Multnomah Cty.*,
 No. 21-1387, 2023 WL 6239088 (D. Or. Sept. 26, 2023). . . . . . . . . . . . . . . . . . . 34

*Schneider v. Ford Motor Co.*,
 No. 18-367, 2018 WL 5213280 (C.D. Cal. Apr. 13, 2018),
 *reversed on other grounds*, 756 F. App'x 699 (9th Cir. 2018) . . . . . . . . . . . . . . . . 26

*In re Silicon Graphics Inc. Secs. Litig.*,
 183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Southland Sod Farms v. Stover Seed Co.*,
 108 F.3d 1134 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Stafford v. Taffet*,
 No. 24-1612, 2025 WL 1736831 (D. Or. June 23, 2025) . . . . . . . . . . . . . . . . . . . 29

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

*Stahl L. Firm v. Judicate W.*,
No. 13-1668, 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013) . . . . . . . . . . . . . . . . 22-23, 29

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

*Synopsys, Inc. v. ATopTech, Inc.*,
No. 13-2965, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) . . . . . . . . . . . . . . . . . . 12, 14

*Teliax Tech. LLC v. Affinity Network, Inc.*,
636 F. Supp. 3d 1199 (D. Nev. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Trees v. Serv. Emps. Int'l Union Loc. 503*,
574 F. Supp. 3d 856 (D. Or. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Under A Foot Plant, Co. v. Exterior Design, Inc.*,
No. 14-1371, 2015 WL 1401697 (D. Or. Mar. 24, 2015) . . . . . . . . . . . . . . . . . . . . . 21

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30-33

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
No. 14-1142, 2016 WL 8732371 (D. Or. Apr. 1, 2016) . . . . . . . . . . . . . . . . . . . . . . . 12

*Vitt v. Apple Computer, Inc.*,
469 F. App'x 605 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
758 F.3d 1069 (9th Cir. 2014), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Statutes*                                                                 *Pages*

15 U.S.C. § 1125(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 18, 19

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23-24

Fed. R. Civ. P. 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

Fed. R. Evid. 201(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

ORS 646.461(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

ORS 646.605(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

ORS 646.608(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

ORS 646.638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33


*Other Authorities*                                                        *Page*

Black's Law Dictionary 479 (9th ed. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed.) . . . . . . 23

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-1586, Docket No. 25-1 (D. Or. Mar. 18 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-1586, Docket No. 31 (D. Or. Mar. 28, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-1586, Docket No. 36 (D. Or. Apr. 15, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-1586, Docket No. 37 (D. Or. May 6, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*ESHA Research, Inc. v. Cronometer Software, Inc.*,
    No. 24-1586, Docket No. 39 (D. Or. May 8, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*RLH Assets, LLC v. ESHA Research, LLC*,
    No. 25-656, Docket No. 1 (D. Or. Apr. 22, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*RLH Assets, LLC v. ESHA Research, LLC*,
    No. 25-656, Docket No. 17 (D. Or. June 4, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## LOCAL RULE 7-1(A) CERTIFICATION

Before filing this motion, counsel for defendant conferred by telephone with counsel for plaintiff in an attempt to resolve this motion.  The parties were unable to reach agreement.

## INTRODUCTION

Since ESHA first contacted Foodwit with allegations of theft, Foodwit's response has never changed:  'we didn't steal anything from you, we know that we didn't, so if you think we did, tell us what you think we stole.'  For as long as it could, ESHA refused to answer this question.  Finally, while Foodwit's previous motion to dismiss was before the Court, ESHA ran out of excuses and had to provide Foodwit with its asserted trade secrets, which it then incorporated by reference into its second amended complaint.  The Court will now understand why ESHA used every trick in the book to delay providing its asserted trade secrets:  ESHA's disclosure confirms it has no trade secrets to assert.

ESHA's first category of asserted secrets is an eleven-page list of features found within what ESHA calls "its Genesis Foods software system."  ESHA does not claim a secret algorithm or anything secret about how it implements its software system; instead it provides descriptions of software features, such as "███████████████████████████████████████████████████████████████████████████████," and asserts that those features themselves are protectible trade secrets.  ESHA evidently hoped that providing a many-page list, designated "ATTORNEYS' EYES ONLY," would shield its assertions from serious scrutiny.  ESHA was wrong.  Foodwit compared ESHA's asserted trade secrets with ESHA's publicly available documentation and confirmed, for *every single feature* ESHA alleges as a "trade secret," ESHA had not only disclosed the same feature in its public documentation available on the Internet, but had described the same feature using more detail than it disclosed in the asserted

Page 1 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

trade secrets here.  As a result, although ESHA's complaint emphasizes its "highly confidential, 19-page, particularized identification of each trade secret at issue," which it claims "cannot be disclosed (or pled) publicly," ESHA's document claiming trade secrets contains entirely and only public information.

ESHA's attempt to claim secrecy over its "master food and nutrition database" fares no better, as ESHA admits that its database contains substantial amounts of public information, but does not specify whether it claims trade-secret protection over this information, or how it draws the line between secret and non-secret information.  In addition, despite this Court's command that ESHA justify a compilation trade secret by explaining how its process makes the compilation unique and thus valuable, ESHA provides only generic steps that would apply to any database, ██████████████████████████████████  There is nothing secret about any of those steps, and so they cannot support a database trade secret.

ESHA's other claims also fail.  Without any trade secrets, ESHA fails to allege a breach of contract; its contract cannot stop Foodwit from simply competing with ESHA.  ESHA likewise fails to revive its Lanham Act claim, and makes only tepid revisions to its UTPA claim that do not grapple with the Court's dismissal of the first amended complaint or cure the many deficiencies in that complaint.

ESHA's third complaint in this action, and its long-delayed disclosure of its asserted trade secrets, both confirm what Foodwit has said all along:  this litigation is a sham, intended to force a smaller competitor to cede the market.  Enough is enough.  The Court should dismiss ESHA's frivolous claims without further leave to amend.

Page 2 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

**BACKGROUND**

**A.    The Court Grants Foodwit's Motion to Dismiss the First Amended Complaint**

The Court is familiar with the history of this action, set forth in the motion to dismiss the first amended complaint. Docket No. 28. Following oral argument, *see* Docket No. 41, the Court granted Foodwit's motion to dismiss all claims, with leave to amend. Docket No. 45.

**B.    While Foodwit's Motion is Pending, ESHA Provides Its Asserted Trade Secrets**

Over a year after ESHA first claimed Foodwit stole its trade secrets, on September 9, 2025, ESHA finally provided Foodwit with its asserted trade secrets, in its response to Foodwit's Interrogatory No. 1. Ex. 1.[1] ESHA's assertions did not use the standard mechanism of delineating "Trade Secret No. 1," "Trade Secret No. 2," and so on, instead providing a series of lists and sublists with competing numbering. *See id.* On September 10, Foodwit asked ESHA to clarify how many trade secrets it asserts in this action. Ex. 2. On September 16, ESHA responded to state that "[w]ith respect to the Genesis Foods system," it alleged as a trade secret "[t]he Genesis Foods system as a whole" and "[t]he proprietary features, functions, formulas, designs, and configurations set forth" in various subsets of its numbered paragraphs under the heading "Genesis Foods." Ex. 3; *see* Ex. 1. It did not address any information under the heading "Food and Nutrition Database." *Id.* On September 22, Foodwit again sought clarification from ESHA regarding the metes and bounds of its asserted trade secrets. Ex. 4. Later that day, this Court granted Foodwit's motion to dismiss. Docket No. 45. ESHA never responded to Foodwit's letter of September 22, 2025. As a result, it is not clear whether ESHA asserts two secrets in this action, or twelve, or something in between.

---

[1] Unless otherwise indicated, all exhibits are attached to the concurrently filed Declaration of Matthew S. Warren.

Page 3 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

**C.     ESHA's Second Amended Complaint Rests Entirely on Its Asserted Trade Secrets**

On September 22, ESHA filed its Second Amended Complaint.  Docket No. 46.  It states that ESHA "provided to Foodwit, under the protective order in this action, a highly confidential, 19-page, particularized identification of each trade secret at issue—information that cannot be disclosed (or pled) publicly.  The Genesis Foods and master food and nutrition database trade secrets described herein are referred to collectively as the 'Trade Secrets.'"  2AC ¶ 23.  ESHA's complaint depends entirely on these asserted trade secrets.  It claims that, "on information and belief, Foodwit accessed, used, and disclosed Trustwell's Trade Secret [sic] to build and launch Workbench, in violation of the terms, conditions, and protections of the License Agreement."  *Id.* ¶ 5.  ESHA then describes its asserted trade secrets (*id.* ¶¶ 20-23), claims to keep them secret and derive value from doing so (*id.* ¶¶ 24-25), and then alleges—as before, always using hedge words including "on information and belief" or "appears"—that "Foodwit accessed and used, and continues to use and disclose, the Trade Secrets to market and sell Workbench."  *Id.* ¶ 47.

ESHA pleads five claims in its complaint, all of which depend on its allegations of trade secrets.  Count II under the Defend Trade Secrets Act (2AC ¶¶ 44-54) and Count IV under the Oregon Uniform Trade Secrets Act (*id.* ¶¶ 61-71) of course require trade secrets.  Count I for breach of contract (*id.* ¶¶ 40-43) refers to alleged conduct "as described above" (*id.* ¶ 42), where the complaint alleges two wrongs:  first, that the "License Agreement expressly prohibits Foodwit from, among other things, commercializing Trustwell's Trade Secrets" but that, "on information and belief, Foodwit accessed, used, and disclosed Trustwell's Trade Secret [sic] to build and launch Workbench, in violation of the terms, conditions, and protections of the License Agreement."  *Id.* ¶ 5.  Second, ESHA claims that Foodwit failed to "immediately surrender to Trustwell all notes, records, documentation, models, software, databases, and other items or

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

materials referencing, containing, or based on Trustwell's confidential, proprietary, and trade secret information." *Id.* ¶ 36. Both alleged violations depend on ESHA's claim to trade secrets; if ESHA has no trade secrets, Foodwit had nothing to steal, and thus nothing to return. Similarly, ESHA's allegations under the Lanham Act (Count III) and under the Oregon Unlawful Trade Practices Act (Count V) depend on its claim that "Foodwit falsely and deceptively marketed, and continues to falsely and deceptively market, Trustwell's crown-jewel Trade Secrets as Foodwit's own creation, the result of Foodwit's own honest, hard work." *Id.* ¶ 34. Once again, ESHA can maintain these claims only if it has trade secrets; without trade secrets, they must also fall.

## ARGUMENT

I.     **ESHA's Assertion of Trade Secrets Confirms That It Has No Trade Secrets to Assert**

ESHA delayed disclosing its asserted trade secrets as long as it possibly could. *See, e.g.,* Docket No. 28 at 27-29. While this Court was considering Foodwit's previous motion to dismiss, ESHA finally ran out of excuses: its response to Foodwit's Interrogatory No. 1 fell due on September 5, 2025. After some final last-minute attempts at further delay, on September 9, 2025, ESHA finally provided its response to Foodwit's Interrogatory No. 1. Ex. 1. ESHA's response confirms what Foodwit has said all along: ESHA has no trade secrets to assert.

A.     **ESHA's Asserted System Secret (or Secrets) Is Just a List of Publicly Known Features, Including Less Information Than ESHA's Public Documentation, Which Cannot Be a Trade Secret**

ESHA's second amended complaint claims that one "type" of its asserted "trade secrets in this action" is the "Genesis Foods software system." 2AC ¶ 20. ESHA's "particularized identification of each trade secret" (*id.* ¶ 23) spends eleven pages on this "type" of asserted "secrets" (*see* Ex. 1 at 3-14), but it fails to specify exactly where one asserted secret ends and another begins. *See generally* Ex. 1. When asked by Foodwit, ESHA appeared to abandon some

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

paragraphs of its asserted trade secrets, but declined Foodwit's invitation to confirm the scope of each asserted trade secret. *See supra* § B. It thus remains not entirely clear how ESHA slices and dices the 28 numbered paragraphs under the "Genesis Foods software system" claimed secret (or secrets). Ex. 1 at 3-14. But it makes no difference: no matter how ESHA combines or divides the 28 paragraphs in its "Genesis Foods software system" asserted secret (or secrets), those 28 paragraphs contain zero trade secrets. The final three paragraphs, 26 through 28, merely repeat claims ESHA has made in its public complaints. *Compare* Ex. 1 ¶ 26 *with, e.g.*, 2AC ¶¶ 5, 25; *compare* Ex. 1 ¶ 27 *with, e.g.*, 2AC ¶¶ 3, 19, 20; *compare* Ex. 1 ¶ 28 *with, e.g.*, 2AC ¶¶ 5, 11, 13, 46-47. That leaves paragraphs 1-25, all 25 of which disclose only features that ESHA has long since disclosed to the public, in more detail, in its own public documentation.

Consider the first feature ESHA claims as part of its asserted secret (or secrets),

█████████████████████████████████████████████████████████

█████████████████████████████ That does not sound like something that is secret and has value from being secret, and sure enough it is not. ESHA's public documentation states:

███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Warren Decl. ¶¶ 12-15 & Ex. 8. ESHA's public documentation provides more detail than ESHA's asserted trade secrets disclosure, ████████████████████████████████████████

███████████ Conversely, ESHA's asserted trade secrets provide nothing beyond its public documentation. *Compare* Ex. 1 at 3 *with* Warren Decl. ¶¶ 12-15 & Ex. 8. So it goes throughout ESHA's asserted secret (or secrets) regarding its "Genesis Foods software system": when Foodwit's outside counsel compared the rest of ESHA's asserted trade secrets to ESHA's public

Page 6 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

documentation, across 11 pages and 25 numbered paragraphs, every single line of ESHA's asserted trade secrets merely names Genesis Foods features that ESHA's public documentation discloses and discusses in more detail. *See* Warren Decl. ¶¶ 8-945. ESHA evidently hoped that dumping a great quantity of assertions marked "Attorneys' Eyes Only" would mask those assertions' lack of quality by preventing Foodwit's outside counsel, not subject-matter experts, from comparing its asserted trade secrets to the public record. ESHA's gambit failed. *See id.*

Since all the information in ESHA's asserted trade secret (or secrets) regarding its "Genesis Foods software system," is already public in ESHA's own documentation, nothing ESHA disclosed can be a cognizable trade secret. "Under the DTSA," a trade secret must be, among other things, a "secret" that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *ESHA Research, LLC v. RLH Assets, LLC*, No. 25-880, Docket No. 45 at 10 (D. Or. Sept. 22, 2025) (quoting 18 U.S.C. § 1839(3)). Similarly, "under the OUTSA," a trade secret is a "secret" that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use." *ESHA v. RLH* at 10 (alteration in original) (quoting ORS 646.461(4)).

Nothing in ESHA's asserted trade secrets is a secret, let alone a secret that derives value from being secret. ESHA's asserted trade secrets do not claim a secret implementation of "█████████████████████████████████████████████" or any of the other features it lists; ██████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ But every single asserted secret

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

listed in ESHA's asserted trade secrets is "readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information"—like an actual or potential competitor reading ESHA's documentation and deciding which features to include in a competitive product. *ESHA v. RLH* at 10 (quoting 18 U.S.C. § 1839(3)). As this Court noted in granting Foodwit's prior motion to dismiss, "[t]he Ninth Circuit requires Plaintiffs to 'refer to tangible trade secret material instead of referring to a system which potentially qualifies for trade secret protection.'" *ESHA v. RLH* at 11 (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)). ESHA's trade secret identification does not even "refer[] to a system which potentially qualifies for trade secret protection"; it refers to publicly known features of a software product which cannot qualify for trade secret protection, thus casting grave doubt on the Rule 11 basis of ESHA's trade secret assertions and its claims in this action, not to mention the verification by ESHA's chief executive officer that ███████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████ To resolve Foodwit's motion, however, the Court need only determine that ESHA claims no trade secrets regarding its "software system." It does not. *See* Warren Decl. ¶¶ 8-945 & Exs. 7-150.

## B.     ESHA's Asserted Database Secret Provides Nothing That Is Unique or Valuable, and Thus Further Confirms That ESHA Has No Trade Secrets

ESHA's second amended complaint claims that another "type" of its asserted "trade secrets in this action" is its "master food and nutrition database." 2AC ¶ 20. ESHA's "particularized identification of each trade secret" (*id.* ¶ 23) again seeks to mask failures in

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

quality with an emphasis on quantity, spending more than four pages on this "type" of asserted secret (*see* Ex. 1 at 14-19), but ultimately confirming that ESHA has no trade secrets to assert.

### 1.     ESHA Does Not Specify the Boundaries of its Asserted Trade Secret

Across the four-plus pages it discusses its asserted database trade secret, ESHA fails to meet its most basic responsibility:  defining the bounds of a trade secret.  Most importantly, ESHA does not specify whether its asserted trade secret includes public information and, if it does, what public information it includes.  ESHA does not use the word "public" in its asserted trade secrets, but it admits that its database includes ███████████████████████

████████████████████████████

*see generally id.*  And ESHA has conclusively admitted, as it must, that "[s]ome of the entries in ESHA's food and nutrition database come from public sources" and that "[s]ome of the entries in ESHA's food and nutrition database are identical to publicly available information such as information from the databases on the Food Data Central website, or from commercial food labels."  *RLH Assets, LLC v. ESHA Research, LLC*, No. 25-656, Docket No. 1 ¶¶ 51-52 (D. Or. Apr. 22, 2025); *see id.*, Docket No. 17 ¶¶ 51-52 (D. Or. June 4, 2025) (unqualified admissions).

Aware of all this, in granting Foodwit's prior motion to dismiss ESHA's first amended complaint, the Court noted that some information within ESHA's database "is publicly available, as Plaintiff itself acknowledges," but that this acknowledgment, "without more, fails to provide the Court with a roadmap to distill what information may be a trade secret and what may not." *ESHA v. RLH* at 12 (quoting *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1151-52 (S.D. Cal. 2022)).  As result, the Court noted, "Plaintiff's compilation claim strengthens the need for it to plead where the boundaries between free, public information and Plaintiff's trade secrets lie." *ESHA v. RLH* at 12.  In its assertion of trade secrets, however, ESHA ignored

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

the Court's ruling. Rather than elucidate "boundaries between free, public information and Plaintiff's trade secrets," ESHA's 2AC and its trade secret disclosure obfuscate those boundaries by making vague and inconsistent claims. The 2AC claims, without providing any specifics, that ESHA's "database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available, as well as a particular selection of data from vetted and reliable external sources like governmental agencies. The database constitutes a compilation trade secret."[2]  2AC ¶ 20. So the 2AC appears to claim the whole database as a compilation trade secret, including both admittedly public and assertedly "proprietary" portions. *Id.* But ESHA's asserted trade secrets say something else, stating that it

 ESHA repeats this language later,

---

[2] The 2AC also claims that "this Court previously held that Trustwell 'carried its burden to identify [this database] compilation trade secret[].'" 2AC ¶ 20 (alterations in original) (quoting *ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-1586, Docket No. 39 (D. Or. May 8, 2025)). This claim is both irrelevant and incorrect. It is irrelevant because Foodwit did not participate in the *Cronometer* case, and thus ESHA cannot use any rulings in that case against Foodwit. *See, e.g.*, *Herrington v. Bristol*, No. 16-680, 2019 WL 7598855, at *12-13 (D. Or. July 29, 2019) (no claim or issue preclusion against non-party to previous actions), *R. & R. adopted*, 2020 WL 265192 (D. Or. Jan. 17, 2020). Foodwit cannot even access what appears to be the disclosure at issue in *Cronometer*, Docket No. 25-1 (D. Or. Mar. 18, 2025); although ESHA later disclaimed the confidentiality of this document, *see id.*, Docket No. 31 ¶ 3 (D. Or. Mar. 28, 2025), the file remains under seal.

In addition to being irrelevant, ESHA's claim is also incorrect. In the *Cronometer* case, defendant Cronometer waived its right to contest ESHA's trade secret identification, stating that, "[w]hile Cronometer contests that the identified compilation is a trade secret, Cronometer does not object to Trustwell's answer as a sufficient description of the allegedly misappropriated trade secret in this case." *Id.*, Docket No. 37 (D. Or. May 6, 2025). The Court thus accepted Cronometer's waiver in Docket No. 39 (D. Or. May 8, 2025), and nothing more. In contrast, Foodwit here does not waive anything.

ESHA thus cannot correctly claim the *Cronometer* case has any bearing on this action.

Page 10 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

noting that its database ███████ ████████████████████████████████

████████████    So is the "compilation trade secret" all of the database including entries that are public (as the word "constitutes" indicates) or does the "compilation trade secret" exclude some or all entries that are public (as the phrase "contains a . . . compilation" indicates)?  ESHA does not say.  Hiding the ball here benefits ESHA:  by obfuscating the scope of its compilation, ESHA avoids having to justify how records that "are identical to publicly available information such as information from the databases on the Food Data Central website, or from commercial food labels"—which ESHA admits exist, *see supra*—are not "readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  *ESHA v. RLH* at 10 (quoting 18 U.S.C. § 1839(3)).  And ESHA leaves the door open to absurd possibilities, for example, a claim that Foodwit stole ESHA's trade secrets by using entirely public information downloaded from the Food Data Central website.  ESHA cannot avoid the Court's command to specify "where the boundaries between free, public information and Plaintiff's trade secrets lie."  *ESHA v. RLH* at 12.

ESHA has failed to specify the scope of its trade secret along another dimension:  time. ESHA claims that its ████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  ESHA does not specify, however, which iteration or iterations of its ████████████ it claims as a trade secret in this action.  Do ESHA's claims include data going back to 1981?  Do they include

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

████████████████████████████████ that ESHA claims to have ██████████████ ████████? Again, ESHA does not say. Again, hiding the ball benefits ESHA, by allowing ESHA to avoid either disclaiming older versions of the database, or explaining why data it rejected as ██████████ has any value at all.

By providing vague and inconsistent descriptions of its asserted database trade secret, ESHA has failed to identify a database trade secret with even minimal plausibility to survive a motion to dismiss. ESHA must put Foodwit on notice of "the nature of the plaintiff's claims"; it has failed to identify where it alleges "trade secret protection begins and ends." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 14-1142, 2016 WL 8732371, at *2 (D. Or. Apr. 1, 2016) (quoting *BioD, LLC v. Amnio Tech., LLC*, No. 13-1670, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014)); *Genasys*, 638 F. Supp. 3d at 1152 (quoting *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-2965, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013)).

### 2. ESHA Does Not Specify Any Value to Its Asserted Trade Secret

ESHA's asserted database secret fails for another, independent reason: ESHA does not explain how its compilation process gives its asserted database secret any value from being secret. Whatever the scope of its compilation, since ESHA "is alleging its trade secrets are entirely compilation trade secrets, it must identify 'the steps in the process and explain[] how those steps make the method or process unique.'" *ESHA v. Cronometer*, Docket No. 36 (D. Or. Apr. 15, 2025) (alteration in original) (quoting *Vesta*, 2016 WL 8732371, at *2). But ESHA identifies nothing unusual, let alone "unique," about either its asserted database trade secret or the alleged steps it takes to generate that secret. Instead ESHA once again substitutes quantity for quality, ████████████████████████████████████████████████████ ██████████████████████████████████████████████████,

Page 12 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER



". But ESHA provides no specifics about any of these steps; despite the quantity of its words, ESHA describes nothing more than the generic process of "collecting, displaying, and manipulating data," which courts evaluating patents have repeatedly found to be "abstract ideas" unworthy of protection. *Intellectual Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (collecting cases); *see, e.g.*, *Teliax Tech. LLC v. Affinity Network, Inc.*, 636 F. Supp. 3d 1199, 1214 (D. Nev. 2022) ("databases were well-understood, routine, and conventional at the time of the claimed invention"). ESHA cannot claim to own the idea of maintaining a database. To allege a compilation trade secret, ESHA must identify specific "steps in the process and explain how those steps make the method or process unique," leading to a secret that is valuable for being secret. *ESHA v. Cronometer*, *supra*. ESHA's disclosure fails this test, and seeks to mask its slim substance through long-windedness and repetition. The Court should not be misled by word count.

In the few instances where ESHA hints at specifics, those specifics further confirm ESHA's lack of trade secrets. ESHA claims that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER



ESHA's assertion of trade secrets once again confirms that ESHA has no trade secrets to assert. "Materials are not trade secrets just because Plaintiff says they are: there must be some minimally plausible factual explanation for why trade secret protection applies." *Synopsys*, 2013 WL 5770542, at *6. "To allege a trade secret, a plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Genasys*, 638 F. Supp. 3d at 1151 (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020)). A plaintiff's "'vague references to an enormous array of potential sources do not suffice to survive' a motion to dismiss when the court cannot 'determine where trade secret protection begins and ends as to any of this material.'" *Genasys*, 638 F. Supp. 3d at 1152 (quoting *Synopsys*, 2013 WL 5770542, at *6). ESHA's asserted database secret provides just such "vague references to an enormous array of potential sources," and adds further confusion by providing only further "vague references to an enormous array" of database actions, none of which can be trade secrets or

Page 14 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

contribute to trade secrets. For this reason as well, ESHA's trade secret assertions confirm that it has no trade secrets to assert.

## II. ESHA Has Suffered No Injury and Thus Lacks Standing to Pursue Its Claims

Under Fed. R. Civ. P. 12(b)(1), the Court should dismiss this action for lack of standing. "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "'The party invoking federal jurisdiction bears the burden of establishing' standing," which is "an essential and unchanging part of the case-or-controversy requirement of Article III." *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. 21-56395, 2023 WL 1793469, at *1 (9th Cir. Feb. 7, 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). To meet this burden, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423. "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *Id.* (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). ESHA's asserted trade secrets confirm that ESHA has not "suffered an injury in fact," *TransUnion*, 594 U.S. at 413, and so the Court should dismiss this action for lack of standing under Fed. R. Civ. P. 12(b)(1).

"A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be either 'facial' or 'factual.'" *Trees v. Serv. Emps. Int'l Union Loc. 503*, 574 F. Supp. 3d 856, 861 (D. Or. 2021) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Trees*, 574 F. Supp. 3d at 861

Page 15 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

(quoting *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013)).  Foodwit's motion is factual, as it challenges the truthfulness of ESHA's trade secret allegations.  "When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint."  *Trees*, 574 F. Supp. 3d at 861 (citing *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012)).

### A.    ESHA Has No Trade Secrets and Thus No Standing to Assert Trade Secrets

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (quoting Black's Law Dictionary 479 (9th ed. 2009)).  To suffer a "de facto" trade secret injury, ESHA must have a trade secret.  *Spokeo*, 578 U.S. at 340.  ESHA agreed in its earlier brief on standing, arguing that injury required "misappropriation of trade secrets," which of course requires "trade secrets."  Docket No. 38 at 2 (emphasis omitted) (quoting *JPMorgan Chase Bank, NA v. Argus Info. & Advisory Servs., Inc.*, 765 F. Supp. 3d 367, 374 (D. Del. Feb. 5, 2025)).  But ESHA has no trade secrets.  *Supra* § I.  With no trade secrets, ESHA has no "de facto" trade secret injury and thus no standing to assert the second amended complaint's Count II under DTSA or Count IV under OUTSA.  *Spokeo*, 578 U.S. at 340.

### B.    Without Trade Secrets, ESHA Has No Standing to Assert Its Other Claims

Without trade secrets, ESHA has no standing to assert its other claims.  Those counts claim no harm beyond Foodwit's alleged theft of trade secrets, *supra* § C, and without those trade secrets ESHA can claim no "de facto" injury on them either.  *Spokeo*, 578 U.S. at 340.  The Court should therefore dismiss the second amended complaint in its entirety for lack of standing.

### C.    ESHA Has No Standing to Assert Its Lanham Act Claims

ESHA has no standing to bring its Lanham Act claims for an independent reason:  its prior statements to this Court confirm that its current allegations are made up.  Assuming that

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

these claims "would otherwise invoke federal jurisdiction," Foodwit disputes their truth under Rule 12(b)(1). *Trees*, 574 F. Supp. 3d at 861 (quoting *Pride*, 719 F.3d at 1133 n.6). The Court should dismiss for this reason as well.

In granting Foodwit's previous motion to dismiss, the Court found that the doctrine of *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23 (2003), and its progeny precluded "Plaintiff's false designation of origin theory" under the Lanham Act. *ESHA v. RLH* at 12; *see id.* at 12-14. The Court warned "that amendment of Plaintiff's false designation of origin theory is likely futile," but nevertheless "dismisse[d] this theory of a Lanham Act claim without prejudice." *Id.* at 14 n.1. But ESHA did not heed the Court's warning: instead of abandoning this claim as it should have, ESHA seized on a single sentence in *Dastar*, which states that a Lanham Act "claim would undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own." *Dastar*, 539 U.S. at 31. Taking this sentence as its 'get out of dismissal free' card, ESHA quoted it in its complaint (2AC ¶ 57) and then claimed that "Foodwit appears to have copied the entirety of Genesis Foods" in the same way. *Id.* There are two problems with this claim. First, it is not true and ESHA knows it is not true. And, second, it is impossible and ESHA knows it is impossible.

This claim is not true and ESHA knows it is not true: in opposing Foodwit's previous motion to dismiss, ESHA admitted that it "can only assume that Workbench is nothing but a renamed copy of Genesis Foods. But unless and until Foodwit permits [ESHA] to inspect Workbench, [ESHA] is unable to specifically allege as much." Docket No. 31 at 17. ESHA repeated this statement at oral argument: "So we've identified specific portions of Workbench that, to our belief, had been identically copied, just a copycat version with a new name. But we also don't know what we don't know. There's portions that we have not been able to access.

Page 17 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

And until we can see the whole platform, we don't know whether it's an identical copy with just a new name, whether it's been partially copied." Docket No. 41 at 21:20 to 22:2. Nothing has changed since then—except, apparently, ESHA's willingness to fudge the facts. Based on the same review that ESHA previously admitted left it "unable to specifically allege" theft because "we also don't know what we don't know," *supra*, ESHA now claims an "informed belief that the entirety of the Workbench platform is a copy of Genesis Foods." 2AC ¶ 33. But ESHA offers no new facts to support the sincerity of this foxhole conversion. *See generally* 2AC. None exist.

Nor could ESHA offer any facts to support this new claim, because its new claim is impossible, and ESHA knows it is impossible. As ESHA itself alleges in its complaint, Genesis Foods is not a videotape with a label that one can peel off or tape over; it is "SaaS," or software as a service, to which Foodwit previously had only limited access. *E.g.*, 2AC ¶ 5. The contract giving Foodwit access to ESHA's software as a service, which the parties now agree governs this dispute, confirmed that Foodwit received at most "object code copies" and never possessed the source code. Ex. 6 at 2-3. As ESHA knows, there is no way for Foodwit to tape over the label of compiled software as one can tape over the label of a videotape, and anyone foolish enough to try would immediately get caught, as the software would identify itself as Genesis Foods and require a proper login. It is therefore impossible for Foodwit to have "merely repackaged" ESHA's software-as-a-service "as its own" (*Dastar*, 539 U.S. at 31), and impossible for ESHA to allege otherwise in good faith. ESHA thus has not alleged and cannot allege a "de facto" injury under the Lanham Act. *Spokeo*, 578 U.S. at 340. ESHA uses this transparently impossible allegation to support its Lanham Act claims not only for false designation of origin, but also for false advertising. *E.g.*, 2AC ¶¶ 55-60. Thus, for this reason as well as ESHA's lack of any trade secrets, the Court should dismiss the entirety of ESHA's Lanham Act claims under Rule 12(b)(1).

Page 18 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

### III.    ESHA Has Failed to Plead a Claim on Which the Court Can Grant Relief

In the alternative to its motion to dismiss under Rule 12(b)(1), Foodwit also moves to dismiss under Rule 12(b)(6), for failure to state a claim on which the Court can grant relief.  "To survive a motion to dismiss" under this Rule, "a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *ESHA v. RLH* at 4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *ESHA v. RLH* at 4 (alteration in original) (quoting *Iqbal*, 556 U.S. 678).  "In other words, a complaint must state a plausible claim for relief and contain 'well-pleaded facts' that 'permit the court to infer more than the mere possibility of misconduct . . . .'"  *ESHA v. RLH* at 4 (alteration in original) (quoting *Iqbal*, 556 U.S. 679).  "A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the 'grounds' of his 'entitlement to relief' with nothing 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . .'"  *ESHA v. RLH* at 4 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In considering the second amended complaint under Rule 12(b)(6), the Court may consider all of the materials submitted with this motion.  "'Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)' without converting that motion into a motion for summary judgment."  *ESHA v. RLH* at 6 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).  "'There are two exceptions to this rule:  the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence [("FRE")] 201."  *ESHA v. RLH* at 6 (alteration in original) (quoting *Khoja*, 899 F.3d at 998).  "[I]ncorporation-by-reference is a judicially created doctrine that treats

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

certain documents as though they are part of the complaint itself." *ESHA v. RLH* at 7 (quoting *Khoja*, 899 F.3d at 1002). "The incorporation by reference doctrine 'permits a district court to consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Pooler v. City of Portland*, No. 24-1715, 2025 WL 1664345, at *1 n.1 (D. Or. June 12, 2025) (quoting *In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)). A "defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms a basis of the plaintiff's claim." *Medlin v. PeaceHealth*, No. 23-12, 2024 WL 712692, at *1 (D. Or. Feb. 21, 2024) (internal quotation marks omitted) (quoting *Khoja*, 899 F.3d at 998). The complaint alleges—indeed, trumpets—the contents of ESHA's asserted trade secret disclosure in response to Foodwit's Interrogatory No. 1 (2AC ¶ 23), defines those contents as ESHA's asserted "Trade Secrets" (*id.*), and refers to and relies on them throughout the complaint. *E.g., id.* ¶¶ 5, 24, 25, 28. The Court should therefore incorporate by reference ESHA's response to Foodwit's interrogatory, its additional explanation of that response, and its refusal to provide further information about that response. Exs. 1-4. Similarly, the complaint refers to and relies on the contents of the contract that ESHA and Foodwit now agree applies in this action. *E.g.,* 2AC ¶ 11. The Court should incorporate by reference the agreement. Ex. 6.

"A court can take judicial notice under FRE 201 of an adjudicative fact if it is 'not subject to reasonable dispute.'" *ESHA v. RLH* at 7 (internal quotation marks omitted) (quoting FRE 201(b)). "The Court must take judicial notice if a party requests it and the court is supplied with the necessary information." *RV Savvy Prods., Inc. v. RV Masters, LLC*, No. 19-184, 2019 WL 5858192, at *3 (D. Or. July 19, 2019) (citing Fed. R. Evid. 201(c)(2)), *R. & R. adopted*, 2019 WL 5541246 (D. Or. Oct. 25, 2019). Foodwit has done so here. For each document Foodwit has

Page 20 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

gathered from ESHA's public documentation, among other things, Foodwit has shown the document's public availability through the Internet Archive, and has provided a link to allow ESHA and the Court to verify the Internet Archive's copy of each document. *See, e.g.*, Warren Decl. ¶¶ 10, 14, 18. "District courts have routinely taken judicial notice of content from The Internet Archive pursuant to this rule." *Under A Foot Plant, Co. v. Exterior Design, Inc.*, No. 14-1371, 2015 WL 1401697, at *2 (D. Or. Mar. 24, 2015); *see also, e.g.*, *RV Savvy Prods.*, 2019 WL 5858192, at *3. This Court should take judicial notice of the documents Foodwit has identified as available on the Internet Archive—which includes all the documents, other than those regarding ESHA's asserted trade secrets which the Court should incorporate by reference, that Foodwit describes in its declaration. *See generally* Warren Decl.

### A.    The Court Should Dismiss ESHA's Trade Secrets Claims

"'Because the DTSA and OUTSA are similar, many courts' evaluate them together." *ESHA v. RLH* at 10 (quoting *Columbia Sportswear Co. v. Ferreira*, No. 23-594, 2025 WL 1520299, at *6 (D. Or. May 28, 2025)). Both claims fail, because ESHA's disclosure of its asserted trade secret, incorporated by reference into its second amended complaint, confirms that ESHA has no trade secrets to assert. *Supra* § I. Should the Court decline to incorporate ESHA's trade secret disclosure by reference and proceed to rule only on ESHA's complaint, it should still dismiss ESHA's trade secrets claims. ESHA's complaint admits that it provides notice only of "types of trade secrets" (2AC ¶ 21), and thus cannot survive the rule that allegations containing only "the types of information that generally may qualify as protectable trade secrets are insufficient to state a claim." *ESHA v. RLH* at 11 (quoting *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-5611, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020)); *see ESHA v. RLH*

Page 21 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

at 10-12.[3] Assuming that ESHA has articulated trade secrets, ESHA has not actually pleaded that Foodwit misappropriated them. ESHA baldly states that "Foodwit appears to have copied the entirety of Genesis Foods" (2AC ¶ 57), which is both false and impossible (*supra* § II.C) but, even if assumed to be true, is the kind of unsupported "'legal conclusion[s] couched as [ ] factual allegation[s]'" the Court is "not 'bound to accept as true.'" *Stahl L. Firm v. Judicate W.*, No. 13-1668, 2013 WL 6200245, at *7 (N.D. Cal. Nov. 27, 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678). Although ESHA's 2AC swaps "on information and belief" for "appears" (*compare* 1AC   24 *with* 2AC   27) it provides no plausible facts to support its (incorrect) conclusion that Foodwit "copied the entirety of Genesis foods." Indeed ESHA previously admitted that it has not inspected Workbench, and thus could "only assume" it to be a copy. *Supra* § II.C. Changing "assume" to "appears" does not change a guess into a fact.

Similarly, ESHA assumes without support that Foodwit "exported a substantial volume of proprietary data from Genesis Foods" for an improper purpose, even though ESHA immediately admits that Foodwit was *allowed* to export data for a *proper* purpose. 2AC ¶ 27. ESHA provides nothing to support its claim of an improper purpose, or to support its assumption that the "volume" of any downloading was "substantial"—information ESHA should have through its SaaS logs, and would provide if it exists. But instead of facts, ESHA provides only "'legal conclusion[s] couched as [ ] factual allegation[s],'" which the Court is "not 'bound to accept as

---

[3] The differences between ESHA's descriptions of its "types of trade secrets" (2AC ¶ 21) and its disclosure of its asserted trade secrets (Ex. 1) illustrate the importance of this rule. Without this rule, one could imagine a list of "types of trade secrets" that could seem specific enough to allow a complaint to proceed, but would stay general enough to prevent the accused misappropriator from identifying any flaws and presenting them to the court, thus subjecting the accused misappropriator into unnecessary litigation. In contrast, because ESHA has now provided its sworn disclosure of its asserted trade secrets, Foodwit could identify their flaws by comparing ESHA's asserted secrets to ESHA's public documentation. *Supra* § I.

Page 22 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

true.'" *Stahl*, 2013 WL 6200245, at *7 (alterations in original) (quoting *Iqbal*, 556 U.S. at 678). The Court should dismiss ESHA's trade secret claims for this reason as well.

## B.    The Court Should Dismiss ESHA's Contract Claim

ESHA fails to allege any breach of contract.  ESHA claims that, "[b]y using Genesis Foods and related information as described above," Foodwit has breached the contract.  2AC ¶ 42.  But the only acts "described above" are "commercializing Trustwell's Trade Secrets" and "otherwise leveraging them to build and launch competing products."  *Id.* ¶ 5.  Since ESHA has no trade secrets, *supra* § I, it alleges no breach.  To survive a motion to dismiss, "a complaint must allege 'the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages.'"  *Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 14-15, 2014 WL 4084517, at *15 (N.D.W. Va. Aug. 19, 2014) (alterations in original) (quoting *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009)).  ESHA has alleged no breach, and the Court should dismiss this claim.

## C.    The Court Should Dismiss ESHA's Lanham Act Claim

### 1.    *Dastar* Precludes This Claim in Its Entirety

In granting Foodwit's previous motion, the Court found that *Dastar* precludes ESHA's "false designation of origin theory."  *ESHA v. RLH* at 13; *see id.* at 12-14.  Under Rule 12(b)(6), just as under Rule 12(b)(1), ESHA cannot avoid *Dastar* through a transparently incorrect claim that Foodwit peeled the label off its software-as-a-service and resold it.  *Supra* § I.C.[4]  In

_____

[4] On a Rule 12(b)(6) motion, the Court may consider the governing contract as incorporated by reference, *see supra* § III, and may consider ESHA's prior statements to the Court under *First Call Int'l, Inc. v. S&B Global, Inc.*, No. 23-10016, 2024 WL 4404429, at *7 (C.D. Cal. July 5, 2024) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002)); *see also* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure

Page 23 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

addition, a "reverse passing off claim" in which a "producer misrepresents someone else's goods or services as his own"—exactly the claim ESHA now makes—"cannot be brought to prevent the copying of intellectual property." *ESHA v. RLH* at 13-14 (quoting *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018)). "Copying is dealt with through the copyright and patent laws, not through trademark law." *ESHA v. RLH* at 14 (quoting *OTR Wheel*, 897 F.3d at 1016). The Court should dismiss ESHA's false designation of origin claim.

That leaves ESHA's false advertising claim. At oral argument, the Court noted its doubt whether *Dastar* applied to false advertising claims, Docket No. 41 at 8:5-7, but did not rule on this issue. *ESHA v. RLH* at 12-14. ESHA's complaint confirms why *Dastar* should apply to false advertising claims. ESHA's Lanham Act claims, for both false advertising and false designation of origin, rest on a single word: "built." 2AC ¶¶ 29, 30, 32. ESHA claims that "Foodwit omits from its marketing and advertising that Workbench is nothing more than the result of common theft, claiming instead that Foodwit honestly and legitimately 'built' Workbench from scratch" (*id.* ¶ 32), and further claims that Foodwit's alleged misuse of "built" constitutes both false advertising and false designation of origin. *Id.* ¶¶ 30-32, 55-60. The two claims rely on the same facts, and both seek to read "§ 43(a) of the Lanham Act as creating a cause of action for, in effect, plagiarism—the use of otherwise unprotected works and inventions without attribution," precisely what the Supreme Court cautioned against in *Dastar*. 539 U.S. at 36. In fact, under ESHA's logic here, the plaintiff in *Dastar* could have avoided *Dastar* entirely simply by pleading a false advertising claim. There, the challenged "advertising states: 'Produced and Distributed by: *Entertainment Distributing*' (which is owned by Dastar), and makes no reference to the

---

§ 1357 (4th ed.) ("courts resolving Rule 12(b)(6) motions may consider," among other things, "items appearing in the record of the case").

Page 24 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

Crusade television series." 539 U.S. at 27 (emphasis in original). Just as ESHA contends that its claims about "built" can avoid *Dastar* by using the magic words "false advertising," so too the *Dastar* plaintiff could have avoided *Dastar* itself. But one cannot read the opinion in *Dastar* and conclude that it intended to leave such an easy end-run around its ruling; to the contrary, courts have taken to heart *Dastar*'s policy command that "[c]opying is dealt with through the copyright and patent laws, not through trademark law." *ESHA v. RLH* at 14 (quoting *OTR Wheel*, 897 F.3d at 1016). That should be so regardless of whether a plaintiff uses copying to allege false designation of origin or false advertising. *Dastar* should bar both.

Even if the Court does not conclude that *Dastar* should apply to false advertising claims in general, it should still apply to *this* false advertising claim, because ESHA's false advertising claim is a false designation of origin claim in disguise. Courts evaluating Lanham Act claims can and will reclassify claims when, for example, "Plaintiffs have merely recast their false designation of origin claim as a false advertising claim." *Red Rock Sourcing LLC v. JGX LLC*, No. 21-1054, 2024 WL 1243325, at *31 (S.D.N.Y. Mar. 22, 2024) (collecting cases); *see, e.g.*, *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017); *C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*, No. 19-2009, 2022 WL 2704506, at *9 (E.D.N.Y. July 12, 2022) ("false advertising claim, as stated in the amended complaint, appears to be a false association claim in disguise and, considered as such, clearly fails"). ESHA's false advertising claim rests entirely on its allegation that "Workbench is nothing more than the result of common theft" from ESHA (2AC ¶ 32)—the epitome of a false designation of origin claim. The Court can and should reclassify ESHA's false advertising claim as a false designation of origin claim, placing it indisputably under *Dastar* and dismissing it for that reason.

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

### 2.    ESHA Cannot Build a Lanham Act Claim on "Built"

Assuming that *Dastar* does not bar any portion of ESHA's Lanham Act claim, the Court should dismiss whatever remains.  "Only factual statements that are 'specific and measurable [and] capable of being proved false or of being reasonably interpreted as a statement of objective fact' are actionable."  *ESHA v. RLH* at 14 (alteration in original) (quoting *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 1001 (9th Cir. 2024)); *see id.* at 14-15.  "In other words, 'a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product' may be actionable under the Lanham Act."  *Oracle*, 123 F.4th at 1001 (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008)).

ESHA claims that each of its accused false "representations is also a statement of fact—***i.e., that Foodwit "built" Workbench***—and thus can objectively be proven wrong."  2AC ¶ 30 (emphasis in original).  But typography is not persuasion, and ESHA omits the requirement that a "fact" must be "a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product."  *Oracle*, 123 F.4th at 1001.  ESHA puts all its eggs in one basket, the word "built," but that word by itself cannot suffice.  *See, e.g.*, *Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) ("built to withstand reasonable shock" is "generalized, non-actionable puffery" and "not factual representations that a given standard has been met"); *Schneider v. Ford Motor Co.*, No. 18-367, 2018 WL 5213280, at *4 (C.D. Cal. Apr. 13, 2018) ("'Built Ford Tough' has no calculable meaning and constitutes non-actionable puffery"), *reversed on other grounds*, 756 F. App'x 699 (9th Cir. 2018).  ESHA's current claim against "built" cannot fare better than its previous claim against "Engineered by food and supplement industry veterans," which ESHA made in the 1AC (*id.* ¶ 26) and defended (Docket No. 31 at 13), but which the Court found "'mere puffery' instead of actionable statements—they

Page 26 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

are not factual and cannot objectively be proven wrong." *ESHA v. RLH* at 15; *see id.* at 14-15. "Engineered" is more specific than "built" but, as the Court found, neither is part of "a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product" and thus "may be actionable under the Lanham Act." *Oracle*, 123 F.4th at 1001.

### 3. ESHA's Lanham Act Claim Fails Under Rule 9(b)

"Rule 9(b)'s heightened pleading standard applies to Plaintiff's Lanham Act claim because it 'is predicated on the theory that [Defendant] engaged in a knowing and intentional misrepresentation . . . .'" *ESHA v. RLH* at 13 (alteration in original) (quoting *OD's on Fin., LLC v. Mena*, No. 25-3027, 2025 WL 2021881, at *2 (N.D. Cal. July 18, 2025)). "Accordingly, Plaintiff's allegations 'must be accompanied by the who, what, when, where, and how of the misconduct charged.'" *ESHA v. RLH* at 13 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). ESHA does not come close to this standard.

"To establish a false designation of origin theory under 15 U.S.C. § 1125(a)(1)(A), 'the plaintiff must show that the defendant (1) uses in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services.'" *ESHA v. RLH* at 12-13 (quoting *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-6012, 2024 WL 1772833, at *12 (N.D. Cal. Apr. 23, 2024)). "Similarly, to establish a false advertising theory under 15 U.S.C. § 1125(a)(1)(B), the plaintiff must show that: '(1) a statement made in a commercial advertisement or promotion is false or misleading; (2) that it actually deceives or has the tendency to deceive a substantial segment of its audience; (3) that it's likely to influence purchasing decisions and (4) that the plaintiff has been or is likely to be injured by the false advertisement.'" *ESHA v. RLH* at 13 (quoting *Beijing Meishe*, 2024 WL 1772833, at *12).

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

ESHA's complaint provides only boilerplate claims that a statement by Foodwit "is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services," or that a statement by Foodwit that "actually deceives or has the tendency to deceive a substantial segment of its audience," is "likely to influence purchasing decisions, or that "the plaintiff has been or is likely to be injured by the false advertisement." *See ESHA v. RLH* at 12-13 (quoting *Beijing Meishe*, 2024 WL 1772833, at *12); 2AC ¶ 58. To this boilerplate paragraph, ESHA added only one sentence: "In fact, certain of Trustwell's customers now utilize Workbench, thereby diverting business from Trustwell to Foodwit." *Compare* 1AC ¶ 58 *with* 2AC ¶ 58. This is insufficient for three reasons. First, it does not name the "certain" customers; if saying "certain" met Rule 9(b), then Rule 9(b) would have no meaning. Second, even granting that "certain" customers do use Workbench, ESHA has done nothing to allege that they do so because of Foodwit's allegedly false statements, or that ESHA has suffered damage as a result. ESHA's "general allegations—lacking any details or facts setting out the 'who, what, when, where, and how' of the [alleged fraudulent conduct]—are insufficient under Rule 9(b)." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *see also Puri v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (under Rule 9(b), "[m]ere conclusory allegations of fraud are insufficient" and "[b]road allegations that include no particularized supporting detail do not suffice" (citations and internal quotations omitted)). Third, ESHA fails to allege that "the deception is material, in that it is likely to influence the purchasing decision." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071-72 (9th Cir. 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). The entity that "came up with the idea for the product" is "typically of no consequence to purchasers," *Dastar*, 539 U.S. at 32-33, and Foodwit's alleged

Page 28 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

statements (2AC ¶ 29) are "extremely unlikely to induce consumer reliance," and thus cannot state a claim. *Newcal*, 513 F.3d at 1053. ESHA's allegations of deception (2AC ¶ 58) are "nothing more than a 'formulaic recitation of the elements' of a claim," and thus "'conclusory and not entitled to be assumed true.'" *Burtness v. Legacy Health*, No. 24-1256, 2024 WL 5168364, at *1 (D. Or. Dec. 18, 2024) (quoting *Iqbal*, 556 U.S. at 680-81). A proper Lanham Act claim must contain "*factual* allegations that [ESHA] has been or is likely to be injured as a result of [Foodwit's] alleged false or misleading statements." *Stahl*, 2013 WL 6200245, at *7 (emphasis in original). As in *Stahl*, ESHA "nowhere alleges" any "facts supporting [its] legal assertions" that it "has or will experience" any damages. *Id.* "The Court is not 'bound to accept as true' this or Plaintiff's other 'legal conclusion[s] couched as [ ] factual allegation[s].'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see Burtness*, 2024 WL 5168364, at *1. The Court should dismiss the Lanham Act claim for these reasons as well.

### D.  The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim

Last and least, the Court should dismiss ESHA's claim under the Oregon Unlawful Trade Practices Act. "To state a UTPA claim, a plaintiff must plead '(1) a violation of ORS 646.608(1); (2) causation; (3) damages; and (4) willfulness by the defendant.'" *ESHA v. RLH* at 15 (quoting *Stafford v. Taffet*, No. 24-1612, 2025 WL 1736831, at *5 (D. Or. June 23, 2025)). "Pleading an ascertainable loss of money or property is an essential element of a private UTPA claim." *ESHA v. RLH* at 15 (quoting *Stafford*, 2025 WL 1736831, at *5). "If a UTPA claim 'sounds in fraud,' the heightened pleading standard applies." *ESHA v. RLH* at 15 (quoting *Latham v. PWCC Marketplace, LLC*, No. 21-1381, 2022 WL 226807, at *2 (D. Or. Jan. 25, 2022)). "To determine whether a claim sounds in fraud, 'federal courts look to the elements of fraud under state law.'" *ESHA v. RLH* at 15 (quoting *Latham*, 2022 WL 226807, at *2). Evaluating the first amended

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

complaint, this Court found that "Rule 9(b)'s heightened pleading standard applies to Plaintiff's UTPA claims." *ESHA v. RLH* at 15.  The second amended complaint repeatedly makes the same kind of fraud allegations (*e.g.*, 2AC ¶¶ 26-32), and thus ESHA "must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and "identify the 'time, place, and specific content of the false representations as well as the parties to the misrepresentations.'" *Latham*, 2022 WL 226807, at *1 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)); *see also Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1043 (D. Or. 2014) (UTPA "allegations grounded in fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged") (quoting *Vess*, 317 F.3d at 1106).

Evaluating the first amended complaint, the Court previously found that ESHA had "not pleaded the first element of its UTPA claim" because it did not "plead the 'who, what, when, where, and how' of Plaintiff's claim that Defendant fraudulently copied Plaintiff's product and sold it as Defendant's own." *ESHA v. RLH* at 16-17.  Despite this ruling, ESHA made only tepid changes to its second amended complaint.  It removed the term "secretly" from "secretly accessed" (*e.g.*, *compare* 1AC ¶ 5 *with* 2AC ¶ 5) and included the allegation that "certain of [ESHA's] customers now utilize Workbench, thereby diverting business from [ESHA] to Foodwit." 2AC   74; *see also generally id.* ¶¶ 72-76.  But ESHA's tepid changes did not cure the defects in its previous complaint, and the Court should dismiss ESHA's pending UTPA claims.

### 1.    ESHA Fails to Allege an UTPA Violation

ESHA fails to allege a "violation of § 646.608(1)." *Colquitt v. Mfrs. & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1231 (D. Or. 2015).  First, ESHA's claims rely upon theft, alleged only on information and belief, which cannot suffice under Rule 9(b).  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see generally* 2AC.  Second, ESHA fails to state "the 'who, what,

Page 30 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

when, where, and how' of the misconduct charged." *Kearney*, 65 F. Supp. at 1043 (quoting *Vess*, 317 F.3d at 1106). ESHA again makes the same vague and unsubstantiated assertion that Foodwit "did confuse and deceive," 2AC ¶ 74; its "vagueness falls far below the requirements of Rule 9(b) and is cause for dismissal." *Latham*, 2022 WL 226807, at *3; *see also, e.g.*, *Kearney*, 65 F. Supp. 2d at 1044-45. The additional allegation that "certain of [ESHA's] customers now utilize Workbench, thereby diverting business from [ESHA] to Foodwit," does not come close to identifying "the 'who, what, when, where, and how' of the misconduct charged." *Kearney*, 65 F. Supp. at 1043 (quoting *Vess*, 317 F.3d at 1106). Just as this Court previously concluded, ESHA's allegations still do not satisfactorily plead the first element of an UTPA claim under Rule 9(b).

Even if the Court considered ESHA's allegations as though it had sufficiently pleaded the 'who, what, when, where, and how,' ESHA fails to allege a violation of ORS 646.608(1)(a) or (1)(b). A party violates § 646.608(1)(a) if it "[p]asses off real estate, goods or services as the real estate, good or services of another," and § (1)(b) if it "[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." *Mendoza v. Lithia Motors, Inc.*, No. 16-1264, 2018 WL 1513650, at *5 (D. Or. Mar. 27, 2018) (quoting ORS 646.608(1)(a)-(b)). These cases usually allege passing off or confusion based on ambiguity in the *identity* of the provider of goods or services, such as two knitting companies fighting over the use of the names "knit purl," "Knit Purl," and "Knit Pearl." *See Knit Pearl, LLC v. Shibui, LLC*, No. 05-845, 2006 WL 8458984, at *13 (D. Or. Oct. 17, 2006). Unlike those cases, the 2AC does not allege a violation of § 646.608(1)(a) or (b); instead it agrees that Workbench is Foodwit's product, and claims that Foodwit violated UTPA by making "false and misleading statements" about its own product. 2AC ¶ 73. But allegedly false statements about one's own product do not violate § 646.608(1)(a) or (b). *Mendoza*, 2018 WL 1513650, at *5. In

Page 31 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

*Mendoza*, defendant car dealership "arranged for vehicle financing with an interest rate of 3.94%, a higher rate than provided by the lender," and "sold Mr. Mendoza products and services obtained through third parties," but did not "disclose its specific fees associated with the arrangement of financing or the profit margins related to the sale of third-party products and services." *Id.* at *1. Plaintiff claimed this practice violated § 646.608(1)(a), (b), and (c) by representing that "consumers were paying for third party products, when, in fact, these payments were mostly kept by Lithia—without disclosure and without consent." *Id.* at *5. The court granted a motion to dismiss, finding that (a), (b), and (c) "require transparency regarding, among other things, the *identity* of service providers—not the profit margins secured by a party selling the services." *Id.* at *5 (emphasis in original). ESHA does not challenge the *identity* of Workbench's seller, indeed, its claims require Foodwit in that role. *E.g.*, 2AC ¶¶ 73-74. Like the plaintiff in *Mendoza*, the 2AC addresses how the seller assembled the product that it sold. *Id.* Like the plaintiff in *Mendoza*, ESHA alleges that Foodwit improperly increased the "profit margins secured by a party selling the services." *E.g.*, 2AC ¶ 32. As in *Mendoza*, ESHA cannot recover under § 646.608(1)(a) or (b). 2018 WL 1513650, at *5.

### 2.    ESHA Fails to Allege Causation

ESHA fails to allege "causation." *Colquitt*, 144 F. Supp. 3d at 1231. ESHA again fails to state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney*, 65 F. Supp. 2d at 1043 (quoting *Vess*, 317 F.3d at 1106). ESHA fails "to plead causation in sufficient detail to put [Foodwit] on notice of the casual [sic] relationship between a particular alleged unfair business practice and the ascertainable loss and damages incurred as a result of that particular conduct." *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1141 (D. Or. 2014). "[R]egardless of the quantity of the plaintiff's loss, a causal link between the plaintiff's loss and

Page 32 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

the defendant's actions must exist to state a viable UTPA claim." *Fauley v. Washington Mut. Bank FA*, No. 13-581, 2014 WL 1217852, at \*4 (D. Or. Mar. 21, 2014). ESHA fails to plead this link, requiring dismissal.

### 3. ESHA Fails to Allege Damages

ESHA fails to allege "damages." *Colquitt*, 144 F. Supp. 3d at 1231. A "private plaintiff may bring a UTPA claim only if it has suffered an 'ascertainable loss of money or property.'" *Rathgeber v. James Hemenway, Inc.*, 69 P.3d 710, 715 n.5 (Or. 2003) (quoting ORS 646.638). But ESHA asserts only hypothetical "consumers across the country" who "*likely* would do business (or continue to do business)" with ESHA. 2AC ¶ 74 (emphasis added). Nor does ESHA's additional allegation that "certain of [its] customers now utilize Workbench" suffice under Rule 9(b) or Rule 12; these allegations are "nothing more than a 'formulaic recitation of the elements' of a claim" and is thus "conclusory and not entitled to be assumed true." *Burtness*, 2024 WL 5168364, at \*1 (quoting *Iqbal*, 556 U.S. at 680-81).

### 4. ESHA Fails to Allege Willfulness

ESHA fails to allege "willfulness by Defendant." *Colquitt*, 144 F. Supp. 3d at 1231. ESHA's claims rely upon theft, alleged only on information and belief, which cannot suffice under Rule 9(b). *See Neubronner*, 6 F.3d at 672; *see generally* 2AC. Second, ESHA fails to state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney*, 65 F. Supp. 2d at 1043 (quoting *Vess*, 317 F.3d at 1106). "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." *Fleshman*, 27 F. Supp. 3d at 1141 (quoting ORS 646.605(10)). The 2AC's willfulness allegation (*id.* ¶ 67) is "nothing more than a 'formulaic recitation of the elements' of a claim" and is thus

Page 33 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

"'conclusory and not entitled to be assumed true.'" *Burtness*, 2024 WL 5168364, at *1 (quoting *Iqbal*, 556 U.S. at 680-81).

### IV.    The Court Should Deny Leave to Further Amend the Second Amended Complaint

Although the "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), the "district court has discretion to deny leave to amend when there are 'countervailing considerations' such as 'undue delay, prejudice, bad faith, or futility.'" *Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (quoting *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015)); *see also Salu v. Multnomah Cty.*, No. 21-1387, 2023 WL 6239088, at *2 (D. Or. Sept. 26, 2023) (same). A district court's discretion is "particularly broad where plaintiff has previously amended the complaint." *Butters v. Travelers Indemnity Co.*, No. 22-726, 2023 WL 2988763, at *11 (D. Or. Jan. 23, 2023) (quoting *Kuklok v. U.S. Dep't of Veterans Affairs*, No. 21-15105, 2022 WL 256361, at *1 (9th Cir. Jan. 26, 2022)). The Court can deny leave to amend "when the adverse party offers evidence that shows 'wrongful motive' on the part of the moving party." *Leighton v. Three Rivers Sch. Dist.*, No. 12-1275, 2014 WL 6063638, at *2 (D. Or. Nov. 12, 2014) (citing *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

Exercising this discretion, the Court should deny any request for leave to further amend. Since ESHA sent its first cease-and-desist letter on August 6, 2024, *Foodwit v. ESHA*, No. 25-656, Docket, No. 1, Ex. 14 (D. Or. Apr. 22, 2025), Foodwit has responded, over and over again, 'tell us what you think we stole.' More than a year later, on September 9, 2025, ESHA professed to answer this question—but its answer only established that it had no trade secrets to steal, and that Foodwit had stolen nothing. *Supra* § I. ESHA's long delay in providing its asserted trade secrets, and its attempt to hide their poor quality under mountains of quantity,

Page 34 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

further establishes its bad faith. *See id.* And ESHA's tepid modifications to its previous complaint, coupled with its refusal to drop even the claims obviously precluded by the Supreme Court in *Dastar* and its willingness to ignore the truth in doing so, confirms it. *Supra* § II, III. Foodwit has said all along that ESHA does not seek to win this litigation, but to use its grinding force to compel a much smaller competitor to give up and cede ESHA its monopoly. Further amendment will only reward ESHA for this improper litigation strategy.

The Court should also deny leave to amend as futile. ESHA has now conclusively admitted that it has no trade secrets and no allegations that Foodwit stole anything. *Supra* § I. ESHA's other claims all depend on its allegations of trade secret theft, and cannot survive without them. There is no "reason to suppose further amendment would be anything but futile." *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 532 (9th Cir. 2018). The Court should deny leave to amend for this reason as well.

<u>**CONCLUSION**</u>

For all the foregoing reasons, the Court should dismiss ESHA's Second Amended Complaint, and deny ESHA leave to further amend.

Date: November 5, 2025                    Respectfully submitted,

                                          *s/ P. Andrew McStay, Jr.*
                                          P. Andrew McStay, Jr., OSB No. 033997
                                          DAVIS WRIGHT TREMAINE LLP
                                          560 S.W. Tenth Avenue, Suite 700
                                          Portland, Oregon, 97205
                                          +1 (503) 778-5302
                                          +1 (503) 778-5299 facsimile
                                          andymcstay@dwt.com

                                          Matthew S. Warren (*pro hac vice*)
                                          Erika H. Warren (*pro hac vice*)
                                          WARREN KASH WARREN LLP
                                          2261 Market Street, No. 606

Page 35 – FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC*
*d/b/a Foodwit*

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER