P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 241-2300
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, LLC, an Oregon limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RLH ASSETS, LLC d/b/a FOODWIT, an Oregon limited liability company,<br><br>Defendant. | Case No. 3:25-cv-00880-AB<br><br>**REPLY IN SUPPORT OF FOODWIT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**AUTHORIZED TO BE FILED UNDER SEAL BY PROTECTIVE ORDER (DOCKET NO. 44)** |

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      ESHA's Assertion of Trade Secrets Confirms That It Has No Trade Secrets to Assert . . . 2

        A.      ESHA Repeatedly Avoided Providing Its Asserted Trade Secrets . . . . . . . . . . . . . 2

        B.      ESHA Repeatedly Promised the Court That Its Response to Foodwit's
                Interrogatory No. 1 Would and Did Contain Its Asserted Trade Secrets . . . . . . . . 3

        C.      Foodwit's Motion to Dismiss Exposes ESHA's Asserted Trade Secrets as
                Including Zero Trade Secrets, and ESHA's Opposition Admits As Much . . . . . . . 5

                1.      ESHA's Asserted System Secret Contains No Secrets But Is Just a List
                        of Publicly Known Features, as ESHA Now Admits in Its Opposition . . . 5

                2.      ESHA's Asserted Database Secret Contains No Secrets, as ESHA Now
                        Admits In Its Opposition By Failing to Address Foodwit's Arguments . . . 8

                        i.      ESHA Failed to Specify Whether Its Claimed Trade Secret
                                Database Includes Public Information Such as the USDA's
                                Well-Known Databases Available on the Internet . . . . . . . . . . . . . 8

                        ii.     ESHA Failed to Specify Whether Its Claimed Trade Secret
                                Database Includes Data It Has Itself Discarded . . . . . . . . . . . . . . 10

                        iii.    ESHA Failed to Specify How Its Claimed Trade Secret
                                Database is Secret or Valuable For Being Secret . . . . . . . . . . . . . 10

II.     ESHA Has Suffered No Injury and Thus Lacks Standing to Pursue Its Claims . . . . . . . . 12

        A.      ESHA Has Not Suffered a Trade Secret Injury Since It Has No Trade Secrets . . 12

        B.      ESHA's Remaining Allegations Rest on Its Claim of Trade-Secret Injury . . . . . 12

        C.      In Addition, ESHA Has Suffered No Lanham Act Injury, and Admits As Much
                By Failing to Respond to Foodwit's Factual Attack on Its Claim . . . . . . . . . . . . 12

        D.      Since ESHA Suffered No Injury, the Court Must Dismiss Under 12(b)(1) . . . . . 14

III.    ESHA Fails to State a Claim on Which the Court Can Grant Relief . . . . . . . . . . . . . . . . . 17

        A.      The Court Should Dismiss ESHA's Trade Secrets Claims . . . . . . . . . . . . . . . . . . 17

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

**TABLE OF CONTENTS**
*(continued)*

*Page*

      1.     ESHA Fails to Plead Any Trade Secrets . . . . . . . . . . . . . . . . . . . . . . . . . . .17

      2.     ESHA Fails to Plead Misappropriation . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

   B.     The Court Should Dismiss ESHA's Contract Claim . . . . . . . . . . . . . . . . . . . . . . . .22

   C.     The Court Should Dismiss ESHA's Lanham Act Claim . . . . . . . . . . . . . . . . . . . 23

      1.     *Dastar* Precludes This Claim in Its Entirety . . . . . . . . . . . . . . . . . . . . . . .23

      2.     ESHA Cannot Build a Lanham Act Claim on "Built" . . . . . . . . . . . . . . . 25

      3.     ESHA's Lanham Act Claim Fails Under Rule 9(b) . . . . . . . . . . . . . . . . 26

IV.    The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim . . . . . . . . . . . .27

   A.     ESHA's Opposition Confirms That the Court Should Dismiss This Claim . . . . . 27

   B.     ESHA Fails to Allege Any UPTA Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

   C.     ESHA Fails to Allege Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

   D.     ESHA Fails to Allege Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

   E.     ESHA Fails to Allege Willfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

V.     The Court Should Deny Leave to Further Amend the Second Amended Complaint . . . .31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## TABLE OF AUTHORITIES

*Cases*                                                                                                          *Pages*

*Ashcroft v. Iqbal,*
    556 U.S. 678 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 27, 30

*Augustine v. United States,*
    704 F.2d 1074 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Autodesk, Inc. v. ZWCAD Software Co.,*
    No. 14-1409, 2015 WL 2265479 (N.D. Cal. May 13, 2015) . . . . . . . . . . . . . . . . . . . 20, 21

*Bell v. Hood,*
    327 U.S. 678 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Benko v. Quality Loan Serv. Corp.,*
    789 F.3d 1111 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Berg v. Unitus Cmty. Credit Union,*
    No. 14-135, 2014 WL 4674591 (D. Or. Sept. 17, 2014) . . . . . . . . . . . . . . . . . . . . . 13, 14

*Bowen v. Energizer Holdings, Inc.,*
    118 F.4th 1134 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bradley v. Chiron Corp.,*
    198 F.3d 1317 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Burtness v. Legacy Health*
    No. 24-1256, 2024 WL 5168364 (D. Or. Dec. 18, 2024) . . . . . . . . . . . . . . . . . . . . . 30

*Butters v. Travelers Indem. Co.,*
    No. 22-726, 2023 WL 2988763 (D. Or. Jan. 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . 31

*Catalinbread LLC v. Gee,*
    No. 18-1795, 2019 WL 1586756 (D. Or. Apr. 12, 2019) . . . . . . . . . . . . . . . . . . . . . . 22

*Cisco Sys., Inc. v. Chung,*
    462 F. Supp. 3d 1024 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Clark v. Eddie Bauer LLC,*
    371 Or. 177 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Classic Media, Inc. v. Mewborn,*
    532 F.3d 978 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*CollegeNet, Inc. v. Embark.com, Inc.,*
    230 F. Supp. 2d 1167 (D. Or. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER. THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

**TABLE OF AUTHORITIES**
(continued)

Cases                                                                 Pages

*Complete Logistical Servs., LLC v. Rulh,*
    350 F. Supp. 3d 512 (E.D. La. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ctr. for Biological Diversity v. United States Forest Serv.,*
    80 F.4th 943 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*DCD Programs, LTD. v. Leighton,*
    833 F.2d 183 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31, 32

*Denson v. Ron Tonkin Gran Turismo, Inc.,*
    566 P.2d 1177 (Or. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*ESHA Research, LLC v. RLH Assets, LLC,*
    No. 25-880, Docket No. 45 (D. Or. Sept. 22, 2025) . . . . . . . . . . . . . . . . . . . . . . *passim*

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
    No. 24-1586, Docket No. 36 (D. Or. Apr. 15, 2025) . . . . . . . . . . . . . . . . . . . . . 10, 11

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
    No. 24-1586, Docket No. 39 (D. Or. May 8, 2025) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ebeid ex rel. U.S. v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,*
    548 F.3d 1184 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fauley v. Washington Mut. Bank FA,*
    No. 13-581, 2014 WL 1217852 (D. Or. Mar. 21, 2014) . . . . . . . . . . . . . . . . . . . . . .29

*Feitler v. Animation Celection, Inc.,*
    170 Or. App. 702 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.,*
    No. 19-5611, 2020 WL 513287 (N.D. Cal. Jan. 31, 2020) . . . . . . . . . . . . . . . . . . . .18

*Fleshman v. Wells Fargo, N.A.,*
    27 F. Supp. 3d 1127 (D. Or. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 31

*Garfias v. Portland Spray Works, Inc.,*
    No. 20-873, 2021 WL 27456 (D. Or. Jan. 3, 2021) . . . . . . . . . . . . . . . . . . . . . . . . 20

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## TABLE OF AUTHORITIES
### (continued)

*Cases*                                                                 *Pages*

*Genasys Inc. v. Vector Acoustics, LLC,*
  638 F. Supp. 3d 1135 (S.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Goldberg v. Stephens Inst.,*
  No. 16-2613, 2016 WL 9343893 (N.D. Cal. Nov. 30, 2016) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Govind v. Adams,*
  No. 03-487, 2006 WL 8439727 (S.D. Cal. Aug. 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*Green v. Ariz. Bd. of Regents,*
  No. 18-4665, 2020 WL 2512759 (D. Ariz. May 15, 2020) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hamilton v. Gen. Mills, Inc.,*
  No. 16-382, 2016 WL 6542840 (D. Or. Nov. 2, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Hartranft v. Encore Cap. Grp., Inc.,*
  543 F. Supp. 3d 893 (S.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*InteliClear, LLC v. ETC Global Holdings, Inc.,*
  978 F.3d 653 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Kearney v. Equilon Enters., LLC,*
  65 F. Supp. 3d 1033 (D. Or. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Kivett v. Flagstar Bank, FSB,*
  154 F.4th 640 (9th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kroeger v. Vertex Aerospace LLC,*
  No. 20-3030, 2020 WL 3546086 (C.D. Cal. June 30, 2020) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kuklok v. U.S. Dep't of Veterans Affs.,*
  No. 21-15105, 2022 WL 256361 (9th Cir. Jan. 26, 2022) . . . . . . . . . . . . . . . . . . . . . . . 31

*Leighton v. Three Rivers Sch. Dist.,*
  No. 12-1275, 2014 WL 6063638 (D. Or. Nov. 12, 2014) . . . . . . . . . . . . . . . . . . . . . . .31, 32

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.,*
  729 F. App'x 528 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Lofall v. Clackamas Cnty.,*
  No. 24-839, 2025 WL 2532816 (D. Or. Sept. 3, 2025) . . . . . . . . . . . . . . . . . . . . . . . 13

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## TABLE OF AUTHORITIES
### (continued)

*Cases*            *Pages*

*MAO-MSO Recovery II, LLC v. Mercury Gen.,*
No. 21-56395, 2023 WL 1793469 (9th Cir. Feb. 7, 2023) . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Marroquin v. OneWest Bank, FSB,*
No. 12-4688, 2012 WL 12904071 (C.D. Cal. July 12, 2012) . . . . . . . . . . . . . . . . . . . . . .34

*Neubronner v. Milken,*
6 F.3d 666 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

*Newcal Indus., Inc. v. Ikon Off. Sol.,*
513 F.3d 1038 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Ohio Health Benefits, LLC v. Priority Advisors, LLC,*
No. 24-1827, 2025 WL 2661544 (N.D. Ohio Sept. 16, 2025) . . . . . . . . . . . . . . . . . . . . 16

*Pac. Dawn LLC v. Pritzker,*
831 F.3d 1166 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Perimeter Sols. L.P. v. Fortress N. Am., L.L.C.,*
No. 24-1276, 2025 WL 553288 (E.D. Cal. Feb. 19, 2025) . . . . . . . . . . . . . . . . . . . . . . .29

*Puri v. Khalsa,*
674 F. App'x 679 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.,*
149 F.4th 1081 (9th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*R.R. Donnelley & Sons Co. v. Marino,*
505 F. Supp. 3d 194 (W.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rasooly v. Peine,*
No. 15-4540, 2016 WL 3443382 (N.D. Cal. June 23, 2016) . . . . . . . . . . . . . . . . . . . . . 34

*Red Rock Sourcing LLC v. JGX LLC,*
No. 21-1054, 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) . . . . . . . . . . . . . . . . . . . . .25

*Ridgeway v. Spokeo, Inc.,*
697 F. Supp. 3d 979 (C.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Salu v. Multnomah Cnty.,*
No. 21-1387, 2023 WL 6239088 (D. Or. Sept. 26, 2023) . . . . . . . . . . . . . . . . . . . . . . . 31

*Savage v. Glendale Union High Sch., Dist.,*
343 F.3d 1039 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## TABLE OF AUTHORITIES
### (continued)

|  | *Cases* | *Pages* |
|---|---|---|

*Schoene v. Christensen,*
No. 23-693, 2024 WL 1052681 (D. Or. Mar. 11, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Sennco Sols., Inc. v. Mobile Techs., Inc.,*
No. 20-1426, 2020 WL 8836070 (D. Or. Dec. 21, 2020) . . . . . . . . . . . . . . . . . . . . . .19, 20

*Sennco Sols., Inc. v. Mobile Techs., Inc.,*
No. 20-1426, 2021 WL 463436 (D. Or. Feb. 9, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Soueidan v. St. Louis Univ.,*
926 F.3d 1029 (8th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33, 34

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

*Stahl L. Firm v. Judicate W.,*
No. 13-1668, 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013) . . . . . . . . . . . . . . . . . . 21, 22, 27

*State ex rel Rosenblum v. Living Essentials, LLC,*
371 Or. 23 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Sun Hong Foods, Inc. v. Future Best Trading Inc.,*
No. 23-5835, 2023 WL 11197084 (C.D. Cal. Sept. 29, 2023) . . . . . . . . . . . . . . . . . . . . 18

*Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.,*
711 F.2d 138 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Synopsys, Inc. v. ATopTech, Inc.,*
No. 13-2965, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) . . . . . . . . . . . . . . . . . . . . 11, 29

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Trees v. Serv. Emps. Int'l Union Loc. 503,*
574 F. Supp. 3d 856 (D. Or. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Van Hook v. Curry,*
No. 06-3148, 2009 WL 773361 (N.D. Cal. Mar. 23, 2009) . . . . . . . . . . . . . . . . . . . . . . 15

*Versluys v. Weizenbaum,*
No. 21-1694, 2023 WL 6880412 (D. Or. Oct. 18, 2023) . . . . . . . . . . . . . . . . . . . . . . .*passim*

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

**TABLE OF AUTHORITIES**
*(continued)*

*Cases*                                                                                          *Pages*

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28, 29

*Vesta Corp. v. Amdocs Mgmt. Ltd.,*
   No. 14-1142, 2016 WL 8732371 (D. Or. Apr. 1, 2016) . . . . . . . . . . . . . . . . . . . . . . . .10, 11

*Vesta Corp. v. Amdocs Mgmt. Ltd.,*
   80 F. Supp. 3d 1152 (D. Or. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wendover Prods., LLC v. PayPal Inc.,*
   No. 24-9470, 2025 WL 3251667 (N.D. Cal. Nov. 21, 2025) . . . . . . . . . . . . . . . . . . . . . 15

*Wolgin v. Simon,*
   722 F.2d 389 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33, 34

*Statutes*

15 U.S.C. § 1125(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 26-30

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-17

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 17, 23, 26

Fed. R. Civ. P. 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ORS 646.605(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ORS 646.608(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ORS 646.608(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ORS 646.608(1)(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ORS 646.638(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Other Authorities*

Black's Law Dictionary 479 (9th ed. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
   No. 24-1586, Docket No. 20 (D. Or. Mar. 18, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . 8

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## TABLE OF AUTHORITIES

*(continued)*

*Other Authorities*                                                                 *Pages*

*ESHA Research, Inc. v. Cronometer Software, Inc.,*
    No. 24-1586, Docket No. 37 (D. Or. May 6, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Catalinbread LLC v. Gee,*
    No. 18-1795, Docket No. 20 (D. Or. Jan. 25, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*RLH Assets, LLC v. ESHA Research, LLC,*
    No. 25-656, Docket No. 1 (D. Or. Apr. 22, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 15

*RLH Assets, LLC v. ESHA Research, LLC,*
    No. 25-656, Docket No. 17 (D. Or. June 4, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## INTRODUCTION

Since ESHA first contacted Foodwit with allegations of theft, Foodwit's response has never changed: 'we didn't steal anything from you, we know that we didn't, so if you think we did, tell us what you think we stole.' That was in August 2024. Seventeen months later, in January 2026, ESHA still has not answered this question.

ESHA piled delay on delay and excuse on excuse, until it finally ran out of delays and excuses, and provided Foodwit with its long-awaited disclosure of trade secrets. Its CEO verified this disclosure, and ESHA promised the Court that it had given Foodwit its asserted trade secrets. But this was not true. ESHA now admits that its long-awaited disclosure of its trade secrets contained only a list of user-facing software features, all of which it described in its public documentation in more detail than in its trade secrets disclosure, and a description of generic steps that ESHA claimed to use to compile its allegedly trade secret database.

When Foodwit pointed out ESHA's failure to disclose any trade secrets, ESHA did not defend its disclosure or its failure to meet its promises to the Court. Instead, it now promises to provide some trade secrets at some later, unspecified time. But ESHA will never provide its trade secrets either to Foodwit or to the Court, because it has no trade secrets to provide.

ESHA has had three opportunities to state a claim against Foodwit, but it cannot cure a lack of trade secrets. ESHA's second amended complaint fails to assert a justiciable injury, and fails to plead a cause of action. Foodwit's motion to dismiss established that ESHA has no trade secrets and that all of its claims depend on them, and ESHA failed to rebut these allegations, thus waiving any response. Foodwit's motion to dismiss established that ESHA's new allegation of wholesale copying is both untrue and impossible, and ESHA knows it. Again, ESHA failed to rebut these allegations, thus waiving any response. And Foodwit's motion to dismiss established

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER. THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

that ESHA's Lanham Act and UTPA claims cannot survive either Rule 9(b) or basic pleading standards. ESHA's feeble attempts to justify these claims show that it does not care about their merits, but instead seeks to bully a smaller competitor with sham litigation. The Court should dismiss this action, and deny ESHA further leave to amend the second amended complaint.

<u>**ARGUMENT**</u>

**I.     ESHA's Assertion of Trade Secrets Confirms That It Has No Trade Secrets to Assert**

      **A.     ESHA Repeatedly Avoided Providing Its Asserted Trade Secrets**

Since ESHA first contacted Foodwit in August 2024, it has repeatedly claimed that Foodwit stole its "crown jewels," but has repeatedly refused to identify what those "crown jewels" were, instead providing a rotating litany of excuses. Before it was in litigation, ESHA claimed that it could identify its asserted trade secrets only in *litigation*. *See RLH Assets, LLC v. ESHA Research, LLC*, No. 25-656, Docket No. 1 Ex. 21 at 1 (D. Or. Apr. 22, 2025). Once in litigation, ESHA claimed that it could identify its asserted trade secrets only in *discovery*. *See* Docket No. 31 at 10-11. Once in discovery in Foodwit's offensive case, ESHA claimed that it could identify its asserted trade secrets only in discovery in *this action*. *See* Docket No. 33 Ex. 4. But once in discovery in this action, ESHA continued to delay its disclosure. First it waited until one day before its deadline to seek an extension. Declaration of Matthew S. Warren ("Warren Decl.") Ex. 151. Then, late in the afternoon on the day before its new deadline to provide its asserted trade secrets, ESHA claimed for the first time that it could provide them only with a *protective order*. *Id.* Ex. 152. Foodwit promptly agreed to enter the Court's standard form order, which ESHA could have requested at any time. Docket No. 44. Once ESHA was in litigation, in this litigation, in discovery, and had a protective order, it ran out of excuses, and reluctantly provided its response to Foodwit's Interrogatory No. 1. *See* Docket No. 48 Ex. 1.

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

**B.    ESHA Repeatedly Promised the Court That Its Response to Foodwit's Interrogatory No. 1 Would and Did Contain Its Asserted Trade Secrets**

As part of its stalling tactics, ESHA promised the Court that its trade secrets would, absolutely and for certain, arrive when it responded to Foodwit's Interrogatory No. 1.  At the hearing on Foodwit's prior motion to dismiss, ESHA stated:  "So Your Honor's aware, the defense has already propounded an interrogatory seeking particularity and specificity as to those trade secret definitions.  And we'll respond to that in due course."  Docket No. 41 at 19:10-13.  ESHA repeated and amplified this representation:  "So I would say that our pleadings, in terms of defining the general categories of trade secrets here, are plenty sufficient for pleading purposes.  **We will respond with a particularized definition to the discovery request we received**, but that is not required at the pleading stage."  *Id.* at 20:4-8 (emphasis added).

On September 9, 2025, ESHA finally served a substantive response to Foodwit's Interrogatory No. 1.  Docket No. 48 Ex. 1.  Once ESHA provided this response, it emphasized both to Foodwit and the Court that its trade secrets were, absolutely and for certain, disclosed by its response to Foodwit's Interrogatory No. 1.  The interrogatory called for ESHA to "[d]escribe with particularity each and every 'trade secret' you allege Foodwit misappropriated"; ███

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

In later correspondence, ESHA confirmed that it was "alleging the following trade secrets" found within its responses to Interrogatory No. 1, including the ███████████████

Page 3 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

███████████████████████████████  Docket No. 48

Ex. 3.  Most importantly, ESHA confirmed to the Court that its response to Foodwit's

Interrogatory No. 1 was, absolutely and for certain, its trade secrets disclosure:

> Separately and in addition, Trustwell provided to Foodwit, under the protective order in this action, **a highly confidential, 19-page, particularized identification of each trade secret at issue—information that cannot be disclosed (or pled) publicly**.  The Genesis Foods and master food and nutrition database trade secrets described herein are referred to collectively as the "Trade Secrets."

2AC ¶ 23 (emphasis added).  ESHA further confirmed to the Court that it "derives independent

economic value from the fact that its Trade Secrets are not generally known or readily

ascertainable through proper means."  *Id.* ¶ 24.

Even after Foodwit filed its motion and declaration claiming that ESHA's asserted trade

secrets were public, ESHA reconfirmed to the Court that it had "Provide[d] Foodwit With A

Detailed Trade Secret Disclosure," and again promised the Court that its responses to

Interrogatory No. 1 were "a highly confidential, 19-page, particularized identification of the trade

secrets at issue—information is designated AEO and that cannot be disclosed (or pled) publicly."

Docket No. 51 at 4.  ESHA further promised the Court that its response to Interrogatory No. 1

was its "detailed trade secret identification."  *Id.* at 5.  ESHA acknowledged that Foodwit's

motion and declaration sought to show that "trade secrets Trustwell identified in its 19 page trade

secret identification is already public," but promised to show that Foodwit's claim "is not even

close to accurate."  *Id.* at 7; Docket No. 54 at 2.  ESHA thus repeatedly promised the Court that

its responses to Interrogatory No. 1 would include its asserted trade secrets; after serving those

responses, ESHA reaffirmed to the Court that its responses to Interrogatory No. 1 did include its

asserted trade secrets; and after Foodwit filed its motion, ESHA re-reaffirmed to the Court that its

responses to Interrogatory No. 1 included its asserted trade secrets and that it would explain how.

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

**C.    Foodwit's Motion to Dismiss Exposes ESHA's Asserted Trade Secrets as Including Zero Trade Secrets, and ESHA's Opposition Admits As Much**

None of these statements were true. ESHA was not telling the truth when it promised the Court that it would provide its trade secrets in response to Foodwit's interrogatory. *Supra* § I.B. ESHA and its CEO were not telling the truth when they confirmed and verified that ESHA's response to Foodwit's interrogatory provided ESHA's trade secrets. *Id.* ESHA was not telling the truth when it told the Court its response to Foodwit's interrogatory contained "a highly confidential, 19-page, particularized identification of each trade secret at issue—information that cannot be disclosed (or pled) publicly," or claimed that it derived "independent economic value" from the secrecy of the information in its interrogatory response. 2AC ¶¶ 23, 24; *supra* § I.B. And ESHA was not telling the truth when, even after Foodwit filed its motion and declaration, it promised to show that its response to Foodwit's interrogatory included its trade secrets. *See* Docket Nos. 51, 54; *supra* § I.B. When ESHA filed its opposition to Foodwit's motion, it confirmed that ESHA's much-trumpeted trade secrets disclosure was just another delaying tactic. ESHA's opposition does not contest any of Foodwit's arguments against its asserted trade secrets, admitting that Foodwit is correct and that its assertion of trade secrets contains none.

**1.    ESHA's Asserted System Secret Contains No Secrets But Is Just a List of Publicly Known Features, as ESHA Now Admits in Its Opposition**

Foodwit's motion and accompanying declaration established, in painful detail, that the 28 numbered paragraphs of ESHA's trade secrets disclosure labeled "Genesis Foods software system" disclose only public information. Mot. § I.A; *see generally* Warren Decl. ESHA's opposition does not contest this argument, and therefore admits that it is correct.

ESHA does its best to obfuscate its failure to contest this argument. Foodwit's motion and declaration made two points: first, that everything in those 28 paragraphs of ESHA's trade

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

secret disclosure also appears in ESHA's public documentation; and second, that nothing in ESHA's public documentation can be a trade secret. *See* Mot. § I.A; Warren Decl. ¶¶ 1-945. ESHA's opposition admits the second point while studiously ignoring the first one. *See* Opp. at 10-11. But ESHA's "failure to respond in [its] opposition brief to an argument put forward in [Foodwit's] opening brief constitutes waiver." *Versluys v. Weizenbaum*, No. 21-1694, 2023 WL 6880412, at *2 (D. Or. Oct. 18, 2023) (citing *Kroeger v. Vertex Aerospace LLC*, No. 20-3030, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020)); *see also, e.g., Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived." (citing *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016)); *Green v. Ariz. Bd. of Regents*, No. 18-4665, 2020 WL 2512759, at *4 (D. Ariz. May 15, 2020) ("Failure to respond to an argument set forth in a motion to dismiss constitutes waiver of the issue by the party opposing the motion and is an adequate basis for granting the motion to dismiss."). Foodwit's motion showed that ESHA's alleged system secret was just a list of publicly known features, *see* Mot. § I.A; Warren Decl. ¶¶ 1-945, and ESHA's failure to rebut or even contest this argument in its opposition brief resolves any questions around it firmly against ESHA.

Although ESHA's failure to contest this argument concludes the matter, ESHA's declarant provides further support for Foodwit's view. With its CEO evidently unwilling to sign more declarations, ESHA turned to Chief Product Officer Todd Dolinsky. Docket No. 56-1 ("Dolinsky Decl."). Mr. Dolinsky avers that the "Genesis Foods portion of the Trade Secret Identification" is merely a list of "features and functionalities," and does not disclose "the specific processes and methodologies that underly or enable those features and functionalities." Dolinsky Decl. ¶ 9.

Page 6 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

Mr. Dolinsky then avers that it is precisely those "specific, underlying processes and methodologies that constitute the actual trade secret information relating to each of the respective features and functionalities." *Id.* ¶ 11. Finally, Mr. Dolinsky avers that "describing the *existence* of a given feature or functionality does not thereby disclose the specific, underlying process or methodology that enables that feature or functionality and makes it unique and valuable." *Id.* (emphasis in original). Mr. Dolinsky thus confirms, under penalty of perjury, that the "Genesis Foods portion of the Trade Secret Identification" contains no trade secrets. *See id.* ¶¶ 9, 11.

Neither Mr. Dolinsky in his declaration nor ESHA in its opposition address or even mention ESHA's repeated promises to the Court that it would provide its asserted trade secrets in its response to Foodwit's Interrogatory No. 1. *Supra* § I.B. Instead ESHA moves the goalposts yet again. Mr. Dolinsky avers that he "help[ed] to prepare the Genesis Foods portion of the Trade Secret Identification," and in doing so "did not intend or undertake to put together a list of all of the specific processes and methodologies" that "constitute the actual trade secret information." Dolinsky Decl. ¶¶ 9, 11. And, Mr. Dolinsky avers, "additional information regarding the specific, underlying processes and methodologies will be exchanged later in the course of this lawsuit." *Id.* ¶ 9. Although Mr. Dolinsky promises to provide the real trade secrets sometime later, he also admits that ESHA's brand-new claim of trade secrets rests on "underlying processes and methodologies" not visible to end users such as Foodwit. *Id.* ¶¶ 9, 11. ESHA's 2AC does not allege—and cannot allege—that Foodwit ever had access to "underlying processes and methodologies" (*id.* ¶ 9); ESHA provided Foodwit with only "object code copies" of user-facing software. Mot. at 17-18; *see also* Declaration of Rebecca Holmes ("Holmes Decl.") ¶¶ 3-6. ESHA and Mr. Dolinsky's promises ring hollow yet again, and they will not be able to fulfill them. In any event, on this motion, the Court need only consider what trade secrets ESHA

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER. THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

alleged in its Second Amended Complaint, and not some new trade secrets it promises to identify later. ESHA's opposition and declaration confirm the 2AC contains none.

> **2.    ESHA's Asserted Database Secret Contains No Secrets, as ESHA Now Admits In Its Opposition By Failing to Address Foodwit's Arguments**

Foodwit's motion explained that ESHA's asserted database secret fails for three independent reasons; ESHA's opposition contests none of them, thus waiving any disagreement.

> **i.    ESHA Failed to Specify Whether Its Claimed Trade Secret Database Includes Public Information Such as the USDA's Well-Known Databases Available on the Internet**

As Foodwit explained in its motion, ESHA's database claim must fail because ESHA failed to specify whether its trade secret included publicly available information. *See* Mot. at 8-11. This question is not academic: ESHA admits that some entries in its database "are identical to publicly available information such as information from the databases on the Food Data Central website, or from commercial food labels." Mot. at 9 (citing *RLH Assets, LLC v. ESHA Research, LLC*, No. 25-656, Docket No. 1 ¶¶ 51-52 (D. Or. Apr. 22, 2025), Docket No. 17 ¶¶ 51-52 (D. Or. June 4, 2025)). If ESHA's claimed database secret includes that "publicly available information," it would lead to a ludicrous result: Foodwit could go to the USDA's Food Data Central website at https://fdc.nal.usda.gov/, download the publicly available databases posted there by the United States government and use them in its products, and ESHA could claim that *Foodwit was misappropriating ESHA's trade secrets* by doing so. *See* Mot. at 9-11. Similarly, some entries in ESHA's database replicate nutrition information that food companies make publicly available. *See ESHA Research, Inc. v. Cronometer Software, Inc.*, No. 24-1586, Docket No. 20 at 5-6 (D. Or. Mar. 18, 2025). Again, if ESHA's claimed database secret includes that "publicly available information," it would lead to another ludicrous result: Foodwit could go

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

to a company's website, copy down and use its posted nutritional information, and ESHA could again claim misappropriation from Foodwit's doing so. *See* Mot. at 9-11.

For at least these reasons, the Court's order granting Foodwit's motion to dismiss ESHA's first amended complaint found that "Plaintiff's compilation claim strengthens the need for it to plead where the boundaries between free, public information and Plaintiff's trade secrets lie," and further found that, because some information within ESHA's database "'is publicly available, as Plaintiff itself acknowledges,'" ESHA's failure to specify whether its trade-secret claim includes that public information "'fails to provide the Court with a roadmap to distill what information may be a trade secret and what may not.'" *ESHA Research, LLC v. RLH Assets, LLC*, No. 25-880, Docket No. 45 at 12 (D. Or. Sept. 22, 2025) ("*ESHA v. RLH*") (quoting *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1151-52 (S.D. Cal. 2022)). Although the Court's order required ESHA to specify whether its trade-secret database claim includes publicly available information, neither the second amended complaint nor ESHA's trade secret disclosure did so, and Foodwit's motion explained as much. Mot. at 9-11. But in its opposition, ESHA *still* did not specify whether its trade-secret database claim includes publicly available information. Instead, once again ESHA fudged, arguing that it could be proper, under some circumstances, for a trade secret database to include some publicly available information. Opp. at 8. But ESHA's response evaded the question before this Court: under *these* circumstances, can ESHA claim a compilation trade secret without explaining "where the boundaries between free, public information and Plaintiff's trade secrets lie," thus leaving open the question of whether its trade-secret claim includes the USDA's databases and other public information? After reviewing the same arguments from ESHA, this Court ruled that the answer to this question was 'no.' *ESHA v. RLH* at 12. ESHA simply ignored this ruling, and ignored Foodwit's arguments about

Page 9 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

this ruling in its motion. Mot. at 9-11. ESHA has no response, and has waived any right to provide one. *See Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1.

ii.    **ESHA Failed to Specify Whether Its Claimed Trade Secret Database Includes Data It Has Itself Discarded**

Foodwit's motion explained another flaw in ESHA's assertion of trade secrets:  it failed to specify which iteration or iterations of its database it claimed as secret. Mot. at 11-12. Again, this question is not academic:  ESHA's own trade secret disclosure claimed that its ███████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████ Quoting these statements, Foodwit noted that ESHA failed to specify whether it claimed as a trade secret ████████

█████████████████████████ Mot. at 12; *see id.* at 11-12. ESHA pretends to misunderstand this argument as a question of the "relevant time period" of Foodwit's access to its database. Opp. at 8 n.2. But again ESHA fails to respond to Foodwit's actual argument, which is that ESHA must specify which iteration or iterations of its database it claims as a trade secret. Mot. at 11-12. Having failed to respond to Foodwit's argument, ESHA has again waived any response. *See Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1.

iii.    **ESHA Failed to Specify How Its Claimed Trade Secret Database is Secret or Valuable For Being Secret**

Since ESHA claims its database trade secrets are "entirely compilation trade secrets, it must identify 'the steps in the process and explain[] how those steps make the method or process unique.'" *ESHA v. Cronometer*, Docket No. 36 (D. Or. Apr. 15, 2025) (alteration in original) (quoting *Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 14-1142, 2016 WL 8732371, at *2 (D. Or. Apr. 1, 2016)); Mot. § I.B.2. Foodwit's motion explained in detail how ESHA's disclosure

Page 10 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

"identifies nothing unusual, let alone 'unique,' about either its asserted database trade secret or the alleged steps it takes to generate that secret," and instead "seeks to mask its slim substance through long-windedness and repetition." Mot. at 12-13; *see id.* at 12-15. Foodwit concluded that because of these deficiencies, ESHA failed to provide a "minimally plausible factual explanation for why trade secret protection applies." Mot. at 14 (quoting *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-2965, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013)).

ESHA responds to this argument with . . . actually, nothing. ESHA does not address this argument at all, and does not try to explain how its trade secret disclosure identified or explained the steps that "make the method or process unique.'" *ESHA v. Cronometer*, Docket No. 36 (quoting *Vesta*, 2016 WL 8732371, at *2). Instead, ESHA incorrectly claims that it need not respond to this argument because, in ESHA's previous litigation against Cronometer, defendant Cronometer filed a status report accepting its trade secret disclosure in that case. *ESHA v. Cronometer*, Docket No. 37 (D. Or. May 6, 2025); *see* Opp. at 9 (citing *ESHA v. Cronometer*, Docket No. 39 (D. Or. May 8, 2025)). But Foodwit's motion explained why ESHA "cannot correctly claim the *Cronometer* case has any bearing on this action." Mot. at 10 n.2. Despite raising *Cronometer*, ESHA failed to address these points, thus waiving any disagreement with them. *See Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1. By declining to address Foodwit's arguments, ESHA's opposition confirms that its database trade secret disclosure failed to provide a "minimally plausible factual explanation for why trade secret protection applies." Mot. at 14 (quoting *Synopsys*, 2013 WL 5770542, at *6).

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

## II.    ESHA Has Suffered No Injury and Thus Lacks Standing to Pursue Its Claims

### A.    ESHA Has Not Suffered a Trade Secret Injury Since It Has No Trade Secrets

Foodwit's motion explained that, because it has no trade secrets, ESHA has suffered no "*de facto*" trade secret injury and thus cannot assert a trade secret claim under DTSA or OUTSA. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (emphasis in original) (quoting Black's Law Dictionary 479 (9th ed. 2009)); *see* Mot. § II.A.  In response, ESHA does not try to defend its assertion of trade secrets, acknowledging that it has asserted none. *Supra* § I.C.

### B.    ESHA's Remaining Allegations Rest on Its Claim of Trade-Secret Injury

All of ESHA's allegations rest on claims that Foodwit stole ESHA's trade secrets. *See* Mot. at 4-5.  ESHA does not respond to this argument regarding its Lanham Act or UTPA claims, waiving any response. *See Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1.  In a footnote, ESHA briefly contends that its contract claim includes a separate allegation that Foodwit failed "to return upon demand" the confidential information it allegedly stole.  Opp. at 12 n.7.  But the complaint confirms that this allegedly missing and allegedly confidential information is "Trustwell's Trade Secrets."  2AC ¶ 52; *see infra* § III.B.  So this claim too, like all the others, rests on ESHA's alleged trade secret injury and falls without it.

### C.    In Addition, ESHA Has Suffered No Lanham Act Injury, and Admits As Much By Failing to Respond to Foodwit's Factual Attack on Its Claim

ESHA lacks standing to bring its Lanham Act claims for another reason as well.  In a transparent attempt to evade the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), ESHA added to the 2AC the new allegation that "Foodwit appears to have copied the entirety of Genesis Foods."  Mot. at 17 (quoting 2AC ¶ 57).  But as Foodwit explained in its motion, ESHA knows this claim is not true, and knows it is impossible.

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

Mot. § II.C. To support this argument, Foodwit quoted ESHA's previous admissions that it does not know what Foodwit stole, thus confirming its new allegation was not true, and quoted the contract ESHA agrees governed, which allowed Foodwit to receive only "object code copies" and not ESHA's source code, thus confirming that ESHA's new allegation is impossible. Mot. at 17-18. Foodwit thus relied on information outside the pleadings, making its 12(b)(1) challenge factual and requiring ESHA to respond with "affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Berg v. Unitus Cmty. Credit Union*, No. 14-135, 2014 WL 4674591, at *3 (D. Or. Sept. 17, 2014) (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2023), *cert. denied*, 541 U.S. 1009 (2004)).

But ESHA has no such evidence, because none exists. Unable to provide responsive evidence, ESHA shuts its eyes and refuses to acknowledge reality, claiming that "Foodwit was required to submit extrinsic evidence to support its challenge" but "fail[ed] to offer any such extrinsic evidence here." Opp. at 13 (citing *Berg*, 2014 WL 4674591, at *5). ESHA then concludes that it prevails because, in the alternate universe where Foodwit didn't provide extrinsic evidence, the Court must accept ESHA's allegations as true. *See* Opp. at 12-13.[1] But in *this* universe, Foodwit *did* provide extrinsic evidence showing that it couldn't access source code and thus that it is "impossible for Foodwit to have 'merely repackaged' ESHA's software-as-a-service 'as its own.'" Mot. at 18 (quoting *Dastar*, 539 U.S. at 31); *see* Mot. at 16-18. Against these arguments, ESHA submits no rebuttal and thus waives any disagreement. *See Versluys*,

---

[1] Even in ESHA's alternate universe, the Court should still dismiss ESHA's Lanham Act claim under Rule 12(b)(1). ESHA concedes that Foodwit has mounted a facial attack, Opp. at 12-13, which the Court resolves under the same presumptions as a Rule 12(b)(6) motion. *See, e.g., Lofall v. Clackamas Cnty.*, No. 24-839, 2025 WL 2532816, at *3 (D. Or. Sept. 3, 2025) (quoting *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 n.7 (9th Cir. 2024)). ESHA's posited facial attack would succeed for the same reasons as Foodwit's Rule 12(b)(6) motion against ESHA's Lanham Act claim. *See infra* § III.C.1.

Page 13 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

2023 WL 6880412, at *2; *supra* § I.C.1. ESHA has failed "to satisfy its burden of establishing subject matter jurisdiction" with "affidavits or other evidence necessary" to do so. *Berg*, 2014 WL 4674591, at *6 (quoting *Savage*, 343 F.3d at 1039 n.2). ESHA has suffered no "*de facto*" Lanham Act injury for this reason as well. *Spokeo*, 578 U.S. at 340.

> **D.    Since ESHA Suffered No Injury, the Court Must Dismiss Under 12(b)(1)**

ESHA's claims depend on its claim of trade-secret theft, but ESHA's 2AC and trade secret disclosure confirm that it has no trade secrets, and thus cannot meet its burden to show it "suffered an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *supra* §§ I.A, I.B; *see* Mot. §§ I, II. In addition, ESHA has not suffered a Lanham Act injury and thus has no injury in fact there either. *Supra* § II.C; *see* Mot. § II.C. Seeking to avoid dismissal and unable to contest Foodwit's facts, ESHA levies several purely legal arguments, all of which fail. First, ESHA claims that the Court cannot dismiss without "satisfy[ing] the requirements specified in *Bell v. Hood*, 327 U.S. 678 (1946)." Opp. at 4 (citing *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983)). But *Bell* has no bearing here. In *Bell*, plaintiffs sought damages for violations of the Fourth and Fifth Amendments, and defendants argued that those amendments could not cover the facts of plaintiffs' claims. 327 U.S. at 679-80. The Supreme Court found that "the district court has jurisdiction" because "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Id.* at 685. *Sun Valley Gasoline*, which ESHA claims requires application of *Bell* here, similarly considered whether an agreed set of allegations fell under a particular statute. 711 F.2d at 139-41. Here, in contrast, ESHA claims that it suffered injury when Foodwit stole its trade secrets, and Foodwit responds that ESHA cannot make this claim because it admits it has no trade secrets. *Supra*

Page 14 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

§ I.C. When the parties dispute the factual question of an "injury in fact," *TransUnion*, 594 U.S. at 423, courts routinely dismiss cases under Rule 12(b)(1) without referring to *Bell*. *See, e.g.*, *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. 21-56395, 2023 WL 1793469, at *1-2 (9th Cir. Feb. 7, 2023); *Trees v. Serv. Emps. Int'l Union Loc. 503*, 574 F. Supp. 3d 856, 861, 866 (D. Or. 2021); *Wendover Prods., LLC v. PayPal Inc.*, No. 24-9470, 2025 WL 3251667, at *2-4 (N.D. Cal. Nov. 21, 2025); *Hamilton v. Gen. Mills, Inc.*, No. 16-382, 2016 WL 6542840, at *1-2 (D. Or. Nov. 2, 2016); *Van Hook v. Curry*, No. 06-3148, 2009 WL 773361, at *1-3 (N.D. Cal. Mar. 23, 2009). This Court should do so as well. *See id.* But even if the Court applied *Bell*, it should still dismiss this action, as ESHA alleges no theft of trade secrets, no theft, and no trade secrets, and thus its claims are "wholly insubstantial and frivolous." Opp. at 5 (quoting *Bell*, 327 U.S. at 682-83).[2] Applied or not applied to this action, *Bell* supports dismissal of it.

Next ESHA claims that the Court must deny Foodwit's 12(b)(1) motion because, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." Opp. at 5 (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). ESHA cites cases noting this rule (Opp. at 5, 12, 13 n.8) but none concerns a disclosure of trade secrets. That is because courts hearing trade-secrets claims consider motions under Rule

---

[2] ESHA briefly claims that Foodwit does not argue that ESHA's claims "are wholly frivolous." Opp. at 5. This statement is puzzling, as Foodwit filed its own complaint stating that "ESHA's lawsuit against Foodwit is objectively and subjectively baseless" and that ESHA filed this action "with knowledge that its claims were and are baseless for the improper purpose of eliminating Foodwit as a competitor in the relevant market." *RLH Assets, LLC v. ESHA Research, LLC*, Docket No. 1 ¶¶ 190, 194 (D. Or. Apr. 22, 2025). And Foodwit's motion to dismiss the 2AC stated that "this litigation is a sham, intended to force a smaller competitor to cede the market." Mot. at 2. ESHA cannot credibly claim that Foodwit has not made this argument because it failed to use the word "frivolous."

Page 15 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

12(b)(1), including those challenging the sufficiency of plaintiffs' asserted trade secrets, and resolve them at the pleading stage. *See, e.g., Ohio Health Benefits, LLC v. Priority Advisors, LLC*, No. 24-1827, 2025 WL 2661544, at *3 (N.D. Ohio Sept. 16, 2025); *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 201 (W.D.N.Y. 2020); *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 518-21 (E.D. La. 2018). None of these cases deferred resolution as too "intertwined" with the "merits," *supra*; all of them evaluated the pleadings and challenges to those pleadings under the normal rules applying Rule 12(b)(1). That makes sense. "The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Goldberg v. Stephens Inst.*, No. 16-2613, 2016 WL 9343893, at *1 (N.D. Cal. Nov. 30, 2016) (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)); *see also Ridgeway v. Spokeo, Inc.*, 697 F. Supp. 3d 979, 983 (C.D. Cal. 2023). Just as the *Ridgeway* plaintiff had no standing to bring name, image and likeness claims because he failed to allege that anyone stole his name, image or likeness, *see* 697 F. Supp. 3d at 982-988, so too ESHA has no standing to bring its claims of trade-secret theft, because it failed to allege either any trade secrets or any theft. *Supra* § I.C; *see* Mot. § II. *Ridgeway* did not defer resolution as too "intertwined" with the "merits," *supra*; it dismissed claims regarding which plaintiff had not met his "burden of establishing' standing." Mot. at 15 (quoting *MAO-MSO*, 2023 WL 1793469, at *1); *Ridgeway*, 697 F. Supp. 3d at 987. This Court should do the same.

Finally, ESHA argues that Foodwit's motion cannot prevail under *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025). Opp. at 5-7. But *Quintara* actually confirms the correctness of Foodwit's motion. *Quintara* did not change the Ninth Circuit's prior law, as "a three-judge panel may not overrule a prior court decision," *Kivett v. Flagstar Bank, FSB*, 154 F.4th 640, 645 (9th Cir. 2025), and did not change the requirement that a complaint

Page 16 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

show a quantum of injury in fact. *See* Mot. § II. *Quintara* ruled only that, because "whether a DTSA plaintiff has identified information that is sufficiently particular to constitute a trade secret" is "a question of fact," a "DTSA trade-secret claim will rarely be dismissible as a discovery sanction," and was not so dismissable in the circumstances before the *Quintara* court. 149 F.4th at 1085, 1091. But, *Quintara* emphasized, district courts retain discretion to supervise discovery, and must continue to decide whether a plaintiff has sufficiently disclosed an alleged trade secret through any mechanism by which they can resolve disputed facts. *Id.* at 1091. Including, of course, a factual motion to dismiss under Rule 12(b)(1) such as Foodwit's here, which "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Mot. at 15 (quoting *Trees*, 574 F. Supp. 3d at 861). *Quintara* does not bar this Court from ruling on Foodwit's motion; it confirms that it may do so.

## III.    ESHA Fails to State a Claim on Which the Court Can Grant Relief

In the alternative to its motion under Rule 12(b)(1), Foodwit also moved to dismiss under Rule 12(b)(6). The Court should grant this motion.

### A.    The Court Should Dismiss ESHA's Trade Secrets Claims

#### 1.    ESHA Fails to Plead Any Trade Secrets

Foodwit's motion established that ESHA's trade secrets disclosure contains no trade secrets, and thus that the 2AC alleges no trade secrets. *Supra* § I. ESHA does not contest these points. *See id.* Instead ESHA again studiously ignores Foodwit's arguments, and responds only regarding the sufficiency of the categories listed in the 2AC itself. Opp. at 14-15. But it is too late for that: as Foodwit explained in its motion, under 12(b)(6) the Court may consider all documents submitted with Foodwit's motion. Mot. at 19-21. ESHA does not contest these arguments in its opposition, thus waiving any disagreement. *See Versluys*, 2023 WL 6880412, at

Page 17 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

*2; *supra* § I.C.1.  The Court may therefore consider the complete record, including ESHA's trade secret disclosure and Foodwit's declaration showing its failure to disclose any trade secrets. *Supra* § I.  As ESHA agrees, a trade secret plaintiff must plausibly allege that "the plaintiff possessed a trade secret."  Opp. at 14 (quoting *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020)).  The 2AC fails this test.  *Supra* § I.

But even if the Court looked only within the four corners of the 2AC, it should still dismiss the complaint.  The 2AC admits that it provides notice only of "types of trade secrets" (2AC ¶¶ 20, 21), and thus cannot survive the rule that allegations containing only "the types of information that generally may qualify as protectable trade secrets are insufficient to state a claim."  *ESHA v. RLH* at 11 (quoting *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-5611, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020)); *see ESHA v. RLH* at 9-12; Mot. § III.A.  ESHA claims that it describes "eight specific trade secret categories," and argues that this list of categories is sufficient to survive dismissal.  Opp. at 15 (citing 2AC ¶ 21).  This argument fails for three reasons.  First, as Foodwit argued in response to ESHA's first amended complaint, "'catchall' phrases and general categories of information are insufficient to properly identify Plaintiff's trade secrets."  *Sun Hong Foods, Inc. v. Future Best Trading Inc.*, No. 23-5835, 2023 WL 11197084, at *2 (C.D. Cal. Sept. 29, 2023); Docket No. 28 at 13.  This Court agreed that "categories of information where trade secret material may lie" cannot suffice.  *ESHA v. RLH* at 11.  ESHA cannot avoid this ruling by ignoring it.

Second, although ESHA's opposition emphasizes the "eight specific trade secret categories" in paragraph 21 of the 2AC, the 2AC itself confirms that paragraph 21 lists only examples of potential trade secret information; the full assertion of ESHA's trade secrets is set forth in paragraph 20, which states that ESHA "is asserting two types of trade secrets in this

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

action: 1) its Genesis Foods software system; and 2) the master food and nutrition database that is embedded in the Genesis Foods system." 2AC ¶ 20. Paragraph 21 confirms that it covers the "Genesis Foods system," and that items (a) through (h) are just examples of "types of trade secrets" that ESHA alleges are "includ[ed]" in the "Genesis Foods system." *Id.* ¶ 21. Stripped of excess verbiage, ESHA's trade secret allegations in the 2AC are no different from those in the 1AC, which claimed a "proprietary, confidential, and trade secret software system and related database." *ESHA v. RLH* at 11 (quoting 1AC ¶ 4). This Court found that the 1AC's "definition of its trade secrets, thus, is circular and states only categories of information where trade secret material may lie." *ESHA v. RLH* at 11. The same is true of the 2AC.

Third, even assuming ESHA disclaimed paragraph 20 and limited its trade secret claims to the "eight specific trade secret categories" in paragraph 21, ESHA's own cases confirm that their disclosure is insufficient. ESHA cites *Sennco Sols., Inc. v. Mobile Techs., Inc.*, No. 20-1426, 2020 WL 8836070 (D. Or. Dec. 21, 2020), *R. & R. adopted*, 2021 WL 463436 (D. Or. Feb. 9, 2021), Opp. at 14, but *Sennco* requires dismissal of ESHA's claims. In *Sennco*, defendant moved for judgment on the pleadings based on plaintiff's failure to identify its trade secrets. 2020 WL 8836070, at *1-2. Plaintiff's complaint identified two trade secrets. *Id.* at *3. First, it identified "a structure upon which a retailer could mount a product such as a camera, smart phone, or other electronic device," and provided substantial elaboration including a list of five specific elements required to practice the secret. *Id.* at *3. Second, and this time without any elaboration, the complaint identified as a trade secret plaintiff's "ideas on manufacturing the structure." *Id.* The Court denied the defendant's motion regarding the five-element structure, but granted the motion regarding the undefined "ideas on manufacturing," which the Court found to be "impermissibly vague." *Id.* As *Sennco* explained, allegations of trade secret theft "'pass . . .

Page 19 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

the test' when they 'limi[t] the categories of the information allegedly misappropriated by [the defendant] to the particular subjects referenced.'" *Id.* (alterations in original) (quoting *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1049 (N.D. Cal. 2020)). The "eight specific trade secret categories" in paragraph 21 are nowhere near the five-element structure claim that *Sennco* allowed; they are like the "ideas on manufacturing" which the court found to be "impermissibly vague." 2020 WL 8836070, at *3. *Sennco* requires dismissal here.

Similarly, in *Garfias v. Portland Spray Works, Inc.*, No. 20-873, 2021 WL 27456 (D. Or. Jan. 3, 2021), the Court denied a motion to dismiss a counterclaim asserting trade secrets including "Defendant's list of customers and certain prospective customers." *Id.* at *5; *see id.* at *5-6. The Court denied the motion because, it found, the trade secrets pleaded provided "the requisite specificity needed to allow Plaintiff to determine whether the information in question was in fact secret and whether it was in fact readily ascertainable through appropriate means." *Id.* at *5. In contrast, paragraph 21 of the 2AC provides nothing of the sort. It includes only vague categories such as "[t]he ability to generate recipes" and repeatedly relies on the word "proprietary" without defining it. 2AC ¶ 21. What does ESHA mean by "[p]roprietary and prebuilt sets of nutrients?" *Id.* Which nutrients? How can nutrients be "proprietary?" ESHA does not say. Just as with *Sennco*, *Garfias* requires dismissal here. *See* 2021 WL 27456, at *5. Finally, *Vesta Corp. v. Amdocs Management, Ltd.*, allowed a trade secrets claim for "[d]etailed architectural drawings and sequence flow diagrams that depicted, on a step-by-step basis, how [Plaintiff] would design and implement its payment solution for Metro PCS." 80 F. Supp. 3d 1152, 1164 (D. Or. 2015) (alteration in original). None of that detail or specificity appears in paragraph 21 of the 2AC. Finally, in *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-1409, 2015 WL 2265479 (N.D. Cal. May 13, 2015), plaintiff alleged that defendants' "products display

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

identical idiosyncrasies and bugs that could have been introduced only through the wholesale copying of significant portions of misappropriated Autodesk code," and provided screenshots and examples to support its claim. *Id.* at \*1; *see id.* at \*1-2. Again, the 2AC contains nothing comparable in paragraph 21 or anywhere else; instead it piles vagueness on vagueness, *see supra*, and thus "provides no way for [Defendant] to ascertain at least the boundaries within which the [trade] secret lies, and [provides] no minimally plausible factual explanation why any part of those sources is a trade secret." *ESHA v. RLH* at 9-10 (alterations in original) (quoting Docket No. 28 at 13). The Court should dismiss the 2AC for the same reasons as it dismissed the 1AC.[3]

### 2.    ESHA Fails to Plead Misappropriation

The 2AC further fails to allege misappropriation. ESHA baldly states that "Foodwit appears to have copied the entirety of Genesis Foods" (2AC ¶ 57), which is not only false and impossible (*supra* § I.C.1, Mot. § II.C) but also mere "legal conclusion[s] couched as [ ] factual allegation[s]" the Court is "not 'bound to accept as true.'" *Stahl L. Firm v. Judicate W.*, No. 13-1668, 2013 WL 6200245, at \*7 (N.D. Cal. Nov. 27, 2013) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see* Mot. at 22. Although ESHA tries to obfuscate its failure to plead misappropriation by removing references to "on information and belief" and replacing them with the word "appears" (*compare* 1AC ¶ 24 *with* 2AC ¶ 27) it cannot escape its admission that it doesn't actually know whether Workbench contains anything stolen at all, but can "only assume" it to be a copy. Docket No. 31 at 17; *see* Docket No. 32 § I.B.

In response, ESHA claims without citation that the 2AC "includes detailed, factual allegations setting forth exactly how Foodwit misappropriated Trustwell's trade secrets." Opp. at

---

[3] ESHA briefly argues that it has kept its trade secrets secret, and "Foodwit does not argue otherwise." Opp. at 16. But Foodwit established in detail that ESHA has no trade secrets at all, and thus had nothing to keep secret. *Supra* § I. ESHA's statement otherwise denies reality.

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

17. But where? ESHA does not say. Earlier on the same page, ESHA cites "SAC ¶¶ 14-17, 26-28, 13, 33-34." Opp. at 16-17. But those paragraphs contain no "detailed, factual allegations setting forth exactly how Foodwit misappropriated Trustwell's trade secrets." Opp. at 17. To the contrary, they contain only vague allegations, always caveated with either "appears" or "on information and belief." *See, e.g.*, 2AC ¶ 13 ("appears to have unlawfully copied the system"); *id.* ¶ 26 ("On information and belief, this rejection prompted Ms. Holmes and Foodwit to copy Genesis Foods and pass it off as its own creation."). ESHA's allegations of misappropriation are precisely the kind of "'legal conclusion[s] couched as [ ] factual allegation[s]'" the Court is "not 'bound to accept as true.'" *Stahl*, 2013 WL 6200245, at *7 (alterations in original) (quoting *Iqbal*, 556 U.S. at 678). ESHA has failed to plead misappropriation.[4]

## B.    The Court Should Dismiss ESHA's Contract Claim

ESHA fails to allege a breach of contract, because it claims a breach only based on "commercializing Trustwell's Trade Secrets" and "otherwise leveraging them to build and launch competing products" (2AC ¶ 5), and since ESHA has no trade secrets (*supra* § I), it alleges no breach. Mot. at 23. ESHA's opposition confirms that Foodwit is correct. ESHA claims that it "alleges that Foodwit's use of Genesis Foods (including the Database) constitutes a breach of at

---

[4] ESHA claims that "[t]his District, in *Catalinbread LLC v. Gee*, found nearly identical allegations to be sufficient." Opp. at 17 (citing No. 18-1795, 2019 WL 1586756, at *7 (D. Or. Apr. 12, 2019)). ESHA appears not to have read either the opinion in *Catalinbread* or the underlying complaint, which asserts that defendant employees set up a secret "Slack channel that allowed Defendants to communicate outside of Catalinbread's system" (*Id.*, Docket No. 20 ¶ 26 (D. Or. Jan. 25, 2019)), and used that secret channel to "discuss[] getting the work done 'on [Catalinbread] paychecks'" so they would not be 'burning this money on salaries' of their competing venture." *Id.* ¶ 28. Defendants also "expressed through Slack their dual hopes that this plan would lead to them having their own venture, while having Catalinbread as a venture 'end badly' for" its owner. *Id.* ¶ 29. The Court credited these paragraphs and found that Catalinbread had alleged misappropriation. 2019 WL 1586756, at *7. None of ESHA's allegations come close to "nearly identical" to the specificity in *Catalinbread*. Opp. at 17. Rather than helping ESHA, *Catalinbread* illustrates the paucity of ESHA's pleading in the 2AC.

Page 22 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

least Sections 3, 6, 8, and 12 of the license agreement." Opp. at 18; *see id.* at 18-19 (citing 2AC ¶¶ 14-17). But paragraphs 14-17 merely recite contract provisions; they do not allege any 'use' of anything, whether proper or improper. *See* 2AC ¶¶ 14-17. And "Foodwit's use of Genesis Foods" (Opp. at 18) in the complaint, as Foodwit said in its motion, relates only to ESHA's claimed trade secrets. *See* Mot. at 23. Finally, ESHA claims that Foodwit "breached the license agreement through its continuing refusal to return Trustwell's confidential information" on demand. Opp. at 19. But the 2AC undercuts this argument. It claims that the "materials that [Foodwit] remains contractually obligated to surrender" are "Trustwell's Trade Secrets," and alleges that "if Foodwit's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets." 2AC ¶ 52. The 2AC itself thus further confirms that the sole breach ESHA alleges is theft of trade secrets and, without any trade secrets, ESHA cannot maintain an allegation of breach. *Supra* § I; *see* Mot. at 23. ESHA has failed to plead breach of contract.

### C.    The Court Should Dismiss ESHA's Lanham Act Claim

#### 1.    *Dastar* Precludes This Claim in Its Entirety

In a transparent effort to evade the Supreme Court's ruling in *Dastar and* this Court's prior ruling applying it, ESHA added transparently false allegations that Workbench is a "copy[] without alteration" and thus dicta in *Dastar* prevent its application here. Opp. at 22; *see supra* § II.C; Mot. § II.C. The Court should dismiss this allegation. Foodwit showed that Rule 12(b)(6) allows the Court to consider the governing contract and ESHA's prior statements, Mot. at 23 n.4, and ESHA does not contest this point, waiving any response. *See Versluys,* 2023 WL 6880412, at *2; *supra* § I.C.1. Foodwit explained how the contract confirmed the impossibility of ESHA's new allegation, *see* Mot. at 18, and ESHA has no response, again waiving any. *See Versluys,* 2023 WL 6880412, at *2; *supra* § I.C.1. Finally, Foodwit explained how ESHA's

Page 23 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

admissions that it did not know what if anything Foodwit stole prevented its new allegation, *see* Mot. at 17-18, and ESHA *again* has no response, *again* waiving any. *See Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1. The Court is "not required to accept as true allegations that, without explanation, contradict the Plaintiff's earlier allegations." *Govind v. Adams*, No. 03-487, 2006 WL 8439727, at *3 (S.D. Cal. Aug. 1, 2006) (citing *Bradley v. Chiron Corp.*, 198 F.3d 1317 (Fed. Cir. 1998)). ESHA cannot avoid *Dastar* with a bad-faith claim that Foodwit peeled the label off its software-as-a-service and resold it—an allegation so lacking that ESHA is unwilling to defend it. *See supra.* Just as this Court ruled, *Dastar* precludes ESHA's claim.

That leaves only the scope of the *Dastar* bar. ESHA admits *Dastar* governs false designation of origin claims, but claims that "courts have been very clear that *Dastar* does not apply to false advertising claims." Opp. at 20. Unfortunately, ESHA supports this argument with deeply deceptive citations. ESHA first cites *Dastar* itself, which did not answer this question but used the word "might" to reply to potential future claims. Opp. at 20 (citing 539 U.S. at 38)). Then ESHA cites *Classic Media, Inc. v. Mewborn*, 532 F.3d 978 (9th Cir. 2008) as holding that "[t]he Supreme Court's decision in *Dastar* was limited to the first prong of § 43(a)(1), 15 U.S.C. § 1125(a)(1), which concerns false designation of origin." Opp. at 20 (quoting *Mewborn*, 532 F.3d at 990). But ESHA deceptively omits the paragraph surrounding those words, which is critical to their meaning. That paragraph stated that "Mewborn disclaimed any Lanham Act claim other than one under § 43(a)(1)(B), the false advertising prong," and found that this "claim involved close questions in an unsettled area of the law," but for the purposes of a fee motion "was not so obviously foreclosed by *Dastar* such that her claim was groundless or unreasonable." *Mewborn*, 523 F.3d at 990-91. Like *Dastar* itself, *Mewborn* notes that the applicability of *Dastar* to false advertising claims is an open question—not a foreclosed

Page 24 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

one, as ESHA claims. Opp. at 20. For the reasons Foodwit has explained in its motion, to which ESHA provides no response, ESHA's conduct of this case confirms why *Dastar* should apply to all Lanham Act claims. Mot. § III.C.1; *see Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1.

But the Court need not reach this question to resolve the claims before it, as ESHA has "merely recast [its] false designation of origin claim as a false advertising claim," allowing this Court to reclassify ESHA's claim and apply *Dastar* to it. *Red Rock Sourcing LLC v. JGX LLC*, No. 21-1054, 2024 WL 1243325, at *31 (S.D.N.Y. Mar. 22, 2024); *see* Mot. at 25. Foodwit submitted specifics and case law to support this argument (Mot. at 25); ESHA responds only with the unsupported and uncited statement that, "[t]o be clear, Trustwell's Lanham Act claims are separate and distinct." Opp. at 20. But bluster is not argument and ESHA provides no actual argument, once again waiving any opposition to Foodwit's points. *See Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1. Instead, ESHA's opposition confirms that its false advertising claim is really a false designation of origin claim. ESHA itself claims that its "false advertising claim" is based on statements that "Foodwit legitimately and honestly built Workbench from scratch, **rather than having simply copied Genesis Foods**." Opp. at 20 (emphasis added). This is a false designation of origin claim, and the Court can and should treat it as such. *See* Mot. at 25. While *Dastar* should apply to all false advertising claims, the Court can apply it to ESHA's false advertising claim, as asserted in this action, through this method as well.

### 2.    ESHA Cannot Build a Lanham Act Claim on "Built"

Even without *Dastar*, ESHA's claims fail. "Only factual statements that are 'specific and measurable [and] capable of being proved false or of being reasonably interpreted as a statement of objective fact' are actionable." Mot. at 26 (quoting *ESHA v. RLH* at 14) (alteration in original). ESHA asserts no such "factual statements" here. Mot. at 26-27. In opposition, ESHA

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

cites *Newcal Indus., Inc. v. Ikon Off. Sol.*, which found a statement claiming "95% up-time service" to "survive[] 12(b)(6) scrutiny." 513 F.3d 1038, 1053 (9th Cir. 2008); *see* Opp. at 23. But *Newcal* merely shows ESHA's failings here; 95% is "specific and measurable," unlike 'built' which is not. *ESHA v. RLH* at 14. ESHA then falls back on its transparently made-up claim that "Foodwit merely repackaged and sold Genesis Foods as Workbench," which ESHA continues to believe is a get-out-of-dismissal free card. Opp. at 24. The Court should not credit this bad-faith claim, which ESHA does not defend. *Supra* §§ II.C, III.C.1.

3.    **ESHA's Lanham Act Claim Fails Under Rule 9(b)**

ESHA admits that Rule 9(b) applies to its claims, Opp. at 23, but fails to contend with its requirements. Under Rule 9(b), ESHA's "allegations 'must be accompanied by the who, what, when, where, and how of the misconduct charged.'" *ESHA v. RLH* at 13 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)); Mot. at 27. Foodwit explained how the 2AC fails this test. Mot. § III.C.3. In response, ESHA claims that it need not provide the 'who' because it added the word "certain" to its complaint (Opp. at 24), and that it need not provide the 'how' because it now claims, falsely and in bad faith, that "Workbench is merely a repackaged copy of Genesis Foods." *Id.* at 25; *see supra* §§ II.C, III.C.1. The Court should not credit either of these allegations as both, "without explanation, contradict the Plaintiff's earlier allegations." *Govind*, 2006 WL 8439727, at *3. Where the 1AC alleged "[o]n information and belief" that customers "likely would do business" with ESHA (1AC ¶ 49), the 2AC now claims in the corresponding paragraph that, "[i]n fact, certain of Trustwell's customers now utilize Workbench, thereby diverting business from Trustwell to Foodwit." 2AC ¶ 58. But the 2AC keeps the "[o]n information and belief," and does not explain the new addition of "[i]n fact" and "certain." *See id.* If ESHA is aware of these "certain" customers, it cannot hide them behind the word

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

"certain"; it must provide "*factual* allegations that [ESHA] has been or is likely to be injured as a result of [Foodwit's] alleged false or misleading statements." *Stahl*, 2013 WL 6200245, at *7 (emphasis in original); *see* Mot. at 29. ESHA provides only "legal conclusion[s] couched as [ ] factual allegation[s]," which cannot suffice. Mot. at 29 (quoting *Iqbal*, 556 U.S. at 678); *see* Mot. § III.C.3. The Court should dismiss the Lanham Act claim for this reason as well.

## IV.    The Court Should Dismiss ESHA's Unlawful Trade Practices Act Claim

### A.    ESHA's Opposition Confirms That the Court Should Dismiss This Claim

ESHA's Opposition deceptively truncates the Oregon Supreme Court's holding in *Clark v. Eddie Bauer LLC*, 371 Or. 177 (2023). Opp. at 27. ESHA states that "the Oregon Supreme Court has long held" that "the UTPA 'is to be interpreted liberally.'" Opp. at 27 (quoting *Clark*, 371 Or. at 186). But the full quotation from *Clark* states that "the legislative history of the Oregon Unlawful Trade Practices Act supports the view that it is to be interpreted liberally **as a protection to consumers**." *Clark*, 371 Or. at 186 (emphasis added) (quoting *Denson v. Ron Tonkin Gran Turismo, Inc.*, 66 P.2d 1177, 1179 n.4 (Or. 1977)). ESHA is not a consumer, does not allege that it is a consumer, and its own case shows that it cannot maintain a UTPA claim. *See Clark*, 371 Or. at 186; *see also, e.g.*, *Schoene v. Christensen*, No. 23-693, 2024 WL 1052681, at *6 (D. Or. Mar. 11, 2024) ("multiple judges in this district have held that the UTPA provides a cause of action only to consumers"); *CollegeNet, Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d 1167, 1172-74 (D. Or. 2001) ("the UTPA provides a cause of action only for consumers"). The Court can dismiss this action for this reason alone.

### B.    ESHA Fails to Allege Any UTPA Violation

ESHA admits that Rule 9(b) applies to its claim, *e.g.*, Opp. at 26-27, but fails to plead anything approaching its requirements. *See* Mot. § III.D. In opposition, ESHA again claims that

Page 27 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

it need not provide the required 'who' because it added the word "certain" to its complaint (Opp. at 26), and that it need not provide the 'how' because it now claims, falsely and in bad faith, that Foodwit's Workbench is "nothing more than a copy of Genesis Foods." *Id.* at 27; *see supra* §§ II.C, III.C.1. ESHA fails to plead anything more than "general allegations—lacking any details or facts" about the newest allegation that Foodwit diverted ESHA's customers, which is "insufficient under Rule 9(b)." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010); *see also Puri v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (under Rule 9(b), "[m]ere conclusory allegations of fraud are insufficient" and "[b]road allegations that include 'no particularized supporting detail' do not suffice"). This Court previously dismissed on this grounds, and should do so again if it reaches this issue. *ESHA v. RLH* at 15-17.

Should the Court proceed further, ESHA will find only further disappointment. ESHA's claims do not allege a violation of either section 646.608(1)(a) or (b), *see* Mot. at 31-32, and ESHA submits no case holding otherwise. ESHA cites *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or. 23 (2023), Opp. at 27-28, but *Rosenblum* supports dismissal here. It found that the State of Oregon could proceed against an energy-drink maker with claims of advertising "falsely implying that doctors approved of 5-hour ENERGY," thus falling within paragraph (1)(b)'s regulation of "confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." *Rosenblum*, 371 Or. at 28-29 (quoting ORS 646.608(1)(b)). But ESHA does not allege that Foodwit claims any similar "approval"; it merely repeats its claims that Foodwit's product is "nothing more than a copy of Genesis Foods." Opp. at 27. Setting aside the bad-faith nature of this claim, it does not assert a violation of ORS 646.608(1)(a) or (1)(b). And in any event, ESHA's allegations fail to establish "the 'who, what, when, where, and how' of the misconduct charged." *Kearney v. Equilon Enters., LLC*, 65 F.

Page 28 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

Supp. 3d 1033, 1043 (D. Or. 2014) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).[5]

### C.    ESHA Fails to Allege Causation

ESHA fails to plead the requisite "causal link." *Fauley v. Washington Mut. Bank FA*, No. 13-581, 2014 WL 1217852, at *4 (D. Or. Mar. 21, 2014); Mot. § III.D.2. In its opposition, ESHA claims that "because certain of its customers now utilize Workbench, business has thereby been diverted from Trustwell to Foodwit." Opp. at 28 (citing 2AC ¶ 74). Again, ESHA claims without explanation that it can use the word "certain" to fulfill the requirements of Rule 9(b); again, ESHA contradicts its previous statements without explanation and hides its factual allegations behind the word "certain," which Rule 9(b) does not allow. *Supra* § III.C.3; *compare* 1AC ¶ 65 *with* 2AC ¶ 74. Again, none of its allegations state "the 'who, what, when, where, and how' of the misconduct charged." *Kearney*, 65 F. Supp. 3d at 1043 (quoting *Vess*, 317 F.3d at 1106). The 2AC fails to plead "sufficient detail to put [Foodwit] on notice of the casual [sic] relationship between a particular alleged unfair business practice and the ascertainable loss and

---

[5] ESHA alleges that Foodwit developed Workbench "in one year," which it concludes is an "impossibly quick development period." 2AC ¶ 28. Accepting ESHA's asserted timeline as true, ESHA fails to plead any "minimally plausible factual explanation" to support its conclusion that a year of development time would be difficult, let alone "impossible" for a modern software product in the absence of theft. *Synopsys*, 2013 WL 5770542, at *6. Though ESHA claims that its product "Genesis Foods represents more than three decades of substantial and continuous investment in research and development," it carefully does not, and cannot, allege that it took three decades to develop and ship a software product in the first instance. Indeed ESHA admits "Trustwell first introduced Genesis Foods in 1991." 2AC ¶ 28. ESHA's continued work to update its software has no bearing on whether Foodwit's release timeline would be "impossible," particularly with the benefit of modern cloud computing tools not available to ESHA in 1991. The Court should disregard ESHA's "impossibility" allegations as "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Perimeter Sols. L.P. v. Fortress N. Am., L.L.C.*, No. 24-1276, 2025 WL 553288, at *8 (E.D. Cal. Feb. 19, 2025) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

damages incurred as a result of that particular conduct." *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1141 (D. Or. 2014).

### D.     ESHA Fails to Allege Damages

ESHA fails to allege damages.  Mot. § III.D.3.  ESHA responds that it only needs to plead "[a]ny loss," and that it has done so by "alleging that certain of its customers now utilize Workbench, thereby diverting business" from ESHA.  Opp. at 28.  Again, the word "certain" is not a magic wand that vanquishes Rule 9(b); again, ESHA cannot contradict its previous complaint without explanation.  *See supra.*  ESHA cites only *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702 (2000) (Opp. at 28), but *Feitler* shows why the Court should dismiss this claim. In *Feitler*, defendant told plaintiff that it would sell its complete collection of drawings from the making of *Plane Crazy*, an early Mickey Mouse cartoon.  170 Or. App. at 705.  But defendant lied, and withheld four drawings from the sale.  *Id.*  The Court found that "if defendant had, in fact, conveyed 'all' of its *Plane Crazy* drawings, plaintiff would have acquired a complete set of all known 'telephone pole' scene drawings.  In these circumstances, exclusivity was a 'characteristic' of the drawings for purposes of ORS 646.608(1)(e)," and "if plaintiff did, in fact, rely on defendant's misrepresentations of exclusivity, plaintiff incurred 'ascertainable loss' within the meaning of ORS 646.638(1)."  170 Or. App. at 712-13.  The allegations in *Feitler* outlined damages with specificity:  plaintiff paid more than he otherwise would have because he thought he was getting "all known 'telephone pole' scene drawings."  *Id.* at 712.  In contrast, ESHA's vague allegation "that certain of its customers now utilize Workbench, thereby diverting business from Trustwell to Foodwit," is "nothing more than a 'formulaic recitation of the elements' of a claim," thus "'conclusory and not entitled to be assumed true.'"  *Burtness v. Legacy Health*, No. 24-1256, 2024 WL 5168364, at *1 (D. Or. Dec. 18, 2024) (quoting *Iqbal*, 556 U.S. at 680-81).

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

### E.    ESHA Fails to Allege Willfulness

Foodwit's motion establishes that ESHA failed to allege willfulness.  Mot. § III.D.4; *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Although the 2AC does not reference these paragraphs in supporting ESHA's UTPA claim, ESHA's opposition now claims that "Ms. Holmes' boasts" to ESHA's parent company somehow establish willfulness.  Opp. at 29 (citing 2AC ¶¶ 26-29).  But ESHA acknowledges that it "cannot know Foodwit's or Ms. Holmes' actual state of mind without discovery" (Opp. at 29), and Foodwit's perception of a market opportunity and its decision to enter the market with a competing product does not suggest that Foodwit "knew or should have known that" its conduct "was a violation." *Fleshman*, 27 F. Supp. 3d at 1141 (quoting ORS 646.605(10)).

### V.    The Court Should Deny Leave to Further Amend the Second Amended Complaint

Although the "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), the "district court has discretion to deny leave to amend when there are 'countervailing considerations' such as 'undue delay, prejudice, bad faith, or futility.'" *Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (quoting *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015)); *see also Salu v. Multnomah Cnty.*, No. 21-1387, 2023 WL 6239088, at *2 (D. Or. Sept. 26, 2023) (same).  A district court's discretion is "particularly broad where plaintiff has previously amended the complaint." *Butters v. Travelers Indem. Co.*, No. 22-726, 2023 WL 2988763, at *11 (D. Or. Jan. 23, 2023) (quoting *Kuklok v. U.S. Dep't of Veterans Affs.*, No. 21-15105, 2022 WL 256361, at *1 (9th Cir. Jan. 26, 2022)).  The Court can deny leave to amend "when the adverse party offers evidence that shows 'wrongful motive' on the part of the moving party." *Leighton v. Three Rivers Sch. Dist.*, No.

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

12-1275, 2014 WL 6063638, at *2 (D. Or. Nov. 12, 2014) (citing *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

Exercising this discretion, the Court should deny any request for leave to further amend. Foodwit's motion showed ESHA's bad faith and wrongful motive, in spades. Mot. § IV. ESHA does not challenge any of Foodwit's points, thus waiving any right to do so. *See Versluys*, 2023 WL 6880412, at *2; *supra* § I.C.1. And since Foodwit's motion, ESHA has provided further evidence of bad faith and wrongful motive. ESHA delayed, as much as possible and then some, providing Foodwit with its asserted trade secrets. *Supra* § I.A. ESHA repeatedly promised the Court that its responses to Foodwit's Interrogatory No. 1 would really, truly, and finally contain its assertions of trade secrets. *Supra* § I.B. But when Foodwit showed that those responses contained no trade secrets whatsoever, ESHA declined to defend them, and declined to defend or even acknowledge its false statements to the Court. *Supra* § I.C.

Instead ESHA moved the goal posts again, now claiming that its actual trade secrets will arrive, like Godot, at an unspecified time "later in the course of this lawsuit." Dolinsky Decl. ¶ 9. Mr. Dolinsky makes vague promises about future trade secrets, but even these vague promises cannot survive any level of scrutiny. Seeking to convince the Court of ESHA's ability to assert trade secrets, Mr. Dolinsky avers that a set of numbers called "ESHA Codes" are "a trade secret and remain confidential." Dolinsky Decl. ¶ 16. ESHA filed his declaration publicly, so Foodwit's CEO Rebecca Holmes could and did read it; she remembered seeing the ESHA Codes on the internet, and tested her memory with a Google search for "esha codes site:trustwell.com." Holmes Decl. ¶ 13. The first hit in response to this simple Google search was a link to https://www.trustwell.com/wp-content/uploads/2025/01/Genesis-Foods-List-Abrv.pdf, which is a PDF containing the ESHA Codes, publicly available on the internet and thus not a trade secret at

Page 32 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

all. Holmes Decl. ¶ 13 & Ex. 3. Mr. Dolinsky claimed that various other functionality might also be a trade secret, *see* Dolinsky Decl. ¶¶ 14-17, but as Ms. Holmes explains in response, Foodwit had no access to any of that functionality, and it could have no value in any event. *See* Holmes Decl. ¶¶ 5-17. So not only do ESHA's trade secrets fail, but ESHA's vague promises about future trade secrets also fail. Like Godot, ESHA's trade secrets will never arrive, because ESHA has no trade secrets to assert. Mot. § I; *supra* § I. Instead, for as long as the Court allows, ESHA will keep grinding down the much smaller Foodwit with litigation costs, hoping that this action will accomplish its goal, which is not to win but to force Foodwit to give up and cede ESHA its desired monopoly. Enough is enough. The Court should deny leave to further amend.

The Court should also deny leave to amend as futile. ESHA's declarant Mr. Dolinsky claims that ESHA's true claims lie within "the specific, underlying processes and methodologies that constitute the actual trade secret information." Dolinsky Decl. ¶ 11. But as Ms. Holmes explained in her responsive declaration, because ESHA made Genesis Foods available as "software as a service," Foodwit and its personnel "could access only the user interface provided by ESHA and outputs from that user interface," and had "no access to these 'specific, underlying processes and methodologies,' by ESHA's design." Holmes Decl. ¶¶ 5, 6 (quoting Dolinsky Decl.). Any amendment along the lines Mr. Dolinsky suggests would be futile, as it would assert a trade secret to which Foodwit had no access. *See id.*

Finally, the Court should deny leave to amend because ESHA provided only a brief conclusory request for leave to amend, without providing any proposed amendment or anything much at all. *See, e.g.*, *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1037 (8th Cir. 2019) (affirming dismissal without leave to amend where plaintiff "did not submit a proposed amendment to the trial court, nor [include] anything in [his] brief to indicate what an amended complaint would

Page 33 – Foodwit's Reply ISO Motion to Dismiss Second Amended Complaint

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER

have contained" (alterations in original) (quoting *Wolgin v. Simon,* 722 F.2d 389, 394 (8th Cir. 1983)); *Rasooly v. Peine,* No. 15-4540, 2016 WL 3443382, at *2 (N.D. Cal. June 23, 2016) (plaintiff had "two tries at stating these claims, and his failure to provide any concrete proposal for amendment suggests further amendment is futile"); *Marroquin v. OneWest Bank, FSB,* No. 12-4688, 2012 WL 12904071, at *1-2 (C.D. Cal. July 12, 2012) (dismissing claim with prejudice and denying request for leave to amend where plaintiff "failed to provide the Court with any facts or argument that indicate leave to amend would not be futile"). There is no "reason to suppose further amendment would be anything but futile." *Lenhoff Enters., Inc. v. United Talent Agency, Inc.,* 729 F. App'x 528, 532 (9th Cir. 2018). The Court should deny leave to amend.

## CONCLUSION

For all the foregoing reasons and those set forth in Foodwit's motion, the Court should dismiss ESHA's Second Amended Complaint, and deny ESHA leave to further amend.

Date:  January 14, 2025                                 Respectfully submitted,

*/s/ P. Andrew McStay, Jr.*
P. Andrew McStay, Jr., OSB No. 033997
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
+1 (503) 778-5302
+1 (503) 778-5299 facsimile
andymcstay@dwt.com

Matthew S. Warren (*pro hac vice*)
Erika H. Warren (*pro hac vice*)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-880@cases.warrenlex.com

*Attorneys for Defendant RLH Assets, LLC d/b/a Foodwit*

Page 34 – FOODWIT'S REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

ATTORNEYS' EYES ONLY — IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 OF THE PROTECTIVE ORDER