Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
Lauren E. Dutkiewicz (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com
E-mail: ldutkiewicz@jonesday.com

*Attorneys for Plaintiff*
TRUSTWELL

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

ESHA RESEARCH, LLC, now known as TRUSTWELL,

Plaintiff,

v.

RLH ASSETS, LLC, doing business as FOODWIT, an Oregon limited liability company,

Defendant.

Civil No. 3:25-cv-00880-AB consolidated with 25-cv-00656-AB

**TRUSTWELL'S MOTION TO COMPEL INSPECTION OF FOODWIT'S WORKBENCH PLATFORM**

[Special Master Hon. Henry Kantor]

Plaintiff ESHA Research, LLC, now known as Trustwell ("Trustwell"), hereby moves to compel an inspection of Defendant RLH Assets, LLC, doing business as Foodwit's ("Foodwit"), Workbench platform.

## INTRODUCTION

This case is about Foodwit's calculated and brazen theft and copying of Trustwell's gold-standard food, nutrition, and regulatory compliance software platform, to create its own competing platform. Foodwit's copycat platform is called Workbench. Although Foodwit stridently proclaims its innocence, at the same time it continues to do everything it can to obstruct and delay Trustwell's duly noticed inspection of the Workbench platform under Rule 34. It is time for this obstruction and delay to end.

First introduced in 1991, Trustwell's Genesis Foods platform is the result of more than three decades of continuous research, development, and improvement. That is why it is widely considered the gold standard. For seven years—from 2017 through 2024—Foodwit licensed Trustwell's Genesis platform and was a self-proclaimed "super user" of the platform, utilizing it on a daily basis. In fact, Foodwit solicited an investment from Trustwell's parent company, or a merger with Trustwell, in 2022 and 2023 by claiming that if Foodwit replicated the Genesis platform, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach. Trustwell's parent company did not invest in or acquire Foodwit. However, almost immediately upon termination of Foodwit's limited-use license agreement for the Genesis platform, Foodwit announced and launched its copycat Workbench platform.

Trustwell has been requesting an inspection of Workbench for more than two years. Foodwit has continuously refused. Foodwit has repeatedly refused even to discuss the inspection, not to mention scheduling or logistics, ensuring further obstruction and delay. Last month, unable to articulate any legitimate basis for its refusal, Foodwit finally agreed to an inspection—but in name only. Under Foodwit's unilateral conditions, Trustwell's expert could spend no more than

four hours inspecting the platform, and only the current—no doubt sanitized—version of the platform. In addition, Trustwell's expert could not interact directly with the platform but must instead instruct a Foodwit employee to conduct the inspection. And Trustwell could not record any portion of the inspection in any way, preventing the inspection from having any evidentiary value. That is not an inspection; it is a manufactured and sanitized demonstration, at best.

Trustwell hereby moves to compel at least one full day of inspection—of all versions and iterations of the Workbench platform, including all modules, databases, and portions—to be conducted by its expert, having most-privileged user access, without interference from Foodwit personnel, and to be recorded in any format (printouts, screenshots, downloads, etc.), subject to the protections of the existing protective order.

## FACTUAL BACKGROUND

### A. Foodwit Was A "Super User," Dependent On Daily Use Of Trustwell's Genesis Foods Platform, For Seven Years.

In 2017, Foodwit requested and received a limited-use license to access and use Trustwell's Genesis Foods software platform. SAC ¶ 13. Foodwit became a self-proclaimed "super user" of Genesis Foods, accessing and using Genesis Foods on a daily basis as a key part of its business. *Id*. Given Foodwit's dependence on Genesis Foods, it renewed the limited-use license annually for seven years, until it expired in August 2024. *Id.*

### B. After A Failed Attempt To Merge With Trustwell, Foodwit Launched A Copycat Platform As Soon As Its Genesis License Expired.

In 2022 and 2023, Foodwit's founder and majority owner, Becki Holmes, engaged in discussions with Trustwell's parent company regarding a potential investment in or acquisition of Foodwit. SAC ¶ 26. During those discussions, Ms. Holmes commented that Genesis Foods had no viable competitors, and she suggested that if Foodwit replicated Genesis, it would become a more commercially successful product because of Foodwit's purportedly greater industry reach. *Id*. Trustwell's parent company declined to invest in or acquire Foodwit. *Id*. Rejected by Trustwell, Foodwit decided simply to steal the Genesis platform for itself. *Id*.

Foodwit wasted no time. Before Foodwit renewed its limited-use license for the final time in 2023, Ms. Holmes made sure to confirm that "API / Import / Export functionality [would be] included." *Id*. ¶ 27. Foodwit apparently went on to export a substantial volume of confidential and proprietary data from Genesis while simultaneously building Workbench. *Id*. Just one year after commenting that Genesis Foods had no viable competitors, and almost immediately upon expiration of its Genesis license, Foodwit announced the launch of its own competing platform, Workbench. *Id*. ¶ 28. Foodwit no longer needed Genesis Foods because it copied the platform to create Workbench. *Id*. ¶¶ 32, 38.

### C. Trustwell Repeatedly Requested An Inspection Of Workbench; Foodwit Consistently Refused.

Before filing this action, in an effort to resolve this dispute informally, Trustwell approached Foodwit to request an inspection of Workbench. SAC ¶¶ 33, 37. Foodwit refused, forcing Trustwell to file suit. *Id.* ¶ 33. Foodwit has continuously refused an inspection ever since.

On April 30, 2026, shortly after the Court largely denied Foodwit's motion to dismiss (Dkt. 74), Trustwell requested available dates for an inspection of Workbench. Foodwit never responded. Instead, Foodwit filed an unsuccessful motion to stay all discovery pending further trade secret identification. Dkt. 79. In denying that motion (Dkt. 94), the Court made clear that discovery is open and unrestricted. On August 5 and again on August 11, 2026, Trustwell renewed its request for available inspection dates, warning that Trustwell would be forced to unilaterally notice the inspection if Foodwit did not provide available dates. Foodwit's only response, on August 12, was an offer to make available "source code relating to the Workbench features you accuse," instead of an inspection.

Left with no alternative, on August 17, 2026, Trustwell served its Notice of Expert Inspection ("Inspection Notice"). Declaration of Cary D. Sullivan ("Sullivan Decl."), ¶ 2, Ex. A. The Inspection Notice requested access to (1) all versions and iterations of the Workbench platform, "including but not limited to live and fully functional client versions and iterations

thereof, development or beta versions, and any specialized or customized versions;" (2) all underlying or embedded databases and data sources, including food and nutrition databases; and (3) all applications, tools, and software. Sullivan Decl., Ex. A at 2. The access must be sufficient for Trustwell's expert to understand, among other things, what Workbench does, how it functions, how it is structured and designed, where its data comes from and how that data is used, its templates and configuration options, its import, export, and other functionality, and what nutritional data is available. *Id.* at 2–3.

**D. Foodwit Unreasonably Refused To Permit A Meaningful Inspection.**

After serving its Inspection Notice, Trustwell again requested to meet and confer regarding the logistics of the inspection. On August 26, 2026, Foodwit wrote that it was "working diligently" to respond to the Inspection Notice, "which requires a significant amount of work and preparation by Foodwit," and would "provide a timely response." Despite Trustwell's repeated requests to meet and confer, Foodwit did not respond further until it served its written objection on September 16, 2026, the date noticed for the inspection. Sullivan Decl., ¶ 3, Ex. B ("Objection").

Foodwit asserts boilerplate objections that the inspection seeks irrelevant and disproportionate information; is overbroad, unduly burdensome, and duplicative; and seeks confidential, proprietary, and privileged information. Sullivan Decl., Ex. B at 1–2. Foodwit further objects that the inspection "seeks information not relevant to the claims or defenses asserted in the case." *Id.* at 2. As an alternative, Foodwit states that it has collected source code for "all production versions of the Workbench platform through August 30, 2026," which it offers to produce upon entry of a supplemental protective order. *Id.* at 2–3.

Foodwit then offers to permit inspection of only "the current production version of the Workbench platform as of the date of inspection," and only on the following conditions: (1) the inspection will take place at Foodwit's counsel's office in Portland or another agreed location, on a mutually agreed date; (2) it is limited to four hours; (3) "Foodwit representatives will observe,

and a Foodwit representative will manipulate the computer based on instructions from ESHA representatives;" (4) "there will be no recording of the inspection in any medium;" and (5) the Court will enter a supplemental protective order limiting information from the inspection to outside counsel and pre-approved experts. Sullivan Decl., Ex. B at 3. Foodwit refuses any inspection beyond those terms. *Id.* at 4.

## LEGAL STANDARD

Rule 34 provides that any party may request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). "The party seeking to compel an inspection under Rule 34 has the initial burden of establishing that its request satisfies the relevance requirements of Rule 26(b)(1)." *Fratus v. Cnty. of Contra Costa*, 2015 WL 4538076, at *2 (N.D. Cal. July 27, 2015). Once that showing is made, "or if relevance is plain from the face of the request," the burden shifts to the party resisting discovery, which "carries the heavy burden of clarifying, explaining, and supporting its objections." *Id.* (quotations omitted). "A party requesting inspection of property may seek an order compelling such inspection when the requested party 'fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.'" *Id.* (quoting Fed. R. Civ. P. 37(a)(3)(B)(iv)).

## ARGUMENT

### I. THE REQUESTED INSPECTION IS UNQUESTIONABLY RELEVANT.

The information Trustwell seeks by way of its inspection is plainly relevant and essential to Trustwell's ability to prove its claims. Literally every claim in this case requires an answer to a single factual question: whether and to what extent Foodwit copied the Genesis Foods platform in building the Workbench platform. Trustwell asserts claims for breach of contract, trade secret misappropriation, and Lanham Act violations that are each predicated on the answer to that question. For its part, Foodwit denies that it copied anything and insists that it developed

Workbench legitimately and independently. That it continues to refuse a reasonable inspection, however, significantly undermines Foodwit's position. The obvious relevance of Trustwell's noticed inspection cannot legitimately be disputed.

Courts routinely grant inspection demands in cases where copying, misuse, and theft of confidential information is at issue. For example, in *FMC Techs., Inc. v. Edwards*, the court concluded that it was "clear that Plaintiffs seek relevant evidence" and granted the plaintiffs' motion to compel inspection of the defendants' premises, including the equipment the plaintiffs alleged was developed using their stolen drawings and plans. 2006 WL 8454813, at *3 (W.D. Wash. Mar. 20, 2006). The same is true here. Just as the *Edwards* plaintiffs were entitled to inspect the equipment allegedly built from their stolen plans, Trustwell is entitled to inspect the platform it alleges Foodwit built by copying Genesis Foods.

## II. FOODWIT'S BOILERPLATE OBJECTIONS ARE MERITLESS, AND ITS PURPORTED LIMITATIONS ARE IMPROPER.

Because the Workbench inspection is plainly relevant, the burden shifts to Foodwit to justify its objections and its purported limitations—and that burden is heavy. *See Hsingching Hsu v. Puma Biotechnology, Inc.*, 2018 WL 4951918, at *4 (C.D. Cal. June 27, 2018) ("The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied."). For the reasons below, Foodwit cannot meet that heavy burden.

### A. Foodwit's Objections Are Boilerplate And Meritless.

Foodwit objects to the inspection on the grounds that it seeks irrelevant information, that it seeks confidential business information, and that it invades the attorney-client privilege and other applicable privileges. Foodwit fails to provide a factual basis for any of these objections. Foodwit does not explain, for example, how an inspection of the very product accused of being a copy could be irrelevant, or what privilege could possibly attach to a commercial software platform that Foodwit advertises and sells to the public. And the existing protective order provides sufficient protection for any confidential information. Such "[u]nsupported 'boilerplate'

objections are improper" and should be overruled. *Core Health & Fitness, LLC v. Transmedik Specialized Inc.*, 2026 WL 396807, at *2-3 (C.D. Cal. Jan. 12, 2026) (where defendants "failed to defend objections asserted in the original responses to the Disputed RFPs, such undefended objections are overruled as abandoned").

### B. Foodwit's Purported Limitations Are Improper And Would Render The Inspection Meaningless.

The conditions that Foodwit purports to impose would strip the inspection of any evidentiary value. Foodwit offers only a four-hour inspection of "the current production version of the Workbench platform as of the date of inspection," during which "a Foodwit representative will manipulate the computer based on instructions from ESHA representatives," and "there will be no recording of the inspection in any medium." Sullivan Decl., Ex. B at 3. Each of these limitations is highly inappropriate, and Foodwit offers no legitimate justification for any of them.

*First, Foodwit cannot limit the inspection to the "current" version of Workbench.* The Inspection Notice seeks to inspect every version and iteration of Workbench, including development, beta, and customized versions, as well as all modules, databases, and portions of each version and iteration. Sullivan Decl., Ex. A at 2. Those earlier versions are critical. Foodwit has known since at least August 2024 that Trustwell contends Workbench is a copy of Genesis. Foodwit thus has had more than two years, and every possible incentive, to sanitize the platform. The earlier versions of Workbench, therefore, are the most probative evidence. Limiting the inspection to the current version would allow Foodwit conveniently to exclude the most probative evidence.[1]

*Second, Trustwell's expert must be permitted to operate Workbench themselves.* Foodwit proposes that its own representative operate the platform while Trustwell's expert calls out

[1] Nor is Foodwit's offer to produce source code a reasonable substitute for anything. Trustwell never provided its source code to Foodwit and does not contend that Foodwit copied its source code. And Foodwit recently admitted in sworn discovery responses that it never received or accessed Trustwell's source code. As a result, source code is probative of nothing in this case. It is simply another means to obstruct, divert attention, and delay.

instructions. Sullivan Decl., Ex. B at 3. That would let Foodwit control what Trustwell sees, how quickly, and in what sequence. The inspection instead seeks direct access at the level of the most-privileged user (e.g., IT administrator-level access), so Trustwell's expert can navigate Workbench's interface, conduct searches, run queries and calculations, test features and functionalities, and generate output to determine the extent to which Workbench is a copy of Genesis Foods. Sullivan Decl., Ex. A at 2–3. That is the only way for Trustwell's expert to meaningfully compare the platforms.

*Third, Trustwell's expert must be permitted to record the inspection.* Foodwit purports to forbid "recording of the inspection in any medium," supposedly "[i]n order to prevent the inspection from becoming an unsworn deposition." Sullivan Decl., Ex. B at 3. Foodwit's limitation finds no support in the law. Rule 34 expressly authorizes the inspecting party to record inspected property. Fed. R. Civ. P. 34(a)(2). Without screenshots, printouts, downloads, or other records of the inspection, Trustwell would have no evidence of the inspection beyond its expert's (inadmissible) personal recollection. That defies both law and logic. And any legitimate confidentiality concern is already addressed by the existing protective order, under which Foodwit may designate records of the inspection as either confidential or for attorneys' eyes only.

*Fourth, four hours may not be enough time to conduct a meaningful inspection.* Foodwit also purports to limit the inspection to four hours. Sullivan Decl., Ex. B at 3. Foodwit offers no justification for this arbitrary limit. And depending on how many versions and iterations of the platform exist, and how many modules, databases, and portions of each version and iteration exist—information that Foodwit has refused to share—four hours may not be nearly enough time to conduct a meaningful inspection (i.e., to navigate Workbench's interface, conduct searches, run queries and calculations, test features and functionalities, and generate output). That work is

time-consuming where, as here, the purpose is to compare complex software platforms, feature by feature and functionality by functionality.[2]

Foodwit cites no authority for any of these limitations, and none exists. A responding party cannot dictate how the inspecting party's expert conducts an inspection because doing so would "circumvent the adversarial process." *Langer v. McHale*, 2014 WL 4922320, at *4 (S.D. Cal. Aug. 6, 2014) (ordering that the plaintiff's expert may "use his own methodology" and that defendants may not "in any way impede the expert's inspection"). The Court should overrule Foodwit's objections and order the inspection to proceed as requested.

## CONCLUSION

Trustwell respectfully requests that the Court grant its motion to compel at least one full day of inspection—of all versions and iterations of the Workbench platform, including all modules, databases, and portions of each version and iteration—to be conducted by its expert, with most-privileged user access, without interference from Foodwit personnel, and to be recorded in any format (printouts, screenshots, downloads, etc.), subject to the protections of the existing protective order.

Trustwell's expert is available to conduct the inspection in Portland between November 16 and 18 or, alternatively, between December 1 and 3, 2026.

Dated: October 23, 2026

**JONES DAY**

*/s/ Cary D. Sullivan*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email: btalcott@dunncarney.com

*Attorneys for Plaintiff*
TRUSTWELL

[2] While Trustwell hopes and expects that one day will be sufficient for its inspection, the time required will depend in large part on the number of versions and iterations of the platform that exist, and the number of modules, databases, and portions that exist for each version and iteration.

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2026, I caused to be served the foregoing **TRUSTWELL'S MOTION TO COMPEL INSPECTION OF FOODWIT'S WORKBENCH PLATFORM** on the following party via the following method(s):

P. Andrew McStay, Jr.
Email: andymcstay@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon, 97205
Telephone: +1 (503) 241-2300
Facsimile: +1 (503) 778-5299

Matthew S. Warren (pro hac vice)
Erika H. Warren (pro hac vice)
Shaida Shahinfar (pro hac vice)
Email: 25-880@cases.warrenlex.com
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California 94114
Telephone: (415) 895-2940
Facsimile: (415) 895-2964

*Attorney for RLH Assets, LLC d/b/a Foodwit*

by:

☐ U.S. Postal Service, ordinary first class mail
☒ electronic service
☐ other (specify) Email

**JONES DAY**

*/s/ Lauren E. Dutkiewicz*
Cary D. Sullivan (*admitted Pro Hac Vice*)
Lauren E. Dutkiewicz (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com
Email: ldutkiewicz@jonesday.com

**DUNN CARNEY LLP**
Brian R. Talcott, OSB 965371
Email: btalcott@dunncarney.com

*Attorneys for Plaintiff Trustwell*