# EXHIBIT A

# END USER LICENSE AGREEMENT

This End User License Agreement ("Agreement") is entered into between ESHA Research, Inc., an Oregon corporation, ("ESHA") and you, the party executing this Agreement ("you" or the Licensee).

RECITALS

ESHA is in the business of developing, maintaining and marketing software and databases used for recipe development, nutritional analysis, and labeling. ESHA has developed, and is the sole owner of, various software and database products used for nutritional analysis and labeling purposes ("ESHA Software").

You have selected and purchased, in a purchase order or similar document (the "Purchase Order"), a license for one or more ESHA Software products (the "Licensed Software"). You have selected in your Purchase Order a scope of license for the Licensed Software specifying your installation rights, who is authorized to use the Licensed Software, and for what purposes you may use the Licensed Software (the "License Scope"). You have selected in the Purchase Order a license duration for the licenses you have to the Licensed Software (the "License Term"). The definitions and specifications related to the Licensed Software, License Scope and License Term are set forth in this Agreement. By clicking on the "I Agree" button at the end of this Agreement you are: (i) verifying your purchase of a license as set forth in the Purchase Order; and (ii) agreeing to all of the terms, conditions, warranties and covenants contained in this Agreement regarding the Licensed Software.

**In the event you do not agree to This Agreement and to every term, condition, warranty and covenant contained in this Agreement, please click the "I Do Not Agree" button below, and contact ESHA to make arrangements for your return of the ESHA Software and a refund of any payments you have already made.**

TERMS

In consideration of the above recitals and the terms, representations, warranties, covenants and conditions below, the parties agree as follows:

1. Grant of License. Subject to the terms and conditions below, ESHA grants to you a limited, nontransferable, nonexclusive license to install and use the Licensed Software specified in the Purchase Order as follows.

    a. Genesis R&D®. In the event you have licensed the Genesis R&D® software product, you shall have the right to install and use the licensed number of object code copies of the Genesis R&D software product specified in the Purchase Order for the sole purpose of conducting internal nutritional analysis and nutritional product labeling for Licensee's own products.

    b. The Food Processor®. In the event you have licensed The Food Processor® software product, you shall have the right to install and use the licensed number of object code copies of The Food Processor software product specified in the Purchase Order for the sole purpose of conducting internal nutritional analysis,

recipe analysis and menu planning.

c. Genesis R&D® Supplements. In the event you have licensed the Genesis R&D® Supplements software product, you shall have the right to install and use the licensed number of object code copies of the Genesis R&D Supplement software product specified in the Purchase Order for the sole purpose of conducting internal nutritional analysis and nutritional product labeling for Licensee's own products.

d. ESHAPort. In the event you have licensed the ESHAPort data export utility software product, you shall have the right to install and use the licensed number of object code copies of the software product specified in the Purchase Order for the sole purpose of conducting internal nutritional analysis and nutritional product labeling for Licensee's own products.

2. Scope of License.

a. Installation Rights and Limits.

i. Named Seat License. In the event you have purchased a Named Seat License, you are licensed to install a single copy of the Licensed Software on up to two personal computers at the physical location(s) specified in the Purchase Order, *provided* that no such installation shall be on a server or other network-accessible computer.

ii. Floating Seat License. In the event you have purchased a Floating Seat License, you are licensed to install the Licensed Software at any physical business locations operated by you on the number of computers equal to three (3) times the number of "seats" you have purchased in your Purchase Order, whether or not such machines are networked. For purposes of example, if your Purchase Order specifies that you have purchased a Floating Seat License for five seats, you may install the Licensed Software on up to 15 (3x5) different computers.

iii. Enterprise License. In the event you have purchased an Enterprise License, you are licensed to install the Licensed Software on any number of personal computers and/or servers at any physical business locations operated by you, whether or not such machines are networked.

b. User Rights and Limits.

i. Named Seat License. In the event you have purchased a Named Seat License, you are licensed to have any single user operate the Licensed Software on either of the two licensed installations.

ii. Floating Seat License. In the event you have purchased a Floating Seat License, you are licensed to have multiple concurrent users using the Licensed Software on one or more of your installations of the software, providing that the total number of concurrent users shall be limited to the number of seats you have purchased in your Purchase Order.

iii. Enterprise License. In the event you have purchased an Enterprise License, you are licensed to have an unlimited number of users using the Licensed Software on one or more of the licensed installations of the software.

c. License Term.

i. Perpetual License. In the event you have purchased a license, in your Purchase Order, for the Licensed Software on a perpetual license basis, your license to use the Licensed Software, as originally delivered to you by ESHA, and as may be updated pursuant to any maintenance agreement you may enter into with ESHA, shall be perpetual, but shall at times be subject to the terms and conditions of this Agreement, including ESHA's terminations rights.

ii. Subscription License. In the event you have purchased a license, in your Purchase Order, for the Licensed Software on a subscription basis, your license to the Licensed Software, as may be automatically updated by ESHA from time to time as part of your subscription, shall be limited to the duration of the subscription term set forth in your Purchase Order. In the event your license to any Licensed Software expires or terminates for any reason, ESHA shall have the absolute right to remotely, and without additional notice, deactivate or otherwise remove such Licensed Software from your use. You agree that upon the expiration or termination of your license for any Licensed Software, you will immediately cease using such software and will promptly destroy all copies in your possession, custody or control.

3. Limitations on License. Licensee may use the Licensed Software solely for its internal business use by its own employees in the manner licensed in this Agreement. Licensee is *not* licensed to do any of the following: (a) copy, sublicense, rent, lease, lend or otherwise transfer, disclose or publish the Licensed Software (or any portions thereof), or in any manner transfer or assign Licensees rights under this Agreement, without the prior written consent of ESHA; (b) use the Licensed Software for any purpose other than the purposes specifically licensed herein; (c) use the Licensed Software for the benefit of third parties or as part of its own commercially licensed products or services; (d) remove or obscure the ESHA copyright or trademark notices appearing on or with the Licensed Software; (e) compile the Software from one form to another or attempt to modify, convert, reverse engineer, reverse compile, change or reverse assemble it; or (f) compile, extract, strip, mine, harvest or otherwise collect, directly or indirectly, the data from the nutritional database embedded within the Licensed Software.

4. License Fees. Licensee shall pay ESHA license fees in the amounts, and upon the terms, set forth in the attached Schedule "B." All fees due shall be stated and paid in U.S. Dollars. The fees set forth in Schedule "B" are exclusive of all taxes, levies or duties imposed by taxing authorities, and payment of all applicable federal, state, local and foreign sales and use taxes, ad valorem taxes, value added taxes, tariffs and duties shall be the sole obligation of Licensee.

5. Maintenance and Updates.

a. Under a Perpetual License. If you have purchased a perpetual license for Licensed Software, you will not have the right to receive updates to the Licensed Software, or to the nutritional databases embedded therein, unless you have also purchased from ESHA a separate maintenance agreement for the Licensed Software.

b. Under a Subscription License. If you have purchased a license for Licensed Software on a subscription basis, then ESHA will automatically update your Licensed Software, including the nutritional database contained therein, with whatever updates it has, in its sole discretion, prepared for commercial release from time to time. You hereby agree to ESHA's automatically, and without prior notice, remotely updating your copies of the Licensed Software.

6. Ownership, Copyrights. ESHA is the sole owner of the Licensed Software, including the embedded nutritional database and all customized and derivative works based upon them, and including all copies thereof and all copyrights and other intellectual property rights embodied therein. All rights not specifically granted in this Agreement are reserved by ESHA. No implied rights are granted.

7. Branding and Attribution. (a) If the nutrition analysis or reports generated by the application are for public or published commercial purposes (e.g., books, brochures or web pages summarizing the nutritional content) the Licensee will include ESHA's Copyright and Trademark notification (e.g., "Powered by the ESHA Research Nutrient Database©" in the "About" section of the web site or other similar acknowledgment section of the published material. Licensee shall not otherwise use ESHA's name or trademarks without ESHA's prior written consent. (b) Licensee agrees to allow its name and/or logo to be included in materials listing ESHA customers.

8. Licensee's Obligations to Protect the Licensed Software. As a continuing condition of the licenses granted herein, Licensee covenants to use the Licensed Software only for the purposes set forth in this Agreement and for no other purpose, and shall use commercially reasonable efforts to protect the Licensed Software from unauthorized use, reproduction, publication or distribution.

9. Lawful Use. Licensee shall at all times use the Licensed Software in full compliance with all laws and regulations, and shall not use the Licensed Software in any manner that is unlawful or is of a nature that ESHA would reasonably find inconsistent with its good business reputation.

10. Indemnification. Licensee shall indemnify, defend, and hold ESHA harmless from all claims, demands, liability, costs and expenses, including, without limitation, attorneys fees, arising from or related to Licensees use of the Licensed Software, provided that ESHA promptly advises Licensee of the existence of, or known threat of, any such claim and reasonably cooperates with Licensee in the defense of any such claim.

11. Term of Agreement, Termination.

a. This Agreement shall become effective upon Licensee's electronic execution of the Agreement, as set forth below. Subject to the termination provisions below, the license rights granted herein shall remain in effect for the license terms you have purchased in your Purchase Order.

b. ESHA may terminate this Agreement and the licenses granted herein immediately in the event Licensee breaches any term or condition of this Agreement and fails to cure such breach within 10 days following its receipt of written notice thereof. For purposes of this provision, ESHA may provide written notice by sending it to

Licensee at the email address set forth in the Purchase Order. If the licenses granted under this Agreement expire or terminate, Licensee shall immediately cease using the applicable Licensed Software, shall destroy all copies of the Licensed Software within Licensee's possession, custody or control, and shall promptly certify in writing to ESHA that it has destroyed all copies of them, in any and all forms and media, within its possession, custody or control. Licensee acknowledges and agrees that in the event a license expires or terminates, ESHA may remotely disable or otherwise remove the applicable Licensed Software from Licensee's use without further notice or approval.

12. Confidential Information. The Licensed Software (including the nutritional database embedded therein) and all other information ESHA discloses to Licensee in connection with them, shall be considered ESHA's Confidential Information, which ESHA discloses only subject to a license agreement. Licensee agrees that it and its employees, agents and representatives shall: (i) keep ESHAs Confidential Information strictly confidential, and shall not disclose such information to any other person or entity without the express written consent of ESHA; (ii) limit internal disclosure of the Confidential Information solely to its employees, agents and representatives who must be apprised of the Confidential Information to advance the purposes of this Agreement, and only to the extent that they must be apprised for those purposes; (iii) contractually bind all such persons to honor the confidentiality and use restrictions imposed upon the Licensee; (iv) use the Confidential Information solely for the purpose of using the Licensed Software as licensed by ESHA in this Agreement; and (v) upon demand, immediately surrender to ESHA the Confidential Information and all notes, records, documentation, models, software, databases and other items or materials containing such Confidential Information. Confidential Information shall not include: (i) information that is in, or enters into, general public access without breach of this Agreement through no fault of Licensee; (ii) information Licensee was demonstrably in possession of prior to receiving it from ESHA; (iii) information Licensee can demonstrate was developed by Licensee independently of, and with neither use of nor reference to, ESHA's Confidential Information; and (iv) information Licensee receives from a third party without restriction on disclosure and without breach by such third party of a nondisclosure obligation. Notwithstanding the above, Licensee understands and acknowledges that the public availability of, or Licensee's possession of, any particular nutritional data shall not in any manner reduce the confidentiality of the nutritional database embedded within the Licensed Software as a confidential and proprietary collection of data.

13. Warranty of Original Development. ESHA warrants that the Licensed Software is, and will be, of original development by ESHA.

14. Limitation of Warranties. Other than the warranties expressly set forth in this Agreement, ESHA makes no other warranties, express or implied. ESHA specifically disclaims, to the fullest extent allowed by law, all implied warranties, including, without limitation, the implied warranties of merchantability and fitness for a particular purpose and any warranties under the Uniform Computer Informational Transactions Act, as may be adopted by any jurisdiction from time to time.

15. Limitation of Remedies. In no event shall ESHA be liable to Licensee for any indirect, incidental, special, punitive or consequential damages or lost profits arising out of or related to Licensee's use of the Licensed Software, even if ESHA has been advised of the possibility thereof. In particular, ESHA shall not be liable for the loss of information arising from the use of, or inability to use, the Licensed Software. ESHAs liability to Licensee, if

any, whether arising under contract or based upon a claim of strict liability, negligence or some other tort or statutory claim, shall in no event exceed the total of the payments made to ESHA hereunder during the 12-month period immediately preceding the event upon which liability is predicated. The warranties and remedies set forth above are exclusive and in lieu of all others, oral or written, express or implied. Licensee acknowledges that the forgoing limitation of remedies is a material condition of ESHA's willingness to enter into this Agreement, and that ESHA would not enter into this agreement but for such limitation.

16. Independent Parties. ESHA and Licensee agree that Licensee is an independent licensee and that the relationship created by this Agreement is not that of employer and employee, partnership, joint venture or franchise. Neither party shall have the authority to bind or obligate the other party in any manner.

17. Remedies. In the event Licensee breaches or defaults upon any covenant, warranty, term or condition of this Agreement, ESHA may pursue any legal or equitable remedies available to it under the laws of the state of Oregon or the applicable laws of the United States. The parties agree that in the event of a breach of any of the covenants pertaining to ESHA's intellectual property rights or Confidential Information, such a breach will result in irreparable and continuing damage in an amount which is not readily ascertainable and for which there will be no adequate remedy at law. In the event of any breach of such covenants, ESHA shall be entitled to injunctive relief and such other and further relief, including damages, as may be provided by law.

18. Non-Waiver. The failure or delay of either party to require performance of, or to otherwise enforce, any condition or other provision of this Agreement shall not waive or otherwise limit that party's right to enforce, or pursue remedies for the breach of, any such provision or condition. No waiver by either party of any particular condition or provision of this Agreement, including this non-waiver provision, shall constitute a waiver or limitation on that party's right to enforce performance of, or pursue remedies for the breach of, any other condition or provision of this Agreement.

19. Successor Interests. This Agreement and the rights granted hereunder are not assignable or transferable by Licensee without the express written consent of ESHA, which shall not be unreasonably denied or delayed. Subject to this restriction, this Agreement is binding upon, and shall inure to the benefit of, the successors, assigns and bankruptcy estates of each of the parties.

20. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the state of Oregon without regard to, or application of, any conflict of law provisions.

21. Jurisdiction, Venue. The parties agree that any suit, action or arbitration proceeding arising out of or relating to this Agreement shall be brought in Multnomah County, Oregon, and the parties expressly consent to the personal jurisdiction over them of any state or federal court in Multnomah County, Oregon.

22. Attorney's Fees. If either party to this Agreement breaches any term of this Agreement, then the other party shall be entitled to recover all expenses of whatever form or nature, costs and attorneys fees reasonably incurred to enforce the terms of the Agreement, whether or not suit is filed, including such costs or fees as may be awarded in arbitration

or by a court at trial or on appeal. In addition, in the event either party to this Agreement becomes a debtor subject to the United States Bankruptcy Code, the non-debtor party shall be entitled to recover any expenses, costs and fees, including attorneys fees, incurred in connection with enforcing its rights against the debtor party, whether those rights arise under this contract or involve matters arising solely under the Bankruptcy Code.

23. Severability. If any court of competent jurisdiction finds any term of this Agreement or of any other document or instrument referred to or contemplated in this Agreement, to be invalid or unenforceable, such determination shall not affect the validity and enforceability of the remainder of the Agreement, and the court shall enforce the Agreement in such a manner as to give substantial effect to the intent of the parties as expressed in the Agreement.

24. Paragraph Headings. All paragraph headings in this Agreement appear for convenience of reference, and shall not affect the meaning or interpretation of the Agreement.

25. Amendments. This Agreement may be amended or modified only by a written instrument executed by the parties which expressly states the intent of the parties to modify or amend this Agreement.

26. Entire Agreement. This Agreement and the Purchase Order constitute the entire agreement between the parties pertaining to the subject matter of the Agreement, and supersede all prior discussions, negotiations, understandings, representations and agreements, whether oral or written. The Purchase Order shall, for all purposes, consists solely of the standard purchase documentation provided by ESHA to you. No terms or conditions in any purchase order form, order acknowledgement or similar documentation provided by you, nor any amendments you make to ESHA's Purchase Order, shall be effective. All terms of this Agreement are contractual and not mere recitals.

27. Electronic Execution. Execution of this Agreement shall occur, and may be evidenced by, your electronic assent to its terms through your clicking the "I Agree" button below. By clicking the "I Agree" button, you are warranting that the information you provided in any Purchase Order documentation is accurate and complete, and that you are authorized to execute this Agreement on behalf of the Licensee. You are not authorized to load or otherwise access or use the Licensed Software unless you agree to this Agreement. If you do not agree to this Agreement, please contact ESHA immediately to arrange for return of this product and a refund of any purchase price already paid. After executing this Agreement, you may print a copy of it for your records.

□ **I Agree** □ **I Don't Agree**